CTJ/RMT
ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT WORTH DIVISION

2007 AUG 16  PM 3: 27

CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,
4333 Amon Carter Blvd.
Fort Worth, Texas 76155,

        Plaintiff,

  -v.-

GOOGLE, INC.,
1600 Amphitheatre Parkway
Mountain View, California 94043,

        Defendant.

4 - 0 7 C V - 4 8 7 - A
Civil Action No. _____

COMPLAINT

## COMPLAINT

Plaintiff American Airlines, Inc. ("American Airlines"), by and through its counsel, for

its Complaint against Google, Inc. ("Google"), alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit relates to the use of trademarks on the Internet, particularly Google's

unauthorized use of the world-famous trademarks and service marks that identify American

Airlines to Internet users. The fundamental purpose of trademark law, in the bricks-and-mortar

world <u>and</u> on the Internet, is to protect consumers from being confused as to the source or

affiliation of the products or services that they seek to buy. In order to assist consumers in

making informed purchasing decisions, trademark law encourages companies to develop brand

names to differentiate their products and services within the marketplace. This is accomplished

Dockets.Justia.com

by legally limiting a brand's use to the brand's owner. This legal protection fully applies in the context of the Internet.

2.      Unfortunately, some individuals and entities attempt to take advantage of consumers by marketing their products or services using the brands of others. In effect, they seek a free ride on the reputation and goodwill of another's brand. Because of the ease and low cost of setting up a website and the speed with which Internet transactions occur, this has become a particular and growing problem in connection with consumer purchases of goods and services on the Internet. This lawsuit involves exactly such a situation -- efforts by certain companies to free ride on American Airlines' brands through use of Google's technology.

3.      Google owns and operates one of the world's largest Internet "search engines." A search engine is a computer program that allows computer users to search the World Wide Web for websites containing particular content. Google's search engine is available not only on its own website (www.google.com), but also through other popular websites that use its search engine. On information and belief, more than half of all searches conducted worldwide are done using Google's search engine.

4.      To use Google's search engine, a World Wide Web user ("web user") need only type in a few words and hit the "enter" key (or click on the "Google Search" button) to receive a list of hyperlinks ("links") to web pages that Google identifies as relevant to the search requested. Web users may then visit these web pages by clicking on the links that Google provides. Google maintains and, on information and belief, many consumers believe that the search results that Google provides are the product of an objective formula or algorithm that produces "natural" or "organic" results, *i.e.*, web listings the placement of which is not influenced by payments to Google from the website owners.

5.      Google, however, does not only provide Internet users with such "natural" results. Without authorization or approval from American Airlines, Google has sold to third parties the "right" to use the trademarks and service marks of American Airlines (the "American Airlines Marks") or words, phrases, or terms confusingly similar to those marks, as "keyword" triggers that cause paid advertisements, which Google calls "Sponsored Links," to appear above or alongside the "natural results." In many cases, the text and titles of these "Sponsored Links" use American Airlines Marks or terms confusingly similar to those marks. Thus, when consumers enter one of the American Airlines Marks into Google's search engine to search or navigate the World Wide Web, instead of being directed to American Airlines' website, Google's "Sponsored Links" may instead misdirect them to:   (i) websites of airlines that compete with American Airlines; (ii) websites that sell air travel not only on American Airlines, but also on a variety of airlines that compete with American Airlines; or (iii) websites that are entirely unrelated to air travel.

6.      American Airlines does not bring this lawsuit lightly.  American Airlines has long been and remains a strong supporter of the Internet and the promise that it holds for consumers and society as a whole.  Indeed, American Airlines does not question that Google's search engine provides consumers with a powerful and highly-useful means to search the Internet for information. That said, Google's search engine is helping third parties to mislead consumers and misappropriate the American Airlines Marks by using them as "keyword" triggers for paid advertisements and by using them within the text or title of paid advertisements.  This lawsuit seeks to stop only this aspect of Google's search engine function, and not its ability to provide objective or "natural" results.  Indeed, Google appears to have the ability to structure and configure its programming to stop this misuse of the American Airlines Marks because it has

already implemented procedures with respect to European Internet users that prevent the misuse of trademarks. Google, however, has chosen not to implement these procedures for Internet users in the United States to the detriment of consumers and American Airlines.

## THE PARTIES

7.      Plaintiff American Airlines, Inc. is a Delaware Corporation with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

8.      Upon information and belief, Defendant Google is a corporation organized under the laws of the State of Delaware with a principal place of business in Mountain View, California. In addition, on information and belief, Google advertises, solicits clients, leases office space, and conducts substantial amounts of business in the State of Texas and within this District. Google may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, at the following address: 701 Brazos, Suite 1050, Austin, Texas 78701.

## JURISDICTION AND VENUE

9.      This action arises in part under the Lanham Act, 15 U.S.C. §§ 1114 and 1125. This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b). This Court has supplemental jurisdiction over the Texas State law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims brought herein as to form part of the same case or controversy.

10.    Google is subject to personal jurisdiction in the State of Texas pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045 because, on information and belief, Google practices the unlawful conduct complained of herein, in part, within this District; because the unlawful conduct complained of herein causes injury, in part, within this District; because Google regularly conducts or solicits business, rents or leases office space within this District, engages in other persistent courses of conduct and/or derives substantial revenue from goods and/or services used or consumed within this District; and because Google regularly and systematically directs electronic activity into the State of Texas with the manifested intent of engaging in business within this District, including the creation, hosting, and offering of fully interactive websites, advertising, e-mail, and other Internet-related services to web users within this District, as well as entry into contracts with residents of this District.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

12.    Venue is also proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c) because Google is a corporation whose contacts would be sufficient to subject it to personal jurisdiction if this District were a separate state, as alleged above in this Complaint.

## FACTUAL BACKGROUND

### The Internet and the World Wide Web

13.     The Internet is a global network of millions of interconnected computers.  The World Wide Web is a portion of the Internet especially well-suited to displaying images and sound as well as text.  Much of the information on the World Wide Web is stored in the form of web pages, which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer or Netscape Navigator.  "Websites" are locations on the World Wide Web containing a collection of web pages.  A web page is identified by its own unique Uniform Resource Locator ("URL") or "web address" (*e.g.*, <http://www.aa.com>), which ordinarily incorporates the website's "domain name" (*e.g.*, "AA.com").  Because URLs and domain names are not case sensitive, URLs and domain names that contain capital letters are functionally the same as those that do not.

### American Airlines and the American Airlines Marks

14.     American Airlines is one of the world's largest airlines.  Together with its affiliates, American Airlines serves 250 cities in over forty countries, with more than 4,000 daily flights in over 1,000 aircraft.  American Airlines' Web site, AA.com, provides users with easy access to check and book fares, plus personalized news, information, and travel offers.

15.     American Airlines has an illustrious history.  For almost eighty years American Airlines has developed global name-recognition and goodwill, and has become a household name.

16.     American Airlines draws its roots from scores of aviation companies founded in the 1920s.  The Aviation Corporation was formed in 1928 to acquire many of these young

aviation companies. In 1930, The Aviation Corporation's airline subsidiaries were incorporated into American Airways, Inc. And in 1934, American Airways became American Airlines, Inc.

17.     On June 25, 1936, American Airlines was the first airline to fly the Douglas DC-3 in commercial service. On Feb. 16, 1937, American Airlines carried its one-millionth passenger. American Airlines began trading on the New York Stock Exchange on June 10, 1939. By the end of the decade, American Airlines was the nation's number one domestic air carrier in terms of revenue passenger miles.

18.     In 1981, American Airlines introduced the "AAdvantage" travel awards program, a revolutionary marketing program to reward frequent fliers.

19.     In 1984, American Airlines introduced the American Eagle system, a network of regional airlines offering high-level service from small communities to large cities through connections to and from American Airlines.

