FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT WORTH DIVISION

2007 SEP 19  PM 3: 55

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | |
| | § | 4-07-CV-487-A |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |

---

## DEFENDANT GOOGLE'S MOTION TO DISMISS COMPLAINT
## AND BRIEF IN SUPPORT THEREOF

---

Joseph F. Cleveland, Jr.
Texas State Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: 817/338-1700
Metro:     817/429-9181
Facsimile: 817/870-2265

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Benjamin Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | |
| | § | 4-07-CV-487-A |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |

---

## DEFENDANT GOOGLE'S MOTION TO DISMISS COMPLAINT
## AND BRIEF IN SUPPORT THEREOF

---

Joseph F. Cleveland, Jr.
Texas State Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: 817/338-1700
Metro:        817/429-9181
Facsimile: 817/870-2265

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Benjamin Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.



# TABLE OF CONTENTS

PAGE

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PLEADINGS REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   Triggering an ad with a keyword is not "trademark use." . . . . . . . . . . . . . . . . . . 6

    B.   Every use of American's trademarks in ad text about which American complains is legitimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.   Google is not a direct infringer of American's marks . . . . . . . . . . . . . . . . . . . . 12

    D.   American's claims for contributory and vicarious liability must be dismissed because Google lacks the requisite control and ownership over it advertisers . . 13

        1.   Google does not contributorily infringe any American trademark . . . . . 13

            a.   Google does not intentionally induce advertisers to infringe American's marks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            b.   Google does not knowingly contribute to trademark infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.   Google does not vicariously infringe any American trademark . . . . . . . 15

    E.   The CDA provides Google with absolute immunity against American's state law claims and claim for false representation under the Lanham Act . . . . . 16

        1.   American alleges that Google is an interactive computer service . . . . . . 18

        2.   All of the advertisements about which American complains are "information provided by another information content provider" . . . . . . 18

        3.   The CDA immunizes Google from all of American's state law claims and from its false representation claim . . . . . . . . . . . . . . . . . . . . . 21

a.    The CDA preempts all of American's state law claims . . . . . . . . 21

b.    The CDA immunizes Google from American's Lanham
Act claim for false representation  . . . . . . . . . . . . . . . . . . . . . . . . 22

F.    The Court must dismiss American's claim for money had and received
because American has not alleged facts sufficient to show that Google
was paid money that in equity and good conscience should have been
paid to American . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

G.    American's claim for misappropriation under Texas law must be dismissed
because American does not allege *facts* that demonstrate the Google
appropriated its name or goodwill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

H.    American's claim for unfair competition under Texas law must fail because
American does not allege—and cannot prove—that Google is passing off
its own goods and services as those of American Airlines . . . . . . . . . . . . . . . 25

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . 8

800-JR Cigar, Inc. v. GoTo.com, Inc., 437 F. Supp.2d 273 (D.N.J. 2006) . . . . . . . . . . . . . . . 9

Almeida v. Amazon.com, Inc., 456 F.3d 1316 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 17

Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007) . . . . . . . . . 5, 14

Buying for the Home, ILC v. Humble Adobe, LLC, 459 F. Supp.2d 310 (D.N.J. 2006) . . . . . . 9

Carafano v. Metrosplash.com, Inc., 339 F.3d 1119 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 17, 19

Choice Hotels Int'l v. Westhill Hotels I, Ltd., 1996 WL 706876
        (N.D. Tex. Dec. 4, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd (527 U.S. 666) . . . . . . 23

Doe v. Bates, 2006 WL 3813758 (E.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Doe v. MySpace, 474 F. Supp.2d 843 (W.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Edina Realty, Inc. v.  The MLSonline.com, 2006 WL 737046 (D. Minn. Mar. 20, 2006) . . . . . . 9

Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . 7, 8

FragranceNet.com, Inc. v. Frangecex.com, Inc., 493 F. Supp.2d 545 (E.D.N.Y. 2007) . . . . . 9, 10

Government Employees Ins. Co. v. Google, Inc., 330 F. Supp.2d 700 (E.D. Va. 2004) . . . . . . . . 9

Government Employees Ins. Co. v. Google, Inc., 2005 WL 1903128 (E.D. Va. 2005) . . . . . . . . 9

Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143
        (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Hamzik v. Zale Corp., 2007 WL 1174863 (N.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Inwood Labs, Inc. v. Ives Labs, Inc., 456 U.S. 844 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

J. G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC, 2007 WL 30115
        E.D. Pa. Jan. 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lockheed Martin v. Network Solutions, Inc., 985 F. Supp.2d 949 (C.D. Cal. 1997), . . . . . . . . . 15

Lockheed Martin v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999) . . . . . . . . . . . . . 13, 15

Lockheed Martin Corp. v. Network Solutions, Inc., 141 F. Supp.2d 648
    (N.D. Texas 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

MCW, Inc. v. Badbusinessbureau.com, LLC, 2004 WL 833595
    (N.D. Tex. April 19, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Meadows v. Hartford Life Ins. Co., 492 F.3d 634 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 24

Matthews v. Wozencraft, 15 F.3d 432 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Merck & Co., Inc. v. MediPlan Health Consulting, Inc., 425 F. Supp.2d 402
    (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

NEC Elecs. v. CAL Circuit Abco, 810 F.2d 1506 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 10, 11

Neitzke v. Williams, 490 U.S. 319 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Papasan v. Allain, 478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 17, 21, 22

Perfect 10, Inc. v. Visa Int'l Service Assoc., 2004 WL 1773349
    (N.D. Cal. Aug. 5, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Prestonettes, Inc. v. Coty, 264 U.S. 359 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Prickett v. info USA, 2006 WL 887431 (E.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rescuecom Corp. v. Google Inc., 456 F. Supp.2d 393 (N.D.N.Y. 2006) . . . . . . . . . . . . . . . . . 9

Scott Fetzer Co. v. House of Vacuums, Inc., 381 F.3d 477 (5th Cir. 2004) . . . . . . . . . . . . . . . 11

Site Pro-1 Inc. v. Better Metal, LLC, 2007 WL 1385730 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . 9

Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417 (1984) . . . . . . . . . . . . . . 13, 16

Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488 (5th Cir. 1990) . . . . . . . . . . . . . . . . 22, 23

Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d 474 (5th Cir. 1974) . . . . . . . . . . . . 25

WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 11

Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786 (5th Cir. 1983) . . . . . . . . . . . . . 11

Zeran v. American Online, Inc., 129 F.3d 327 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATE CASES

