American Airlines Inc v. Google Inc	Doc. 9 Att. 4

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
**(Cite as: Not Reported in F.Supp.2d)**

After delineating the applicable law on the Section 230 immunity defense, the Court will consider Plaintiff's additional arguments that (1) Section 230(c)(1) does not apply because it is not an immunity provision, but instead is merely "definitional" in nature; (2) the elements of Section 230(c)(1) immunity are not met here because Defendant may have had some input into the Candyman group, and one or more of their claims do not treat Defendant as the "publisher or speaker" of the harmful content; and (3) even if Section 230 applies, Defendant's federal claim falls within Section 230's exception for "enforcement" of a "federal criminal statute."

### A. The Communications Decency Act, 47 U.S.C. § 230

The Communications Decency Act, 47 U.S.C. § 230, provides that:
(c) Protection for 'Good Samaritan' blocking and screening of offensive material.
(1) Treatment of publisher or speaker. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
(2) No provider or user of an interactive computer service shall be held liable on account of-(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

*11 47 U.S.C. § 230(c). Defendant is relying solely on the Section 230(c)(1) immunity.

The term "interactive computer service" is defined as "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."*Id.* § 230(f)(2). The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."*Id.* § 230(f)(3).

### B. Case Law

Section 230 generally immunizes interactive service providers from liability for harm caused by the dissemination of third-party information.*Barnes v. Yahoo! Inc.,* 2005 WL 3005602, *2 (D.Or. Nov. 8, 2005). The *Barnes* court provides the following legislative history for Section 230:
The legislative history surrounding Congress's creation of § 230 represented the desire to protect online intermediaries from liability for unlawful third-party content. Congress reasoned that any liability would threaten development of the online industry as a medium for new forms of mass communication and simultaneously create disincentives to self regulate such content by service providers. Congress therefore determined that liability should rest with the actual wrongdoers-the originators of the illegal and harmful content-and not intermediary servers whose systems are sometimes abused by wrongdoers.

*Id.*

Section 230 does not immunize an interactive computer service if it also functions as an information content provider for the portion of the statement or publication at issue. *Carafano v. Metrosplash .com,* 339 F.3d 1119, 1125 (9th Cir.2003); *see also Blumenthal v. Drudge,* 992 F.Supp. 44, 50 (D.D.C.1998)(acknowledging that Section 230(c)(1) would not immunize AOL with respect to any information developed or created entirely by itself and that joint liability would be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 10
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
**(Cite as: Not Reported in F.Supp.2d)**

possible if AOL "had any role in creating or developing any of the information" in the posted material)."The distinction between merely publishing information provided by a third-party as an interactive computer service and actually creating or developing any of the information posted as an information content provider is critical."*MCW, Inc. v. Badbusinessbureau.com LLC,* 2004 WL 833595, *8 (N.D.Tex.2004)(unpub.), *citing Carafano v. Metrosplash.com, Inc.,* 207 F.Supp.2d 1055, 1067 (C.D.Cal 2002), *aff'd on other grounds,*339 F.3d 1119 (9th Cir.2003)(rejecting the trial court's conclusion that Matchmaker.com was an information content provider).

In the seminal case *Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir.1997), *cert. denied,*524 U.S. 937 (1998), the plaintiff argued that AOL unreasonably delayed in removing defamatory messages posted by an unidentified third party, refused to post retractions of those messages, and failed to screen for similar postings thereafter. *Id.* at 328.Specifically, the plaintiff alleged that when he contacted AOL to demand the internet postings be removed, he was allegedly assured that the postings would be removed. *Id.* at 329.When the internet postings were not removed, the plaintiff filed suit against AOL for negligently failing to act quickly enough and in preventing further similar postings.

