Not Reported in F.Supp.2d                             Page 15
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
(Cite as: Not Reported in F.Supp.2d)

immune from liability for injuries resulting from faulty stock quotes that had appeared on its service after it was shown that the vendor who supplied the stock quote data was the source of the particular erroneous data at issue. It mattered not that AOL had designed and promoted the "personal finance channel" on which the stock quote data appeared or even that AOL had "deleted some stock symbols or other information ... in an effort to correct the errors."*Id.*

Similarly, in *Blumenthal v. Drudge,* 992 F.Supp. 44, 51-52 (D .D.C.1998), the court held AOL immune from defamation claims based on a particular false assertion that the gossip columnist Matt Drudge had authored for his Drudge Report. The court so held notwithstanding (1) AOL's otherwise active role in making the Drudge Report available to its subscribers, including its hiring of Drudge as an independent contractor; (2) its "affirmative[ ] promot[ion]" of him as a "runaway gossip success;" (3) its express retention of "certain editorial rights with respect to the content" of the Drudge Report; and (4) its payment to Drudge of a royalty that was his sole source of income at the time. *See also Gentry v. eBay, Inc.,* 99 Cal.App. 4th at 833 n. 11 (service provider's involvement with content of website *"is* irrelevant if [the service provider] did not itself create or develop the content for which [the plaintiffs] seek to hold it liable"). In sum, because the FAC affirmatively asserts that someone other than Defendant created and developed the particular unlawful and injurious photographs at issue in this case, those photographs as a matter of law constitute "information provided by another information content provider."

### 3. The third element-whether Plaintiffs' claims seek to treat Defendant as the "publisher or speaker" of the third-party content .

*18 Defendant asserts the third element for immunity is satisfied because imposing liability on Defendant would, in at least three different respects, "treat" Defendant as "the publisher or speaker" of the unlawful content that the Does' neighbor allegedly uploaded onto the Candyman E-

group. First, according to Defendant, this lawsuit seeks to impose on Defendant the very same liability that could be visited on the original publisher of the content at issue, the neighbor. Second, Defendant asserts this lawsuit seeks to impose on Defendant the "quintessential" duties of a publisher, such as screening, monitoring, and editing out inappropriate content. Third, Defendant contends the essence of each of the claims is that Defendant "published" unlawful information pertaining to Johnny Doe and thereby caused him harm.

In response, Plaintiffs make two arguments. First, Plaintiffs rely on a dissenting opinion from the Florida Supreme Court, asserting Section 230 does not prohibit claims that would treat an interactive computer service as a so-called "distributor" rather than a publisher. *See Doe v. America Online, Inc.,* 783 So.2d 1010, 1018-28 (*"Florida Doe"* )(Lewis, J., dissenting). Second, Plaintiffs assert their federal statutory claim does not treat Defendant simply as a "publisher or speaker" of the photographs but also as a receiver and possessor of those photographs. In other words, Plaintiffs contend Defendant violated Section 2252A not only by distributing child pornography but also by receiving and possessing it. The Court will consider the two arguments in turn below.

#### a. Distributor Liability

According to dissent in the *Florida Doe* case, a claim of "distributor" liability is one in which liability is based on an allegation that a mere distributor of third-party information (such as a bookstore or newsstand), who could not otherwise be liable for unlawful content that it distributes, can be liable if it "knew or should have known" of the particular content at issue and its unlawful nature. *See Florida Doe,* 783 So.2d at 1021-28. Because such "distributors" may be subject to liability only if this heightened level of "scienter" is established, the argument goes, imposing such liability on them treats them as "distributors" rather than "publishers" and therefore falls outside the ambit of Section 230. *Id.* at 1023-24.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dockets.Justia.com

Not Reported in F.Supp.2d                                          Page 16
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
(Cite as: Not Reported in F.Supp.2d)

