3

Westlaw.

Not Reported in F.Supp.2d                                                                                                           Page 1
Not Reported in F.Supp.2d, 2006 WL 737064 (D.Minn.), 80 U.S.P.Q.2d 1039
**(Cite as: Not Reported in F.Supp.2d)**

▷
Edina Realty, Inc. v. TheMLSonline.com
D.Minn.,2006.

United States District Court,D. Minnesota.
EDINA REALTY, INC., Plaintiff,
v.
THEMLSONLINE.COM, Defendant.
**No. Civ. 04-4371JRTFLN.**

March 20, 2006.

Mical K. Griffin, Susan M. Robiner, Erin C. Skold, and Rita A. O'Keeffe, Leonard Street and Deinard, PA, Minneapolis, MN, for plaintiff.
David T. Schultz, Courtney M. Rogers Reid, and Mark J. Girouard, Halleland Lewis Nilan & Johnson PA, Minneapolis, MN, for defendants.

MEMORANDUM OPINION AND ORDER
TUNHEIM, J.
*1 Plaintiff Edina Realty has sued defendant, TheMLSonline.com, for infringement of plaintiff's rights in the trademark EDINA REALTY®. Plaintiff alleges the following: trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I), unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), trademark dilution under 15 U.S.C. § 1125(c) (Count III), deceptive trade practices under Minn.Stat. § 325D.44 (Count IV), trademark dilution under Minn.Stat. § 333.285 (Count V), unfair competition under Minnesota common law (Count VI), and trademark infringement under Minnesota common law (Count VII).

This matter is now before the Court on three motions: (1) defendant's motion to exclude testimony by plaintiff's expert, Dr. Akshay R. Rao; (2) defendant's motion for summary judgment; and (3) plaintiff's motion for partial summary judgment on its claims of trademark infringement and dilution. Plaintiff is not seeking summary judgment on its claim for monetary relief. For the reasons discussed below, the Court denies defendant's motion to exclude plaintiff's expert, grants defendant's motion for summary judgment in part and denies it in part, and denies plaintiff's motion for partial summary judgment.

BACKGROUND

Plaintiff is the largest real estate brokerage firm in the Midwest, and the third largest independent firm nationwide. Plaintiff received a trademark registration from the United States Patent and Trademark Office for the EDINA REALTY® mark on June 25, 2002. Plaintiff has an extensive marketing and advertising budget, and utilizes its mark in newspapers, radio, television, billboards, and lawn signs. Plaintiff has also established an Internet presence for its mark with *www.edinarealty.com.*

Defendant is a full-service real estate brokerage firm that directly competes with plaintiff. Plaintiff argues that defendant is riding the coattails of plaintiff's advertising and marketing efforts by using the Edina Realty mark. Specifically, defendant uses the mark by purchasing it as a keyword Internet search term from Google and Yahoo, using it in the text of the advertisements that appear on Google and Yahoo, and using it in hidden links and hidden text on its website, TheMLSonline.com.

Over the past four years, defendant has purchased the following search terms from Google: Edina Realty, Edina Reality, EdinaReality.com, EdinaRealty, EdinaRealty.com, www.EdinaReality.com and www.EdinaRealty.com. Defendant purchased a similar array of search terms from Yahoo. As the result of purchasing these search terms, defendant's "Sponsored Link" or "Sponsor Result" advertisement usually appears on the search engine result page at the top of the list of websites generated in response to a consumer's search for Edina Realty. The link to plaintiff's website appears in a less noticeable position further down the page.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2006 WL 737064 (D.Minn.), 80 U.S.P.Q.2d 1039
**(Cite as: Not Reported in F.Supp.2d)**

Defendant writes the advertising text that appears in the sponsored links.[FN1] As an example, when a Yahoo user would type in "edina realty" as a search term, a sponsored link advertisement would appear, with the following headline in underlined font: "Edina Realty™ listings-MLS Home Search." The ad would also state, "Find Edina Realty™ and Twin Cities MN MLS listings. Also includes listings from Coldwell Banker Burnet, Counselor Realty and many more. Updated daily. Request showings online."The bottom line on the ad would state, "www.themlsonline.com."

> FN1. The advertising text has changed over time. In spring 2005, plaintiff persuaded Google to forbid defendant from using the phrase Edina Realty in its advertising, which Google allowed for the two previous years.

