4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1903128 (E.D.Va.), 77 U.S.P.Q.2d 1841
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

▷
Government Employees Ins. Co. v. Google, Inc.
E.D.Va.,2005.

United States District Court,E.D. Virginia.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff,
v.
GOOGLE, INC., et al., Defendants.
**No. 1:04CV507.**

Aug. 8, 2005.

Charles Daniel Ossola, Arnold & Porter LLP, Washington, DC, John F. Anderson, Troutman Sanders LLP, McLean, VA, for Plaintiff.
David P. Donovan, Melanie Diana Coates, Wilmer Cutler Pickering Hale & Dorr LLP, McLean, VA, for Defendant.

BRINKEMA, J.

### I. Introduction

*1 This Opinion explains in more detail the Court's decision on the liability issues tried to the bench on plaintiff Government Employees Insurance Company's ("GEICO") Complaint against defendant Google, Inc. ("Google").[FN1] Plaintiff claims that Google violates the Lanham Act and engages in unfair competition under state law by using GEICO's trademarks [FN2] to sell advertising on its Internet search engine. Specifically, the Complaint alleges (1) direct, contributory and vicarious trademark infringement, (2) false representation and (3) dilution, all under the Lanham Act, 15 U.S.C. § 1051, as well common law unfair competition.

> FN1. The original Complaint was filed on May 4, 2004, against Google and Overture Services, Inc. ("Overture"). A First Amended Complaint was filed on May 14, 2004, and on November 29, 2004, Overture was dismissed as a defendant. Therefore, all references to the Complaint in this Opinion are to the First Amended Complaint, and only Google remains as a defendant.

In a previous Memorandum Opinion discussed more fully below, the Court dismissed Google's Motion to Dismiss in part, finding that Google did "use" plaintiff's trademark for purposes of the Lanham Act, although not necessarily improperly. The Court granted defendant's Motion To Dismiss state law counts of tortious interference with prospective economic advantage and statutory civil business conspiracy and denied the Motion to the extent that it sought a ruling that Google did not "use" plaintiff's trademark. *See Gov't Employees Ins. Co. v. Google, Inc.,* 330 F.Supp.2d 700 (E.D.Va.2004).
Later, the Court denied defendant's Motion for Summary Judgment, which argued that Google's use of GEICO's marks does not create a likelihood of confusion, because such a highly factual question is inappropriate for resolution on summary judgment. *See, e.g.,National Fed'n of the Blind, Inc. v. Loompanics Enters., Inc.,* 936 F.Supp. 1232, 1241 (D.Md.1996) (citing *Country Floors, Inc. v. P'ship of Gepner & Ford,* 930 F.2d 1056, 1062-63 (3d Cir.1991)).

> FN2. The Complaint alleges, and defendant does not dispute, that plaintiff has obtained federal trademark registration for "GEICO" and "GEICO DIRECT."

In its Prayer for Relief, GEICO seeks preliminary and permanent injunctions barring Google from (1) selling the GEICO marks or confusingly similar terms for use in defendant's advertising program, (2) continuing to display third parties' advertisements alongside the results of searches that use GEICO's marks or confusingly similar terms as keywords and (3) making any use of the GEICO marks and/or confusingly similar terms

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 1903128 (E.D.Va.), 77 U.S.P.Q.2d 1841  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

unless expressly authorized by GEICO. Plaintiff also seeks actual and treble damages and attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117, actual and punitive damages under Virginia common law, and actual and treble damages and attorneys' fees under Va.Code § 18.2-500.

At the conclusion of plaintiff's evidence, defendant moved for Judgment as a Matter of Law under Fed.R.Civ.P. 52(c). As stated in open court, the Court found that GEICO did not produce sufficient evidence to establish that the mere use by Google of the GEICO trademark as a search term or keyword, even in the context of Google's advertising program, violates either the Lanham Act or Virginia common law. The Court also found that GEICO failed to produce sufficient evidence to establish that advertisements that do not reference GEICO's trademarks in their text or headings violate the Lanham Act, even though Google's advertising program enables those ads to appear when a user searches on GEICO's trademarks. However, the Court did find that GEICO presented sufficient evidence to survive defendant's Motion on the narrow issue of whether advertisements that appear when a user searches on GEICO's trademarks and do reference those marks in their headings or text violate the Lanham Act.[FN3]

> FN3. Those advertisements appeared before Google began barring such use of GEICO's trademark and may have continued to slip through Google's screening system since the ban took effect.

