# 5

Westlaw.

Slip Copy
Slip Copy, 2007 WL 30115 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 1

▷
J.G. Wentworth, S.S.C. Ltd. Partnership v.
Settlement Funding LLC
E.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
J.G. WENTWORTH, S.S.C. LIMITED PARTNERSHIP
v.
SETTLEMENT FUNDING LLC d/b/a Peachtree Settlement Funding.
**Civil Action No. 06-0597.**

Jan. 4, 2007.

James Joseph Waldenberger, Ochroch & Graber PC, Philadelphia, PA, Richard L. Crisona, Abelman Frayne & Schwab, New York, NY, for Plaintiff.
Lynn Charytan, Samir C. Jain, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Peter F. Marvin, Marvin & Henkin, Philadelphia, PA, for Defendant.

O'NEILL, J.
*1 On April 10, 2006, plaintiff J.G. Wentworth filed an amended complaint against defendant Peachtree Settlement Funding alleging that defendant engaged in acts of trademark infringement, false representation, trademark dilution, and injury to business reputation in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) (2006). Plaintiff also asserts Pennsylvania state law claims of trademark infringement and unfair competition.FN1 Before me now is defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), plaintiff's response, and defendant's reply thereto.

> FN1. I note that "[t]he test for common law trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act."*Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.,* 94 F.Supp.2d 566, 580 (E.D.Pa.1999); *see also Bijur Lubricating Corp. v. Devco Corp.,* 332 F.Supp.2d 722, 727 (D.N.J.2004) ("[I]n the Third Circuit the test for common law infringement and unfair competition is identical to the test for federal infringement and unfair competition.") (citations omitted). The sole distinction between the federal and state analyses is that the federal claims require an effect on interstate commerce. *See Scott Fetzer Co. v. Gehring,* 288 F.Supp.2d 696, 703 (E.D.Pa.2003). Pursuant to established law, the following analysis applies to both the federal and state law claims at issue in this case.

*I. Parties and Claims*

Plaintiff, a Nevada limited partnership headquartered in Pennsylvania, is a finance company that specializes in providing immediate cash payments in exchange for the rights to future payments from structured settlements, annuities, real estate notes and other assets. Plaintiff regards itself as the undisputed leader in the structured settlement industry and alleges that its registered trademarks for its name and its stylized printing of its name have achieved recognition among the industry and consuming public as a result of extensive promotional efforts, including advertising on television and the internet. Plaintiff alleges that it maintains internet websites at www.jgwfunding.com and www.jgwentworth.com as a critical means of promoting its services and for the benefit of potential consumers.

Defendant, a Georgia limited liability company headquartered in Florida, is a finance company that specializes in providing immediate cash payments in exchange for the rights to future payments from structured settlements and annuities. According to plaintiff, defendant is plaintiff's next nearest competitor in the settlement fund industry.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 2
Slip Copy, 2007 WL 30115 (E.D.Pa.)
**(Cite as: Slip Copy)**

Defendant maintains internet websites at www.settlementfunders.com, www.settlementfunding.com, and www.peachtreesettlementfunding.com.

Plaintiff's claims arise from defendant's alleged use of plaintiff's trademarks in two ways: (1) through Google's AdWords program; and (2) in the "meta tags" for defendant's website. Plaintiff alleges that these uses of plaintiff's name ensures that a link to defendant's website will appear immediately proximate to a link to defendant's website when individuals conduct internet searches for "J.G. Wentworth" or "JG Wentworth."

*II. Google's AdWords Program*

Among other services, Google provides an internet search engine that finds websites related to terms provided by internet users. An internet user seeking information will enter various terms into a space provided on Google's website, and Google's computers will search its database for websites relevant to the terms provided. The Google search engine then will present an ordered list of relevant websites identified by the Google database with the most relevant website listed first. The Google search engine will also present a separate list of websites in a "Sponsored Links" section, either at the top or in the right margin of the search-results screen.

*2 Google's AdWords program is the keyword-triggered advertising program that generates the Sponsored Links section on the search-results screen. Advertisers participating in AdWords purchase or bid on certain keywords, paying Google for the right to have links to their websites displayed in the Sponsored Links section whenever an internet user searches for those words. Additionally, each time an internet user clicks on a particular Sponsored Link, Google charges a fee to the AdWords participant associated with that linked website. Businesses often participate in the AdWords program to generate more visits to their websites.

Plaintiff alleges that defendant infringes on plaintiff's mark through Google's AdWords program by using the terms "J.G. Wentworth" or "JG Wentworth" as its keywords so that an internet search for those terms produces a Sponsored Link to defendant's website immediately proximate to the link to plaintiff's website on the search-results screen. Plaintiff maintains that defendant's participation in Google's AdWords program further infringes upon plaintiff's mark because at least eight different websites use the Google database and thus produce links to defendant's website in response to searches for "J.G. Wentworth" or "JG Wentworth."

The links to defendant's website at issue always appear as independent and distinct links on the search result pages, and plaintiff does not allege that defendant's advertisements and links incorporate plaintiff's marks in any way.

