Slip Copy
Slip Copy, 2007 WL 30115 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 5

The United States District Court for the District of New Jersey recently faced this precise question as it pertains to Google's AdWords program. *See Buying for the Home, LLC v. Humble Abode, LLC,* 2006 WL 3000459 (D.N.J. Oct.20, 2006). As is alleged here, defendant in *Buying for the Home* purchased search terms through Google's AdWords program, including plaintiff's marks, to generate Sponsored Links. *Id.* at *7. The Court first acknowledged that "[t]he Third Circuit has not spoken on the issue of whether the purchase and/or sale of keywords that trigger advertising constitutes the type of 'use' contemplated by the Lanham Act, and decisions from other courts that have addressed the issue are conflicting."*Id.* at *6. While recognizing that participation in Google's AdWords program "is certainly not a traditional 'use in commerce' " under prior applications of the Lanham Act, in the context of this new technology the Court held that such acts satisfy the Lanham Act's "use" requirement. *Id.* at *8. The Court reasoned:

*5 First, the alleged purchase of the keyword was a commercial transaction that occurred "in commerce," trading on the value of Plaintiff's mark. Second, Defendants' alleged use was both "in commerce" and "in connection with any goods or services" in that Plaintiff's mark was allegedly used to trigger commercial advertising which included a link to Defendants' furniture retailing website. Therefore, not only was the alleged use of Plaintiff's mark tied to the promotion of Defendants' good and retail services, but the mark was used to provide a computer user with direct access (i.e., a link) to Defendants' website through which the user could make furniture purchases. The Court finds that these allegations clearly satisfy the Lanham Act's "use" requirement.

*Id.*

This reasoning contradicts the analyses of the cases cited by defendant, including a recent opinion by the United States Court of Appeals for the Second Circuit which stated:
A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

*1-800 Contacts, Inc. v. WhenU.com, Inc.,* 414 F.3d 400, 409 (2d Cir.2005) (holding that defendant's inclusion of plaintiff's website address, www.1800contacts.com, in its own website's directory did not infringe on plaintiff's similar 1-800CONTACTS trademark because defendant never "place[d] 1-800 trademarks on any goods or services in order to pass them off as emanating from or authorized by 1-800" (internal quotation marks omitted)).

It is important to note that none of the *WhenU.com* line of cases cited by defendant [FN3] involve the purchase of specified keywords as is the practice of defendant via Google's AdWords program. *See 1-800 Contacts,* 414 F.3d at 411 ("WhenU does not 'sell' keyword trademarks to its customers or otherwise manipulate which category-related advertisement will pop up in response to any particular terms on the internal directory."). Further, I must disagree with defendant's assertion that the Second Circuit did not find relevant a distinction between use of a public domain address in defendant's database and use of the trademark itself. In *1-800 Contacts,* the Second Circuit expressly stated:

> FN3.*1-800 Contacts, Inc. v. WhenU.com, Inc.,* 414 F.3d 400 (2d Cir.2005); *Wells Fargo & Co. v. WhenU.com, Inc.,* 293 F.Supp.2d 734 (E.D.Mich.2003); *U-Haul Int'l, Inc. v. WhenU.com, Inc.,* 279 F.Supp.2d 723 (E.D.Va.2003).

The district court found that the differences between 1-800's trademarks and the website address utilized by WhenU were insignificant .... We conclude that, to the contrary, the differences between the marks are quite significant because they transform 1-800's trademark-which is entitled

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 30115 (E.D.Pa.)
(Cite as: Slip Copy)

Page 6

to protection under the Lanham Act-into a word combination that functions more like a public key to 1-800's website.... [T]o capitalize on the fame and recognition of 1-800's trademark ... [defendant] would have needed to put the actual trademark on the list.

*6 Id. at 408-09 & 409 n. 11 (adding that "[t]his observation ... is not intended to suggest that inclusion of a trademark in the directory would necessarily be an infringing 'use.' We express no view on this distinct issue.").

I find that defendant's participation in Google's AdWords program and defendant's incorporation of plaintiff's marks in its keyword meta tags constitute trademark use under the Lanham Act. Defendant focuses on the identification aspect of the use requirement, essentially arguing that use of plaintiff's marks in a method invisible to potential consumers precludes a finding of trademark use. But like the Court in *Buying for the Home*, I recognize that defendant's use of plaintiff's marks to trigger internet advertisements for itself is the type of use consistent with the language in the Lanham Act which makes it a violation to use "in commerce" protected marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services," or "in connection with any goods or services."15 U.S.C. §§ 1114(1) and 1125(a)(1). Such use is not analogous to "an individual's private thoughts" as defendant suggest By establishing an opportunity to reach consumers via alleged purchase and/or use of a protected trademark, defendant has crossed the line from internal use to use in commerce under the Lanham Act.

## II. Likelihood of Confusion

Defendants in *Buying for the Home* sought summary judgment on infringement only on "trademark use" grounds, and their motion was denied. My analysis here continues because defendant alternatively has challenged plaintiff's claim on "likelihood of confusion" grounds. Because "the question of likelihood of confusion is ultimately one of fact,"*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 237 (3d Cir.2000), I may grant defendant's motion to dismiss only if defendant can establish that "no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove."*Qwest Commc'ns Int'l v. Cyber-Quest, Inc.*, 124 F.Supp.2d 297, 304 (M.D.Pa.2000). I conclude that defendant has carried this burden. Even accepting plaintiff's allegations as true-i.e., assuming that defendant did in fact use plaintiff's marks through Google's AdWords program or in the keyword meta tags for its website-as a matter of law defendant's actions do not result in any actionable likelihood of confusion under the Lanham Act.

