Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

at 118. The defendants have not exercised diligence. Not only did they fail to object to personal jurisdiction in their first defensive move, but they also waived any right to contest jurisdiction by acting thereafter in such a manner as to recognize the court's exercise of authority over them. For these reasons, the defendants' motion to dismiss for lack of jurisdiction is denied.

B. *Motion to Dismiss for Failure to State a Claim*

1. *Legal Standard for Waiver or Preservation of a Rule 12(b)(6) Defense*

Federal Rule of Civil Procedure 12(g) provides that "[i]f a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party which [Rule 12] permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, *except a motion as provided in subdivision h(2) hereof*...."FED. R. CIV. P. 12(g) (emphasis added). Subdivision h(2) in turn provides that "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."FED. R. CIV. P. 12(h)(2). Read together, Rule 12(g) exempts a Rule 12(b)(6) defense from its consolidation requirement, and Rule 12(h)(2) preserves the defense from Rule 12(h)(1)'s waiver mechanism. 5A C. Wright & A. Miller, Federal Practice and Procedure § 1361 (2003 Supp.) at 666.

2. *The Defendants' Right to Raise a Rule 12(b)(6) Defense*

*6 Before addressing the substantive merits of the defendants' Rule 12(b)(6) motion, the court must again address MCW's claims of waiver. MCW argues that the defendants are barred from asserting the Rule 12(b)(6) motion because they failed to bring that defense in their first Rule 12(b) motion. MCW's Response at 5. MCW contends, in other words, that the ban against successive pre-answer motions includes Rule 12(b)(6) defenses, and that the right to maintain the defense is lost if the defendants neglect to include it in their first Rule

12(b) motion. In this instance, however, MCW is wrong.

MCW has failed to read the provisions of Rule 12(g) and 12(h)(2) in tandem. Together, Rules 12(g) and (h)(2) operate to exempt a Rule 12(b)(6) defense from the consolidation requirement and to preserve that defense from waiver. 5A C. Wright & A. Miller, Federal Practice and Procedure § 1361 (2003 Supp.) at 666. Therefore, the fact that the defendants did not assert a Rule 12(b)(6) defense in their first Rule 12(b) motion does not bar them from asserting a Rule 12(b)(6) defense in the present motion. As a result, the court will proceed to address the merits of the Rule 12(b)(6) motion.

3. *Legal Standard for Dismissal Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."FED. R. CIV. P. 12(b)(6). There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leffall v. Dallas Independent School District,* 28 F.3d 521, 524 (5th Cir.1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied,*459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. See *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.,* 30 F.3d 627, 629 (5th Cir.1994); *Norman v. Apache Corporation,* 19 F.3d 1017, 1021 (5th Cir.1994); *Chrissy F. by Medley v. Mississippi Department of*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 7
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

*Public Welfare,* 925 F.2d 844, 846 (5th Cir.1991). However, conclusory allegations and unwarranted factual deductions will not suffice to prevent a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375, 379 (5th Cir.2003).

### 4. The Defendants' Grounds for Dismissal Pursuant to Rule 12(b)(6)

#### a. The Communications Decency Act

*7 The defendants base their Rule 12(b)(6) motion, in part, on the contention that all of MCW's claims are barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Defendants' Motion to Dismiss at 8-9. The CDA, if applicable, is an appropriate ground for dismissal of the complaint under Rule 12(b)(6) because the Act would preclude MCW from establishing a set of facts that would entitle it to relief. See generally *Schneider v. Amazon.com, Inc.,* 108 Wash.App. 454, 31 P.3d 37 (Wash.Ct.App.2001) (affirming the trial court's decision to dismiss a cause of action, pursuant to a Rule 12(b)(6) motion, where immunity was extended to Amazon.com through the CDA).

The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."47 U.S.C. § 230(c)(1). The term "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."*Id.* § 230(f)(2). The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."*Id.* § 230(f)(3).

