Not Reported in F.Supp.2d                                                                                    Page 11
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

they actively solicit. Furthermore, actively encouraging and instructing a consumer to gather specific detailed information is an activity that goes substantially beyond the traditional publisher's editorial role. The defendants are clearly doing more than making minor alterations to a consumer's message. They are participating in the process of developing information. Therefore, the defendants have not only incurred responsibility for the information developed and created by consumers, but have also gone beyond the publisher's role and developed some of the defamatory information posted on the websites.

> FN12. The CDA requires courts to consider whether a party *"is responsible, in whole or in part, for the creation or development of information."*§ 230(f)(3) (emphasis added). Therefore, the statute does not require a court to determine only whether a party creates or develops the information at issue. Being responsible for the creation or development of the information is sufficient. This distinction is significant because a party may be responsible for information created or developed by a third party without actually creating or developing the information itself. Some courts have ignored this distinction, broadening the scope of immunity to protect those who do not create or develop the information themselves, but are still responsible for the creation or development of information. See *Carafano,* 339 F.3d at 1124.

Because the defendants are information content providers with respect to the report titles, headings, and some of the defamatory messages posted on the websites, they cannot claim § 230 immunity under the CDA. Therefore, the CDA does not provide a basis for dismissal of this complaint. To the extent that any part of the defendants' Rule 12(b)(6) motion rests squarely on the contention that all of MCW's claims are barred by the CDA, that part of the defendants' motion is denied. The court must now consider the alternative grounds on which the defendants move for dismissal under Rule 12(b)(6).

### b. *Lanham Act Causes of Action*

**\*11** MCW asserts two separate causes of action against the defendants under the Lanham Act: one for unfair competition under 15 U.S.C. § 1125(a)(1)(A), and the other for false advertising under 15 U.S.C. § 1125(a)(1)(B). The unfair competition or "consumer confusion" section of the Lanham Act "is intended to prevent confusion, mistake, or deception regarding the *source* of goods or services."*In re Connecticut Mobilecom, Inc.,* No. 02-12725 REG, 02-02519 WHP, 2003 WL 23021959, at \*8-\*9 (S.D.N.Y. Dec.23, 2003) (emphasis added) (quoting *Target Adver. v. Miller,* No. 01 CIV. 7614(AGS), 2002 WL 999280, at \*6 (S.D.N.Y. May 15, 2002)).Section 1125(a)(1)(A) provides, in relevant part, that "[a]ny person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."15 U.S.C. § 1125(a)(1)(A).

The false advertising section of the Lanham Act, on the other hand, "is intended to prevent confusion, mistake, or deception regarding the *characteristics or qualities* of goods or services."*Connecticut Mobilecom,* 2003 WL 23021959, at \*9 (emphasis added) (quoting *Target,* 2002 WL 999280, at \*8).Section 1125(a)(1)(B) provides, in relevant part, that "[a]ny person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 12
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."15 U.S.C. § 1125(a)(1)(B).

The defendants move to dismiss both of MCW's Lanham Act claims. The defendants contend that MCW fails to state an unfair competition claim because MCW is not in direct competition with the defendants. The motion for dismissing the false advertising claim rests on the argument that the use complained of is not in "commercial advertising or promotion." Defendants' Motion to Dismiss at 9. However, before addressing the merits of the defendants' motion to dismiss, the court must first consider whether MCW has standing to bring a Lanham Act claim.

i. Prudential Standing

*12 Although neither party has raised the issue of standing, the court may consider it *sua sponte. Bauer v. Texas,* 341 F.3d 352, 357 (5th Cir.2003); *Lang v. French,* 154 F.3d 217, 222 n. 28 (5th Cir.1998). There are two components to the standing doctrine. The traditional component refers to Article III standing, requiring a party to show injury, causation, and redressability. *Okpalobi v. Foster,* 244 F.3d 405, 425 (5th Cir.2001). Article III standing imposes constitutional limitations on the jurisdiction of the federal courts. *Ruiz v. Estelle,* 161 F.3d 814, 829 n. 22 (5th Cir.1998). Beyond constitutional requirements, federal courts also adhere to a second component that bears on the question of standing-a set of prudential principles. *Bauer,* 341 F.3d at 357;*McClure v. Ashcroft,* 335 F.3d 404, 411 (5th Cir.2003) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

