American Airlines Inc v. Google Inc    Doc. 9 Att. 15

Not Reported in F.Supp.2d                                   Page 16
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

*Monarch Rubber,* 893 F.2d 1488, 1500 (5th Cir.1990), for the proposition that a Lanham Act unfair competition claim requires a person to demonstrate that (1) the defendants made false statements of facts about their product, (2) those statements deceived, or had the potential to deceive, a substantial segment of potential customers, (3) the deception was material, tending to influence purchasing decisions, (4) the defendants caused their products to enter interstate commerce, and (5) the claimant has been or is likely to be injured as a result. *King,* 179 F.3d at 373-74. To the extent that the *King* court and others have relied on this test, rather than the digits of confusion, to prove a Lanham Act unfair competition claim, this court respectfully declines to follow such precedent. See *id.;Taylor Made Golf Company, Inc. v. MJT Consulting Group, LLC,* 265 F.Supp.2d 732, 744-45 (N.D.Tex.2003).

This court declines to follow the five-factor *Taquino* test in the context of an unfair competition claim because both *Taquino* and the case from which *Taquino* adopted the test (*Skil Corp. v. Rockwell International Corp.,* 375 F.Supp. 777, 783 (N.D.Ill.1974)), speak to false advertising claims rather than unfair competition claims. See *Taquino,* 893 F.2d at 1500 (finding that "[t]he alleged false and deceptive 'advertising' is not the type of activity the Lanham Act was designed to prevent"); *Skil,* 375 F.Supp. at 782-83 (applying the test in the context of comparison advertisement). Under the Lanham Act, false advertising claims are distinct from unfair competition claims in that an unfair competition claim concerns a false or misleading description of fact which is *likely to cause confusion* as to affiliation or the source of goods, and a Lanham Act false advertising claim concerns a false or misleading representation of fact *in commercial advertising.* Compare§ 1125(a)(1)(A)*with*§ 1125(a)(1)(B); see also *In re Connecticut Mobilecom,* 2003 WL 23021959, at *8-*10 (distinguishing between unfair competition and false advertising claims, and applying to the false advertising claim, but not to the unfair competition claim, a test identical to *Taquino* ). The difference in language between § 1125(a)(1)(A) and § 1125(a)(1)(B) suggests that the same test should not be used to resolve claims under both statutory provisions. However, Fifth Circuit precedent does just this. See *Logan,* 263 F.3d at 462 (applying an identical five-factor test to a false advertising claim); *Seven-Up Co. v. Coca-Cola Co.,* 86 F.3d 1379, 1383 n. 3 (5th Cir.1996) (same). If courts are correct in finding that the touchstone of a § 1125(a)[(1)(A)] unfair competition claim is whether the defendant's actions are 'likely to cause confusion," ' *Matrix Essentials Inc., v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 592 (5th Cir.1993)), and likelihood of confusion also controls a Texas common law unfair competition claim such that both common law and federal unfair competition claims can be disposed of in tandem under a likelihood of confusion analysis, this court concludes that the test applied to a Lanham Act unfair competition claim should also be applied to common law unfair competition claims. Furthermore, that test should be the multi-factored digits of confusion test.

MCW is correct in noting that likelihood of confusion is generally regarded as a question of fact and should not be decided in a Rule 12(b)(6) motion to dismiss or in a motion for summary judgment. *King v. Ames,* No. 3:95-CV-3180-G, 1997 WL 86416, *5 (N.D.Tex. Feb.18, 1997) (Fish, J.) (citing *Society of Financial Examiners v. National Association of Certified Fraud Examiners, Inc.,* 41 F.3d 223, 225 (5th Cir.), *cert. denied,*515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://web2.westlaw.com/print/printstream.aspx?prft=HTMLE&destination=atp&sv=Split...    9/19/2007

Dockets.Justia.com

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391  
**(Cite as: Not Reported in F.Supp.2d)**