20.     In 1995, American Airlines launched its World Wide Web site, which is now available on the Internet at <www.aa.com>, <www.americanairlines.com>, and other URLs – most of which contain one of the American Airlines Marks or a similar variation thereof. American Airlines offers information about its products and services through AA.com, as well as the opportunity to purchase such products and services and perform many other travel-related functions such as checking in and purchasing upgrades.

21.     To preserve and enhance its trademark rights, American Airlines has obtained numerous federal trademark registrations for many of its American Airlines Marks, the overwhelming majority of which have been in continuous use for more than five years and are therefore considered "incontestable" pursuant to 15 U.S.C. § 1115(b), including but not limited to:

- **AMERICAN AIRLINES**, U.S. Registration Nos. 514,294, 1,845,693, and 2,311,362 (all stylized form). Registered, respectively, on August 23, 1949 for "air transport of passengers and freight," based on first use in commerce in 1934; on July 19, 1994, for "clothing; namely, men's, women's and children's shirts, T-shirts, caps, pants, jackets, shorts, sweat pants and sweatshirts," based on first use in commerce in 1987; and on January 25, 2000, for "clothing, namely, shirts, shorts, sweaters, hats, caps, sweat shirts, jackets, coats, blazers, t-shirts, shoes, and blouses," based on first use in commerce in 1998.

- **AMERICAN EAGLE**, U.S. Registration No. 1,388,600. Registered on April 1, 1986, for "passenger and freight air travel services," based on first use in commerce in 1984.

- **AA**, U.S. Registration No. 514,292. Registered on August 23, 1949, for "air transport of passengers and freight," based on first use in commerce in 1935.

- **A A**, U.S. Registration Nos. 1,895,142, 1,905,580, and 2,695,030 (all in stylized form). Registered, respectively, on May 23, 1995, for "beverage containers; namely, mugs, porcelain mugs, porcelain tankards and beverage glassware," based on first use in commerce in 1993; on July 18, 1995, for "breastpins, brooches, precious metal money clips, and tie clips," based on first use in commerce in 1993; and on March 11, 2003, for "providing an arena facility for sports, entertainment, tradeshows, exhibitions and conventions," based on first use in commerce in 2000.

- **AA.COM**, U.S. Registration No. 2,339,639.  Registered on April 11, 2000, for "transportation of passengers and cargo by air," based on first use in commerce in 1998.

- **AMERICAN AIRLINES CENTER**, U.S. Registration No. 2,438,218.  Registered on March 27, 2001, for "promoting the goods, services and events of others of others by placing advertising on the radio, TV, newspapers, magazines, flyers, brochures, pamphlets, billboards and on a global computer network," and for entertainment services, namely, providing an arena facility for sports, entertainment, trade shows, exhibitions and conventions," based on first use in commerce in 1999.

- **AADVANTAGE**, U.S. Registration No. 2,187,483.  Registered on September 8, 1998, for "providing air transportation services featuring a program of bonus flights for frequent travelers," and for "promoting the goods and services of others by means of an incentive awards programs, whereby purchase points are awarded for purchase made from vendor subscribers, which can then be redeemed for merchandise and travel," based on first use in commerce in 1981.

- **AMERICAN CONNECTION**, U.S. Registration No. 2,199,596. Registered on October 27, 1998, for "transportation of passengers and cargo by air," based on first use in commerce in 1997.

- **AMERICANAIRLINES**, U.S. Registration No. 1,833,817.  Registered on May 3, 1994, for "note paper, memo pads, writing paper, envelopes, date books, calendars, diaries, playing cards and writing instruments; namely, pens and pencils," based on first use in commerce in 1987.

22.    American Airlines has common law rights to the American Airlines Marks in Texas by virtue of the marks' eligibility for protection and American Airlines' status as the senior user of the marks.

23.    The American Airlines Marks are unique and famous distinctive designations of the source of American Airlines' various air transportation and other services.

24.    American Airlines has invested hundreds of millions of dollars in worldwide advertising and marketing in order to build the fame, reputation, and goodwill of the American Airlines Marks.  American Airlines advertises through a variety of media, including television, radio, newspapers, direct mail, and in telephone directories across the country.

25.    American Airlines also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

26.    Through American Airlines' actions, and because of widespread and favorable public acceptance and recognition, the American Airlines Marks have become distinctive designations of the source of origin of American Airlines' goods and services.  The American Airlines Marks have become uniquely associated with, and hence identify, American Airlines. These marks are assets of incalculable value as symbols of American Airlines, its quality goods and services, and its goodwill.

27.    Accordingly, the American Airlines Marks have developed secondary meaning.

28.    The American Airlines Marks have become "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c).  For example, as a result of American Airlines' extensive advertising and promotional efforts and its continuous use of the

Case 4:07-cv-00487    Document 1    Filed 08/16/2007    Page 10 of 55

core service marks "American Airlines" and "AA.com," American Airlines has, on information and belief, attained some of the highest levels of brand recognition among air travelers.

29.    On AA.com and other affiliated websites, American Airlines allows consumers to find and purchase flights to locations around the world. The American Airlines website allows consumers to plan for business trips, vacations, weddings, meetings and other events, as well as learn about and take advantage of American Airlines' incentive and promotional programs.

30.    American Airlines conducts a substantial amount of its business over the Internet and has made a sizeable investment in the development of its online business. It is generally more beneficial for American Airlines when consumers purchase their travel directly through American Airlines. Among other reasons, this is because when consumers book their flights through AA.com, it assists American Airlines in conveying important information to its customers, in developing a direct relationship and future business with its customers, and often in minimizing costs associated with various transactions.

31.    American Airlines allows its authorized distributors, (including but not limited to online travel agencies and global distribution systems) to offer consumers the opportunity to purchase American Airlines tickets under certain conditions set forth in the American Airlines, Inc. Addendum to the Airlines Reporting Corporation ("ARC") Agreement. Among other provisions, the American Airlines, Inc. Addendum to the ARC Agreement requires these distributors to agree not to "purchase, use, or register any domain names or keywords or search terms that are identical or similar to, or contain (in whole or in part), any of the American [Airlines] Marks."

## Google's Search Engine

32.     Web users who are searching for a specific company product or information, but who do not know the exact domain name or website address at which it may be found, may use an internet "search engine" to locate websites.  In fact, many Internet users prefer to navigate the Internet by typing phrases and even URLs into search engines rather than type a URL into an Internet browser's address bar.  A search engine, such as Google's, purportedly checks the terms entered into it against its databases and applies a formula or algorithm to produce a search results page that lists the websites that may relate to the customer's search terms and their corresponding links.

33.     Google claims, and, upon information and belief, most web users who perform searches with Google's Internet search engines believe, that the results given by these search engine are determined by a "natural" or "organic" system that lists results in order of objective relevance to the search terms input into the search engine, with the most relevant websites appearing near the top of the web page.  According to Google, "Google's order of results is automatically determined by several factors, including [its] patented PageRank algorithm."[1] Google describes this "natural" PageRank system as "democratic," gauging the objective popularity of various websites by interpreting a link from one website to another as a vote for the usefulness of the linked website (where the weight of the vote itself depends on the popularity of the linking site).[2]

---

[1]   *See* http://www.google.com/intl/en_extra/contact/search.html (visited August 15, 2007).

[2]   *See* http://www.google.com/intl/en_extra/technology/index.html (visited August 15, 2007).

34.    On information and belief, among other kinds of searches, Google encourages consumers to use its website to find other websites that offer particular products and services.

35.    By using Google's Internet search engines, web users are identifying to Google the subjects in which they are interested, the companies that they seek, or the goods or services they wish to buy.  This allows Google to obtain a significant percentage of its profits from "contextual" or "search" advertising, which allows companies to place their advertising in front of consumers who have already identified themselves as interested in particular products or services.