American Petrofina Co. v. Panhandle Petroleum Prod., Inc., 646 S.W.2d 590
      (Tex. App.-Amarillo 1983, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

De La Moriniere v. Sam, 8 S.W.2d 312 (Tex. Civ. App.-Beaumont 1928, no writ) . . . . . . . . . . 23

Graham v. Jackson, 189 S.W. 551 (Tex. Civ. App.-San Antonio 1916, no writ) . . . . . . . . . . . 24

Graham v. Mary Kay Inc., 25 S.W.3d 749 (Tex. App.-Houston [14th Dist.] 2000) . . . . . . . . . . . 8

Hunt v. Baldwin, 68 S.W.3d 117 (Tex. App.-Houston [14th Dist.] 2001, no pet.) . . . . . . . . . . . 23

Patton v. Mitchell, 13 S.W.2d 148 (Tex. Civ. App.-Amarillo 1928, no writ) . . . . . . . . . . . . . . . 24

Staats v. Miller, 243 S.W.2d 686 (Tex. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Zapata Corp. v. Zapata Trading Int'l, Inc., 841 S.W.2d 45 (Tex. App.-Houston [14th Dist.]
      1992, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES, CODE, RULES, AND REGULATIONS

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 18

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

15 U.S.C. § 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 7, 9

15 U.S.C. § 1127(c)(B)-(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Communication Decency Act of 1996, 47 U.S.C. § 230 (West 2007) . . . . . . . . . . . . . . . 6, 16-21

## OTHER AUTHORITIES

John T. Cross, *Contributory Infringement and Related Theories of Secondary
      Liability for Trademark Infringement*, 80 Iowa L. Rev. 101 (1994) . . . . . . . . . . . . . . . . 12

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:17
    (West 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Restatement (Second) of Torts § 652C (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## DEFENDANT GOOGLE'S MOTION TO DISMISS COMPLAINT
## AND BRIEF IN SUPPORT THEREOF

COMES NOW defendant Google Inc. ("Google") and pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss plaintiff American Airlines, Inc.'s ("American") complaint for failure to state a claim, and in support thereof would state as follows:

### I.    INTRODUCTION

Advertisers and merchants in America regularly target their competitors' customers, seeking to capture their business for themselves. Drugstores place their generic ibuprofen next to the Advil. If a consumer purchases a quart of Tropicana orange juice at the grocery store, that same consumer is likely to get a coupon for Minute Maid on the back of the store receipt. Macy's house brand jeans are displayed alongside Calvin Klein jeans. Turn to a review of the new Chevrolets in *Car and Driver* and one is likely to find a Ford ad on the facing page. Fast food chains place billboards next to their competitors' restaurants. Automobile repair shops offer customers third-party parts to replace branded parts.

Do any of these commonplace marketing techniques run afoul of the Lanham Act? Of course not: in each instance, they have merely engaged in everyday, healthy competition. In each instance, a company has "used" a competitor's trademark, in the sense that the trademark is the criterion by which the advertising target is selected. Generic brands are placed next to known brands on store shelves for the express purpose of diverting customers from the brand they are seeking to another, and their manufacturers pay for that placement. Advertisers deliberately select magazine ad placements next to articles about their competitors. The fast food billboard is intentionally targeting people who have the immediate intention of going to the competitor next door, hoping to divert them to a different restaurant. All manner of companies pay for coupon placements selected based on a customer's purchase of their competitors' products. And so on. *Of course* they are seeking to "hijack" or "divert" consumers who have

indicated an interest in their competitors' products. That's the point of contextual advertising—to target ads at consumers who are actively interested in that type of product, rather than indiscriminately at the world at large.

In none of these examples, however, is there a Lanham Act issue, because none of the companies has made "*trademark* use" of its competitors' marks. So long as a company does not use a mark in a way that falsely identifies the source of goods or services, the Lanham Act in no way prohibits targeted advertising at people who are on their way to buy from one's competitors.

The fact that the advertising occurs on the Internet, rather than in a drugstore or on a sidewalk, makes no difference. Just as in the examples above, the practice of showing particular ads to Google users who have searched for information about "American Airlines" does not implicate the Lanham Act, so long as those ads do not use the "American Airlines" trademark to falsely indicate the source of competing goods.[1] As numerous courts have already held, invisibly "using" a trademark as a search criterion is not a "trademark use" at all, and is not prohibited by the Lanham Act. American's claims thus fail as a matter of law, and should be dismissed.

## II.    FACTS

The facts in this case are relatively straightforward, and American's recitation of them (which for purposes of a Rule 12(b)(6) motion must be taken as true) is relatively complete. Before delving into the details, however, it is important to understand that American complains about two very separate aspects of Google's AdWords program. Both of those complaints fail, but for entirely different reasons, and it is important to keep them analytically separate.

First, American objects to the use of its trademarks *as keywords*. When an advertiser

---

[1] Indeed, Google's policy prohibits competing advertisers from making *any* use of American's marks in the text of advertisements if American objects to that use. As discussed below, American contends that policy should be broadened to include non-trademarked terms that are similar to its registered marks. Google disagrees, particularly in the case of obviously generic terms like "American air fares." But for independent reasons, regardless whether such a claim would lie against the advertisers in question, those claims also fail to state a claim against

places ads with Google, the advertiser selects the search terms that will trigger the appearance of the ads. Thus, for example, an automobile parts seller might choose to have its ads appear to users who search for "spark plugs" or "Ford parts." American claims that pairing ads to users based on their having searched for trademarks violates the Lanham Act, *even if the trademark never appears in the advertisements*. Google disagrees and has successfully defended that practice in numerous venues.

Second, American also complains that some advertisers use terms that it claims are "confusingly similar" to its marks *in the text of advertisements*. Thus, for example, American would have Google bar advertisers from using the phrase "American air fares" in their ads. Google's trademark policy is that, when asked to do so by a trademark holder, it will block the use of registered trademarks in the text of ads (regardless whether that use would violate the Lanham Act). Google does not, however, extend that policy to generic English phrases that are merely similar to registered marks.

With this overview in mind, we now turn to the relevant allegations of the Complaint. Google's search engine helps users find what they are looking for on the Internet. Compl. ¶¶ 3-4. Users enter a term or phrase into Google's search engine, which then produces a results page listing links to websites that are related to the search term in descending order of relevance. *Id.* ¶ 4. American's Complaint refers to these as "natural" search results. Google determines relevance by a democratic algorithm system that gauges the objective popularity of various websites by analyzing a variety of factors such as links to the website from others, which serve as votes for the usefulness of the linked website. *Id.* ¶ 33. American characterizes Google as "a powerful and highly-useful means to search the Internet for information." *Id.* ¶ 6.