**\*12** The Fourth Circuit rejected the plaintiff's claims, holding that because he was seeking to hold the service provider liable based on injuries allegedly resulting from the dissemination of third-party content, his claims necessarily sought to treat the service provider as "publisher" of that content, regardless of the particular label attached to the plaintiff's claims. *Id.* at 332-33.The court found AOL was immune from suit. *Id.*

Three other federal courts of appeals have also held that Section 230 immunizes computer service providers from liability for information that originates with third parties. *See Carafano,* 339 F.3d at 1123 (9th Cir.2003)(noting that the Ninth Circuit in *Batzel v. Smith,* 333 F.3d 1018 (9th Cir.2003) had "joined the consensus developing across other courts of appeals that § 230(c) provides broad immunity for publishing content provided primarily by third parties"); *see also Green v. America Online,* 318 F.3d 465, 471 (3d Cir.2003)(upholding immunity for the transmission of defamatory messages and a program designed to disrupt the recipient's computer); *Ben Ezra, Weinstein, & Co. v. America Online, Inc.,* 206 F.3d 980, 985-86 (10th Cir.2000)(upholding immunity for the on-line provision of stock information even though AOL communicated frequently with the stock quote providers and had occasionally deleted stock symbols and other information from its database in an effort to correct errors).

### WHETHER SECTION 230(c)(1) IS MERELY A "DEFINITIONAL" PROVISION

#### A. Plaintiffs' arguments

According to Plaintiffs, Section 230(c)(2) provides the substantive "protection for blocking and screening of offensive material" by immunizing Internet service providers from civil liability for either taking steps to restrict access to or availability of material that is considered objectionable, or enabling others to do so. *See*42 U.S.C. § 230(c)(2). Absent these activities, Plaintiffs assert it is not inconsistent to hold the internet providers liable under state causes of action. In other words, Plaintiffs contend that if an Internet service provider such as Defendant takes affirmative steps to block or screen objectionable material, such as child pornography, then it has no liability to the censored customer. Using their interpretation, Plaintiffs state that under Section 230(c)(2), Defendant's steps to shut down Candyman after it became aware of the investigation by the F.B.I. protects Defendant from liability to the censored customers for that action.FN3

> FN3. The Court notes that Defendant is not seeking immunity pursuant to Section 230(c)(2) but rather pursuant to Section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 11
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
**(Cite as: Not Reported in F.Supp.2d)**

230(c)(1).

However, Plaintiffs disagree with Defendant's claim pursuant to Section 230(c)(1) that it is protected from liability to the victims of Candyman's child pornography for failing to censor the site. Plaintiffs rely on *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir.2003), asserting Section 230(c)(1) does not apply because it is not an immunity provision, but instead is merely "definitional" in nature.

### B. *Doe v. GTE Corp.*

*13 In *GTE*, after the district court had dismissed the plaintiffs' claims based on Section 230, a panel of the Seventh Circuit affirmed on state law grounds and therefore did not decide whether Section 230 applied. *Id.* at 660-61. The appellate court nevertheless mused about potential interpretations of Section 230 that differed from the interpretation that all other courts had adopted. In particular, it hypothesized, and Plaintiffs here assert, that Section 230(c)(1) may not be a prohibition on liability at all, but instead may be merely a "definitional" provision that delineates the scope of persons who are entitled to the protection of the separate immunity set forth in Section 230(c)(2). *Id.* at 660.

Section 230(c)(2), as the *GTE* court noted, protects a "provider or user" of an interactive computer service from liability for efforts to *remove or restrict* content that the defendant in good faith determines to be harmful or objectionable. *Id.* at 659. Under the "definitional" reading of Section 230(c)(1) offered in *GTE*, "an entity would remain 'a provider or user'-and thus be eligible for the immunity under § 230(c)(2)-as long as the information came from someone else; but it would become a 'publisher or speaker' and lose the benefit of § 230(c)(2) if it created the objectionable information." *Id.* at 660.