While Plaintiffs assert that "the courts have gone round and round about this distinction,"[FN4] courts considering Section 230, including the Florida Supreme Court in the *Florida Doe* case, have consistently rejected this argument. *Florida Doe*, 783 So.2d 1010, 1016-17. The courts have reasoned that "distributor liability" is "merely a subset, or a species, of publisher liability, and is therefore also foreclosed by § 230."*See Zeran*, 129 F.3d at 332;*see also Perfect 10, Inc. v. CCBill, LLC*, 340 F.Supp.2d 1077, 1111 (C.D.Cal.2004)("[E]ven if the Defendants are considered distributors rather than publishers, the CDA immunities would still apply...."); *Blumenthal*, 992 F.Supp. at 52 (in enacting Section 230, "Congress made no distinction between publishers and distributors in providing immunity from liability").

FN4. Plaintiffs' response at 22.

**b. Receipt and Possession**

*19 Plaintiffs also assert that their federal statutory claim does not "treat" Defendant as a publisher in all respects. Specifically, they assert that their "claim under section 2252A charges [Defendant] with violating the child pornography laws not simply as a 'publisher or speaker' of the illegal photographs of Johnny Doe, but *also* as a receiver and possessor of those photographs. In other words, [Defendant] violated section 2252A not only by distributing child pornography, but also by receiving and possessing" it.[FN5]

FN5.*Id.* at 10-11, 18.

The FAC explicitly defines the damages sought in terms of the publication of the images: "As a proximate cause of the conduct alleged herein [Johnny Doe's] private harm has been *published* to the world causing Doe to suffer sever[e] mental anguish and/or pain and suffering in the past and future. Doe seeks damages for his mental anguish and/or pain and suffering."(FAC at 16, ¶ 100 (emphasis added). Similarly, the injunctive relief Plaintiffs seek is prevention of further publication-that is, "the viewing and distribution of Johnny Doe's photographs from [Defendant's] websites or servers."(*Id.* at 16, ¶ 102).

Courts have clearly stated that Section 230 generally "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service" and have applied the immunity to a wide variety of claims regardless of the terms in which they were described. *Zeran*, 129 F.3d at 330. The plaintiff in *Noah v. AOL Time Warner, Inc.*, 261 F.Supp.2d 532, 534 (E.D. Virginia 2003), made an argument similar to that Plaintiffs make here. The plaintiff in *Noah*, a Muslim who used AOL's service, sued AOL under Title II of the Civil Rights Act, which prohibits discrimination in places of public accommodation, based on AOL's alleged failure "to prevent participants in an online chat room from posting or submitting harassing comments that blasphemed and defamed the plaintiff's Islamic religion and his co-religionists."*Id.* at 534.According to the plaintiff, his claim fell outside the scope of Section 230 because it did not "treat" AOL as a publisher or speaker but rather "as the owner of a place of public accommodation" who was subject to Title II and who had engaged in discrimination. *Id.* at 538.

The court granted AOL's motion to dismiss based on Section 230, noting that "[a]n examination of the injury claimed by plaintiff and the remedy he seeks clearly indicates that his Title II claim seeks to 'place' AOL 'in a publisher's role,' in violation of § 230."*Id.* Specifically, because the plaintiff had alleged that AOL was liable "for its refusal to intervene and stop the allegedly" harmful content and had also "request[ed] an injunction requiring AOL to adopt 'affirmative measures' to stop such harassment," the "allegations [made] clear that plaintiff [sought] to hold AOL liable for its failure to exercise 'a publisher's traditional editorial functions.' " *Id.* at 538-39.

*20 The same is true here. The injury claimed by Plaintiffs is grounded in the pornographic photographs having been "published to the world" and the injunction Plaintiffs seek is to prevent such publication. (FAC at 16 ¶¶ 100, 102). Plaintiffs are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
(Cite as: Not Reported in F.Supp.2d)

seeking to hold Defendant liable for its alleged failure to exercise a "publisher's traditional editorial functions," *Zeran,* 129 F.3d at 330, such as blocking, screening, or otherwise preventing the dissemination of the images. (*See* FAC at 6, ¶ 23 (Defendant allegedly "took no action to block or remove" the images in question). Plaintiffs' allegations impermissibly seek to "treat" Defendant as the publisher of those images.