*2 Defendant's advertisements are visually separated from the natural search results. On Google and Yahoo, the advertisements are shaded blue, and appear under the caption "Sponsored Link" or "Sponsored Result." Yahoo further separates its advertisements by using bullet points, while its natural search results are numbered.

Tens of thousands of Internet users who use search engines to seek information about Edina Realty are presented with defendant's advertisement. The percentage of Google users that click on the advertisement and enter TheMLSonline.com, instead of plaintiff's website, has ranged from 31.6 to 17.9 percent. The rate has been as high as 39.7 percent on Yahoo.

Defendant has also used plaintiff's mark in hidden links and text on its website. The hidden text is written in white font on a white background and includes phrases such as "Edina Realty information presented at TheMLSonline.com." Hidden link and text cause Internet search engines to place defendant's website higher up than natural in the list of websites responsive to a search for Edina Realty. The hidden links and text operate like metatags. *See Brookfield Communs., Inc. v. W.*

*Coast Entm't Corp.,* 174 F.3d 1036, 1044-45 (9th Cir.1999) (providing a general overview of the relevant Internet technology).

On February 2, 2004, plaintiff wrote defendant and demanded that the company "cease and desist its infringing use of its registered trademark."Defendant refused to do so, and this litigation ensued.

ANALYSIS

Defendant's Motion to Exclude Expert Testimony

Defendant moves to exclude testimony by plaintiff's expert, Dr. Akshay R. Rao. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted. *See Lauzon v. Senco Prods. Inc.,* 270 F.3d 681, 686 (8th Cir.2001). First, evidence based on scientific, technical, or specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Id.* Second, the proposed witness must be qualified. *Id.* Third, the proposed evidence must be reliable or trustworthy in the evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. *Id.* The district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable."*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 597-98 (1993).

First, defendant argues that Rao's opinion lacks an adequate factual basis because he did not conduct a survey to assess consumer confusion from defendant's use of the Edina Realty mark. "Only if an expert's opinion is 'so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded."*Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 974 (8th Cir.1995). A survey is not necessary. Rao relied upon consumer focus groups, plaintiff's marketing budgets, empirical studies on general Internet usage, empirical evidence found in materials published by the National Association of Realtors, and statistics tracking consumer use of defendant's sponsored link.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 737064 (D.Minn.), 80 U.S.P.Q.2d 1039
(Cite as: Not Reported in F.Supp.2d)

Page 3

*3 Second, Rao is qualified because he is an expert in consumer behavior and marketing. There is no merit to defendant's argument that his testimony should be nevertheless excluded because he has no particular expertise in the narrower field of consumer behavior relating to real estate brokerage services on the Internet.

Finally, defendant has criticized Rao's conclusions, but the Court's analysis must focus "solely on principles and methodology, not on the conclusions that they generate."*Daubert,* 509 U.S. at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."*Id.* at 596.

Accordingly, defendant's motion to exclude expert testimony of Rao is denied.

Motions for Summary Judgment

I. Standard of Review

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

II. Trademark Infringement

Plaintiff asserts five counts of federal and state trademark infringement claims.[FN2] First, defendant argues that plaintiff cannot show that defendant's purchase of the Edina Realty mark as Internet search terms is a "use in commerce" as required under the Lanham Act. Second, defendant argues that plaintiff has not demonstrated evidence of a likelihood of confusion necessary to survive summary judgment. Finally, defendant argues that its use of the Edina Realty mark is permissible under the doctrine of nominative fair use.

> FN2. Claims under Minnesota law require the same analysis as claims under the Lanham Act. *See Daimlerchrysler AG v. Bloom,* 315 F.3d 932, 936, n. 3 (8th Cir.2003). Claims for common law unfair competition and common law trademark infringement similarly parallel claims under the Lanham Act. *Id.* As such, the Court analyzes these claims together.

A. Use In Commerce

"[A] mark shall be deemed to be in use in commerce ... on services when it is used or displayed in the sale or advertising of services...."15 U.S.C. § 1127. Defendant argues that its purchase of search terms is not a "use in commerce" because there is no public promotion of the mark during the search transaction. *See Daimlerchrysler AG v. Bloom,* 315 F.3d 932, 939 (8th Cir.2003). Edina Realty distinguishes *Daimlerchrysler* and argues that there is a visual element here because the Internet user types in the mark as a search term, which is displayed in the tool bar above the results.