After the Court reached this conclusion, defendant represented that it had no evidence regarding whether such advertisements generate a likelihood of confusion. Upon that concession, the Court found that the use of GIECO's trademarks in the heading or text of advertisements that appear when a user searches on "GEICO" does violate the Lanham Act, leaving as the only remaining issues in the case whether Google is liable for such violations and, if so, the measure of damages.[FN4] Having announced these findings in open court, the Court adjourned the trial until further notice to issue a more detailed explanation of its ruling and to allow the parties time to attempt to resolve the remaining issues.

> FN4. Whether the advertisers themselves violated the Lanham Act is not before the Court because the advertisers are not parties to this action.

### II. *Background*

*2 The facts produced at trial establish that GEICO is among the nation's leading providers of insurance, most notably car insurance. GEICO has positioned itself as a low-cost insurance provider and, of particular importance to this action, employs a business model by which customers can only receive GEICO rate quotes directly from the company, either by phone or online through GEICO's Web site. The company estimates that roughly 40% of its business is now Internet-driven, and that number is rising.

Defendant Google operates a widely used Internet search engine through which consumers can search for, among other things, Web sites offering products and services. A user can search on general terms, such as "auto insurance," or more specific keywords, such as "GEICO." The search engine compares the search terms entered by a user with databases of Web sites and generates a listing of the sites matching those terms. The results of these searches are known as "organic listings." In addition, through its "Adwords" advertising program, Google sells the opportunity to have advertisements appear alongside the organic listings. In the Google system, such advertisements appear as "Sponsored Links" to the right of the organic search results. Although at one time Google prevented advertisers from using this system to place their ads next to the organic listings associated with trademarked terms, such as "GEICO," defendant now allows this practice.[FN5]

> FN5. Conversely, Google has always allowed trademark holders to request that their trademarks not appear in Sponsored Links' headings or text. Thus, one point of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1903128 (E.D.Va.), 77 U.S.P.Q.2d 1841
(Cite as: Not Reported in F.Supp.2d)

Page 3

dispute regarding Google's potential damages exposure, should GEICO prevail on the remaining liability issue, concerns when GEICO first effectively requested that its marks be blocked in this fashion and whether Google responded appropriately. That dispute involves the effect of a number of communications exchanged between the parties in 2002 and 2003 and the sufficiency of Google's past and current efforts at policing violations of the ban on advertisers using GEICO's marks in the headings and text of their ads. Because these issues are relevant to Google's potential liability for damages, not to whether the use of GEICO's marks violated the Lanham Act, they will not be addressed further in this Opinion.

Plaintiff alleges that by selling this opportunity to advertisers, defendant (1) directly violates the Lanham Act by using "GEICO" as a keyword to place related Sponsored Links alongside organic results in a manner that is likely to confuse consumers as to the source, affiliation or sponsorship of those links and (2) contributes to third parties' violations of the Act by knowingly encouraging advertisers to use GEICO's marks in the heading or text of their ads in a manner that is likely to confuse consumers.[FN6] Specifically, GEICO maintains that because under its business model, potential customers can get GEICO rate quotes only directly from the company, Sponsored Links that appear when users search on "GEICO" and that advertise other sites' ability to provide rate quotes for car insurance, even from unnamed insurance companies, are misleading because of the implied association of those sites with the GEICO search term. Defendant counters that the Internet is still governed by traditional trademark infringement and fair competition principles, under which placing an advertisement-especially one that does not mention a competitor by name-next to a competitor's own advertisement does not violate the Lanham Act. Defendant adds that even evidence of users visiting those Sponsored Links would not demonstrate that the advertisements are necessarily misleading because potential customers frequently shop around and compare brands on their own, even if GEICO's policy precludes them from comparing GEICO's rates on the advertisers' sites.

> FN6. The Complaint also alleges a common law claim of unfair competition. The elements of trademark infringement and unfair competition under the Lanham Act are identical to the elements of unfair competition under Virginia state law. See *Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 930 n. 10 (4th Cir.1995). Accordingly, this Opinion's discussion of the Lanham Act claims applies equally to plaintiff's unfair competition claim.