*III. Meta Tags*

Plaintiff further alleges that defendant has inserted plaintiff's marks into its keyword meta tags for its website. "Meta tags" are pieces of the Hyper Text Markup Language ("HTML") source code which contain keywords used to describe the contents of a web page. There are three types of meta tags: (1) descriptive meta tags, which describe the content of the document; (2) keyword meta tags, which are used by internet search engines to help determine whether a particular web page is relevant to a search term entered by a user; and (3) robot meta tags, which indicate to search engines that certain web pages are not to be indexed by the search engine. Meta tags are invisible to Internet users but are used by search engines to index websites. Upon indexing relevant websites, a search engine uses algorithms to process the keywords in the meta tags to produce a search results page that displays links to relevant websites in a list typically in order of decreasing relevance.

Plaintiff alleges that defendant uses plaintiff's marks in its keyword meta tags for fourteen different web pages on defendant's website. Plaintiff asserts that this alleged use infringes upon

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3
Slip Copy, 2007 WL 30115 (E.D.Pa.)
(Cite as: Slip Copy)

its mark and causes search engines to include a link to defendant's website on the search results page when users search the Internet for "J.G. Wentworth" or "JG Wentworth." Plaintiff contends that defendant infringes upon plaintiff's mark because a link to defendant's website appears in response to searches on ten internet search engines that have no relationship with Google.

*IV. Harm to J.G. Wentworth*

*3 Plaintiff asserts that defendant's alleged uses of plaintiff's marks through the AdWords program and in keyword meta tags constitute infringing acts that are intended to confuse consumers and to divert potential consumers away from plaintiff's website. Plaintiff contends that by using plaintiff's marks in these ways defendant steals plaintiff's potential customers and erodes the distinctiveness of plaintiff's marks, thus causing a significant loss of profits to plaintiff. Plaintiff further alleges that defendant intermittently complies with plaintiff's demands to cease all use of its marks, and this compliance evinces a practice of knowing infringement on the part of defendant.

STANDARD OF REVIEW

**Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6) (2006). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff [ ] may be entitled to relief."***Nami v. Fauver,* **82 F.3d 63, 65 (3d Cir.1996) (citations omitted). Nevertheless, in evaluating plaintiff's pleadings I will not credit any "bald assertions."** *In re Burlington Coat Factory Sec. Litig.,* **114 F.3d 1410, 1429 (3d Cir.1997). Nor will I accept as true legal conclusions or unwarranted factual inferences.** *Conley v. Gibson,* **355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."The complaint will be deemed to have alleged sufficient facts if it adequately put the defendant on notice of the essential elements of the plaintiff['s] cause of action."** *Nami,* **82 F.3d at 65.**"It is black-letter law that [a] motion to dismiss for failure to state a claim ... is to be evaluated only on the pleadings."*Mele v. Fed. Reserve Bank of N .Y.,* 359 F.3d 251, 257 (3d Cir.2004)*citing A.D. Bedell Wholesale Co. v. Philip Morris, Inc.,* 263 F.3d 239, 266 (3d Cir.2001). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[ ] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims."*Nami,* 82 F.3d at 65*citing Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Thus, a Rule 12(b)(6) motion may be granted "only if it appears that the plaintiff[ ] could prove no set of facts that would entitle [him] to relief."*Id. citing Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

DISCUSSION

In order to establish violations of either Section 32(1) or Section 43(a) of the Lanham Act,[FN2] plaintiff must demonstrate: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services."*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994).

> FN2. Section 32(1) of the Lanham Act states:
> (1) Any person who shall, without the consent of the registrant-
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  Page 4
Slip Copy, 2007 WL 30115 (E.D.Pa.)
(Cite as: Slip Copy)

apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.
15 U.S.C. § 1114(1).
Section 43(a) of the Lanham Act states:
(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1).

*4 In the present motion, defendant asserts that plaintiff cannot meet the third element of a trademark infringement and unfair competition claim. Specifically, defendant argues that: (1) plaintiff cannot demonstrate that defendant made use of plaintiff's marks to identify the source of goods or services, and (2) no likelihood of confusion exists as a matter of law. I find that defendant made trademark use of plaintiff's marks, but because this use creates no likelihood of confusion as a matter of law I will grant defendant's motion to dismiss.

*I. Trademark Use*

The first issue presented here is whether purchase and use of a trademark-protected keyword for the purpose of triggering internet advertising constitutes the type of "use in commerce" contemplated by the Lanham Act. Defendant, in its motion to dismiss, cites numerous cases from other circuits for the general proposition that "[t]here can be no liability under the Lanham Act absent the use of a trademark in a way that identifies the products and services being advertised by the defendant."*Wells Fargo & Co. v. WhenU.com, Inc.,* 293 F.Supp.2d 734, 757 (E.D.Mich.2003). Pursuant to this proposition, defendant argues that plaintiff fails to state a claim because defendant's alleged uses of plaintiff's marks in this case through Google's AdWords program and in keyword meta tags in no way identify the source of the goods and services, as the alleged uses of the plaintiff's marks are confined to source code unpublished to potential consumers. Defendant asserts that this "pure machine-linking function," *U-Haul Int'l, Inc. v. WhenU.com, Inc.,* 279 F.Supp.2d 723, 725-26 (E.D.Va.2003), is a "non-trademark way of using another's mark-that is, [ ] a way that does not identify the source of a product," analogous to drug manufacturers' practices of purchasing rights to place its generic products next to name brand competitors' products on a drug store shelf. Motion to Dismiss of Defendant at 9-10 (internal quotation marks omitted) *quoting Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 695 (6th Cir.2003).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.