Likelihood of confusion exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the course of a different product or service identified by a similar mark."*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir.2001) (citations omitted)."The marks need not be identical and proof of actual confusion is not necessary to establish a likelihood of confusion."*First Am. Marketing Corp. v. Canella*, 2004 WL 250537, at *4 (E.D.Pa. Jan.26, 2004)*citing Fisons*, 30 F.3d at 477 (emphasis in original omitted). As plaintiff recognizes, the Court of Appeals has held that "initial interest confusion is actionable under the Lanham Act."*Checkpoint Sys.*, 269 F.3d at 292. Initial interest confusion applies where "similar marks could ultimately affect a consumer's consideration of the defendant's product as well as affect the plaintiff's goodwill with its customers."*Id.* at 293*citing Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir.1987) ("[P]otential purchasers would be misled into an initial interest in [defendant]. Such initial confusion works a sufficient trademark injury.").

*7 The Court of Appeals, in approving initial interest confusion as probative of a Lanham Act violation, reasoned that "[w]ithout initial interest protection, an infringer could use an established mark to create confusion as to a product's source thereby receiving a 'free ride on the good will' of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 30115 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 7

the established mark." *Id.* at 294-95 *citing Mobil Oil Corp.*, 818 F.2d at 260 (holding that likelihood that "potential purchases would be misled into an initial interest" justifies a finding of infringement). In *Checkpoint Systems*, the Court of Appeals noted that other courts have "equated initial interest confusion to a 'bait and switch scheme.' " *Id.* at 294 *citing Dorr-Oliver, Inc. v. Fluid Quip, Inc.*, 94 F.3d 376, 382 (7th Cir.1996) ( "[T]he Lanham Act forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's even if confusion as to the source of the goods is dispelled by the time any sales are consummated. This 'bait and switch' of producers, also known as 'initial interest' confusion, will affect the buying decisions of consumers in the market for the goods, effectively allowing the competitor to get its foot in the door by confusing consumers." (internal citation omitted)). Essentially, initial interest protection has extended the Lanham Act's applicability to pre-sale confusion as well as post-sale confusion. *See id.* at 295 (finding that the 1962 amendment to the Lanham Act which deleted the term "purchasers" from the Act "expanded the reach of the Lanham Act beyond mere purchases to recognize pre-sale confusion as well as post-sale confusion").

Plaintiff argues that initial interest confusion applies to defendant's use of plaintiff's registered marks through Google's AdWords program and in its keyword meta tags. Though plaintiff cites numerous cases from other jurisdictions that extend initial interest protection to keyword meta tags, plaintiff notes that the Court of Appeals for this Circuit has not done so. The seminal case supporting plaintiff's position is *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir.1999). In *Brookfield*, defendant's use of plaintiff's "MovieBuff" mark in its meta tags caused numerous search engines to display a link to defendant's website when users searched the Internet for "MovieBuff." *Id.* at 1062. The United States Court of Appeals for the Ninth Circuit held that, although use of a protected mark in meta tags does not result in confusion as great as use of a protected mark in a domain name,

defendant's use of plaintiff's mark still resulted in initial interest confusion because defendant was improperly benefitting from the goodwill plaintiff developed in its mark. *Id.*

I respectfully disagree with the Ninth Circuit's conclusion in *Brookfield.* The Court asserted that "[w]eb surfers looking for [plaintiffs] "MovieBuff" products who are taken by a search engine to [defendant's website] will find a database similar enough ... such that a sizeable number of consumers who were originally looking for [plaintiff's] product will simply decide to utilize [defendant's] offerings instead." *Id.* I find this to be a material mischaracterization of the operation of internet search engines. At no point are potential consumers "taken by a search engine" to defendant's website due to defendant's use of plaintiff's marks in meta tags. Rather, as in the present case, a link to defendant's website appears on the search results page as one of many choices for the potential consumer to investigate. As stated above, the links to defendant's website always appear as independent and distinct links on the search result pages regardless of whether they are generated through Google's AdWords program or search of the keyword meta tags of defendant's website. Further, plaintiff does not allege that defendant's advertisements and links incorporate plaintiff's marks in any way discernable to internet users and potential customers.

*8 Like *Buying for the Home*, the cases cited by the Ninth Circuit in *Brookfield* recognized that initial interest confusion must create in consumers confusion as to the source of the goods or services or a misunderstanding as to an association between the mark holder and the mark user. *See, e.g., Mobil Oil*, 818 F.2d at 260 (finding initial interest protection applied where defendant's use of the term "Pegasus" would cause confusion with plaintiff's mark, a flying horse symbol in the form of a Pegasus, because "potential purchasers would be misled into an initial interest in [defendant]" as a result of such use). Due to the separate and distinct nature of the links created on any of the search results pages in question, potential consumers have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 30115 (E.D.Pa.)
**(Cite as: Slip Copy)**

Page 8

no opportunity to confuse defendant's services, goods, advertisements, links or websites for those of plaintiff. Therefore, I find that initial interest protection does not apply here. Because no reasonable factfinder could find a likelihood of confusion under the set of facts alleged by plaintiff, I will grant defendant's motion to dismiss.

An appropriate Order follows.

AND NOW, this 4th day of January 2007, upon consideration of defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff's response, and defendant's reply thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendant's motion is GRANTED and plaintiff's complaint is DISMISSED.

The CLERK OF COURT is DIRECTED to close this case statistically.

E.D.Pa.,2007.
J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC
Slip Copy, 2007 WL 30115 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.