Under this statutory scheme, Congress has immunized interactive computer services from any cause of action that would make them liable for publishing information provided by a third-party user of the service. *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1122 (9th Cir.2003); *Zeran v. America Online, Inc.,* 129 F.3d 327, 330-31 (4th Cir.1997), *cert. denied,*524 U.S. 937, 118 S.Ct. 2341, 141 L.Ed.2d 712 (1998). The CDA, however, does not immunize an interactive computer service if it also functions as an information content provider for the portion of the statement or publication at issue.*Carafano,* 339 F.3d at 1123, 1125; see also *Blumenthal v. Drudge,* 992 F.Supp. 44, 50 (D.D.C.1998) (acknowledging that § 230(c)(1) would not immunize AOL with respect to any information developed or created entirely by itself and that joint liability would be possible if AOL "had any role in creating or developing any of the information" in the posted material); *Schneider,* 31 P.3d at 43 (implying that its determination that Amazon.com qualified for immunity would be different had Amazon.com contributed to the creation or development of the material). The CDA requires courts to determine, therefore, when content provided by third-parties is somehow transformed into content created or developed by an interactive computer service. *Carafano v. Metrosplash.com, Inc.,* 207 F.Supp.2d 1055, 1067-68 (C.D.Cal.2002), *aff'd on other grounds,*339 F.3d 1119 (9th Cir.2003) (rejecting the trial court's conclusion that Matchmaker.com was an information content provider).

*8 The distinction between merely publishing information provided by a third-party as an interactive computer service and actually creating or developing any of the information posted as an information content provider is critical. See *Carafano,* 207 F.Supp.2d at 1067. That distinction determines whether the CDA provides immunity to a provider or user of an interactive computer service. *See*47 U.S.C. § 230(c)(1). Claims against interactive computer services are barred only if they seek to hold the party liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone, or alter content. *Zeran,* 129 F.3d at 330. Therefore, the right to edit a posting and the act of editing do not prohibit an interactive computer service from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 8
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

falling under the CDA's protective umbrella of immunity.[FN7]*Schneider,* 31 P.3d at 43 (finding that the mere right to edit did not exclude Amazon.com from the scope of protection granted by § 230); *Zeran,* 129 F.3d at 330-31 (finding that AOL was protected when exercising a publisher's traditional editorial functions, such as determining whether to alter content). An interactive computer service is not required to serve as an intermediary or a mere conduit in order to enjoy immunity.[FN8] See *Carafano,* 339 F.3d at 1124-25 (disagreeing with the trial court's conclusion that Matchmaker was an information content provider even though Matchmaker was more than a mere conduit of information). Indeed, some courts hold that it is not inconsistent with the CDA for an interactive computer service to act as both an interactive service provider and an information content provider.[FN9] *Batzel v. Smith,* 333 F.3d 1018, 1031 (9th Cir.2003), *pet. for cert. filed* (Mar. 2, 2004) (No. 03-1247); *Carafano,* 339 F.3d at 1125 (quoting *Gentry v. eBay, Inc.,* 99 Cal.App.4th 816, 121 Cal.Rptr.2d 703 (2002)). Therefore, it is not sufficient for courts to limit their inquiries by asking only whether an interactive computer service acts as an information content provider. "The critical issue is whether ... [the interactive computer service] acts as an information content provider with respect to the information" that was posted. *Carafano,* 339 F.3d at 1125; see also *Batzel,* 333 F.3d at 1031 (stating that the pertinent question is "whether Cremers can also be considered to have created or developed Smith's e-mail message forwarded to the listserv") (internal quotations omitted).Section 230(c) immunity is not so broad as to extend to an interactive computer service that goes beyond the traditional publisher's role and takes an active role in creating or developing the content at issue.

> FN7. The Ninth Circuit has gone even farther, stating that "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."*Carafano,* 339 F.3d at 1124.

> FN8. To hold otherwise-that an interactive computer service could not engage in a selection or editing process-would circumvent one of the primary objectives of the CDA. Although Congress enacted § 230(c) of the CDA for numerous policy reasons, 47 U.S.C. § 230(b)(1-5), one of the primary reasons was to encourage voluntary monitoring for offensive or obscene material. *Id.* § 230(b)(4); *Carafano,* 339 F.3d at 1122 (citing *Batzel v. Smith,* 333 F.3d 1018, 1026-30 (9th Cir.2003)). Denying immunity protection to parties who edit offensive or obscene material would deter, rather than promote, self-regulation.