Prudential standing requirements are judicially created limits. *Procter & Gamble Company v. Amway Corporation,* 242 F.3d 539, 560 (5th Cir.), *cert. denied,*534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001). The requirements "help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers."*McClure,* 335 F.3d at 411 (quoting *Ruiz,* 161 F.3d at 829 n. 22). Specifically, those requirements address "whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties."*Procter & Gamble,* 242 F.3d at 560.

This court is faced with determining whether MCW has prudential standing under the Lanham Act. Although prudential standing considerations are significantly lessened where Congress has authorized a party's intervention into a case, *Raines v. Byrd,* 521 U.S. 811, 820, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), the Fifth Circuit has already concluded that "Congress did not intend to abrogate prudential standing principles with respect to the Lanham Act."*Logan v. Burgers Ozark Country Cured Hams, Inc.,* 263 F.3d 447, 460 n. 9 (5th Cir.2001) (citing *Procter & Gamble,* 242 F.3d at 560-61). Accordingly, in light of Congress's failure to abrogate, the court must apply this circuit's five-factor test to determine whether MCW has prudential standing under the Lanham Act. *See, e.g., Ford v. NYLcare Health Plans, Inc.,* 301 F.3d 329, 331-32 n. 1 (5th Cir.2002) (outlining the test for determining prudential Lanham Act standing), *cert. denied,*538 U.S. 923, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003); *Logan,* 263 F.3d at 460-62 (same); *Procter & Gamble,* 242 F.3d at 562-65 (adopting the test set forth in *Conte Brothers Automotive, Inc. v. Quaker State-Slick 50, Inc.,* 165 F.3d 221, 229 (3rd Cir.1998)); *KIS, S.A. v. Foto Fantasy, Inc.,* 240 F.Supp.2d 608, 616 (N.D.Tex.2002). The five factors to be considered are "(1) the nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of [the Lanham Act]?; (2) the directness or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

Page 13

indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages."*Procter & Gamble,* 242 F.3d at 563 (internal quotation marks omitted). Weighed together, these factors reveal that MCW lacks prudential standing to bring the unfair competition and false advertising claims under the Lanham Act.

*13 The first factor directs the court to decide "whether the alleged injury is of a type Congress sought to redress in providing a private remedy for violations of the Lanham Act."*Id.* The injury complained of by MCW-the erosion of Bernard Haldane's goodwill and reputation and lost sales from potential customers because of the defendants posting of false, misleading, disparaging, and deceptive messages-is not one that Congress sought to redress through the Lanham Act, because it is not the type of injury that the Lanham Act is aimed at. As recognized by the Fifth Circuit in *Procter & Gamble,* the Lanham Act focuses on "commercial interests [that] have been harmed by a competitor's false advertising ... and in secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not."*Id.* (quoting *Granite State Ins. Co. v. Aamco Transmissions, Inc.,* 57 F.3d 316 (3d Cir.1995); *Conte Bros.,* 165 F.3d at 234,*and*S.Rep. No. 1333, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S.C .C.A.N. 1274, 1275)). Redressing MCW's alleged injuries would further neither of these purposes. Although MCW's alleged injuries are commercial in nature (in that the misrepresentations might result in lost sales for its business), they are not competitive in nature. In other words, MCW contends only that it has been harmed by false advertising, not that it has been harmed by a *competitor's* false advertising touting the virtues of a competing product or service.