Page 17

), *aff'd in part, rev'd in part,* 179 F.3d 370 (5th Cir.1999). Courts have also found that plaintiffs are not required to prove the likelihood of confusion at the pleading stage. *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.,* 627 F.Supp. 856, 859 (E.D.Pa.1985). There are, however, exceptions to the general rule. First, where "the record in the case at bar is devoid of any facts which would permit a reasonable jury to find that consumers were likely to be deceived," and there is no evidence showing how the plaintiff could have been injured by the alleged mis-attribution, courts conclude that summary judgment is an appropriate means by which to dismiss a Lanham Act likelihood of confusion claim. *King,* 1997 WL 86416 at *5-*6 (citing *Matrix Essentials,* 988 F.2d at 592-93), *aff'd on this point,* 179 F.3d 370, 374 (5th Cir.1999) (rejecting the argument "that the issue of confusion may not be resolved on summary judgment"). Second, where the goods between two parties are unrelated as a matter of law, dismissal of a likelihood of confusion claim pursuant to a Rule 12(b)(6) motion is appropriate. *Toho Co., Ltd. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790 (9th Cir.1981); *Eagle's Eye,* 627 F.Supp. at 860. The present case presents an unusual unfair competition claim. Not only are the goods unrelated as a matter of law, but neither party is a direct competitor of the other. MCW assists individuals with career counseling, while the defendants operate a for profit consumer complaint forum. Under these circumstances, a Rule 12(b)(6) motion is a proper vehicle for deciding whether MCW has stated a Lanham Act unfair competition claim.

*16 The defendants argue for dismissal of the unfair competition claim on the ground that they do not compete with MCW. Specifically, the defendants argue, there is no likelihood of confusion in the absence of any affiliation between the two companies. In response, MCW urges that the court deny the Rule 12(b)(6) motion because MCW has expressly alleged that the defendants use the Bernard Haldane mark-without any consent or authorization-in connection with publishing and posting false, misleading, and disparaging statements about MCW and its goods or services on the defendants' web sites. Specifically, MCW avers that the defendants post web site reports using the protected marks, create disparaging and defamatory titles to postings using the protected marks, and post numerous disparaging messages.

*Bihari v. Gross,* 119 F.Supp.2d 309 (S.D.N.Y.2000), is highly instructive here. In *Bihari,* a provider of home design services, Bihari Interiors, brought a trademark infringement action and defamation suit against the operator of a website, Gross, who was critical of Bihari and her interior design services. *Id.* at 311-12, 314. Gross's website was similar to the defendants' website in the present case in that Gross's website provided disparaging guest book entries and defamatory titles. *See id.* at 314-15. All of the Gross websites used the "Bihari Interiors" mark as text and as metatags embedded within the websites' HTML code.[FN15] *Id.* at 313.

> FN15. "A metatag is a hypertext markup language ("HTML") code, invisible to the Internet user, that permits web designers to describe their web page." *Bihari,* 119 F.Supp. at 312 n. 3.

Although *Bihari* recognized that the likelihood of confusion question generally requires a multi-factored digits of confusion test, the court declined to apply the factors. *Id.* at 319 n. 13. The court found that the factors were of little assistance because the Gross websites did not sell any goods of Bihari Interiors, did not directly compete with Bihari Interiors, and no longer used the Bihari Interiors mark in its domain name. *Id.* Together, these findings and the purpose of the web site were enough to convince the court that any likelihood of confusion was minimal. *Id.* at 318-19. The purpose and function of the Gross websites was particularly relevant to the court. The court noted that "no reasonable viewer would believe that the disparaging comments regarding Bihari's business ethics ... are endorsed by Bihari." *Id.* at 319. Furthermore, the court found it relevant that there was no "lengthy delay between attempting to access plaintiff's home page and learning that one

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 18
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

had failed to do so."*Id.*

In the present case, this court also finds that the multi-factored digits of confusion are of little assistance. The defendants' websites do not sell any goods or services of Bernard Haldane and do not compete, directly or indirectly, with Bernard Haldane. Furthermore, the defendants' websites have never used any of the Bernard Haldane marks in its domain name. Most importantly, this court fails to understand how any reasonable viewer of the defendants' website would believe that the disparaging comments regarding Bernard Haldane's business are endorsed by Bernard Haldane. Those accessing the defendants' websites would immediately recognize that the web pages do not belong to Bernard Haldane. For these reasons, this court finds there is absolutely no evidence of a likelihood of confusion. Accordingly, MCW's complaint does not properly state a claim for unfair competition under § 1125(a)(1)(A) of the Lanham Act.