36.    When a web user carries out an Internet search using Google's search engines, Google not only provides the web user with purportedly objective "natural" results, but also displays a list of similarly formatted advertisements -- to which Google refers as "Sponsored Links" -- above and alongside their purportedly objective "natural" search results.

37.    On information and belief, the relevance of these "Sponsored Links" is determined not by an objective measure, but rather is substantially influenced by the amount of money the sponsors of these links are willing to pay Google.

38.    Google's use of the American Airlines Marks and terms confusingly similar thereto in order to display "Sponsored Links" falsely communicates to consumers that Google's advertisers are official American Airlines affiliates, or that American Airlines sponsors or endorses Google's advertisers.  On information and belief, many consumers incorrectly believe that American Airlines "sponsors" these "Sponsored Links" because of Google's confusing use of the term "Sponsored Links."  In many cases, Google exacerbates this confusion by publishing text in its "Sponsored Links" that makes further confusing use of the American Airlines Marks.

39.    Further, when some web users click on the links that Google's advertisers pay to place above or alongside purportedly objective "natural" results in order to seek information about American Airlines' services, they are likely to be deceived into believing that they will be provided with official information about American Airlines' flights and other services directly from American Airlines.  On information and belief, however, some of these links and the websites to which they lead provide no such information.  In fact, in some instances, some of these links lead to websites that offer the services of American Airlines' competitors, whether or not they also offer American Airlines' own services.

40.    On information and belief, Google also employs other advertising programs that utilize similar types of keywords, including but not limited to the American Airlines Marks or terms confusingly similar thereto, to cause advertisements to appear on websites across the Internet that themselves display the American Airlines Marks or terms confusingly similar thereto.  On information and belief, many of these advertisements lead Internet users to websites that are not American Airlines websites, some of which even compete with American Airlines.

41.    Google's unauthorized use in commerce of the American Airlines Marks generates profits for Google and its advertisers that are directly attributable to their unauthorized exploitation of the value and name recognition associated with the American Airlines Marks.

42.    Google's search engine is available, among other places, through its website located at www.google.com.  Google also licenses its search engine to other popular websites, such as America Online, Netscape, Earthlink, CompuServe, Shopping.com, AT&T Worldnet, and Ask.com.[3]  In addition, Google invites consumers to affix a "Google Toolbar" at the top of

---

[3]    *See* https://adwords.google.com/support/bin/answer.py?answer=6119&hl=en_US (visited August 15, 2007).

Internet users' Internet browsers that allows these users to conduct Google searches even when they are not currently visiting www.google.com or a website that features Google's search engine.[4]

43.     Last year, *The Economist* magazine reported that Google's lead in the Internet search engine market "looks daunting," with "an American market share of 43% as of April, which reaches 50% counting AOL, an internet property that uses Google's search technology."[5] On information and belief, since then, Google has increased its market share to 62.7% as of June 2007.[6]

### Google's Search Engine-Based Keyword Advertising Program

44.     Google offers a program called "AdWords" that displays advertisements to users of Google's search engine in the form of "Sponsored Links."  Google offers advertisers the ability to select certain "keywords" that will trigger a Sponsored Link to the advertiser's chosen website, which Google will display above or alongside the purportedly "natural" search results.

45.     Google has described keyword triggers as "the advertiser's window into the customer's thinking -- the most important basis for directing [an] advertising message to precisely those people who want to see it."[7]  According to Google, these keywords are "uncannily accurate in [their] ability to bring buyers and sellers together," that is, they are used

---

[4]    *See* http://toolbar.google.com/T4/index_pack.html (visited August 15, 2007).

[5]    *See Internet Search Engines: The Un-Google*, THE ECONOMIST, June 17, 2006, at 86.

[6]    *See* http://google.blognewschannel.com/index.php?s=google+loses+search+market+share (visited August 15, 2007).

[7]    *See* http://www.google.com/ads/indepth.html (visited August 15, 2007).

to develop web traffic and business for third-party websites from unsuspecting consumers searching for a specific—and often unrelated—website.[8]

46.    On information and belief, advertisers pay Google each time a web user clicks on "keyword-targeted" Sponsored Links that appear on Google's "results" page.

47.    These targeted Sponsored Link "results" are not meaningfully or conspicuously identified to consumers as paid third-party advertisements.   Most often, Google posts its Sponsored Link advertisements in a color, typeface, and font size that are not appreciably different than the results that Google's PageRank system generates.   On information and belief, even the designation of these keyword-triggered "results" as Sponsored Links is confusing to many consumers, because Google does not inform consumers who has done the "sponsoring."

48.    On information and belief, in a substantial portion of searches, Google's AdWords program makes two distinct uses of a given keyword on behalf on an advertiser.  First, Google uses the keyword to trigger the Sponsored Link advertisement.   Second, Google sometimes publishes the keyword as part of the advertisement itself.   Accordingly, when the keyword in question is a trademark or service mark, Google can make confusing use of that mark in two different ways: (1) as a keyword trigger and (2) as a part of the advertisement itself.

### Google's Unwillingness To Refrain From Trademark Infringement

49.    On information and belief, sometime after August 24, 2004, Google adopted a "trademark policy" and a "trademark complaint procedure" (collectively, Google's "trademark policy"), with the stated purpose of "tak[ing] allegations of trademark infringement very

---

[8]  *See id.*

seriously."[9]   Further, its terms and conditions purport to "prohibit intellectual property infringement by advertisers."[10]

50.   This "trademark policy" is manifestly deficient.

(a)   First, Google is willing to use proprietary marks as *keyword-triggers* within the United States and Canada.  Google's "trademark policy" within the United States and Canada purports to apply to only advertisement text, and expressly states that Google "**will not disable keywords in response to a trademark complaint**."[11]

(b)   Second, although Google's "trademark policy" purports to prevent Google from publishing *Sponsored Links* that infringe on the proprietary trademarks or service marks of others, Google does not make an affirmative commitment to prevent such infringements.   Instead, Google states that its willingness to "perform a limited investigation of reasonable complaints" exists only "as a courtesy" and not as a matter of binding policy.[12]

(c)   Third, even if Google made a more binding commitment to refrain from publishing advertisements that infringe, its policy still puts the onus on the trademark owner to identify and complain about each infringing use, while Google disclaims responsibility for the advertisements that it publishes on *its own website*.  Because the content of Google's website is constantly changing, however, it is effectively impossible

---

[9]   *See* https://adwords.google.com/support/bin/answer.py?answer=6118 (visited August 15, 2007).

[10]   *See* http://adwords.google.com/select/imageguidelines.html (visited August 15, 2007).

[11]   *See* http://www.google.com/tm_complaint_adwords.html (visited August 15, 2007) (emphasis in original).

[12]   *See id.*



for even the most vigilant owner of a mark to detect all infringing uses on Google's website.

(d)     Fourth, although Google's programming sometimes requires advertisers to obtain an exemption from Google before Google will publish advertisements that make exact use of certain proprietary marks, Google's programming is not preventing all advertisers from posting advertisements that make use of terms that are confusingly similar to the marks of others, or are otherwise formatted in a way that is likely to cause consumer confusion.

51.     On information and belief, Google has the ability to refrain from making infringing use of proprietary marks as part of its keyword-triggered advertising program.

52.     Specifically, on information and belief, Google could reasonably prevent trademarks, service marks, and terms confusingly similar thereto from being used as keyword triggers or in the title or text of Sponsored Link advertisements.

53.     Google has stated in its SEC filings that it formerly did not allow advertisers to use the trademarks of others as keyword triggers.  (*See* Form S-1 Registration Statement, Google, Inc., April 29, 2004 ("Google S-1"), p. 10).

54.     Consistent with that statement, in a Declaration filed in *American Blind and Wallpaper Factory, Inc. v. Google, Inc., et al.*, a trademark case filed in the United States District Court for the Southern District of New York, Google's Senior Trademark Counsel asserted on April 7, 2004, that Google had the capability to block its advertisers from using non-descriptive trademarks as keyword triggers.  (Declaration of Rose A. Hagan in Support of Google Inc., Ask Jeeves, Inc., and Earthlink, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer Venue, filed April 9, 2004, ¶ 4).