Revenue-producing ads that appear on Google's search results pages allow Google to provide the search engine for free. *Id.* ¶ 46. Under Google's "AdWords" program, advertisers can have their ads—called Sponsored Links—displayed when Google users enter particular

Google.

search terms. *Id.* ¶ 44. This contextual advertising provides advertisers with a unique way to target their ads at people who are more likely to be interested in their products or services. Google's trademark policy allows advertisers to trigger their ads with search terms containing third party trademarks, even if the trademark owner objects to this triggering. *Id.* ¶ 50. Google, however, upon processing a complaint from a trademark owner, prohibits Sponsored Links from *displaying* trademarks—or confusingly similar variations thereof—without authorization from the trademark owner. *Id.* ¶ 50. Thus, if a business does not want others in its industry to use its trademarks in the text of their ads, all the business has to do is file a complaint with Google.

American's complaint contains numerous screen shots from Google's search engine that illustrate both natural search results and Sponsored Links. The first screen shot shows the results from a search for the phrase "american airlines," which is one of American's trademarks. *Id.* ¶ 64. In response to this query, Google produces a list of 40,200,000 relevant webpages (which Google generates in 0.04 seconds), with the first handful of natural results linking to web pages owned by American (such as www.aa.com) and to an internet encyclopedia article about the airline. *Id.* Similarly, when a user enters the phrase "american air lines," which American claims is confusingly similar to its registered trademarks, the first of the 121,000,000 natural search results include links to web pages owned by American and competing airlines ATA Airlines and TACA. *Id.* ¶ 69. American expressly does *not* allege that Google's display of natural search results violates the law. *Id.* ¶ 6 (this lawsuit does not seek to stop Google's "ability to provide objective or 'natural' results").

In the margins above and alongside these natural search results, Google displays "Sponsored Links" advertising companies such as Cheap Air Inc., Yahoo, eBay and United Airlines. *Id.* ¶¶ 65, 67. Some of these advertisers sell air travel on American, some compete with American, and some offer websites unrelated to travel. *Id.* ¶ 63. The Sponsored Links that appear above the natural search results are set apart by appearing in a shaded box and are clearly labeled as "Sponsored Links." *Id.* ¶ 65. The "Sponsored Links" that appear alongside the natural search results are separated from the natural search results with a solid, vertical line and

also are clearly labeled as "Sponsored Links." *Id.* American complains that by displaying the Sponsored Links along with the millions of natural search results in response to queries that contain American's trademarks Google "falsely communicates" that the "advertisers are official American Airlines affiliates, or that American Airlines sponsors or endorses" them. *Id.* ¶ 38.

American also complains that some of the displayed Sponsored Links contain its trademarks or similar terms in their text or title. American's complaint displays screenshots from Google searches containing a total of 27 Sponsored Links triggered with American trademarks or similar terms. All such Sponsored Links that contain terms similar to American's trademarks appear to link to websites that either sell travel on American or provide information about American. *Id.* ¶¶ 64, 65, 67, 69.

### III.    PLEADING REQUIREMENTS

Rule 12(b)(6) permits courts to dismiss meritless cases that waste judicial resources and result in unnecessary discovery. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). "Factual allegations must be enough to raise a right to relief above the speculative level" such that they "raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (May 21, 2007). A court must dismiss a claim under Rule 12(b)(6) if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." *Id.* at 1960. Although detailed factual recitations are not required, a plaintiff must state the "grounds" of his "entitlement to relief" beyond mere "labels and conclusions"; "formulaic recitations of the elements of a cause of action will not do." *Id.* at 1964-65.

### IV.    ARGUMENT AND AUTHORITIES

The Court should dismiss the entirety of American's complaint. <u>First</u>, American's entire complaint is based upon the allegation that Google improperly uses American's trademarks, but none of the facts it pleads supports this conclusory allegation.   When used to trigger advertisements, Google and its advertisers do not use the marks as trademarks and, when used in ad text, Google and its advertisers use the marks only in permissible ways, to describe accurately

the products and information the advertisers provide.  <u>Second</u>, American's claims for direct infringement fail because American makes no allegations that *Google* brands *its search engine or advertising products* with American trademarks, and its claims for secondary trademark liability fail because Google does not exercise the requisite control over the alleged direct infringers of American's trademarks.  <u>Third</u>, the Communications Decency Act immunizes Google from all but American's federal intellectual property claims.  <u>Finally</u>, American has not alleged crucial elements for several of its state law claims.

### A.    Triggering an ad with a keyword is not "trademark use."

When an advertiser on Google merely triggers the appearance of an ad to a user who has searched for "American Airlines," neither the advertiser nor Google is using that trademark to identify the source of the advertisers' products or services.  Trademark law does not provide a trademark owner with absolute authority over the words in a trademark, such that no one else may utter those words without the trademark owner's consent.  People and businesses use trademarks every day, in conversation, in news reporting, in songs and in books.[2]  Rather, the law is designed to prevent consumer confusion by those who brand their own goods or services with a mark sufficiently similar to the plaintiff's mark that consumers may be deceived into believing there is some connection between the two.  This concept is a pillar of trademark law.  In 1924, Justice Holmes wrote that "[a] trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368 (1924).  As the Lanham Act states, the trademark owner's monopoly extends only to prevent others from using the words to the extent they do not allow the owner "to identify and distinguish his or her goods … from those manufactured or sold by

---

[2] For example, Ford can say "our cars are better than Chevrolets," *Car & Driver* can say "the new Chevrolets are lemons," a used car dealer can say "we sell Chevrolets," and Don McLean can sing "took my Chevy to the levy," all without either permission or liability.

others and to indicate the source of the goods [.]" 15 U.S.C. § 1127.[3]

In other words, the law provides trademark holders with the ability to prevent others from using the mark to identify the source of a product or service, but does not prohibit other uses of a trademark. Companies may reference a trademark or use a trademark as part of its business strategy without fear of liability unless they use the mark to identify or brand their own services. Thus, in the case of a domain name registrar company that aggressively encourages the registration of domain name registrations, "acceptance of registrations for domain names is not a use of a mark," even when the registration contains a trademark and puts the trademark's owner name "at the mercy and whim of the domain name owner." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 656 (N.D. Tex. 2001) (McBryde, J.). As the Fifth Circuit has held, use of "a *trade* name or *trademark*" takes place only when the appellation is used "as an indicator of origin and/or quality of particular goods or services." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1083 (5th Cir. 1997) (emphasis in original). Thus, any theory "premised upon matters wholly unrelated to the defendant's use of the allegedly diluting mark *as a trademark*" reflects an erroneous and "highly unorthodox view of trademark law." *Id.* (emphasis in original); *see also Lockheed Martin Corp.*, 141 F. Supp. 2d at 656 ("claim must be premised upon the defendant's use of the allegedly diluting mark as a trademark").