### C. Discussion

This "definitional" reading of the statute is untenable for at least four reasons offered by Defendant in this case. First, Section 230 has its own, separately designated "definitions" section that explicitly defines terms used elsewhere in the statute, including terms used in Section 230(c). *See* 47 U.S.C. § 230(f). As a structural matter, therefore, it makes little sense to suggest that Section 230(c)(1) is also intended to be nothing more than definitional.

Second, on its face, Section 230(c)(1) does not purport to be a "definition" of anything; it states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). While the *GTE* dictum hypothesizes that Section 230(c)(1) might define the term "provider or user," that section functions not to attribute a particular meaning to that term, but rather as a substantive prohibition on how "provider[s] and user[s]" may be "treated." *Id.*

Third, according to the *GTE* definitional dictum, a provider or user may become a "publisher or speaker" if it creates the objectionable information and thereby "lose the benefit of § 230(c)(2)." *Doe v. GTE Corp.*, 347 F.3d at 660. But nothing in Section 230(c)(2) suggests that its applicability depends on whether the defendant is or is not a "publisher or speaker." Indeed, Section 230(c)(2) does not even use those terms. The plain meaning of Section 230(c)(2) is that a provider or user is immune for removing or restricting content as long as it believes in "good faith" that the content is unlawful or objectionable-nothing in Section 230(c)(2) implies that being the publisher or speaker of the content in question makes any difference.

*14 Fourth, the meaning that the *GTE* dictum would attribute to Section 230(c)(1) would serve no purpose. According to Plaintiffs, the immunity under Section 230(c)(2) is intended to ensure that, if a provider or user removes particular content, "it has no liability to the censored customer" whose content has been removed. The *GTE* court's hypothesis presumes that the purpose of Section 230(c)(1) is to make clear that Section 230(c)(2)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435  
(Cite as: Not Reported in F.Supp.2d)

Page 12

immunity does not apply where the provider itself created the content in question-that is, where the provider itself would be the "censored" party. But a provider is not going to sue *itself* for removing its own content, and thus the elimination of the immunity in that context would be meaningless. As a result, the interpretation of Section 230(c)(1) advocated by Plaintiffs would render that provision a practical nullity.

The only rationale the *GTE* court and Plaintiffs offer for their "definitional" reading of Section 230(c)(1) is the claim that it is the only way to square the meaning of the statute with its title-"Protection for 'Good Samaritan' blocking and screening of offensive material."*Doe v. GTE Corp.*, 347 F.3d at 660. As an initial matter, where the heading or title of a statute conflicts with its actual text, the text must prevail. *See, e.g., Trainmen v. Baltimore & Ohio R.R.,* 331 U.S. 519, 528-29 (1947). In any event, the conflict that Plaintiffs posit between the statute's title and the interpretation of Section 230(c)(1) adopted by the courts is illusory.Section 230(c)(1) immunity serves an important policy goal that corresponds with the meaning of the statute's title: By eliminating the risk of liability for third-party content, Section 230(c)(1) frees service providers to monitor and screen their services and take actions to block harmful content without risk that such monitoring would provide the notice or knowledge that could be the basis for liability. It promotes self- regulation.

Finally, the Court notes that every court that has made a ruling under Section 230(c)(1), including four federal courts of appeals, has agreed that Section 230(c)(1) is an independent source of immunity for harm caused by third-party content. No court has embraced the *GTE* dicta cited by Plaintiffs. This Court rejects it as well.

**WHETHER THE ELEMENTS OF SECTION 230(c)(1) IMMUNITY ARE MET**

**A. The elements of Section 230(c)(1) immunity**

Three elements are required for Section 230 immunity. *Schneider v. Amazon.com, Inc.,* 108 Wash.App. 454, 31 P.3d 37 (Wash.Ct.App.2001). The defendant must be a provider or user of an "interactive computer service." The asserted claims must treat the defendant as a publisher or speaker of information. The information must be provided by another "information content provider." *Id.* at 39;*see also*47 U.S.C. § 230(c)(1).