### E. Conclusion

Taking Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, each of the three necessary elements for application of Section 230(c)(1) immunity is apparent from the face of the FAC: (1) Defendant is an "interactive computer service"; (2) the pornographic pictures of Johnny Doe are "information provided by another information content provider," the neighbor who took the pictures; and (3) Plaintiffs' claims seek to treat Defendant as the "publisher or speaker" of that third-party content. Therefore, unless Plaintiffs' claims fall within Section 230's exception for "enforcement" of a "federal criminal statute" as advocated by Plaintiffs, Defendant is entitled to Section 230(c)(1) immunity.

### A. Arguments

Finally, even if Section 230 applies, Plaintiffs argue that their federal claim falls within Section 230's exception for "enforcement" of a "federal criminal statute." In their FAC, Plaintiffs added a new claim against Defendant and Bates based on an alleged violation of 18 U.S.C. § 2252A, a federal statute that makes it a crime to knowingly distribute child pornography and that also contains a provision for a private "civil remedy" for anyone aggrieved by a violation of the statute. 28 U.S.C. § 2252A(f).

Plaintiffs contend that applying Section 230(c)(1) to bar their civil claim under 18 U.S.C. § 2252A would be contrary to 47 U.S.C. § 230(e)(1), which states that Section 230 is not to be construed to

"impair the enforcement of ...chapter ... 110 (relating to sexual exploitation of children) of Title 18, [18 USCS §§ 1460 et seq. or §§ 2251 et seq.] or any other Federal criminal statute."47 U.S.C. § 230(e)(1). Plaintiffs maintain neither Section 230 nor any of its subsections, including Section 230(c), has any effect on Section 2252A. Specifically, Plaintiffs argue the civil remedies provisions of Section 2252A are exempted from the reach of Section 230(c).

Finally, Plaintiffs argue while Section 230(e)(1) provides a textual basis for saying that some classes of federal statutes are excluded from the reach of Section 230(c) and others are not, there is no basis for saying that parts of a specified federal statute are subject to exception and other parts are not. In this regard, Plaintiffs state there is no textual support for such internal bifurcation.

**\*21** In response, Defendant asserts the plain text of the statute limits this exception to criminal prosecutions for violations of federal criminal statutes, not private civil suits based on alleged violations of such statutes. Defendant focuses on the definition of the term "criminal" as well as its use in the context of Section 230(e)(1), asserting the use of the term excludes and is distinguished from civil claims. Defendant also contends Congress' use of the word "enforcement" in Section 230(e)(1) again confirms that the exception applies only to criminal prosecutions.

Both parties agree there has not been a previous Section 230(c) immunity case involving Section 2252A. The Court in its research has not located a case considering the applicability of Section 230(e)(1) in a factual scenario such as the one asserted in this case. Therefore, Plaintiffs' argument is one of first impression.

### B. Applicable Law

Supreme Court precedent makes clear that the statutory text is the requisite starting point for statutory interpretation. *See, e .g., Harris Trust and Sav. Bank v. Solomon Smith Barney, Inc.,* 530 U.S. 238, 254 (2000) ("[I]n any case of statutory

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 18
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
(Cite as: Not Reported in F.Supp.2d)

construction, ... analysis begins with the language of the statute."). Courts routinely rely on dictionary definitions as a means of determining the meanings of words used in statutes. *See, e.g., United States v. Vargas-Duran,* 356 F.3d 598, 603 (5th Cir.2004) (relying on dictionary definitions to ascertain meaning of statutory term).

### C. Discussion

Again, Section 230(e)(1) provides as follows:
(e) Effect on other laws
(1) No effect on criminal law
Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title 18, or any other Federal criminal statute.