While not a conventional "use in commerce," defendant nevertheless uses the Edina Realty mark commercially. Defendant purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement. *See Brookfield Communs., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1064 (9th Cir.1999) (finding Internet metatags to be a use in commerce). Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce.

B. Likelihood of Confusion

*4 To succeed on claims of trademark infringement under the Lanham Act, the plaintiff must

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 737064 (D.Minn.), 80 U.S.P.Q.2d 1039
(Cite as: Not Reported in F.Supp.2d)

Page 4

demonstrate that the alleged infringer's use of the protected mark "would likely cause confusion among an appreciable number of consumers."*Gateway, Inc. v. Companion Prods.,* 384 F.3d 503, 509 (8th Cir.2004)."[T]here must be a substantial likelihood that the public will be confused."*Children's Factory v. Benee's Toys,* 160 F.3d 489, 494 (8th Cir.1998). Actual confusion is not essential to a finding of infringement, but the mere possibility of confusion is not enough. *Id.*

To assess likelihood of confusion in a traditional trademark infringement case, the Court takes the following factors into consideration:
1) the strength of the owner's mark; 2) the similarity between the owner's mark and the alleged infringer's mark; 3) the degree to which the products compete with each other; 4) the alleged infringer's intent to pass off its goods as those of the trademark owner ...; 5) incidents of actual confusion; and 6) whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist.

*3M v. Rauh Rubber, Inc.,* 130 F.3d 1305, 1308 (8th Cir.1997).

"These factors do not operate in a mathematically precise formula; rather, we use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion."*Duluth News-Tribune v. Mesabi Publ. Co.,* 84 F.3d 1093, 1096 (8th Cir.1996). The Court must avoid excessive rigidity when applying the law in the Internet context because emerging technologies require a flexible approach. *Brookfield Communs., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1054 (9th Cir.1999). The parties dispute what factors are most relevant here.[FN3]

> FN3. The Eighth Circuit has not addressed which factors are most relevant when plaintiff invokes the initial confusion doctrine, *Northland Ins. Cos. v. Blaylock,* 115 F.Supp.2d 1108, 1119 (D.Minn.2000), nor when defendant raises a defense of nominative fair use.

Plaintiff argues that the traditional analysis should be modified because plaintiff is invoking the doctrine of initial interest confusion.[FN4]Under the initial interest confusion doctrine, the Lanham Act prohibits a competitor from luring potential customers away from a producer by initially passing off its goods or services as those of the producer's even if confusion as to the source is dispelled by the time any sales are consummated. *See, e.g., Forum Corp. of N. Am. v. Forum, Ltd.,* 903 F.2d 434, 442 n. 2 (7th Cir.1990). Edina Realty argues that under the initial interest confusion doctrine, the following three factors are most important: 1) similarity of the marks; 2) relatedness of the goods and services; and 3) parties simultaneous use of the Internet as a marketing channel. *See Brookfield Communs., Inc.,* 174 F.3d at 1055.

> FN4. Although the Eighth Circuit has not yet considered it, at least seven circuits have adopted the initial interest confusion doctrine. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254 (2nd Cir.1987); *SecuraComm. Consulting, Inc. v. SecuraCom Inc .,* 984 F.Supp. 286 (D.N.J.1997), *rev'd on other grounds,*166 F.3d 182 (3rd Cir.1999), *appeal after remand,*224 F.3d 273 (3rd Cir.2000); *Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 204 (5th Cir.1998); *Forum Corp. of N. Am. v. Forum, Ltd.,* 903 F.2d 434, 442, n. 2 (7th Cir.1990); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036 (9th Cir.1999); *Australian Gold v. Hatfield,* 436 F.3d 1228, 1238-39 (10th Cir.2006); *HRL Assocs. v. Weiss Assocs. Inc.,* 12 U.S.P.Q.2d 1819 (TTAB 1989), *aff'd on other grounds,*902 F.2d 1546 (Fed.Cir.1990).

Defendant argues that the traditional analysis should be modified because defendant is invoking the doctrine of nominative fair use. Under the doctrine of nominative fair use, use of a mark that does not imply sponsorship or endorsement by the trademark holder may be permissible. *See Century*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.