III. *Discussion*

A. *Fed.R.Civ.P. 52(c)*

*3 During a trial without a jury, after a party has been fully heard on an issue, the court may enter judgment as a matter of law with regard to any claim or defense that "cannot under controlling law be maintained or defeated without a favorable ruling on that issue." Fed.R.Civ.P. 52(c). The court's finding must be supported by findings of fact and conclusions of law, which may be set forth either in open court or in a subsequent memorandum opinion. Fed.R.Civ.P. 52(a).

B. *The Lanham Act*

Under the Lanham Act, a plaintiff alleging trademark infringement and unfair competition must show 1) that it possesses a mark, 2) that the defendant "used" the mark, 3) that the defendant's use of the mark occurred "in commerce," 4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods and/or services and 5) that the defendant used the mark in a manner likely to confuse customers. 15 U.S.C. §§ 1114, 1125(a); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir.2001) (internal quotations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 4
Not Reported in F.Supp.2d, 2005 WL 1903128 (E.D.Va.), 77 U.S.P.Q.2d 1841
**(Cite as: Not Reported in F.Supp.2d)**

omitted). As a threshold matter, as noted above, defendant does not dispute that plaintiff possesses the marks at issue-"GEICO" and "GEICO DIRECT."

*1. Trademark Use "in Commerce" and "in Connection with the Sale, Offering for Sale, Distribution, or Advertising" of Goods and/or Services*

In a previous Memorandum Opinion addressing defendant's Motion to Dismiss, the Court found that plaintiff had sufficiently alleged that defendant "uses" GEICO's trademarks for purposes of the Lanham Act by allowing advertisers to pay to have their ads appear next to the organic listings that result when the marks are entered as search terms. *GEICO,* 330 F.Supp.2d at 704. The Court also found that plaintiff had sufficiently alleged that such use was "in commerce" and "in connection with the sale, offering for sale, distribution, or advertising of goods and services," rejecting defendant's argument that the marks were used only in defendant's computer coding and that such an invisible process could not constitute use under the Act. *Id.* at 704-05. As such, the Court denied defendant's Motion To Dismiss because if the facts alleged in the Complaint were true, defendant could be liable, either directly or indirectly, for its use of plaintiff's trademarks to sell advertising and to place that advertising, labeled as Sponsored Links, alongside the organic listings resulting from searches on those marks. *Id.* at 704.

The Court, however, emphasized that its finding that Google uses the GEICO marks in commerce and "in connection with the sale, offering for sale, distribution, or advertising" of goods or services does not, without more, establish that defendant has violated or continues to violate the Lanham Act.FN7 *Id.* Rather, plaintiff was required to prove at trial that defendant's use results, or at one time resulted, in a likelihood of confusion.

> FN7. The Court found support for this distinction in *McCarthy on Trademarks and Unfair Competition:*

> "[W]here keyword placement of ... advertising is being sold, the portals and search engines are taking advantage of the drawing power and goodwill of these famous marks. The question is whether this activity is fair competition or whether it is a form of unfair free riding on the fame of well-known marks."
> *GEICO,* 330 F.Supp.2d at 704 (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:70.1 (2004)).

*2. Likelihood of Confusion*

*a. The Applicable Standard*

*4 To establish a likelihood of confusion, a plaintiff must prove that the defendant's use of the plaintiff's trademark is "likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods."*PETA,* 263 F.3d at 366. Of particular relevance to this action, in determining whether a likelihood of confusion exists, a court must consider the defendant's use of the mark in its entirety, not in isolation. *Seeid.* The Fourth Circuit has adopted a list of seven factors to guide courts in this analysis: (1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity of the two marks, (3) the similarity of the goods and services that the two marks identify, (4) the similarity of the facilities that the two parties use in their businesses, (5) the similarity of the two parties' advertising, (6) the defendant's intent in adopting the same or similar mark and (7) the existence of actual confusion. *Lone Star,* 43 F.3d at 933. However, the Fourth Circuit has emphasized that likelihood of confusion is a highly factual issue, the assessment of which depends largely on the particular circumstances of each case, *seePetro Stopping Centers, L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 92 (4th Cir.1997), that not all of the factors are relevant in every case, and that the likelihood of confusion standard does not require that a plaintiff prove actual confusion. *SeeLone Star,* 43 F.3d at 933. In addition, other factors, such as the sophistication of the consuming public or the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.