> FN9. Allowing a party to act as both an interactive computer service and an information service provider is consistent with the language of the statute, which precludes treatment as a publisher or speaker only when the information at issue is provided by *"another* information content provider." 47 U.S.C. § 230(c)(1) (emphasis added); *Carafano,* 339 F.3d at 1125.

In order for the defendants to enjoy immunity under the CDA, they must establish that: (1) both Magedson and BBB are providers or users of an interactive computer service, (2) neither Magedson nor BBB act as an information content provider with respect to the information that was posted, and (3) the asserted claims treat the defendants as a publisher or speaker of information originating from a third-party. The defendants contend that the CDA immunizes them from MCW's claims because they are a web site host exercising a publisher's traditional editorial functions. Defendants' Reply at 7. The defendants further contend that MCW's claims are barred by the CDA because the allegations of actively posting reports, removing reports, removing parts of reports, encouraging reports, and failing to correct reports do not rise to the level of creating or developing information as an information content provider. *Id.* MCW's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

allegations, the defendants argue, only cover protected editorial activities. *Id.* Additionally, the defendants assert that MCW failed to allege that the defendants create or develop the information in the consumer reports. *Id.* at 7-8. According to the defendants, MCW alleges that the defendants are information content providers only because they edit and create *titles* to the consumer reports, as opposed to editing and creating the *contents* of the reports. *Id.* The defendants claim that this distinction is significant because merely editing and creating titles is insufficient to establish their status as information content providers so as to deprive them of CDA immunity. *Id.* Holding otherwise, the defendants argue, would circumvent the CDA and be contrary to public policy. *Id.* at 7. For the reasons discussed below, the court disagrees with these arguments.

*9 First, the defendant Magedson does not qualify for immunity under the CDA because he is neither a provider nor a user of an interactive computer service. Section 230(c)(1) of the CDA only extends immunity to a "provider or user of an interactive computer service." 47 U.S.C. § 230(c)(1). Reviewing courts have construed the term "interactive computer service" rather broadly, finding that web hosts are recognized as providers of interactive computer services. See, *e.g., Carafano v. Metrosplash.com, Inc.,* 207 F.Supp.2d 1055, 1065-1066 (C.D.Cal.2002) (concluding that Matchmaker.com is a website operator qualifying as a provider of an interactive computer service), *aff'd on other grounds,* 339 F.3d 1119 (9th Cir.2003); *Gentry v. eBay, Inc.,* 99 Cal.App.4th 816, 831, 121 Cal.Rptr.2d 703 (2002) (holding that a website is an interactive computer service); *Schneider v. Amazon.com,* 108 Wash.App. 454, 31 P.3d 37, 40-41 (Wash.App.2001) (same). These courts have concluded that such an expansive interpretation is required by the broad definitions of interactive computer service and information content provider in § 230(f). Whereas the definition of interactive content provider refers to "information provided through the Internet or any *other* interactive computer service," § 230(f)(3), suggesting that the statutory immunity extends beyond the Internet itself, the definition of interactive computer service states that it "includ[es] specifically a service or system that provides access to the Internet," § 230(f)(2), further suggesting that services providing access to the Internet itself (such as Internet Service Providers) are only a subset of the services to which statutory immunity applies. See also *Carafano,* 207 F.Supp.2d at 1065-66 (recognizing that Internet service providers are only a subset of interactive services to which § 230 immunity applies); *Batzel,* 333 F.3d at 1030 (same); *Schneider,* 31 P.3d at 40 (same).