Regarding the Act's second purpose, MCW's alleged reputational harm is not the type of harm addressed by the Lanham Act. The Lanham Act addresses the diversion of one party's good will to another undeserving party. *Procter & Gamble,* 242 F.3d at 563 (recognizing that the Lanham Act focuses on "secur[ing] to the business community the advantages of reputation and good will *by preventing their diversion from those who have created them to those who have not"* ) (emphasis added). MCW does allege that its reputation has suffered, and will continue to suffer, as a consequence of the defendants' deception, but not that it will suffer *and* that the defendants' reputation will be bolstered. Clearly, MCW's allegations are missing an element of the variety of reputational harm Congress sought to address through the Lanham Act. Taken together, the non-competitive nature of MCW's harm and the general nature of MCW's reputational injury weigh heavily against a conclusion that MCW has prudential standing under the Lanham Act. See *Cook Drilling Corp. v. Halco America, Inc.,* No. CIV. A. 01-2940, 2002 WL 84532 (E.D.Pa. Jan.22, 2002) (weighing similar findings in the same manner while analyzing the same *Conte Bros.* five-factor prudential standing test that was adopted by the Fifth Circuit).

The second factor-directness of the alleged injury-also suggests MCW has no prudential standing to bring a claim under § 43(a) of the Lanham Act. When evaluating the second factor, the Fifth Circuit finds standing where a competitor is directly injuring another by making false statements about his own goods and thus inducing customers to switch from a competitor. See *Logan,* 263 F.3d at 461 (finding the second factor to weigh in favor of prudential standing where the alleged injury was that HoneyBaked's false advertising about its own goods influenced its customers to buy its product instead of Logan's product); *Procter & Gamble,* 242 F.3d at 563 (finding the second factor to weigh against standing where there is no competitor directly injuring another by making false statements and inducing a customer to switch from a competitor). MCW's alleged injury does not arise from a competitor making false statements about his own goods. Nor does it arise from a competitor or non-competitor touting another's goods to induce customers to switch services. The defendants and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391  
**(Cite as: Not Reported in F.Supp.2d)**

Page 14

MCW do not even offer similar products. The defendants operate a consumer complaint forum, while MCW offers a career counseling service.

*14 The second factor also undercuts standing if the claimed harm is attenuated. *Procter & Gamble,* 242 F.3d at 563. In this case, MCW's claimed harm is attenuated in that it is alleged to come from lost sales to potential customers. If standing is allowed here, one could argue that any non-competitor's deceptive acts that further its business and harm another by causing it to lose potential customers could be sued upon as a violation of the Lanham Act. See *id.* It would not be prudent to open up standing to this extent. *Id.*

The third factor-the proximity of the party to the alleged injurious conduct-also weighs against standing in this case. This factor requires a court to determine whether there is "an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest," thus "diminish[ing] the justification for allowing a more remote party ... to perform the offices of a private attorney general."*Procter & Gamble,* 242 F.3d at 563 (quoting *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 542, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)). In this case, the alleged harm caused by the defendants' deceptive and disparaging remarks about Bernard Haldane likely affects only MCW. There is no direct competitor or even a non-competitor with a more immediate injury than MCW. Therefore, MCW is a person whose self-interest would normally motivate it to vindicate the public interest. However, there is still no need in this case to use the Lanham Act to empower MCW as a private attorney general. The Lanham Act is not the only source of relief for MCW. Other avenues are available by which MCW can vindicate the public interest. Namely, MCW could sue, and has sued, for business disparagement.

The fourth factor-speculativeness of the damages-does not undercut prudential standing in this case. Although MCW has not determined the actual amount of injury ascertained, its alleged damages are not speculative. MCW has provided evidence of concrete commercial losses stemming from the defendants' deceptive and disparaging postings on its website. See Rip-offreport.com Web Page, *attached to* Amended Complaint, as Exhibits 7-8 at 1 (postings of potential customers claiming to have canceled appointments with Bernard Haldane after reading the Rip-off reports on the defendants' websites).

The fifth and final factor-the risk of duplicative damages or complexity of apportioning damages-does not weigh against standing. The problem of duplicative damages arises where other parties are more directly or immediately injured than the plaintiff and have the right to sue for their harms suffered. See *Cook Drilling,* 2002 WL 84532 at *9. "[R]ecognizing the right of every potentially injured party in the distribution chain to bring a private damages action would subject defendant firms to multiple liability for the same conduct and would result in administratively complex damages proceedings."*Conte Bros.,* 165 F.3d at 235. Although granting standing in this case would open up the Lanham Act as an avenue of relief to any party injured by a non-competitor's disparaging and deceptive messages, duplicative damages are not at issue in this case. Not only are there no other parties more directly injured than MCW, but MCW is likely the only injured party in this case. Therefore, there is no concern that the defendants will be subject to additional causes of action from other plaintiffs for the same conduct that allegedly harmed MCW.