### iii. Lanham Act False Advertising Claim

**\*17** A false advertising claim under § 1125(a)(1)(B) of the Lanham Act requires a plaintiff to allege: "(1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc."*Seven-Up Co. v. Coca-Cola Co.,* 86 F.3d 1379, 1383 n. 3 (5th Cir.1996) (citing *Ditri v. Coldwell Banker Residential Affiliates, Inc .,* 954 F.2d 869, 872 (3d Cir.1992)); see also *Logan v. Burgers Ozark Country Cured Hams, Inc.,* 263 F.3d 447, 462 (5th Cir.2001). The defendants move for dismissal of the Lanham Act false advertising claim on the ground that the use complained of by MCW is not in "commercial advertising or promotion." Defendants' Motion to Dismiss at 9. Therefore, the defendants dispute only the first element of a false advertising claim. *Seven-Up,* 86 F.3d at 1383 and n. 3 (stating that only the first element is in dispute when the court's focus "is solely on the issue of whether the Coca-Cola presentation falls within the meaning of 'commercial advertisement or promotion' under the [Lanham] Act"). Consequently, the remaining four elements need not be discussed.

Fifth Circuit precedent holds that a representation constitutes a "commercial advertising or promotion" under § 43(a)(1)(B) if it is "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classical advertising campaign,' but may consist insist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."*Seven-Up,* 86 F.3d at 1384 (finding the four factor test to be both accurate and sound). In this case, the court need not inquire any further than the second and third elements to determine that the defendants' postings on their websites do not constitute commercial advertising or promotion. With regard to the first element, the defendants are not in commercial competition with MCW. The defendants and MCW produce wholly unrelated goods or services. The third element is absent from the claim as well because the defendants do not make or post any of the disparaging messages for the purpose of influencing consumers to buy the defendants' goods or services rather than MCW's. In other words, there is no commercial attempt to entice consumers to switch from the services offered by MCW to the services offered by the defendants. See *id.* at 1386 (finding the third element satisfied where Coca-Cola developed and designed materials to target independent bottlers and convince them to switch from 7Up to Sprite).

**\*18** Because MCW cannot show that the defendants have used the Bernard Haldane Marks in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 19
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

commercial advertising or promotion under § 43(a)(1)(B) of the Lanham Act, MCW has failed to state a false advertising claim for which relief can be granted. Accordingly, MCW's 43(a)(1)(B) false advertising claim is dismissed pursuant to the defendants' Rule 12(b)(6) motion.

c. *Remaining State Law Claims*

i. Business Disparagement

When adjudicating a state law claim, the federal court must apply the state law as interpreted by the state's highest court. See *Federal Deposit Insurance Corporation v. Abraham,* 137 F.3d 264, 267-68 (5th Cir.1998); *Express One International, Inc. v. Galland, Kharasch, Morse & Garfinkle, P.C.,* No. 3:94-CV-1900-P, 1999 WL 794876 at *3 (N.D.Tex. Oct.5, 1999). Therefore, in determining whether MCW has established a claim for business disparagement, this court will first look to the case law of the Texas Supreme Court. To establish a claim for business disparagement, Texas law requires MCW to allege (1) that absent any privilege, (2) the defendants published disparaging and false words, (3) with malice, (4) that caused special damages.*Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 170 (Tex.2003) (citing *Hurlbut v. Gulf Atlantic Life Insurance,* 749 S.W.2d 762, 766 (Tex.1987)). The defendants challenge MCW's business disparagement claim on two grounds. First, the defendants contend that the claim is also barred by the CDA. Defendants' Reply at 10. Second, the defendants argue that MCW has failed to allege that the defendants published false statements of fact.[FN16]*Id.* at 11.According to the defendants, neither the report titles and headings nor the editorial comments that MCW has complained of establish a sufficient claim. The report titles and headings are allegedly insufficient because they are only summaries of complaints and thus not original content. The editorial comments purportedly fail of their purpose because MCW has not alleged that they contain false statements of fact. The defendants' arguments are unpersuasive and incorrect.

FN16. The defendants have not challenged the complaint on the grounds of elements one, three, or four. Therefore, the court will not address the issues of malice, privilege, or special damages.

The court has already concluded that the CDA does not shield the defendants from any of MCW's claims. Consequently, MCW's business disparagement claim is not barred by the CDA. The defendants second argument also fails because MCW has alleged that the defendants themselves created or developed false and misleading material directed at Bernard Haldane that they then published on the websites. Specifically, MCW alleges that the defendants created and published false and disparaging report titles, headings, and editorial comments. The defendants cannot claim that these allegations are insufficient because the report titles and headings are summaries of the consumer complaints, and therefore not original content. The defendants create the titles and headings of the reports. Regardless of whether they summarize or paraphrase the contents of the consumer reports, the defendants are responsible for the content and are the original creators and publishers of that content. Therefore, by alleging that the defendants create and publish false and disparaging report titles and headings, MCW has, at a minimum, stated a claim for business disparagement.