55.    Google, however, now allows advertisers to purchase specific trademarks as keyword triggers for Sponsored Link advertisements.  In its 2004 S-1, Google stated as follows:

> In order to provide users with more useful ads, we have recently revised our trademark policy in the U.S. and in Canada.  Under our new policy, we no longer disable ads due to selection by our advertisers of trademarks as keyword triggers for the ads.

(Google S-1, p. 10).

56.    Google has further stated that it anticipates additional trademark infringement lawsuits because of its decision to allow its advertising customers to use trademarks to trigger the delivery of Sponsored Links:

> As a result of this change in policy, we may be subject to more trademark infringement lawsuits....  Adverse results in these lawsuits may result in, or even compel, a change in this practice which could result in a loss of revenue for us, which could harm our business.

*Id.*

57.    In contrast to its practices with respect to the use of trademarks in the United States, Google represents that it currently prevents advertisers from using trademarks as keywords *outside* the United States and Canada.  According to Google's trademark policy for "Trademark rights outside US and Canada," Google will "ensur[e] that the advertisements at issue are not using a term corresponding to the trademarked term in the ad text *or as a keyword trigger*."[13]

58.    Additionally, Google maintains an extensive trademark policy regarding confusing uses of *its own* marks.  A would-be user of a Google mark must, *inter alia*, "use the trademark only as an adjective, never as a noun or verb, and never in the plural or possessive

---

[13]    http://www.google.com/tm_complaint_adwords.html (emphasis added) (visited August 15, 2007).

form," and must put "a minimum spacing of 25 pixels between each side of the logo and other graphic or textual elements on [the user's] web page."[14]  Google, in its own words, instructs the world not to "mess around with our marks.  Only we get to do that.  Don't remove, distort or alter any element of a Google Brand Feature... for example, through hyphenation, combination or abbreviation."[15]  Google does not, however, treat the marks of other companies with such respect.

### Google's Unauthorized Use Of The American Airlines Marks

59.    American Airlines has not given Google any permission, authority, or license to use or sell the right to use the American Airlines Marks for the promotion of the goods and services of any third parties, either directly or indirectly.

60.    Nevertheless, on information and belief, Google has in fact sold to third-party advertisers the "right" to use the American Airlines Marks or terms confusingly similar thereto as part of Google's search engine-based advertising program.   As a result, Google's programming utilizes the expressed interest of Internet users in the American Airlines Marks to trigger advertisements to websites that are not American Airlines websites, some of which even compete with American Airlines.  In fact, many of Google's Sponsored Links are expressly designed to draw consumers *away* from American Airlines' websites.

61.    Moreover, Google's use of American Airlines Marks within the titles and text that Google posts as a part of some Sponsored Links further misleadingly communicates to

---

[14]    "Google Permissions," http://www.google.com/permissions/guidelines.html (visited August 15, 2007).

[15]    *See id.*

consumers that such links are endorsed or sponsored by American Airlines or its affiliates, or that such websites are official American Airlines websites.

62.    As a part of the process of triggering "Sponsored Links," Google offers its advertisers the ability to purchase as keyword triggers the trademarks and service marks of others, as well as words, phrases, and terms confusingly similar to those trademarks and service marks. Thus a consumer searching for the American Airlines website using Google's search engine might be shown a Sponsored Link unrelated to American Airlines that was displayed because a third-party advertiser purchased an American Airlines Mark or a term confusingly similar thereto as a keyword trigger. A statistically significant number of consumers are likely to believe falsely that it was American Airlines who "sponsored" the links that appears above or alongside the PageRank search engine results.

63.    On information and belief, a significant portion of the "Sponsored Links" for which Google uses the American Airlines Marks or terms confusingly similar thereto as keyword triggers link Internet users to: (i) websites of airlines that compete with American Airlines; (ii) websites that sell air travel not only on American Airlines, but also on a variety of airlines that compete with American Airlines; and/or (iii) websites that are entirely unrelated to air travel. American Airlines has not sponsored these Sponsored Links or otherwise authorized Google to sell the right to use the American Airlines Marks in commerce to draw web users to these websites. Nevertheless, these unauthorized Sponsored Links appear in close and confusing proximity to both the listings generated by Google's purportedly "natural" system and the Sponsored Links that Google forces American Airlines itself to purchase to reduce the likelihood that Internet users will be diverted to other websites. Many of these unauthorized "Sponsored

Links" use American Airlines Marks in whole or in part within the title and text of the Sponsored Links themselves.

64.     For example, the screenshot below is a true and accurate screen shot of Google's website, which shows the results from an Internet search for "american airlines," which is the same as the American Airlines Mark "American Airlines" (U.S. Reg. Nos. 514,294, 1,845,693 and 2,311,362) in the Internet search context because Google searches are not case sensitive.



Although Google includes its "natural" search results on this search results page, the page also contains "Sponsored Links" to three websites next to the objective search results. None of these Sponsored Links are operated by American Airlines. The phrase "American Airline Deals" appears in the title of one of the Sponsored Links, although it is confusingly similar to the American Airlines Mark "American Airlines" and the website linked to that Sponsored Links is

not an American Airlines website. The American Airlines Mark "AA" appears in the title of another of the Sponsored Links as a part of the phrase "Free AA Travel Offers," even though the website linked to that "Sponsored Link" is not affiliated with American Airlines and, on information and belief, could not lawfully offer discounts for American Airlines' services.

65.    Another example is shown in the screenshot below, which is a true and accurate screen shot of Google's website.



This screenshot shows the results pages that appeared when a web user performed an Internet search for the American Airlines website "americanairlines.com," which contains the mark "AmericanAirlines" (U.S. Reg. No. 1,833,817) because domain names, URLs, and Internet searches are not case sensitive. As with the previous sample, in addition to Google's "natural" PageRank-generated results, Google also lists "Sponsored Links" to various websites in close proximity to the "natural" search results, both above them and immediately to their right.

22

American Airlines Marks or terms confusingly similar thereto appear in the title or text of ***four*** of these Sponsored Links even though the websites linked to those Sponsored Links are not American Airlines websites.   In particular, the Sponsored Links titled "American Airline," "AmericanAirlines," "Americanairlines Com" and "Americanairlines.com Info" are not operated by American Airlines and have no connection to American Airlines.   Nevertheless, Google publishes titles for these Sponsored Links that make use of the American Airlines Mark "AmericanAirlines" (U.S. Reg. No. 1,833,817) and is confusingly similar to the American Airlines Mark "American Airlines" (U.S. Reg. Nos. 514,294, 1,845,693, and 2,311,362). American Airlines has not sponsored any of the unauthorized Sponsored Links that appear below or otherwise authorized Google to sell the right to use the American Airlines Marks in commerce to draw web users to these websites.

66.   On information and belief, the use of the marks "AmericanAirlines" and "American Airlines," such as shown above, is also confusing to consumers because, in many instances, consumers will enter the exact web address of American Airlines' website, "www.americanairlines.com," or some variant of American Airlines' web address into Google's search engine expecting to receive the link for American Airlines' website.  Due to Google's sale of the American Airlines Marks to third parties as keywords, such consumers could be redirected to competitors of American Airlines even though they originally intended to go to AA.com. Accordingly, Google aids third parties in "hijacking" consumers who use their search engines to navigate the World Wide Web.  This interferes with American Airlines' sales and business.

67.   On information and belief, a significant portion of the "Sponsored Links" for which Google uses the American Airlines Marks or terms confusingly similar thereto as keyword triggers do not even provide consumers with the opportunity to purchase services or products

offered by American Airlines.  For example, below is a true and accurate screen shot of Google

search results for "american airlines," which is the same as the American Airlines Mark

"American Airlines" (U.S. Reg. Nos. 514,294, 1,845,693, and 2,311,362) in the Internet search

context because Google searches are not case sensitive.