In order to survive a motion to dismiss, a trademark infringement plaintiff must allege that the defendant has, at the very least, used a trademark as a trademark, *i.e.*, communicated the mark to the public as an indicator of the source or origin of goods or services. This requirement applies not only to American's federal and state trademark infringement and trademark dilution claims (including the contributory and vicarious trademark infringement claims), but also to its

---

[3] The same section provides a similar definition for "Service Mark."

state law claims for infringement and unfair competition.[4]

The only federal appellate court that has considered the propriety of triggering Internet advertisements with terms similar to trademarks concluded that this activity is not trademark use under the Lanham Act. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005). In *1-800 Contacts*, the Second Circuit considered "pop-up" Internet advertisements that the defendant displayed for its advertisers. The defendant listed terms similar to the plaintiff's trademark in software that determined—based on a computer user's Internet browsing and searching—when to display the ads, including ads for the plaintiff's competitors. *Id.* at 404. The ads themselves, however, did not display the trademarks. *Id.* at 410.

Plaintiff argued the marketing company "used" its trademark in violation of the Lanham Act. In rejecting plaintiff's claim, the court held that its "fatal flaw" was that the defendant did not use "1-800's trademark in the manner ordinarily at issue in an infringement claim" because "it does not 'place' 1-800 trademarks on any goods or services in order to pass them off as emanating from or authorized by 1-800" and the "ads do not display the … trademark." *Id.* at 408, 410. The Second Circuit concluded that instead of using the trademarks *as trademarks*, the defendant used the trademark in the same way that a drug store uses rival trademarks when it "places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought the trademarked product to consider the store's less-expensive alternative." *Id.* at 411.

Following *1-800 Contacts*, courts have repeatedly held that when a Sponsored Link on

---

[4]   *See 1-800 Contact, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 407-409 (2d Cir. 2005) (federal trademark infringement); *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.-Houston [14th Dist.] 1992, no writ) (cause of action for trademark infringement under Texas law contains same requirements as federal trademark cause of action); 15 U.S.C. § 1125(c)(2)(B) & (C) (federal dilution statute requires defendant to use "a mark or trade name"); *Exxon Corp. v. Oxxford Clothes, Inc.* 109 F.3d 1070, 1084 (5th Cir. 1997) (Texas dilution); *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 754 (Tex. App.-Houston [14th Dist.] 2000, review denied); (to establish a claim for unfair competition based on unauthorized use of a trademark,

Google and similar search engines is triggered by a search term containing a trademark there is no trademark use. *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545 (E.D.N.Y. 2007); *Site Pro-1 Inc. v Better Metal, LLC*, 2007 WL 1385730 (E.D.N.Y. 2007); *Hamzik v. Zale Corp./Delaware*, 2007 WL 1174863 (N.D.N.Y. 2007); *Rescuecom Corp. v. Google Inc.*, 456 F. Supp. 2d 393 (N.D.N.Y. 2006); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006); *but see J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, 2007 WL 30115, at * 6 (E.D. Pa. Jan. 4, 2007); *Buying for the Home, LLC v. Humble Adobe, LLC*, 459 F. Supp. 2d 310, 323 (D.N.J. 2006); *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 285 (D.N.J. 2006); *Edina Realty, Inc. v. TheMLSonline.com*, 2006 WL 737064 (D. Minn. Mar. 20, 2006); *Government Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 704 (E.D. Va. 2004) (later finding that triggering Sponsored Links does not violate Lanham Act, *Government Employees Ins. Co. v. Google, Inc.*, 2005 WL 1903128, at *7 (E.D. Va. 2005)).[5]

Over and over again, these opinions make the point that placing internet ads next to search results for a particular company's trademark is indistinguishable from perfectly legitimate uses of trademarks that have occurred for years in more traditional settings:

> In the world outside the Internet, individuals in search of a company are not blinded to competitive products. In other words, it is not unlawful to strategically place billboards or even store locations next to billboards or store locations of competitors. ... With the technological development of the Internet, the landscape for the advertisement of goods and services has changed dramatically; however, internal uses of trademarks in cyberspace are not converted into Lanham Act "uses" merely because of the advancement in effectiveness and scope of advertising that has come with developments of the Internet.

*FragranceNet.com*, 493 F. Supp. 2d at 551-52.

Triggering Sponsored Links on a search for one of American's marks is not trademark

---

plaintiff must show that defendant "used" plaintiff's mark in a way likely to confuse the public).

[5] For the Court's convenience, copies of any unpublished decisions may be found in the Appendix attached hereto at Tab A.

use because the ads in question do not contain American's marks. Most of the ads highlighted in American's complaint as infringing do not contain anything resembling the airline's trademarks in their title or text (and as explained below, those that do display variants on the trademarks have a legitimate reason to do so). Instead the ads are branded with the name of the company whose services the ads promote, and also display the URL of that company. For example, one of the ads that allegedly violates trademark law has the title "US Airways Official Site," the text "New lower fares and specials on US Airways coast-to-coast flights!" and the displayed website address "www.USAirways.com." Compl. ¶ 67. Under American's expansive version of trademark law, this ad infringes simply because it is shown to someone who has requested a list of websites relevant to the phrase "american airlines."

Nothing about this ad or the way it is displayed indicates or implies that American Airlines is the source of this ad. Instead, the ad is clearly labeled with the US Airways brand. That the ad appears when someone searches for "american airlines" indicates only that US Airways has sought to provide American's potential customers with another option. This is good, old-fashioned competition and is no different than locating a fast food restaurant next to another restaurant with the hope and intent of taking advantage of the latter restaurant's name brand recognition. *FragranceNet.com*, 493 F.Supp. 2d at 551.

**B.     Every use of American's trademarks in ad text about which American complains is legitimate.**

American also complains that some advertisements contain text which is similar to American's marks. In none of these instances is the use improper. These Sponsored Links fall into two categories. First, there are advertisements from independent sellers of American's services or merchandise. Compl. ¶ ¶ 64, 65, 67, and 69. Second, there are advertisements from websites that provide news and information about American. Compl. ¶¶ 64-65.