**B. Plaintiffs' arguments**

Plaintiffs argue the elements of Section 230(c)(1) immunity are not met here because Defendant may have had some input into the Candyman group, and one or more of their claims do not treat Defendant as the "publisher or speaker" of the harmful content. Plaintiffs assert Defendant may have put advertisements on the E-group pages or provided format or organization for the pages. Plaintiffs do not know what Defendant did with the website when the information was stored; Defendant possibly modified or enlarged the pictures. In any event, Plaintiffs contend this is different from the traditional case, and their pleadings allege what they need to hold Defendant liable.

**C. Defendants' response**

*15 Defendant contends each of the three necessary elements for application of Section 230(c)(1) immunity is apparent from the face of the FAC. As for Plaintiffs' point that Defendant may have put advertisements on the E-group pages or provided format or organization for the pages, Defendant contends this position has been rejected by numerous courts. *See Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir.2003); *Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc.,* 206 F.3d 980 (10th Cir.2000); *Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C.1998). According to Defendant, the only issue is whether Defendant somehow helped in creating the photographs. Again, Defendant maintains Plaintiffs have not, and could not, allege that Defendant participated in the creation or development of the allegedly unlawful photographs

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Not Reported in F.Supp.2d                                                                                          Page 13
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
**(Cite as: Not Reported in F.Supp.2d)**

of Johnny Doe.

### D. Discussion

#### 1. The first element-whether Defendant is a provider of an "interactive computer service"

The FAC describes Defendant as a "global internet communications, commerce, media, and web content provider/operator" and the service at issue as a "web-based forum" allowing "like-minded computer users to interact via a topic-based web page."FAC at ¶¶ 6-7. The term "interactive computer service" is defined as "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."*Id.* § 230(f)(2). Based on the allegations contained in the FAC, the Court finds Defendant is a provider of an "interactive computer service" and therefore falls within the class of entities entitled to the protections of Section 230.

#### 2. The second element-whether the pornographic photographs are "information provided by another information content provider"

The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."*Id.* § 230(f)(3). Plaintiffs allege Defendant "not only created, hosted and maintained the *portal through which* thousands of pedophiles prospered and hundreds of children, including Johnny Doe, were victimized, but [Defendant] profited from it."FAC at 5, ¶ 16 (emphasis added). Plaintiffs further allege Defendant was an active participant in that it had the child pornography stored on its servers and placed advertisements on its E-group web pages. *Id.* at 12, ¶ 67.Finally, in this regard, Plaintiffs allege Defendant "created and maintained the *facility* for posting and distributing pornographic images of Johnny Doe being sexually violated."*Id.* at 13, ¶ 80 (emphasis added).

Plaintiffs' allegations, taken as true, establish that Defendant created, hosted, and maintained the Candyman E-group and placed advertisements on the E-group web pages. The allegations do not establish, as they must to survive Section 230(c)(1) immunity, that Defendant is responsible, in whole or in part, for the creation or development of the information provided through the Candyman E-group.

**\*16** As pointed out by Defendant, Plaintiffs allege the photographs were taken and uploaded by the Does' neighbor. FAC at 4, ¶ 15. Plaintiffs further allege Defendant "breached its duty of reasonable care to Johnny Doe by permitting the Candyman web site to serve as a platform for the uploading, downloading and large-scale distribution of hard-core child pornography through its *servers without oversight or intervention* because it was profitable to do so."*Id.* at 7, ¶ 32 (emphasis added). Plaintiffs' claims are necessarily based on "information provided by *another* information content provider."47 U.S.C. § 230(c)(1)(emphasis added).