47 U.S.C. § 230(e)(1).

The plain text of the statute establishes that the 230(e)(1) exception does not encompass private civil claims. As argued by Defendant, the common definition of the term "criminal," as well as its use in the context of Section 230(e)(1), specifically excludes and is distinguished from civil claims. The term "criminal" is defined as "[c]onnected with the administration of penal justice."Black's Law Dictionary 302; *see also* American Heritage Dictionary of the English Language 430 (4th ed.2000)(defining "criminal" as "[r]elating to the administration of penal law"). The term "civil" is defined as follows: "[o]f or relating to private rights and remedies that are sought by action or suit, *as distinct from criminal proceedings.*"Black's Law Dictionary 262 (emphasis added). In addition, Congress' use of the word "enforcement" in Section 230(e)(1) again confirms that the exception refers to governmental action, not civil actions by a private litigant.

Congress did not bifurcate any statutes as asserted by Plaintiffs. Rather, as noted by Defendant, it preserved the ability of law enforcement officials to enforce the federal criminal laws to their fullest extent while at the same time eliminating the ability of private plaintiffs to pursue service-provider

defendants. Given the complexity of Title 18 and the availability of civil remedies in statutes throughout the criminal code, Congress achieved its intended result using simple language making it clear that Section 230's limits on civil liability would not affect governmental enforcement of federal criminal laws.

**\*22** As noted by Defendant, Plaintiffs' invocation of Section 230(e)(1) rests on their generalized policy arguments rather than the text of the statute. Plaintiffs' core argument appears to be that Section 230(e)(1) must exempt civil claims under the child pornography statutes because child pornography is "not to be tolerated" and "[i]f the prospect of civil liability provides a disincentive for engaging in child pornography over and above that provided by the prospect of fines and jail time, then that is a good thing."[FN6]

FN6.*Id.* at 13-15.

Child pornography obviously is intolerable, but civil immunity for interactive service providers does not constitute "tolerance" of child pornography any more than civil immunity from the numerous other forms of harmful content that third parties may create constitutes approval of that content. Section 230 does not limit anyone's ability to bring criminal or civil actions against the actual wrongdoers, the individuals who actually create and consume the child pornography. Here, both the neighbor and the moderator of the Candyman web site have been prosecuted and are serving sentences in federal prison. Further, the section 230(e)(1) exemption permits law enforcement authorities to bring criminal charges against even interactive service providers in the event that they themselves actually violate federal criminal laws.

Regarding civil liability, however, Congress decided not to allow private litigants to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws. As Defendant explained in its briefing, the reason is evident. If civil liability were possible, the incentive to bring a civil claim for the settlement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435
(Cite as: Not Reported in F.Supp.2d)

Page 19

value could be immense, even if a plaintiff's claim was without merit. Even if it ultimately prevailed, the service provider would face intense public scrutiny and substantial expense. Given the millions of communications that a service provider such as Defendant enables, the service provider could find itself a defendant in numerous such cases. Congress determined that it wanted to eliminate the resulting disincentives to the development of vibrant and diverse services involving third-party communication, while maintaining the ability of criminal prosecutions by the government for violations of federal criminal law. In sum, Congress did intend to treat civil and criminal claims differently and carefully crafted Section 230(e)(1) to achieve exactly that result. Plaintiffs' claim, although novel, is untenable and without merit. Based on the foregoing, it is

**RECOMMENDED** that Defendant Yahoo! Inc.'s Motion to Dismiss All Claims Against Yahoo! (Docket Entry # 17) be **GRANTED.**It is further

**RECOMMENDED** that Plaintiffs' above-entitled and numbered cause of action be **DISMISSED WITH PREJUDICE.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

*23 Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir.1988).

E.D.Tex.,2006.
Doe v. Bates
Not Reported in F.Supp.2d, 2006 WL 3813758 (E.D.Tex.), 35 Media L. Rep. 1435

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.