Both BBB and Magedson claim that they qualify for § 230(c) immunity as providers of an interactive computer service because they operate a web site. MCW does not dispute that BBB is a provider of an interactive computer service. However, MCW does object to Magedson receiving immunity under the CDA. The defendants have failed to offer any proof that Magedson is a provider or user of an interactive computer service. See MCW's Response at 17 n. 78. More importantly, the court notes that the defendants have consistently portrayed Magedson as an individual who neither owns nor operates the websites at issue. Defendants' Motion to Dismiss at 2; Defendants' Reply at 5. If Magedson neither owns nor operates the websites, he cannot qualify as an interactive computer service. See 47 U.S.C. § 230(f)(2). Because Magedson is not shown to be an interactive computer service, he fails the first requirement for immunity under the CDA and cannot qualify for § 230(c) immunity.

Moreover, even if Magedson could somehow qualify for immunity as an interactive computer service, neither he nor BBB meets the other requirements for § 230(c) immunity. Both Magedson and BBB satisfy the definition of information content providers with respect to the disputed consumer complaints posted on the websites. In determining whether the defendants qualify as information content providers, the critical issue is whether they are "responsible, in whole or in part, for the creation or development of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 10
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

[any disputed] information."§ 230(f)(3). In this case, the defendants are clearly information content providers. Contrary to the defendants' arguments, MCW is not seeking to hold the defendants liable for merely publishing information provided by a third party. Rather, MCW is seeking relief because the defendants themselves create, develop, and post original, defamatory information concerning Bernard Haldane. MCW's Response at 21-22. Indeed, the defendants do not dispute MCW's allegations that the defendants personally write and create numerous disparaging and defamatory messages about Bernard Haldane in the form of report titles and various headings.[FN10] Neither do the defendants dispute that they have also created and posted other disparaging editorial messages about Bernard Haldane.[FN11]

> FN10. MCW has alleged, and neither defendant has denied, that the defendants create report titles such as "Con Artists," "Scam," and "Ripoff," and organize the reports under headings such as "Con Artists" and "Corrupt Companies." MCW's Response at 18.

> FN11. MCW has also alleged that in addition to creating report titles and headings, the defendants personally wrote and created various messages, including: (1) "We will not rest until [Plaintiff] either change[s] their fraudulent business practices or are run out of business. In the meantime, we will do our best to help their victims get their money back ...."; and (2) "The comments by the victim above are typical to Rip-off Report of Bernard Haldane. Usually forced statements derive from the victim in order to receive FULL or partial settlement from the Bernard Haldane SCAM which has bilked thousands of victims of millions of dollars fraudulently worldwide. Rip-off Report has relentlessly pursued this corrupt company...." MCW's Response at 18-19 (emphasis in original omitted).

*10 Rather than disputing the substance of MCW's allegations, the defendants maintain that the allegations are insufficient to prevent them from receiving immunity under the CDA, because MCW's trademark infringement and defamation claims are based on the *content* of the reports from third-party consumers rather than the *titles or headings* of the reports. Defendants' Reply at 10. The defendants are mistaken here. They have misinterpreted both MCW's claims and the CDA. First, MCW's claims are clearly based on the disparaging titles, headings, and editorial messages that MCW alleges the defendants created. *See* MCW's Amended Complaint at 14-18; MCW's Response at 22-25. Second, the CDA does not distinguish between acts of creating or developing the contents of reports, on the one hand, and acts of creating or developing the titles or headings of those reports, on the other. The titles and headings are clearly part of the web page content. Accordingly, the defendants are information content providers with respect to the website postings and thus are not immune from MCW's claims.

In addition to creating headings, report titles, and messages, the defendants are also information content providers because they are "responsible, in whole or in part, for the creation or development" of third party defamatory messages.[FN12] § 230(f)(3). MCW alleges that the defendants actively encourage, instruct, and participate in the consumer complaints posted on the websites. Specifically, MCW contends, the defendants, in an e-mail signed by Magedson, encouraged a consumer to take photos of (1) the owner, (2) the owner's car with license plate, (3) the owner handing out Rip-off Reports in front of Haldane's offices, and (4) the Bernard Haldane sign in the background with the Rip-off Reports in hand, all so that the defendants could include these photos on the websites. MCW's Response at 21. These allegations, which the defendants neither deny nor address, suggest-at a minimum-that the defendants are responsible for the materials created and developed by the consumer. The defendants cannot disclaim responsibility for disparaging material that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.