*15 In sum, the first three factors counsel heavily against granting Lanham Act prudential standing to MCW, and the last two factors-the non-speculative nature of the damages and the risk of duplicative damages-weigh in favor of prudential standing. Therefore, MCW's problem is not its alleged harm; the issue facing MCW is whether it stands as an optimal plaintiff under the Lanham Act. The first three factors clearly indicate MCW is far from the optimal plaintiff under § 43(a) of the Lanham Act. MCW's alleged injuries further neither of the Lanham Act's purposes; its injuries, therefore, are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391  
**(Cite as: Not Reported in F.Supp.2d)**

Page 15

distinguishable from those for which § 43(a) was intended as a remedy. For these reasons, this court concludes that MCW lacks prudential standing to bring either the unfair competition or false advertising claim under the Lanham Act. Accordingly, these claims are dismissed.

Even if MCW had prudential standing to bring its Lanham Act claims, however, neither the unfair competition claim under § 1125(a)(1)(A), nor the false advertising claim under § 1125(a)(1)(B), would survive the defendants' Rule 12(b)(6) defense.

ii. Lanham Act Unfair Competition Claim

"The touchstone of a section 1125(a)[ (1)(A) ] unfair competition claim is whether the defendant[s'] actions are 'likely to cause confusion.'" *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 923 (Fed.Cir.1995) (quoting *Matrix Essentials Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 592 (5th Cir.1993)), *cert. denied,* 516 U.S. 1174 (1996). Thus, an unfair competition claim is similar to a trademark infringement claim in that both claims depend on a likelihood of confusion. *Id.* at 923 (citing *Matrix Essentials,* 988 F.2d at 590, 592).[FN13] In determining whether a likelihood of confusion exists, most courts evaluate the following factors: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." [FN14] *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, 664 (5th Cir.2000); *see also Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 543 (5th Cir.1998); *Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188, 194 (5th Cir.1998); *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 149 (5th Cir.1985). "No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these 'digits of confusion.'" *Westchester Media,* 214 F.3d at 664; *see also Conan Properties,* 752 F.2d at 150; *Elvis Presley,* 141 F.3d at 194. Other relevant factors may be considered in determining whether a likelihood of confusion exists. *Westchester Media,* 214 F.3d at 664.

FN13. MCW has also charged the defendants with unfair competition and trademark infringement under Texas common law. Likelihood of confusion is also the governing standard for both of these claims. *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, 663-64 n. 1 (5th Cir.2000) (stating that likelihood of confusion is the governing standard for unfair competition under Texas common law) (citing *Blue Bell Bio-Medical v. Cin-Bad, Inc.,* 864 F.2d 1253, 1261 (5th Cir.1989)); *see also King v. Ames,* 179 F.3d 370, 374 (5th Cir.1999) (stating that the analysis of likelihood of confusion in an unfair competition Lanham Act claim applies to the common law unfair competition claim and disposes of the two in tandem).*Zapata Corp. v. Zapata Trading International, Inc.,* 841 S.W.2d 45, 47 (Tex.App.-Houston [14th Dist.] 1992) ("A common law trademark infringement action under Texas law presents no difference in issues than those under federal trademark infringement actions.") (citing *Waples-Platter Companies v. General Foods Corp. .,* 439 F.Supp. 551, 583 (N.D.Tex.1977)). Therefore, the analysis of MCW's federal unfair competition claim under § 1125(a)(1)(A) of the Lanham Act also controls both of the Texas common law claims for unfair competition and trademark infringement. See *Westchester Media,* 214 F.3d at 664 n. 1;*King,* 179 F.3d at 374.

FN14. This court is mindful of past Fifth Circuit precedent applying a different test to analyze a claim for unfair competition under § 1125(a)(1)(A). In *King v. Ames,* the Fifth Circuit cited *Taquino v. Teledyne*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.