*19 MCW has also stated a claim for business disparagement by alleging that the defendants create disparaging and false editorial comments about Bernard Haldane. One of the editorial comments complained of states, in part, that "the Bernard Haldane SCAM ... has bilked thousands of victims of million dollars."MCW's Response at 18-19. Another states that "[w]e will not rest until they change their fraudulent business practices ... [and] will do our best to help their victims get their money back."*Id.* at 18.The defendants attempt to dismiss MCW's claim by arguing that these statements are not alleged to be inaccurate or false. MCW clearly alleges in its amended complaint that the first statement is false. MCW's Amended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 20
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

Complaint at 12 (stating that "[t]his publication is false, misleading, and disparaging"). MCW similarly alleges in its amended complaint that the second statement is false. *Id.* at 10 ("This published and posted statement is false, misleading, and disparaging. MCW's ... clients ... are not 'victims.' "). Therefore, MCW's allegations of the defendants' disparaging and false editorial comments about Bernard Haldane are sufficient to state a claim for business disparagement.

For these reasons, the defendants' Rule 12(b)(6) motion to dismiss MCW's business disparagement claim is denied. However, on its own motion, the court declines to exercise supplemental jurisdiction over this one state law claim remaining in the case and thus dismisses it for lack of subject matter jurisdiction.[FN17]

> FN17. Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims " 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Yet a federal court's exercise of supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiffs' right." *Gibbs,* 383 U.S. at 726. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon,* 484 U.S. at 350. When the federal claims are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claims. *Id.* at n. 7. Accordingly to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claim to which they are pendent are dismissed."*Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir.1992) (citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989)).
> In the case before the court, the federal claims against the defendants are being dismissed and only a single state law claim remains. Because the federal claims were dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court ought to decline jurisdiction over this remaining state law claim. *See*28 U.S.C. § 1367(c)(3). Accordingly, the business disparagement claim, which is governed exclusively by state law, is dismissed without prejudice to MCW's refiling it in state court.

ii. Texas Common Law Unfair Competition

The court has already decided that MCW's Lanham act unfair competition claim should be dismissed. The court found dismissal appropriate because there was no possible likelihood of confusion. Because MCW's unfair competition claim under § 1125(a)(1)(A) of the Lanham Act also controls MCW's common law claims for unfair competition, the court also dismisses MCW's common law unfair competition claim. See *supra,* note 13.

iii. Texas Common Law Trademark Infringement

MCW's unfair competition claim under § 1125(a)(1)(A) of the Lanham Act also controls MCW's common law claims for trademark infringement. *Id.* Therefore, the court's earlier finding that no likelihood of confusion exists

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Not Reported in F.Supp.2d                                                                                         Page 21
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

requires the court to also dismiss MCW's common law trademark infringement claim to the extent it is also speaks of a likelihood of confusion claim. However, that does not end the inquiry here because MCW also raises common law claims of trademark infringement grounded in the likelihood of initial interest confusion. MCW contends that the defendants' use of the Bernard Haldane marks constitutes infringement because of likelihood of initial interest confusion among consumers searching the Internet for Bernard Haldane's services. *See* MCW's Response at 25. MCW claims that consumers seeking Bernard Haldane's services are diverted to the defendants' websites, and consequently, the defendants reap the good will of the marks. *Id.* The court finds this argument unconvincing.

**\*20** This court's earlier analysis under *Bihari* in dismissing the Lanham Act and common law unfair competition claims is equally instructive here. In addition to finding no likelihood of conclusion, *Bihari* concluded that there was no likelihood of initial interest confusion where the defendant websites are critical of the plaintiff, and use the plaintiff's protected marks in the text and metatags in the context of disparaging comments. *Bihari,* 119 F.Supp.2d at 319-21. *Bihari* recognized, as has MCW, that the concern with initial interest of confusion in cyberspace is that "potential customers of one website will be diverted and distracted to a *competing* website."*Id.* at 319 (emphasis added)."The harm is that the potential customer believes that the competing website is associated with the website the [potential] customer was originally searching for and will not resume searching for the original website."*Id.*