When the phrase "american airlines" was entered into Google's search engine, Google provided

Sponsored Links in response that include competitor airlines such as United Airlines and US

Airways that do not, in fact, allow a consumer to purchase American Airlines tickets.

68.    On information and belief, Google also posts Sponsored Links to websites that

similarly do not offer consumers the opportunity to purchase services or products from American

Airlines but nevertheless use American Airlines Marks or phrases confusingly similar thereto in

the text or title of the Sponsored Links.

69.    On information and belief, it is relatively easy to find Sponsored Links triggered

by keywords confusingly similar to American Airlines Marks.  For example, below are true and



accurate screen shots of Google search results for "american air lines" and "america airlines," which are confusingly similar to the American Airlines Mark "American Airlines" (U.S. Reg. Nos. 514,294, 1,845,693, and 2,311,362).





In each case, Google displays at least one Sponsored Link with a title or text incorporating these confusingly similar terms.

70.    By contrast, Google apparently has a different policy with respect to its own trademarks.  On information and belief, at least until very recently, Google prevented at least one of its own trademarks from being used as a keyword trigger.  For example, below is a true and accurate screen shot of a Google search for "google" taken earlier this year.  Note that, unlike the Google searches for "american airlines" and "americanairlines.com," the results for this search contain no Sponsored Links at all.  On information and belief, to the extent that Google allows Sponsored Links to appear as a result of searches for the word "google," these Sponsored Links appear to be limited to links that will take the user only to one of Google's websites.



71.     Moreover, on information and belief, it is difficult to find a Sponsored Link based on a keyword that is some derivative, misspelling, or other confusingly similar variant of the mark "Google" (or "google," because internet searches are generally not case sensitive).  Below are true and accurate screen shots of the results of two Google searches for terms that are confusingly similar to "google."  Neither of the searches depicted below revealed any Sponsored Link using a keyword confusingly similar to that Google mark.





72.     Thus, on information and belief, Google allows the use of American Airlines Marks and terms confusingly similar thereto as keywords in its search engine-based advertising program, although that program is flexible enough to prevent many, if not all, such uses.

73.     Further, Google actively encourages advertisers to use trademarks, service marks, and terms confusingly similar thereto as keyword triggers.  When a would-be advertiser selects a keyword trigger for its advertising program, Google's AdWords program will find "related keywords" to whatever word or term the advertiser enters.

74.     At least until very recently, Google suggested brand names as keywords even when the submitted term was generic.  Below is a true and accurate screen shot showing a portion of the web page displayed by Google when a web user requested keywords related to the words "airline tickets."



Here, as an example, Google invited the advertiser to select phrases confusingly similar to specific proprietary marks as additional "related keywords." More specifically, Google offered a number of related terms for purchase as keywords, including the term "american airline tickets," which is confusingly similar to the American Airlines Mark "American Airlines" (U.S. Reg. Nos. 514,294, 1,845,693 and 2,311,362), particularly in the Internet search context because Google searches are not case sensitive.

75.    Below is a true and accurate screen shot showing a web page that was displayed by Google when a web user requested "related keywords" to the term "American Airlines."



As demonstrated by this example, if an advertiser selects "American Airlines" as a keyword trigger, Google similarly invites the advertiser also to purchase as keyword triggers scores of other terms that incorporate the mark "American Airlines" or confusingly similar variations on

the mark, including but not limited to "american airline," "american airline center," "www american airline," "american airline flights," and "american airline tickets."

76.      On information and belief, Google's specific use of the American Airlines Marks as keyword triggers in its advertising program allows Google and its advertisers to benefit financially from and trade off American Airlines' goodwill and reputation without incurring the expense that American Airlines has incurred in building up its popularity, name recognition, and brand loyalty.   Through these practices, Google intentionally traffics in the infringement and dilution of the American Airlines Marks, falsely represents or confusingly suggests to consumers a connection to American Airlines that does not exist, and unfairly competes with American Airlines.   These practices cause consumer confusion, erode the distinctiveness of the American Airlines Marks, and cause American Airlines to lose, in part, control over the commercial use of the American Airlines Marks by placing such control in the hands of Google and its advertisers.

77.      On information and belief, Google's advertising programs also allow confusing uses of American Airlines Marks in the text of the Sponsored Link advertisements that Google publishes on its search results page and in other Google advertising on the Internet, although Google has the technical capability to prevent many, if not all, such uses if Google wanted to do so.

78.      On information and belief, Google's advertisers have used loopholes in Google's programming to create "Sponsored Links" and other advertisements that either use terms that are confusingly similar to the American Airlines Marks or are formatted in ways that are likely to cause confusion with American Airlines and/or with the American Airlines Marks.   Because of the constantly changing nature of Google's website, though, American Airlines requires discovery to ascertain the extent and nature of such confusing advertisements.



79.     On information and belief, Google may also have other advertising programs, including but not limited to Google's "AdSense" program, which similarly make commercial use of American Airlines Marks or terms confusingly similar thereto in order to trigger advertisements on third parties' websites throughout the Internet.  On information and belief, in at least some of these instances, the title and/or text of these advertisements also make use of American Airlines Marks or terms confusingly similar thereto.

80.     In sum, Google's unreasonably ineffective trademark policy constitutes, in practice, use in commerce of the registered and common law trademarks of other companies, including American Airlines, with full knowledge that consumers are likely to be confused and lured away from the websites that they intended to visit, and with the goal of financially benefiting Google to the detriment of American Airlines and other trademark and service mark owners.

**Consumer Confusion and Harm to American Airlines**

81.     On information and belief, Google charges advertisers a fee every time a web user clicks on a keyword-triggered "Sponsored Link."

82.     On information and belief, many web users who enter one of the American Airlines Marks into Google's search engine and who then view a Sponsored Link containing a third-party advertisement will follow the Sponsored Link to a third-party website in the belief that the website is owned by or affiliated with American Airlines.

83.     Upon information and belief, many web users who are presented with such Sponsored Links to third-party advertiser websites are not aware that the third-party advertiser may have no affiliation with American Airlines and/or may not be an authorized provider of American Airlines products and services.  Google's misappropriation of the American Airlines



Marks as keyword triggers and its use of terms confusingly similar to American Airlines Marks in the Sponsored Link text are therefore likely to cause confusion in the marketplace for air transportation and related services. This confusion is particularly likely because the third-party advertiser Sponsored Links often appear in the same context as, and often above or immediately below, Sponsored Links to genuine American Airlines websites.

84.    Even if web users realize that a given website is not affiliated with American Airlines, once they reach it, the damage to American Airlines has already been done. A statistically significant percentage of such consumers are likely either to stay at the third-party advertiser's website or to discontinue their search for American Airlines' websites. Web users may also associate the quality of the goods and services offered on the third-party advertiser's website with those offered by American Airlines, and if dissatisfied with such goods and services, may decide to avoid American Airlines' goods and services in the future.

85.    In fact, because of the dominant role of Google's search engine in consumers' Internet usage and habits, Google effectively forces American Airlines to purchase the "rights" to have official American Airlines advertisements appear when Internet users search the web for the American Airlines Marks. In other words, Google has set up a system wherein American Airlines and others are, *de facto*, forced to pay Google to reduce the likelihood that consumers will be confused by Google's own practices. This need to reduce the extent of consumer confusion caused by Google's policies has cost and, unless enjoined, will continue to cost American Airlines millions of dollars. Even when American Airlines purchases from Google these "rights," though, Google is still able to misappropriate American Airlines' rights by selling these same "rights" to third parties at the same time.