The advertisements provided by independent sellers of American's services or merchandise do not make improper use of American's marks for the obvious reason that sellers

are allowed to accurately describe what they sell. "[T]rademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987). Even if independent dealers are not authorized sellers (an allegation not made by American here), "sales of genuine trademarked products outside the confines of an authorized distribution system do not give rise to a cause of action for trademark infringement under federal or Texas law." *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477 n.3 (5th Cir. 2004); *see also NEC Elecs.*, 810 F.2d at 1509 (right to use mark exists even when "such sale is without the mark owner's consent."). Thus, "[o]nce a trademark owner sells his product, the buyer ordinarily may resell the product under the original mark without incurring any trademark law liability." *NEC Elecs.*, 810 F.2d at 1509.

In this case, American complains that various independent sellers of its services use its trademarks in their ads. It describes these advertisers as "websites that sell air travel not only on American Airlines, but also on a variety of airlines that compete with American Airlines." Compl. ¶ 63. For example, it complains about the ticket seller Funjet's ad titled "American Airline Deals." *Id.*¶ 64. But as far as trademark law is concerned, Funjet has every right to advertise American Airline deals (even if one accepts the proposition that American's trademark rights extend to the generic term "American airline deals" in the first place) because Funjet sells American Airlines tickets. Just as a vacuum store selling multiple brands may promote its wares by brand name, Funjet is permitted to accurately promote the availability of American Airlines tickets on its website even if it also sells tickets on other carriers. *See Fetzer*, 381 F.3d at 477. American has no cause of action for ad text that truthfully advertises the sale of American's products and services.

The second type of ads that contain terms similar to American's marks are for websites that provide news and information about American. Trademark law does not prohibit news organizations from using the names of the entities that they report about. Such use is fair use. *See, e.g., WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 46 (1st Cir. 1991) (citing *Zatarains,*

*Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 796 (5th Cir.1983)). American's complaint lists two ads that fall into this category. One ad is for "www.TheStreet.com," which states "Get up to date information, news & analysis on Americanairlines.com." Compl. ¶ 65. "The Street" is a website with news about publicly traded companies, including American. Here, The Street is not using the words to promote a competing service, but rather as a description of the company about which it is providing news analysis. The other advertisement which contains text similar to an American Airlines mark is an advertisement by "AA.com-Promotion.info." Compl. ¶ 64. The text of the advertisement states "Free AA Travel Offers." *Id.* The ad indicates that the website provides information about promotions on American Airlines and the website itself links to a series of articles. Again, the advertiser is not using American's trademark to promote a competing service but rather to describe the company about which the site provides information. Thus, in both instances, the uses are legitimate uses and are not actionable.

## C.    Google is not a direct infringer of American's marks.

American's Complaint purports to state claims against Google for both direct and secondary (contributory and vicarious) trademark infringement. But under American's theory of the case, the alleged *direct* infringers are the individual advertisers whose advertisements contain terms to which American objects. Those advertisers are the only entities whose products or services are even arguably branded with American's marks. Where a markholder seeks to extend liability for trademark infringement "beyond those who actually mislabel goods with the mark of another," such an action is properly brought under theories of contributory infringement and vicarious infringement. *See Choice Hotels Int'l., Inc. v. Westhill Hotels I, Ltd.*, 1996 WL 706876, at *3-4 (N.D. Tex. Dec. 4, 1996).

To state a direct trademark infringement claim, American would need to allege that *Google* sold goods or services with American's marks, which obviously it cannot do. Google provides a search engine under the brand name "Google" and offers advertising services under the "AdWords" and "AdSense" brands. Nowhere in its complaint does American allege that Google labels or promotes its search engine or its advertising services under the brand name

"American Airlines."    Thus to the extent that American has any cause of action whatsoever against Google for infringement, such an action sounds in contributory, rather than direct, trademark infringement.    *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:17 (West 2006) ("Liability for trademark infringement and unfair competition may be extended beyond those who actually sell goods with the infringing mark, to include all those contributory infringers who knowingly cooperate in illegal and tortious activity.").    As a result, American's direct infringement claims against Google must be dismissed.

**D.    American's claims for contributory and vicarious liability must be dismissed because Google lacks the requisite control and ownership over its advertisers.**

> **1.    Google does not contributorily infringe any American trademark.**

Unlike patent and copyright law, the doctrine of contributory trademark infringement is narrowly drawn. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 & n. 19 (1984).    To establish contributory trademark infringement, a plaintiff must show that the defendant either intentionally induced another to infringe a mark or continued to produce or distribute a product knowing or having reason to know the recipient is engaging in trademark infringement. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 860 (1982).    The goal of this doctrine is to permit the enforcement of counterfeiting law against those who made the counterfeit goods, and not merely against those who applied the labels. *See* John T. Cross, *Contributory Infringement and Related Theories of Secondary Liability for Trademark Infringement*, 80 Iowa L. Rev. 101, 105 (1994).    When charges of contributory infringement are leveled against service providers rather than sellers of products, a finding of contributory liability is extremely rare and requires that the defendant directly control and monitor the third-party infringer. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (noting that the extent of control exercised by the alleged infringer is an important factor in deterring contributory infringement).

> **a.    Google does not intentionally induce advertisers to infringe American's marks.**

American has not alleged that Google intentionally induced any advertisers to use—much

less infringe—American's marks. Accordingly, the first basis for secondary liability enunciated in *Inwood* cannot apply in this case. *See Perfect 10, Inc. v. Visa Int'l Service Assoc.*, 2004 WL 1773349 at *6 (N.D. Cal. Aug. 5, 2004) (dismissing trademark inducement claim despite the fact that "the complaint contains the allegation that Defendants 'are knowingly inducing' the alleged infringing conduct," because "there are no facts presented in the complaint that support such an allegation"). As set forth above, American has not pled any trademark use at all. But, even assuming trademark use, American pleads no facts showing that Google intentionally induced its advertisers to do anything; instead, American pleads only the legal conclusions that "Google induces such third-party advertisers to infringe" and that its "contributory infringement is willful and reflects Google's intent[.]" Compl. ¶¶ 104, 106. Pleading a legal conclusion without pleading facts in support cannot sustain a complaint. *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65.