In particular, Plaintiffs' case revolves around the harm that allegedly has arisen from the dissemination of "child pornographic pictures of Johnny Doe."(FAC ¶¶ 15, 20-23). Because it has not been alleged Defendant played any role in the "creation or development" of those images, it follows the images were provided by "another information content provider." *See* 47 U.S.C. § 230(f)(3). This critical fact is readily apparent on the face of the FAC, which affirmatively alleges the pornographic images of Johnny Doe were created and uploaded by the Does' neighbor rather than Defendant. The FAC explicitly asserts it was the Does' neighbor who "took illegal child-pornographic photographs of [Johnny Doe] and uploaded them onto the Yahoo Candyman E-group site."(FAC at 4 ¶ 15; *see also id.* ¶ 21 ("Yahoo *received* these child pornographic photographs of Johnny Doe when they were uploaded onto Yahoo's Candyman website and stored on Yahoo's computers.")(emphasis added).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 14
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
(Cite as: Not Reported in F.Supp.2d)

The allegations contained in the FAC do not warrant additional discovery. No amount of discovery into the issues of whether Defendant placed advertising onto the website or even modified or enlarged the photographs could change the allegations contained in Plaintiffs' FAC that specifically acknowledge the images were provided by "another information content provider." In addition, no amount of discovery into whether Defendant enlarged or even modified the photographs would establish a set of facts that would entitle Plaintiffs to relief. This is so because, based on the allegations contained in the live pleading before the Court and based on the case law detailed below, additional discovery would not provided a set of facts for Plaintiffs to allege Defendant played a significant role in the "creation or development" of the specific content alleged to have injured Plaintiffs. The Court elaborates as follows.

Contrary to Plaintiffs' suggestion, the plain language of Section 230 dictates an analysis that focuses on whether the particular injurious "information" giving rise to the claims was provided by the service provider or by "another information content provider." And that in turn depends on whether the service provider was "responsible, in whole or in part, for the *creation or development*" of that particular information. 47 U.S.C. § 230(f)(3)(emphasis added). In this case, the content for which Plaintiffs seek to hold Defendant liable are the pornographic pictures of Johnny Doe. Thus, the question is whether Defendant was responsible for the creation or development of those images. According to the allegations contained in the FAC, the "information" at issue was not provided by Defendant but was "provided by another information content provider."

*17 The case law confirms that the immunity analysis turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service or other content (such as advertisements) that might also have appeared on the service. For example, in *Carafano v. Metrosplash. com,* 339 F.3d 1119 (9th Cir.2003), the plaintiff asserted that the defendant Matchmaker.com ("Matchmaker"), the operator of an online dating service, was liable for a false, unauthorized, and sexually explicit profile of the plaintiff that an unidentified user had posted to the service. The plaintiff argued that Matchmaker was an "information content provider" with respect to all the profiles on the service, and therefore was not entitled to the protection of Section 230, because Matchmaker had provided the basic forms that were used to generate the profiles and had shaped the content of the profiles through the use of multiple choice questions whose answers were sometimes sexually suggestive. *Id.* at 1123-24.

The Ninth Circuit Court of Appeals rejected the plaintiff's argument, stating that even though Matchmaker had contributed both "structure and content" to its online profile service, it could not be held liable for profiles generated through that service except to the extent it "created or developed *the particular information at issue*" in the case. *Id.* at 1125 (emphasis added). Because it was undisputed that the unidentified user, not Matchmaker, had supplied the answers to the multiple choice questions and the identifying information that in combination made the profile a false and defamatory depiction of the plaintiff, the "particular information at issue" was "provided by another content provider." The court held "Matchmaker did not play a significant role in creating, developing or 'transforming' the relevant information" and found it immune from suit. *Id.* at 1125.

Many other courts have similarly confirmed the critical question is not whether the service provider played a role in shaping the forum or service through which the allegedly harmful information was conveyed, but rather whether the service provider contributed to the creation or development of the specific content that is alleged to have injured the plaintiff. In *Ben Ezra, Weinstein & Co. v. America Online, Inc.,* 206 F.3d 980, 985-86 (10th Cir.2000), the Tenth Circuit held that AOL was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.