In the present case, several facts indicate that MCW is virtually certain not to suffer such harm. First, the defendants do not operate a competing website that sells or offers services similar to Bernard Haldane. If the defendants do not own or operate a competing website, they cannot divert Internet users away from Bernard Haldane. *Id.* at 320; see also *BigStar Entertainment, Inc. v. Next Big Star, Inc.,* 105 F.Supp.2d 185, 209-10 (S.D.N.Y.2000)

(stating that initial interest confusion does not arise where parties are not in close competitive proximity). Second, diversion of consumers because of initial interest confusion as to source or affiliation is highly unlikely where the defendants' websites provide people with information about Bernard Haldane rather than diverting them from Bernard Haldane. See *Bihari,* 119 F.Supp.2d at 320. Finally, initial interest confusion is even more unlikely where the defendants' websites are highly critical of Bernard Haldane. Any Internet user who reads the disparaging text of the defendants' websites and sees the domain names of either "ripoffreport.com" or "badbusinessbureau.com" is unlikely to believe that these websites belong to Bernard Haldane or MCW. See *id.;Brookfield Communications, Inc. v. West Coast Entertainment Corporation,* 174 F.3d 1036, 1062 (9th Cir.1999) (relying on search engine results and different domain names to show that confusion is less severe when a mark is included in text or as a metatag as compared to a mark's inclusion in a domain name). Therefore, it is highly relevant that no reasonable viewer of the defendants' website would believe that the disparaging comments regarding Bernard Haldane's business are endorsed by Bernard Haldane. Those accessing the defendants' websites would immediately recognize that the web pages do not belong to Bernard Haldane.

This court is mindful that some courts have found trademark infringement where an entity's trademark is used in the metatags of another party's website. See *Niton Corporation v. Radiation Monitoring Devices, Inc.,* 27 F.Supp.2d 102, 104 (D.Mass.1998) (finding diversion of a competitor's customers where Radiation Monitoring Devices directly copied Niton's metatags and HTML code); *Playboy Enterprises Inc. v. Asiafocus Int'l, Inc.,* No. Civ. A. 97-734-A, 1998 WL 724000, at \*3, \*6-\*7 (E.D.Va. Apr.10, 1998) (enjoining the use of Playboy's marks in the domain name and metatags of the defendant's website where searches produced defendant's web pages located at "asian-playmates.com"); *Brookfield Communications,* 174 F.3d at 1061, 1065 (enjoining the defendant, West Coast, a video rental

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391
**(Cite as: Not Reported in F.Supp.2d)**

Page 22

chain with a searchable entertainment database, from using "moviebuff" in its domain name or its metatags because it caused initial interest confusion with Brookfield's "MovieBuff" software, which also provides entertainment-industry information). However, the defendants in each of these cases used the plaintiff's marks to trick Internet users into visiting the defendant's websites. *Bihari,* 119 F.Supp.2d at 321. Specifically, the defendants wanted Internet users to believe that they were either visiting the plaintiff's website or that the defendant's and plaintiff's websites were affiliated. That is not the case here. In the present case, the defendants' alleged use of the Bernard Haldane marks is not a bad faith attempt to trick users into visiting their websites. The defendants use the marks to criticize Bernard Haldane and to catalog the postings in similar categories.

*21 Therefore, just as there is no basis for finding a likelihood of confusion, there is also no basis for finding a likelihood of initial interest confusion. Consequently, MCW's complaint, whether grounded in likelihood of confusion or initial interest confusion, fails to state a claim for common law trademark infringement. The defendants' motion to dismiss MCW's common law trademark infringement claims is granted.

### III.

For the foregoing reasons, the defendants' motion to dismiss for lack of personal jurisdiction is DENIED. Additionally, the defendants' motion to dismiss for failure to state a claim is GRANTED as to Counts I, II, III, and V. The defendants' motion to dismiss is DENIED as to Count IV; however, for the reasons stated above, the court declines to exercise subject matter jurisdiction over this claim, and it is accordingly DISMISSED without prejudice to its being refiled in an appropriate state court.

SO ORDERED.

N.D.Tex.,2004.
MCW, Inc. v. Badbusinessbureau.com, L.L.C.
Not Reported in F.Supp.2d, 2004 WL 833595 (N.D.Tex.), 2004-1 Trade Cases P 74,391

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.