86.     Although the above examples are illustrative of the problems created by Google, they by no means describe all the ways in which Google's uses of the American Airlines Marks are likely to confuse consumers.  Because of the fluid nature of the way Google's programming uses the American Airlines Marks and displays advertising based on those marks, Google either is misleading or will mislead consumers in innumerable different ways.  Accordingly, it is impossible for American Airlines to cure this problem merely by pursuing remedies against Google's advertisers alone.

87.     Among other things, the following facts and circumstances support the conclusion that Google's use in commerce of the American Airlines Marks is likely to cause consumer confusion:

A.     The American Airlines Marks have acquired exceptionally strong secondary meaning over the course of the last century.

B.     Google uses the actual American Airlines Marks or terms confusingly similar thereto as keyword triggers and in advertisement text.

C.     Third-party advertisers on whose behalf Google uses the American Airlines Marks or terms confusingly similar thereto generally sell services closely related to the air transportation services provided by American Airlines, and in many cases are in direct competition with American Airlines.

D.     Google and its third-party advertisers use the same marketing channels or parallel marketing channels as American Airlines -- namely, the World Wide Web, and in particular, the context of internet searching.

E.    On information and belief, purchasers are likely to exercise a minimal degree of care in the context of Internet searching generally and in choosing air transportation services online in particular.

F.    On information and belief, consumers have actually been confused as a result of Google's conduct.

G.    Google began using the American Airlines Marks or terms very similar to the marks after they were registered and after they became famous and distinctive. On information and belief, Google did so with full knowledge of American Airlines' rights in the American Airlines Marks. In fact, on information and belief, it is Google's specific intent to use the American Airlines Marks as set forth in this complaint to profit from consumer's association of the American Airlines Marks with American Airlines.

88.    On information and belief, many of the third parties to whom Google sells or offers the right or ability to use the American Airlines Marks or terms confusingly similar thereto, or on whose behalf Google uses such marks or terms, do not use such marks or terms to identify or describe American Airlines, its services, or companies affiliated with it.

## I.

**FIRST CLAIM FOR RELIEF**
**FOR FEDERAL TRADEMARK/SERVICE MARK INFRINGEMENT**

89.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

90.    The American Airlines Marks are valid, federally registered trademarks and service marks entitled to protection under the Lanham Act.

91.    Google has used the American Airlines Marks in commerce in a number of ways as part of its search engine-based, keyword-triggered advertising programs, including (but not limited to) the following: (i) by allowing and/or encouraging third-party advertisers to bid on the American Airlines Marks, or terms confusingly similar thereto, and pay Google to use such marks or terms to trigger the display of Sponsored Link advertisements that link to third-party advertisers' websites, which are displayed above or alongside purportedly "natural" search engine results; (ii) by causing such Sponsored Link advertisements to appear when web users have specifically attempted to find or access one of American Airlines' websites, with the express purpose of causing web users to visit websites other than those affiliated with American Airlines, (iii) by including American Airlines Marks in Google's proprietary directories of terms that trigger Sponsored Link advertisements; (iv) by causing Sponsored Link advertisements to appear in close proximity to American Airlines Marks and links to legitimate American Airlines-related websites; and (v) by causing American Airlines Marks or terms confusingly similar to American Airlines Marks to appear in the text or title of advertisements which Google calls "Sponsored Links."

92.    Google's unauthorized and intentional use of the American Airlines Marks or terms confusingly similar thereto in connection with its search engine-based advertising programs infringes on American Airlines' exclusive rights in its federally registered marks and is likely to cause confusion, mistake or deception as to the source of the services offered by Google and its advertisers.  Such use is also likely to cause confusion as to whether American Airlines is sponsoring, has authorized or is somehow affiliated with Google's sale of the American Airlines Marks or terms confusingly similar thereto, or with the products or services offered through the

Sponsored Links that Google intentionally posts above or alongside purportedly objective "natural" results from Internet searches for American Airlines Marks.

93.    Consumers are likely to be initially confused into believing that clicking on Google's keyword-triggered Sponsored Links will lead to American Airlines' website or to information about American Airlines or its services.

94.    Even after accessing the websites associated with keyword-triggered "results," consumers are likely to be confused into believing that those websites and the information they contain are associated with, sponsored by, operated by, or otherwise formally affiliated with or supported by American Airlines when that is not the case.

95.    Google's unauthorized and intentional use of the registered American Airlines Marks and terms confusingly similar thereto in connection with its search engine-based advertising programs constitutes trademark infringement in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a).

96.    Google's infringement of the American Airlines Marks is willful and reflects Google's intent to exploit the goodwill and strong brand recognition associated with the American Airlines Marks.

97.    Google's infringement has damaged American Airlines in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

98.    Google's infringement has caused and, unless restrained by this Court, will continue to cause American Airlines irreparable injury.

99.    American Airlines has no adequate remedy at law for Google's infringement.

## II.

### SECOND CLAIM FOR RELIEF
### FOR CONTRIBUTORY TRADEMARK/SERVICE
### MARK INFRINGEMENT UNDER THE LANHAM ACT

100.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

101.    With full knowledge of American Airlines' rights in the American Airlines Marks, Google has sold to third-party advertisers the "rights" to use the American Airlines Marks or terms confusingly similar thereto as a part of Google's search engine-based advertising programs.  In this context, the third-party advertisers' use of the American Airlines Marks or terms confusingly similar thereto is likely to cause confusion among consumers, and constitutes infringement of American Airlines' rights in the American Airlines Marks.

102.    In particular, the use of the American Airlines Marks or terms confusingly similar thereto in Google's search engine in order to trigger the display of Sponsored Links that link to the websites of third-party advertisers above or alongside purportedly "natural" results is likely to deceive or cause confusion among web users as to whether American Airlines is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

103.    Alternatively, the use of American Airlines Marks or terms confusingly similar thereto within the title and text of Sponsored Link advertisements by third-party advertisers is likely to deceive or cause confusion among web users as to whether American Airlines is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

104.    Through its sale of the American Airlines Marks and terms confusingly similar thereto to third-party advertisers and its encouragement of the sale of keywords that either

38



incorporate American Airlines Marks or terms confusingly similar thereto, Google induces such third-party advertisers to infringe the American Airlines Marks and/or provides such third-party advertisers with aid and material contribution to the third-party advertisers' violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

105.    Google is therefore contributorily liable for the infringing use of the American Airlines Marks by the third-party advertisers who use the American Airlines Marks to trigger the display of links to their websites.

106.    Google's contributory infringement is willful and reflects Google's intent to exploit the good will and strong brand recognition associated with the American Airlines Marks.

107.    American Airlines has been damaged by Google's contributory infringement in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

108.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

109.    American Airlines has no adequate remedy at law for the foregoing wrongful conduct.

### III.

### THIRD CLAIM FOR RELIEF
### FOR VICARIOUS TRADEMARK/SERVICE
### MARK INFRINGEMENT UNDER THE LANHAM ACT

110.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

111.    Google has the right and ability to control the use of the American Airlines Marks or terms confusingly similar to the American Airlines Marks in its search engine-based advertising programs.

112. Third-party advertisers' use of the American Airlines Marks or terms confusingly similar thereto as keyword triggers in Google's search engine-based advertising program is likely to cause confusion among consumers, and constitutes infringement of American Airlines' rights in the American Airlines Marks.

113. Third-party advertisers' use of the American Airlines Marks or terms confusingly similar thereto in the title or text of Sponsored Link advertisements is likely to cause confusion among consumers, and constitutes infringement of American Airlines' rights in the American Airlines Marks.

114. Google receives a direct financial benefit from the third-party advertisers' unauthorized use of the American Airlines Marks or terms confusingly similar thereto.

115. Google is therefore vicariously liable for the infringing use of the American Airlines Marks by third-party advertisers.

116. American Airlines has been damaged by Google's vicarious infringement in an amount to be determined at trial. For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

117. American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

118. American Airlines has no adequate remedy at law for the foregoing wrongful conduct.

## IV.

### FOURTH CLAIM FOR RELIEF
### FOR FALSE REPRESENTATION UNDER THE LANHAM ACT

119. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.