Tellingly, American complains that "Google's advertisers have used *loopholes* in Google's programming to create 'Sponsored Links' and other advertisements that either use terms that are confusingly similar to the American Airlines Marks or are formatted in ways that are likely to cause confusion with American Airlines and/or with the American Airlines Marks." Compl. ¶ 78 (emphasis added). Google does not control the advertisers or the text they write any more than newspaper publishers, billboard owners, or television stations control their advertisers. Indeed, through its trademark policy, Google will prohibit ad text that contains trademarks, whether or not the use of those trademarks is legal. It would be perverse in the extreme to hold that Google contributes to infringement by trying to stop it, when it would face no liability at all if it simply let advertisers write whatever text they wanted. The law does not require such a perverse result. *See Lockheed Martin Corp.*, 141 F. Supp. 2d at 655. Nor can American Airline find support for its contributory infringement claims in its allegations regarding Google's supposed suggestion of brand name keywords. Compl. ¶ 74. First, this allegation relates only to "suggestions" that advertisers use certain keyword triggers and not that they include any terms in ad text. Second, American has not alleged that Google made such a "suggestion" to any advertiser that used American Airline's trademark as a keyword. Without this causal link,

American cannot allege contributory infringement.

>        **b.    Google does not knowingly contribute to trademark infringement.**

The second possibility for contributory infringement articulated by *Inwood*—continuing to produce or distribute a product knowing or having reason to know the recipient is engaging in trademark infringement—has little applicability to service providers. It imposes no affirmative duty to investigate or take precautions against infringement by a third party; therefore liability arises only if a service provider has actual knowledge of infringement using a service under its direct control. *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148-49 (7th Cir. 1992) (remarking that it is unclear how contributory infringement applies to people who do not actually manufacture or distribute the infringed goods); *Lockheed Martin*, 194 F.3d at 985 (holding that domain name registration service "does not entail the kind of direct control and monitoring required to justify an extension of the 'supplies a product' requirement"). In *Lockheed Martin*, the Ninth Circuit rejected Lockheed's argument that Network Solutions, a company which sold Internet domain names such as "skunkworks.com," Lockheed's service mark, to cybsersquatters, had a duty to screen the domain names in question to weed out potentially infringing ones. *Id.* at 984-85. The court of appeals agreed with the district court's conclusion that there is "no affirmative duty to police the Internet in search of potentially infringing uses of domain names." *Lockheed Martin v. Network Solutions, Inc.*, 985 F. Supp. 949, 966 (C.D. Cal. 1997) *affirmed*, 194 F.3d 980 (9th Cir. 1999). Instead, the court found that given the vast quantity of domain names that Network Solutions processed, it did not exercise the requisite "direct control and monitoring" necessary to be found a party to any infringement that took place by third parties through use of its services. *Lockheed Martin*, 194 F.3d at 985. The court's reasoning in *Lockheed Martin* applies equally to the facts of this case.

>    **2.    Google does not vicariously infringe any American trademark.**

To establish vicarious trademark infringement, a plaintiff is required to show much more than simply a business relationship. Vicarious liability can only be based on a special relationship (such as principal-agent or employer-employee) such "that the defendant and the

infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Hard Rock*, 955 F.2d at 1150.   American has not alleged, and could not prove, that Google has authority to bind its advertisers or exercise control over the advertised products and services.

As noted above, secondary liability under trademark law requires greater involvement with a direct infringer than that required by copyright law.  *Sony Corp.,* 464 U.S. at 439 n.19 (citing "fundamental differences" between copyright and trademark law).  The Seventh Circuit in *Hard Rock* held that a swap meet operator, being a land owner as opposed to a contract service provider, might have a duty to control known infringement (contributory liability), but could not be vicariously liable for unknown infringement because the required partnership or joint control or ownership over the infringing product was missing.  *Hard Rock Cafe*, 955 F.2d at 1148-50.

American has not alleged, and could not prove, facts demonstrating any partnership of Google with any merchant or their joint control or ownership of any product or service claimed to infringe American's trademarks.  American simply offers the inadequate conclusion that "Google has the right and ability to control the use of the American Airlines Marks or terms confusingly similar to the American Airlines Marks in its search engine-based advertising program."  Compl. ¶111.  Because American cannot allege the requisite relationship between Google and its advertisers, its vicarious infringement claim fails.

**E.    The CDA provides Google with absolute immunity against American's state law claims and claim for false representation under the Lanham Act.**

The Communication Decency Act of 1996 ("CDA"), 47 U.S.C. §230 (West 2007) immunizes websites (described as "interactive computer service[s]") from state law claims and non-intellectual-property federal claims regarding content on the website that is provided by third parties.  This absolute immunity applies regardless whether the website is made aware of the supposed illegality of the posted material, and even if it fails or refuses to remove it.

The CDA provides this immunity by prohibiting courts from treating websites as the publisher of third-party content on the website.  It states: "No provider or user of an interactive

computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The only exception to the CDA's immunity is that it does not affect federal intellectual property causes of action. 47 U.S.C. § 230(e)(2). As explained below, because the CDA's intent is to provide predictability for websites, this limited exception does not extend to state law intellectual property claims—thus CDA immunity applies to *all* state law causes of action and all non-intellectual-property federal causes of action. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007).

As the CDA itself states, the Act's immunity is intended "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230 (b)(2). The Fifth Circuit has yet to consider Section 230 of the CDA, but the "majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F. 3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Simply put, "§ 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred." *Zeran*, 129 F.3d at 330. For example, under the CDA, websites may not be sued when they publish defamatory third-party-provided content: "Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio." *Carafano v. Metrosplash.com, Inc.*, 339 F. 3d 1119, 1122 (9th Cir. 2003).

Section 230(c)(1) sets forth two requirements for immunity to apply: (1) the defendant must be a provider of an "interactive computer service"; and (2) the content complained about by the plaintiff must be provided by "another information content provider."  Assuming that these two criteria are met, it is also necessary to determine whether Section 230(c) provides immunity against the particular causes of action asserted.  In this case, Section 230(c)(1) immunity applies because Google, which hosts the world's most popular search engine, is an interactive computer service and because the third-party advertisements at issue are supplied by other information content providers.  Thus, the CDA's immunity bars American's six state law causes of action and its cause of action for false representation.  Because it can be determined from the face of American's' complaint that that this immunity applies, the "CDA … is an appropriate ground for dismissal … under Rule 12(b)(6)."  *MCW, Inc. v. Badbusinessbureau.com, LLC*, 2004 WL 833595 at *7 (N.D. Tex. Apr. 19, 2004).

### 1.    American alleges that Google is an interactive computer service.

American alleges that Google is an interactive computer service.  The statute defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server..." 47 U.S.C. § 230(f)(2).  Google provides a search engine, described by American as "a computer program that allows computer users to search the World Wide Web for websites containing particular content." Compl. ¶ 3.  It also alleges that "Google regularly and systematically directs electronic activity … including the creation, hosting, and offering of a fully interactive website, advertising, e-mail, and other Internet-related services to web users …" *Id.* ¶ 10.