120.    Google's use of the American Airlines Marks or terms confusingly similar thereto as keyword triggers in its search engine-based advertising programs conveys the misleading commercial impression to the public that the third-party advertisers listed as Sponsored Links above or alongside purportedly "natural" results, or their products or services, are approved, endorsed or sponsored by American Airlines, or are otherwise affiliated with or supported by American Airlines.

121.    Google's use of the American Airlines Marks or terms confusingly similar thereto in the title or text of Sponsored Link advertisements conveys the misleading commercial impression to the public that the third-party advertisers listed as Sponsored Links are approved, endorsed or sponsored by American Airlines, or are otherwise affiliated with or supported by American Airlines.

122.    Each of these misleading uses of the American Airlines Marks constitutes a false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

123.    Google's false representations are willful and reflect Google's intent to exploit the goodwill and strong brand recognition associated with the American Airlines Marks.

124.    Google's false representations have damaged American Airlines in an amount to be determined at trial.

125.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

126.    American Airlines has no adequate remedy at law for Google's false representations.

V.

**FIFTH CLAIM FOR RELIEF**
**FOR DILUTION UNDER THE LANHAM ACT**

127.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

128.    The American Airlines Marks are famous within the meaning of the Trademark Dilution Revision Act of 2006.  In particular, the following factors support the conclusion that the American Airlines Marks are famous:

A.    As alleged above, American Airlines has advertised the American Airlines Marks on a nationwide basis in a broad cross-section of prominent media for several decades;

B.    The American Airlines Marks have received massive publicity by both American Airlines and third parties;

C.    American Airlines has earned billions of dollars in gross profits on a nationwide basis in connection with the services that it has offered under the American Airlines Marks;

D.    The American Airlines Marks have achieved a high level of actual recognition among the consuming public;

E.    As alleged above, American Airlines has obtained numerous federal trademark registrations for many of its American Airlines Marks.

129.    Google's use of the American Airlines Marks or terms confusingly similar thereto as keyword triggers in its search engine-based advertising programs has lessened and will continue to lessen the capacity of American Airlines' famous and distinctive American Airlines

Marks to distinguish American Airlines' products and services from those of others, and has diluted the distinctive quality of the famous and nationally recognized American Airlines Marks.

130.　　Google's use of the American Airlines Marks or terms confusingly similar thereto in the title of text of Sponsored Link advertisements has lessened and will continue to lessen the capacity of American Airlines' famous and distinctive American Airlines Marks to distinguish American Airlines' products and services from those of others, and has diluted the distinctive quality of American Airlines' famous and nationally recognized American Airlines Marks.

131.　　Google's conduct as alleged above is likely to cause blurring to and of the American Airlines Marks and impair the distinctiveness of the American Airlines Marks. Consumers are likely to associate Google's uses of the American Airlines Marks or terms confusingly similar thereto with the American Airlines Mark themselves because of the similarity between Google's uses of the American Airlines Marks or terms confusingly similar thereto and the American Airlines Mark themselves. In particular, on information and belief, the following factors make dilution by blurring likely:

A.　　Google is making use of the American Airlines Marks themselves or words or phrases confusingly similar to the American Airlines Marks;

B.　　The American Airlines Marks have acquired tremendous distinctiveness through American Airlines' promotion and use of the American Airlines Marks in commerce since 1934;

C.　　The American Airlines Marks have become famous and achieved a high level of recognition among the consuming public;

D.　　American Airlines' commercial use of the American Airlines Marks is substantially exclusive to American Airlines and its agents and licensees;

E.     On information and belief, Google's advertisers intend to create an association between Google's uses of the American Airlines Marks or terms confusingly similar thereto and the American Airlines Mark themselves; and

F.     On information and belief, many consumers actually associate Google's uses of the American Airlines Marks or terms confusingly similar thereto with the American Airlines Mark.

132.    Google's conduct as alleged above is also likely to cause tarnishment among the American Airlines Marks that harms the reputation the American Airlines Marks because of the similarity between Google's uses of the American Airlines Marks or terms confusingly similar thereto and the American Airlines Mark themselves.  In particular, many of the Sponsored Links that Google posts because consumers enter American Airlines Marks or terms confusingly similar thereto into Google's search engine, or that make use of the American Airlines Marks or terms confusingly similar thereto in the title or text of such Sponsored Links lead consumers to websites that offer lower quality services than American Airlines offers or post materials that are misleading or distasteful.

133.    On information and belief, Google has derived and continues to derive substantial revenue and profits from the past and ongoing dilution of the American Airlines Marks as a result of its unauthorized uses of the American Airlines Marks and terms confusingly similar thereto.

134.    Google's use of the American Airlines Marks constitutes dilution in violation of Section 43(c) of the Lanham Act 15 U.S.C. § 1125(c).

135.    Google's dilution of the American Airlines Marks has caused American Airlines damage in an amount to be determined at trial.  For example and without limitation, Google has

been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

136.   American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

137.   American Airlines has no adequate remedy at law for Google's dilution of the American Airlines Marks.

## VI.

### SIXTH CLAIM FOR RELIEF
### FOR TRADEMARK INFRINGEMENT UNDER TEXAS LAW

138.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

139.   American Airlines has common law rights to the American Airlines Marks in Texas by virtue of the marks' eligibility for protection and American Airlines' status as senior user of the marks.

140.   Google's acts as described above constitute common law infringement of the famous American Airlines Marks, resulting in irreparable injury to American Airlines.  Google is also liable for contributory common law infringement and vicarious common law infringement of the American Airlines Marks.

141.   Google's infringement has damaged American Airlines in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

142.   Google's infringement has caused and, unless restrained by this Court, will continue to cause American Airlines irreparable injury.

143.    American Airlines has no adequate remedy at law for Google's infringement of its common law trademark rights.

## VII.

### SEVENTH CLAIM FOR RELIEF
### FOR TRADEMARK DILUTION UNDER TEXAS LAW

144.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

145.    American Airlines has common law rights under Texas law to the American Airlines Marks.

146.    Google's acts as described above constitute dilution and dilute the distinctive quality of the famous American Airlines Marks, resulting in damage to American Airlines, to its business reputation, to the uniqueness and individuality of the American Airlines Marks, and to the substantial business and goodwill symbolized by the American Airlines Marks in violation of Texas's Anti-Dilution Statute, TEX. BUS. & COM. CODE § 16.29.

147.    American Airlines has no adequate remedy at law for Google's dilution of its common law trademark rights.

## VIII.

### EIGHTH CLAIM FOR RELIEF
### FOR UNFAIR COMPETITION UNDER TEXAS LAW

148.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

149.    Google's acts as described above violate Texas's unfair competition law.

150.    As a result of Google's conduct, American Airlines has suffered and will continue to suffer damage, including damage to its reputation, because of consumer confusion as to the origin or sponsorship of the products and services advertised through Google's websites.  For



example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

151.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

152.    American Airlines has no adequate remedy at law for Google's unfair competition.

## IX.

### NINTH CLAIM FOR RELIEF
### MISAPPROPRIATION UNDER TEXAS LAW

153.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

154.    American Airlines has created the goodwill, value, secondary meaning, and popularity of the American Airlines Marks through extensive time, labor, skill and money.

155.    Google uses the American Airlines Marks in competition with American Airlines, thereby gaining a special advantage and a "free ride" in that competition because Google is not and has not been burdened with the expense incurred by the American Airlines in developing the goodwill, value, secondary meaning, and popularity of the American Airlines Marks.

156.    As a result of Google's conduct, American Airlines has been and will continue to be commercially damaged because of consumer confusion as to the origin or sponsorship of the products and services advertised through Google's websites. In addition, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

157.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.