### 2.    All of the advertisements about which American complains are "information provided by another information content provider."

All of the advertisements about which American complains are "information provided by

another information content provider."[6]  American has not alleged—and cannot allege—that

Google provides this content:  the ads are created by third party advertisers.

Courts broadly interpret when information on a website comes from a third party, holding

that "so long as a third party willingly provides the essential published content, the interactive

service provider receives full immunity *regardless of the specific editing or selection process.*"

*Prickett v. InfoUSA, Inc.*, 2006 WL 887431, at *4 (E.D. Tex. March 30, 2006), quoting

*Carafano*, 339 F.3d at 1124 (emphasis added).  When determining whether the website or a third

party provided the content, a court should focus on whether the website is "merely publishing

information provided by a third-party" or whether it is "actually creating or developing any of

the information posted." *MCW, Inc,* 2004 WL 833595 at *8.  A website is not to be treated as

the publisher or speaker of third party content if the third party formulates the content in

response to prompts from the website. *Prickett*, 2006 WL 8887431, at *5.  Nor does it matter if

"the service provider was responsible for the general features and mechanisms of the service[.]"

*Doe v. Bates*, 2006 WL 3813758, at *17 (E.D. Tex. December 27, 2006).

American's claims depend on making Google liable as a publisher or speaker of the third-

party advertisements that appear on Google's web pages.  American repeatedly acknowledges, as

it must, that Google is not the source of the ads.  From the beginning, American's complaint

explains that "[t]his lawsuit involves ... efforts by certain companies to free ride on American

Airlines' brands through use of Google's technology." Compl. ¶ 2; *see also* ¶ 6 ("Google's

search engine is helping third parties to mislead consumers and misappropriate the American

Airlines Marks by using them as 'keyword' triggers for paid advertisements and by using them

within the text or title of paid advertisements.").  The complaint describes the advertisements at

---

[6] The CDA defines an "information content provider"  as "any person or entity that is
responsible, in whole or in part, for the creation or development of information provided through
the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

issue as "links that Google's advertisers pay to place" and "paid third party advertisements." Compl. ¶¶ 39, 47. Nowhere does American accuse Google of creating these third-party advertisements. Instead it attacks Google for these advertisements solely because Google *permits* advertisers to display the ads on certain web pages and to contain certain text, repeatedly conceding that Google is the *publisher*, not the author:

- "In many cases, Google … *publish[es]* text in its 'Sponsored Links' that makes further confusing use of the American Airlines Marks." *Id.* ¶ 38 (emphasis added).

- "Google's AdWords program makes two distinct uses of a given keyword on behalf of an advertiser. First, Google uses the keyword to trigger the Sponsored Link advertisement. Second, Google sometimes *publishes* the keyword as part of the advertisement itself." *Id.* ¶ 48 (emphasis added).

- "[A]lthough Google's programming sometimes requires advertisers to obtain an exemption from Google before Google will *publish* advertisements that make exact use of certain proprietary marks, Google's programming is not preventing all advertisers from posting advertisements that make use of terms that are confusingly similar to the marks of others, or are otherwise formatted in a way that are likely to cause confusion." *Id.* ¶ 50(d) (emphasis added).

- "Google's advertising program also allows confusing use of American Airlines Marks in the text of the Sponsored Link advertisements that Google *publishes* on its search results pages…." *Id.* ¶ 77 (emphasis added).[7]

Moreover, even if Google selected the keywords that triggered the ads (which it does not), CDA immunity would apply because making ad placement decisions is a publisher's

---

[7] To the extent American attempts to hold Google liable not for the content of the Sponsored Links but for the determination of when and where they are displayed, the attempt is misguided. The ads themselves are the things that American alleges cause consumer confusion and no amount of clever pleading can change the fact that without the ads American Airlines would have nothing to complain about. In *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 849 (W.D. Tex. 2007), when a plaintiff similarly attempted to get around the CDA by arguing that its complaint was about the MySpace website's failure to take reasonable safety measures restricting information that could be posted on the site and not about the content of the postings themselves, the court rejected the argument out of hand: "If MySpace had not published communications between Julie Doe and Solis, including personal contact information, Plaintiffs assert they never would have met and the sexual assault never would have occurred. No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities." *Id.*

traditional role.  Deciding to place an ad on a web page displaying search results that are relevant to the query "american airlines" is the functional equivalent of deciding to display an ad on a magazine page facing an article about the airline.  In both situations, a publisher is determining the location of paid advertisements.  Thus, even if Google selected the search terms that determine where particular ads for third parties are displayed, the CDA would immunize Google from liability because the *content* of the advertisements at issue is provided by third parties.

In short, American's complaint is an attempt to impose liability on Google for ads created and placed by third parties.  This admitted attempt to impose liability on Google as a publisher of third party content is explicitly prohibited by the CDA.

### 3. The CDA immunizes Google from American's state law claims and from its false representation claim.

#### a. The CDA preempts American's state law claims.

The CDA preempts American's state law claims.  The statute has an explicit preemption clause stating "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).

First, there is no question that the CDA preempts American's four non-intellectual property state law causes of action: its eighth cause of action for unfair competition under Texas law, its ninth cause of action for misappropriation under Texas law, its tenth cause of action for tortious interference with contract under Texas law, and its eleventh cause of action for money had and received.  These causes of action do not pertain to intellectual property and each seeks to hold Google liable under state law for Google's role as a publisher of third party advertisements.

Second, the CDA also preempts American's intellectual property state law causes of action:  its sixth cause of action for trademark infringement under Texas common law and its seventh cause of action for trademark dilution under Texas law.  Although the CDA states that it does not "limit ... any law pertaining to intellectual property[,]" the only appellate court to have

considered whether this limited exception to the CDA's immunity applies to state law intellectual property claims held that it does not. *Perfect 10*, 488 F.3d at 1118-19. *Perfect 10* held that "[i]n the absence of a definition from Congress, we construe the term 'intellectual property' to mean 'federal intellectual property.'" *Perfect 10*, 488 F.3d at 1119.

Construing the CDA's immunity exception to include intellectual property state law claims would completely undercut the statutory purpose of the act. While the scope of federal intellectual property law is well-established, state laws protecting intellectual property vary widely. "Such laws may bear various names, provide for varying causes of action and remedies, and have varying purposes and policy goals." *Perfect 10*, 488 F.3d at 1118. This fact combined with the fact that material on the Internet is almost always available without regard to state laws means that if state law intellectual property claims applied, website providers would have to be familiar with the intellectual property laws across fifty states. This is precisely the burden that Congress did not want websites to bear: "permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state law regimes." *Id.* As a result, the CDA preempts all of American's state law claims.