158.    American Airlines has no adequate remedy at law for Google's misappropriation of the American Airlines Marks.

## X.

### TENTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH CONTRACT

159.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

160.    American Airlines has valid contractual relationships with its authorized distributors, including certain online travel agencies and global distribution systems. Among other reasons, these contractual relationships are highly valuable to American Airlines because such distributors agree not to "purchase, use, or register any domain names or keywords or search terms that are identical or similar to, or contain (in whole or in part), any of the American [Airlines] Marks." These contractual relations are set forth in the American Airlines, Inc. Addendum to the Airlines Reporting Corporation ("ARC") Agreement.

161.    On information and belief, Google had knowledge of the existence of these contractual relations between American Airlines and its authorized distributors, including certain online travel agencies and global distribution systems.

162.    Google's use of American Airlines Marks and terms confusingly similar thereto in connection with its search engine-based advertising programs, specifically "Sponsored Links" and the "AdWords" program, interferes with American Airlines' valid contractual relations with its authorized distributors. On information and belief, Google's conduct has hindered, precluded, or lessened the benefits to American Airlines of those relationships, all without legal justification or excuse. In particular, on information and belief, Google has actively or effectively induced American Airlines' distributors to breach their obligations under the American Airlines, Inc.



Addendum to the ARC Agreement to refrain from purchasing, using, or registering any keywords or search terms that are identical or similar to, or contain (in whole or in part), any of the American Airlines Marks.

163.    Google acted with a conscious desire to hinder, interfere with, change, and burden these relationships or knew that such was certain or substantially certain to occur as a result of its conduct.

164.    Google's tortious interference with contractual relations has caused American Airlines damage in an amount to be determined at trial.  For example and without limitation, Google has been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

165.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

166.    American Airlines has no adequate remedy at law for Google's tortious interference with contract.

## XI.

### ELEVENTH CLAIM FOR RELIEF
### MONEY HAD AND RECEIVED

167.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

168.    American Airlines is the owner of all right and title to the American Airlines Marks.  As a result, American Airlines possesses the exclusive right, *inter alia*, to use, license, sell, and/or authorize the use of the American Airlines Marks.

169.    Contrary to American Airlines' exclusive rights, Google makes commercial use and sells the right to make commercial use of the American Airlines Marks by allowing and/or

encouraging third-party advertisers to bid on the American Airlines Marks, or terms confusingly similar thereto, and to pay Google to use such marks or terms to trigger the display of Sponsored Link advertisements.   Google also receives a direct financial benefit from the third-party advertisers' unauthorized use of the American Airlines Marks or terms confusingly similar thereto.

170.   In addition, because of the dominant role of Google's search engine in consumers' Internet usage and habits, Google has effectively forced American Airlines to pay Google for the "rights" to have official American Airlines advertisements appear when Internet users search the web for the American Airlines Marks.

171.   As a result of its unlawful and unauthorized conduct, Google has obtained money from its advertisers and American Airlines by undue advantage, and holds money that in equity and good conscience belongs to American Airlines.

172.   American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Google's actions.

173.   American Airlines has no adequate remedy at law for Google's conduct.

WHEREFORE, American Airlines prays for judgment in its favor and against Google as follows:

A.   Permanently enjoining Google and its officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with it from:

- directly or indirectly selling or offering for sale the American Airlines Marks or other terms confusingly similar to the American Airlines Marks for use in its search engine-based advertising programs to anyone other than American Airlines or its authorized licensees;

- continuing to post advertisements for particular third parties explicitly because Internet users have run a search on Google's search engine using search terms that are identical or confusingly similar to the American Airlines Marks;

- continuing to post titles or text of paid or keyword-triggered search engine results that falsely communicate to consumers that such links are endorsed, sponsored, or supported by American Airlines or formally affiliated with American Airlines;

- infringing, or causing any other entity to infringe the American Airlines Marks;

- unfairly competing with American Airlines in any manner whatsoever; and

- making any use of the American Airlines Marks and/or terms confusingly similar thereto unless specifically authorized by American Airlines.

B.    Directing an accounting to determine all gains, profits, savings and advantages obtained by Google as a result of its wrongful actions;

C.    Awarding restitution to American Airlines of all gains, profits, savings and advantages obtained by Google as a result of its wrongful actions;

D.    Awarding American Airlines all damages caused by Google's wrongful actions;

E.    Awarding American Airlines treble the amount of its damages, together with the costs of this suit, including reasonable attorneys' fees and expenses and prejudgment interest, pursuant to 15 U.S.C. § 1117 and all other applicable provisions and principles of federal and Texas law;

F.    Awarding American Airlines an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Google's wrongful conduct and confusing and misleading advertising;

G.    Directing Google to post on their websites corrective advertising in a manner and form to be established by the Court;

H.      Directing Google to file with this Court and serve on American Airlines within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which Google has complied with the orders of this Court;

I.      Awarding American Airlines punitive damages in an amount sufficient to deter other and future similar conduct by Google and others; and

J.      Granting American Airlines such other and further relief as the Court may deem just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all causes of action triable by jury.

DATED: August 16, 2007

Respectfully submitted,

Dee J. Kelly
State Bar No. 11217000
Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
Michael D. Anderson
State Bar No. 24031699
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

*Attorneys for Plaintiff American Airlines, Inc.*

Of Counsel:

Terence P. Ross
Howard S. Hogan
Claudia M. Osorio
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 955-8500
Fax: (202) 467-0539

George A. Nicoud III
GIBSON, DUNN & CRUTCHER LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

CTJ/RMT

ORIGINAL

JS 44 (Rev. 10/06)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

American Airlines, Inc.

## DEFENDANTS

Google, Inc.

2007 AUG 16　FH 3: 27

CLERK OF COURT

**(b)** County of Residence of First Listed Plaintiff ___Tarrant___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Dee J. Kelly and Dee J. Kelly, Jr., Kelly Hart & Hallman, LLP,
201 Main St., Ste. 2500, Fort Worth, TX 76102; (817) 332-2500

Attorneys (If Known)

## 4-07CV-487-A

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | ☐ 630 Liquor Laws | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 480 Consumer Credit |
| | ☐ 340 Marine | ☐ 690 Other | ☒ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Trademark/service mark infringement under Lanham Act, 15 U.S.C. §§ 1114 and 1125

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED

(See instructions): JUDGE ___ DOCKET NUMBER ___

DATE ___August 16, 2007___

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # ___FW397___　AMOUNT ___350___　　APPLYING IFP ___　　JUDGE ___A___　　MAG. JUDGE ___

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

### Civil Filing Notice - Fort Worth Division

CIVIL ACTION NO:    4 - 0 7 C V - 4 8 7 - A

This case has been assigned to District Judge: _____

(Complete if applicable)
TRANSFERRED FROM: _____    DATE FILED: _____

Civil cases are assigned to a judge by random draw. A docket clerk for each judge maintains the recording of documents filed with the Clerk. A complete list of phone numbers for both the judges' chambers and the docket clerks is provided.

| Judge | Court Settings | Pleadings Filed |
|---|---|---|
| (A)  Judge John H. McBRYDE | (817)850-6650 | (817)850-6611 |
| Even Cases: 850-6652  Odd Cases: 850-6653 | | |
| (Y)  Judge Terry R. MEANS | (817)850-6673 | (817)850-6612 |
| (BE) Magistrate Judge Charles BLEIL | (817)850-6690 | (817)850-6697 |

For access to local rules, attorney admission information, frequently asked questions, common forms, filing instructions, and records information, please visit our web site at **www.txnd.uscourts.gov**. To speak to someone in the district clerk's office, please call (817) 850-6601.

To receive electronic access to court docket sheets and filed documents, contact the PACER Service Center at **www.pacer.pcs.uscourts.gov** or by phone at 1-800-676-6856 for a log-in and password.

Information is attached regarding trials by a United States magistrate judge, receiving electronic notice, and the court's privacy policy.