### b. The CDA immunizes Google from American's Lanham Act claim for false representation.

The CDA also immunizes Google against American's Lanham Act claim for false representation because it does not pertain to intellectual property. In its Fourth Claim For Relief, American alleges "a false designation of origin and false description and representation in violation of section 43(a) on the Lanham Act, 15 U.S.C. § 1125(a)." American's false representation claims are essentially false advertising claims and do not depend on an allegation that the defendant has misappropriated the plaintiff's intellectual property.[8]

---

[8] The elements of a Lanham Act false representation claim are (1) that the defendant made a

The United Supreme Court has held that a false representation claim under the Lanham

Act is not an intellectual property claim.  In *College Sav. Bank v. Florida Prepaid Postsecondary*

*Educ. Expense Bd.*, 527 U.S. 666 (1999), the Supreme Court considered whether sovereign

immunity prevented a bank from suing the state of Florida for false misrepresentation under the

Lanham Act.  The issue turned in part on whether the bank's claim implicated a property right.

The Court held that it did not.  It noted that "the hallmark of a constitutionally protected property

interest is the right to exclude others." *Id.* at 667. A claim for false misrepresentation does not

implicate this right: while parts of the Lanham Act "may well contain provisions that protect

constitutionally cognizable property interests," for example, the part "dealing with infringement

of trademarks," the "Lanham Act's false-advertising provisions bear no relationship to any right

to exclude." *Id.*

Because a false representation claim does not pertain to intellectual property, it does not

fall within the limited exception to the CDA's immunity provision.  Thus Google is immunized

against American's Lanham Act false representation claim, and the claim should be dismissed.

**F.**     **The Court must dismiss American's eleventh claim for money had and received because American has not alleged facts sufficient to show that Google was paid money that in equity and good conscience should have been paid to American.**

To maintain an action for money had and received, the plaintiff must prove that the

defendant holds money that in equity and good conscience belongs to the plaintiff.  *See Staats v.*

*Miller*, 243 S.W.2d 686, 687 (Tex. 1951).  The defendant must have received money devoted to

the plaintiff's use; recovery may not be had where the money does not belong to the plaintiff.

*See Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex. App.-Houston [14[th] Dist.] 2001, no pet.).  A

party claiming money had and received must allege facts showing its ownership over the money

---

false statement of fact about its product; (2) the statements deceived or had the capacity to
deceive a substantial segment of potential customers; (3) the deception is material, in that it is
likely to influence the purchasing decision; (4) the defendant caused its products to enter
interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result. *Taquino
v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1500 (5th Cir. 1990).

at issue. *American Petrofina Co. v. Panhandle Petroleum Prods., Inc.*, 646 S.W.2d 590, 592 (Tex. App.-Amarillo 1983, no writ). Ordinarily, there must be some privity between the parties in relation to the money sought to be recovered. *See, e.g., Patton v. Mitchell*, 13 S.W.2d 146, 148 (Tex. Civ. App.-Amarillo 1928, no writ); *Graham v. Jackson*, 189 S.W. 551, 553 (Tex. Civ. App.-San Antonio 1916, no writ).

American alleges that it is entitled to the revenues that Google's advertisers have paid to Google, but American has not alleged that any of the advertisers who purchase ads on Google's website would otherwise have spent that money to purchase advertisements from American— and indeed American could make no such showing. After all, American is an airline and not a media company. Even if the airline could allege that the advertisers would have spent money with it, such an allegation would not have resulted in privity of contract. Because American has not alleged facts sufficient to demonstrate ownership over the funds or that it is a party in any privity of contract, the Court must dismiss American's claim for money had and received.

**G.    American's ninth claim for misappropriation under Texas law must be dismissed because American does not allege *facts* that demonstrate that Google appropriated its name or good will.**

"Under Texas law, '[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.'" *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007) (quoting *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir.1994)). "A misappropriation claim includes the following three elements: '(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant.'" *Id.* (quoting *Matthews*, 15 F.3d at 437). "The misappropriation tort does not protect one's name *per se*; rather, it protects the value associated with that name." *Matthews*, 15 F.3d at 437.

"Appropriation of a name or likeness generally becomes actionable when used 'to advertise the defendant's business or product, or for some similar commercial purpose.'" *Id.*

(quoting Restatement (Second) of Torts § 652C cmt. b (1977)).  American alleges in conclusory fashion that "Google uses the American Airlines Marks in competition with American Airlines."  Compl. ¶ 155.  However, as discussed above, Google does not "use" American's marks.  Moreover, American has failed to allege any facts showing that Google and American are, in fact, competitors.  Google operates a search engine.  American flies airplanes.  The two are simply not competitors.  More importantly, American does not, and cannot, allege that any consumer is confused by Google's website into believing that Google is operating an airline.  American does not allege that Google has appropriated its name or likeness such that consumers actually believe the Google is American Airlines.  No web user could conceivably be confused that Google's search engine is American's website and American does not even allege that this is the case.  Accordingly, this Court must dismiss American's claims for misappropriation.

**H.   American's eighth claim for unfair competition under Texas law must fail because American does not allege—and cannot prove—that Google is passing off its own goods and services as those of American Airlines.**

"Unfair competition is almost universally regarded as a question of whether the defendant is passing off *his* goods or services as those of the plaintiff by virtue of a substantial similarity between the two, leading to confusion on the part of potential customers."  *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 478 (5th Cir. 1974) (emphasis added).  American has not alleged that Google makes any product or sells any service which it is passing off as a product or service of American.  Accordingly, American's claim for unfair competition under Texas law must be dismissed.

## V.   CONCLUSION

For the reasons set forth above, Google requests that the Court dismiss American's complaint in its entirety and enter such other and further relief to which it may be justly entitled.

Dated:   September 19, 2007

Respectfully submitted,

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX  76102-3090
Telephone:  817/338-1700
Metro:        817/429-9181
Facsimile:   817/429-9181

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Benjamin W. Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telepone:  415/391-5400
Facsimile:  415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

**Via Hand Delivery**

Dee J. Kelly
Dee J. Kelly, Jr.
Lars L. Berg
Michael D. Anderson
Kelly Hart & Halman, LLP
201 Main Street, Suite 2500
Fort Worth, TX  76102

Date:   September 19, 2007

_____
Joseph F. Cleveland, Jr.