

CTJ/RMT
ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT WORTH DIVISION

2007 OCT -9 AM 9: 59

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

AMERICAN AIRLINES, INC.,

                Plaintiff,

  -v.-

GOOGLE, INC.,

                Defendant.

---

Civil Action No. 4-07-CV-487-A

PLAINTIFF AMERICAN AIRLINES, INC.'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF

OF COUNSEL
Terence P. Ross
(*pro hac vice*)
Howard S. Hogan
(*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

Dee J. Kelly
State Bar No. 11217000
Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
Michael D. Anderson
State Bar No. 24031699
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

*Attorneys for Plaintiff American Airlines, Inc.*

# TABLE OF CONTENTS

Page

STANDARD OF REVIEW ................................................................................................ 1

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT .................................................................................................................. 5

I.     THE SALE OF THE AA MARKS AS KEYWORDS IN GOOGLE'S SEARCH
ENGINE IS A "USE IN COMMERCE." ................................................................. 5

      A.    Trademark Law Only Requires A "Use In Commerce." ...................................... 5

      B.    The Unauthorized Use Of The AA Marks As Keyword Triggers In The
Google Search Engine Constitutes A "Use In Commerce." ................................. 7

      C.    "Likelihood Of Confusion" And "Fair Use" Cannot Be Resolved On A Rule
12(b)(6) Motion. ........................................................................................... 11

II.    THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE
GOOGLE'S UNLAWFUL CONDUCT. ............................................................... 12

      A.    CDA Immunity Is Inapplicable To AA's State Law Claims. ............................. 15

III.   THE COMPLAINT PLEADS DIRECT, CONTRIBUTORY, AND VICARIOUS
TRADEMARK INFRINGEMENT. ...................................................................... 18

      A.    Google Directly Infringes The AA Marks. ...................................................... 18

      B.    Google Contributorily Infringes The AA Marks Because It Induces
Infringement And Knowingly Participates Therein. .......................................... 18

      C.    Google Vicariously Infringes The AA Marks Because It Has The Right And
Ability To Control The Use Of AA Marks In The Sponsored Links. .................. 20

IV.   AA'S STATE LAW CLAIMS ARE PROPERLY PLEADED. ................................. 21

      A.    The Complaint Sufficiently Pleads A Claim For Unfair Competition. .............. 21

      B.    The Complaint Sufficiently Pleads A Claim For Misappropriation. ................... 23

      C.    The Complaint Sufficiently Pleads A Claim For Money Had And Received. .... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1-800 Contacts, Inc. v. WhenU.com, Inc.,*
    414 F.3d 400 (2d Cir. 2005) ................................................................. 10

*800-JR Cigar, Inc. v. GoTo.com, Inc.,*
    437 F. Supp. 2d 273 (D.N.J. 2006) ....................................................... 9, 14

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006) ............................................................. 17

*Australian Gold, Inc. v. Hatfield,*
    436 F.3d 1228 (10th Cir. 2006) ............................................................. 8

*Bank of Saipan v. CNG Fin. Corp.,*
    380 F.3d 836 (5th Cir. 2004) ................................................................. 24

*Bayer Corp. v. Custom Sch. Frames, LLC,*
    259 F. Supp. 2d 503 (E.D. La. 2003) .................................................... 6

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) .......................................................................... 1

*Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,*
    510 F.2d 1004 (5th Cir. 1975) ............................................................... 6

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999) ............................................................... 6

*Buying for the Home, LLC v. Humble Abode, LLC,*
    459 F. Supp. 2d 310 (D.N.J. 2006) ....................................................... 9

*Choice Hotels, Int'l, Inc. v. Westhill Hotels I Ltd.,*
    No. CIV.A. 3:95-CV-1470P, 1996 WL 706876 (N.D. Tex. Dec. 4, 1996) ......... 18-19, 20

*CICCorp., Inc. v. Aimtech Corp.,*
    32 F. Supp. 2d 425, 439-40 (S.D. Tex. 1998) ...................................... 12

*Doctor's Assocs., Inc. v. QIP Holders, LLC,*
    82 U.S.P.Q.2d 1603 (D. Conn. 2007) ................................................... 12

*Douglas v. Taylor,*
    497 S.W.2d 308 (Tex. Civ. App.-- Houston [1st Dist.] 1973, no writ) ........... 22

*DP Wagner Mfg., Inc. v. Pro Patch Sys., Inc.*,
    434 F. Supp. 2d 445 (S.D. Tex. 2006) ........................................................................... 21

*Dresser-Rand Co. v. Virtual Automation Inc.*,
    361 F.3d 831 (5th Cir. 2004) ........................................................................... 23

*Dunkin Donuts, Inc. v. Mercantile Ventures*,
    22 U.S.P.Q.2d 1721 (W. D. Tex. 1992) ........................................................................... 19

*Edina Realty, Inc. v. TheMLSOnline.Com*,
    80 U.S.P.Q.2d 1039 (D. Minn. 2006) ........................................................................... 2, 8-9

*Elvis Presley Enterprises, Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1998) ........................................................................... 7

*Exxon Corp. v. Oxxford Clothes, Inc.*,
    109 F.3d 1070 (5th Cir. 1997) ........................................................................... 7

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    489 F.3d 921 (9th Cir. 2007) ........................................................................... 13-14

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
    493 F. Supp. 2d 545 (E.D.N.Y. 2007) ........................................................................... 11

*GEICO v. Google, Inc.*,
    330 F. Supp. 2d 700 (E.D. Va. 2004) ........................................................................... 9, 12, 19, 21

*GEICO v. Google, Inc.*,
    No. 1:04CV507 LMB, 2005 WL 1903128 (E.D. Va. Aug. 8, 2005) ........................................................................... 9

*Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
    Case No. C 03-5340 JF (RS), 2005 WL 832398 (N.D. Cal. Mar. 30, 2005) ........................................................................... 9

*Gregson v. Zurich Am. Ins. Co.*,
    322 F.3d 883 (5th Cir. 2003) ........................................................................... 1

*Gucci Am., Inc. v. Hall & Assocs.*,
    135 F. Supp. 2d 409 (S.D.N.Y. 2001) ........................................................................... 17

*Hamzik v. Zale Corp./Delaware*,
    3:06-cv-1300, 2007 U.S. Dist. LEXIS 28981 (N.D.N.Y. Apr. 19, 2007) ........................................................................... 10

*Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*,
    53 S.W.3d 799 (Tex. App.-- Austin 2001, pet. denied) ........................................................................... 21-22

*Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*,
    418 F. Supp. 2d 1142 (D. Ariz. 2005) ........................................................................... 14

**Plaintiff American Airlines, Inc.'s Response to**
**Defendant's Motion to Dismiss and Brief in Support Thereof – Page iii**

882929_1.DOC

*Int'l Profit Assocs., Inc. v. Paisola*,
    461 F. Supp. 2d 672 (N.D. Ill. 2006) .............................................................................. 9

*J.G. Wentworth, S.S.C. v. Settlement Funding LLC*,
    Civ. No. 06-0597, 2007 U.S. Dist. LEXIS 288 (E.D. Pa. Jan. 4, 2007) ..................... 9, 10

*Kinetic Concepts, Inc. v. BlueSky Med. Group Inc.*,
    No. SA-03-CA-0832-RF, 2005 U.S. Dist. LEXIS 32353
    (W.D. Tex. Nov. 1, 2005) .................................................................................................. 9

*Landry-Bell v. Various, Inc.*,
    Civ. A. No. 05-1526, 2006 U.S. Dist. LEXIS 6662 (W.D. La. Feb. 1, 2006) ................ 12

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ..................................................................................... 19, 20

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    141 F. Supp. 2d 648 (N.D. Tex. 2001) ........................................................................... 20

*MCW, Inc. v. badbusinessbureau.com, LLC*,
    Civ. A. No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678
    (N.D. Tex. Apr. 19, 2004) ......................................................................................... 13, 14

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) .......................................................................................... 23

*Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*,
    Civ. No. 3:06-CV-0575-P, 2007 WL 2729935 (N.D. Tex. Sept. 18, 2007) .................. 24

*NFL Properties v. Playoff Corp.*,
    808 F. Supp. 1288 (N.D. Tex. 1992) .............................................................................. 16

*Niton Corp. v. Radiation Monitoring Devices, Inc.*,
    27 F. Supp. 2d 102 (D. Mass. 1998) ................................................................................. 7

*Novak v. Overture Servs., Inc.*,
    309 F. Supp. 2d 446 (E.D.N.Y. 2004) ............................................................................ 12

*Pebble Beach Co. v. Tour 18 I Ltd.*,
    155 F.3d 526 (5th Cir. 1998) ............................................................................... 7, 11, 12

*Perfect 10, Inc. v. CCBill, LLC*,
    488 F.3d 1102 (9th Cir. 2007) ........................................................................................ 17

*Pet Silk, Inc. v. Jackson*,
    481 F. Supp. 2d 824 (S.D. Tex. 2007) ............................................................................. 6

*Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*,
    Civ. A. No. 97-734-A, 1998 WL 724000 (E.D. Va. Apr. 10, 1998) ................................ 7

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ................................................................. 7-8

*Playboy Enters., Inc. v. Webbworld, Inc.*,
    991 F. Supp. 543 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999) ...................... 16

*Prickett v. Infousa, Inc.*,
    Case No. 4:05-CV-10, 2006 U.S. Dist. LEXIS 21867
    (E.D. Tex. Mar. 29, 2006) .................................................................... 15

*Promatek Indus. Ltd. v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ................................................................... 6

*Rescuecom Corp. v. Computer Troubleshooters USA, Inc.*,
    464 F. Supp. 2d 1263 (N.D. Ga. 2005) ..................................................... 9, 11

*Rescuecom Corp. v. Google, Inc.*,
    456 F. Supp. 2d 393 (N.D.N.Y 2006) ......................................................... 11

*Settlement Capital Corp v. BHG Structured Settlements, Inc.*,
    319 F. Supp. 2d 729 (N.D. Tex. 2004) .................................................... 21, 22

*Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*,
    41 F.3d 223 (5th Cir. 1995) .................................................................... 11

*Southwest Airlines Co. v. Farechase, Inc.*,
    318 F. Supp. 2d 435 (N.D. Tex. 2004) ........................................................ 23

*Steele v. Bulova Watch Co.*,
    344 U.S. 280 (1952) ............................................................................ 6

*Sugar Busters LLC v. Brennan*,
    177 F.3d 258 (5th Cir. 1999) .................................................................. 11

*Taylor Made Golf Co. v. MJT Consulting Group*,
    265 F. Supp. 2d 732 (N.D. Tex. 2003) ........................................................ 18

*Tdata Inc. v. Aircraft Technical Publishers*,
    411 F. Supp. 2d 901 (S.D. Ohio 2006) ......................................................... 6

*Verizon Employee Benefits Comm. v. Frawley*,
    Civ. A. No. 3:05-CV-2105-P, 2007 WL 2051113
    (N.D. Tex. July 12, 2007) ..................................................................... 24

**Plaintiff American Airlines, Inc.'s Response to**
**Defendant's Motion to Dismiss and Brief in Support Thereof – Page v**
      882929_1.DOC

*Zeran v. America Online, Inc.*,
  958 F. Supp. 1124 (E.D. Va. 1997) ............................................................... 16

*Zeran v. America Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ......................................................................... 16

## Statutes

15 U.S.C. § 1114 ............................................................................... 5, 6, 16

15 U.S.C. § 1127 ...................................................................................... 6

15 U.S.C. § 1125 .............................................................................. 5, 6, 16

47 U.S.C. § 230 ................................................................. 12, 13, 15, 16, 17

## Rules

Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 11, 12, 24, 25

## Other Authorities

H.R. Rep. 104-458 (1996) ............................................................................ 17

141 Cong. Rec. H 8470-71 (daily ed. Aug. 4, 1995) .................................... 17

J. T. McCarthy, McCarthy On Trademarks and Unfair Competition
  (4th ed. 2007) ............................................................................................ 7

## PLAINTIFF AMERICAN AIRLINES' RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF

Plaintiff American Airlines, Inc. ("AA") respectfully submits this Response to Defendant Google, Inc.'s ("Google") Motion to Dismiss and Brief in Support Thereof.

## STANDARD OF REVIEW

"A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 884 (5th Cir. 2003) (citation omitted). This conclusion reflects the fundamental principle of law -- wholly ignored in Google's Motion to Dismiss -- that governs all Rule 12(b)(6) motions. In considering a Rule 12(b)(6) motion, the complaint is liberally construed in the light most favorable to the plaintiff, and all well-pleaded facts are accepted as true. *Id.* The question is "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Id.*[1] Google's Motion to Dismiss fails to meet this exacting standard.

## INTRODUCTION

This lawsuit is about *unfair and unlawful* competition. AA filed suit to stop Google from "selling" AA's trademarks and service marks (the "AA Marks") as "keywords" on its Internet search engine. Internet users searching for AA's website to do business with AA are being diverted by Google's actions to third-party websites causing significant consumer confusion and costing AA millions of dollars each year in lost sales and/or damaged relationships with consumers.

---

[1] As the Supreme Court recently reiterated, the allegations of fact in a complaint need only be sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

**Plaintiff American Airlines, Inc.'s Response to**
**Defendant's Motion to Dismiss and Brief in Support Thereof – Page 1**

882929_1.DOC

Google portrays its actions as nothing more than "healthy competition," proffering an analogy to a drugstore in which a generic ibuprofen product is placed next to the branded Advil® product. Google's analogy, however, conveniently ignores one important fact. Unlike the unambiguously clear product differentiation consumers find in the drugstore aisle marked "headache relief," Google's online product placement is not readily and unambiguously transparent to consumers.[2] The more appropriate analogy would be that of a drugstore putting its generic ibuprofen inside Advil® boxes and mixing them in among the real Advil® products. This is a far cry from "healthy competition." Such conduct would be unlawful and so too is Google's conduct here.

Scrutiny of Google's legal arguments in support of its motion to dismiss reveal misrepresentations similar to those apparent in Google's drugstore analogy.

> ➢ Google argues that it is not using AA's trademarks in an actionable manner. The only Circuit Courts to consider the use of trademarks as keyword triggers in search engines, however, have held that this is an actionable use in commerce. *See infra*, pp. 5-11.

> ➢ Google argues that the Communications Decency Act ("CDA") immunizes it from liability for any state law causes of action. The CDA, however, does not provide immunity from any causes of action arising from Google's own conduct or from state causes of action relating to intellectual property. *See infra*, pp. 12-17.

---

[2] When Internet users enter a trademark term into a search engine, they expect to be directed to the website of that trademark's owner. As courts have noted, empirical studies indicate that Internet users do not understand Google's "Sponsored Links" to be advertisements, not true search results. *See, e.g., Edina Realty, Inc. v. TheMLSOnline.Com*, 80 U.S.P.Q.2d 1039, 1044 (D. Minn. 2006) (citing "a study concluding that 62 percent of consumers do not understand the difference between sponsored links and natural search results"; referring to Fallows, D, *Search Engine Users: Internet searchers are confident, satisfied and trusting – but they are also unaware and naïve*, pp. ii, 17 (2005), at <http://www.pewinternet.org/pdfs/PIP_Searchengine_users.pdf>).

> Google argues that it should not be held secondarily liable for the conduct of third-parties. In fact, Google is an active participant in the infringement in at least three ways: (a) by formatting and naming its "Sponsored Links" so that it is difficult for consumers to know the difference between AA's website and those of interlopers; (b) by "selling" rights to the AA Marks that it does not possess; and (c) by openly inducing its advertisers to make infringing uses of the AA Marks. *See infra*, pp. 18-21.

As will be demonstrated below, each of Google's arguments is fatally flawed, and the Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

This action arises from Google's "sale" of the AA Marks as "keyword" triggers for its search engine. When an Internet user enters one of the AA Marks into Google's search engine, it triggers a "Sponsored Link." In many instances, the text and titles of these "Sponsored Links" include AA Marks or terms confusingly similar to those marks. Instead of directing consumers to the AA website that they seek, these "Sponsored Links" misdirect consumers to websites: (i) of airlines that compete with AA; (ii) that sell not only AA's services, but also those of its competitors; or (iii) that are entirely unrelated to air travel. Compl. ¶¶ 5, 63.

Google does not meaningfully or conspicuously identify its Sponsored Links to consumers as paid advertisements. *Id.* ¶ 47. Google posts its Sponsored Links in a color, typeface, and font size that are not appreciably different than the results that Google's PageRank system generates. *Id.* In fact, the designation of these keyword-triggered "results" as "Sponsored Links" is confusing to many consumers, because Google does not inform consumers who has done the "sponsoring." *Id.*

As a result, significant numbers of consumers are confused into believing that Google's "Sponsored Links" are the way to AA's online presence or to websites that AA has approved or sponsored. *Id.* ¶¶ 38, 40, 76, 82-83, 86, 92-94, 101-03, 112-13. Google's unauthorized use in commerce of the AA Marks generates profits for Google and its advertisers that are directly

attributable to their unauthorized exploitation of the value, name recognition, and goodwill associated with the AA Marks. *Id.* ¶¶ 35, 37, 41, 46, 76, 80, 85, 87, 114, 133, 170.

Unlike the above well-pleaded facts which must be accepted as true for present purposes, Google asks the Court to assume several facts that are *not* averred in the Complaint. For instance, Google asserts that all "Sponsored Links that contain terms similar to [AA]'s trademarks appear to link to websites that either sell travel on [AA] or provide information about" AA. Google Br. at 5. *See also id.* at 11 (asserting that AA has "not made" the allegation that unauthorized sellers of its services have made use of AA's Marks as a part of Google's program). The Complaint alleges precisely the opposite. *See, e.g.,* Compl. ¶¶ 64 (pointing to specific Sponsored Link for "Free AA Travel Offers" that "could not lawfully offer discounts for [AA's] services"), ¶¶ 67-68 (Google posts Sponsored Links that use the AA Marks, but do not offer AA services).[3]

Until just before its initial public stock offering in 2004, Google did not allow advertisers to use the trademarks of others as keyword triggers. *Id.* ¶¶ 49, 53. In fact, Google has the ability to refrain from making infringing use of proprietary marks as part of its keyword-triggered advertising program, *id.* ¶¶ 51-52, 54, 72, 77, but made the conscious decision to infringe these marks because of the profit-making potential in using the AA Marks. *Id.* ¶ 45. Indeed, outside

---

[3] Google cites Paragraph 50 of the Complaint for the proposition that Google, "upon processing a complaint from a trademark owner, prohibits Sponsored Links from *displaying* trademarks -- or confusingly similar variations thereof -- without authorization from the trademark owner." Google Br. at 4. In fact, Paragraph 50 avers that Google's trademark policy is "manifestly deficient" because, although Google "purports to [refrain] from publishing Sponsored Links that infringe on the proprietary trademarks or service marks of others, Google does not make an affirmative commitment to prevent such infringements."

the United States, Google "ensur[es] that its advertisers" do not use keywords "corresponding to [a] trademarked term." *Id.* ¶ 57.

Moreover, Google's misconduct is not limited to its creation, promotion, and facilitation of a search engine by which advertisers exploit the AA Marks and create consumer confusion. Google also "actively encourages" advertisers to use the AA Marks as keyword triggers. *Id.* ¶ 73. Google encourages its advertisers to select AA Marks even when an advertiser initially inquires only about generic terms. *Id.* ¶ 74. In fact, if an advertiser attempts to "buy" just one AA Mark, Google recommends and encourages the advertiser to "buy" additional phrases that also incorporate AA Marks. *Id.* ¶ 75.

## ARGUMENT

### I. THE SALE OF THE AA MARKS AS KEYWORDS IN GOOGLE'S SEARCH ENGINE IS A "USE IN COMMERCE."

Google argues that AA's trademark causes of action must be dismissed because its use of the AA Marks is not a "trademark use." Google Br. at 6, *et. seq.* There is, however, no requirement under any of the trademark causes of action asserted in the Complaint that a plaintiff establish "trademark use" by the defendant. Google's brief has conflated two distinct trademark concepts -- "use in commerce" and "fair use."

#### A. Trademark Law Only Requires A "Use In Commerce."

The relevant provisions of the Lanham Act require that AA establish that its marks have been used "in commerce." *See* 15 U.S.C. § 1114(1)(a) (creating liability for anyone who "shall . . . use in commerce" another's mark); § 1114(1)(b) (same, for use of another's mark in "advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services"); § 1125(a)(1) (same, for anyone who

"uses in commerce" another's mark); § 1125(c) (allowing an injunction against anyone who "commences use of a mark or trade name in commerce").

The Lanham Act defines "use in commerce" expansively, to include not only marks that are "displayed," but also marks that are placed "on documents *associated with*" the sale of goods and marks that are "*used or displayed* in the sale or advertising of services." 15 U.S.C. § 1127 (emphases added). As the Supreme Court has explained, Congress intended for this provision to "confer[] broad jurisdictional powers upon the courts of the United States." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952). *See also* 15 U.S.C. § 1127 ("The word 'commerce' means all commerce which may lawfully be regulated by Congress.").

Accordingly, neither the Lanham Act nor the Fifth Circuit has established, despite what Google maintains, a separate requirement that the defendant "communicated the mark to the public as an indicator of the source or origin of goods or services." Google Br. at 7. To the contrary, the Fifth Circuit has noted that Congress "broaden[ed] the protection afforded by" 15 U.S.C. § 1114 by "delet[ing] the previously existing requirement that the confusion or deception must relate to the 'source of origin of such goods or services.'" *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009-10 (5th Cir. 1975). This is why courts within the Fifth Circuit and around the country have regularly found defendants liable not only for use of a mark in visible advertising, but also in the hidden code of websites known as "metatags." *See, e.g., Pet Silk, Inc. v. Jackson*, 481 F. Supp. 2d 824, 826 (S.D. Tex. 2007); *Bayer Corp. v. Custom Sch. Frames, LLC*, 259 F. Supp. 2d 503, 509 (E.D. La. 2003).[4] In these

_____

[4] *Accord Promatek Indus. Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999); *Tdata Inc. v. Aircraft Technical Publishers*, 411 F. Supp. 2d 901, 907 (S.D. Ohio 2006);

[Footnote continued on next page]

cases, the courts held that a use in commerce existed notwithstanding that consumers could not see the metadata. The relevant question is not whether the mark is visible, but whether the defendant's "use of the mark . . . creates a likelihood of confusion in the minds of potential consumers." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536-37 (5th Cir. 1998).[5]

### B. The Unauthorized Use Of The AA Marks As Keyword Triggers In The Google Search Engine Constitutes A "Use In Commerce."

Google's position is particularly surprising because the only Circuit Courts to consider the use of trademarks as keywords in a search engine -- the Ninth Circuit and the Tenth Circuit -- *both* concluded that such use constituted "use in commerce" that was actionable under the trademark laws. In *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004), the Ninth Circuit addressed a case that was factually identical to this case. In that case, Playboy Enterprises ("PEI") sued the defendant search engines for trademark infringement and dilution because they allowed advertisers to "buy" PEI's trademarks as keyword terms that triggered banner advertisements when an Internet user conducted a search using one of those

---

[Footnote continued from previous page]
> *Niton Corp. v. Radiation Monitoring Devices, Inc.*, 27 F. Supp. 2d 102, 104 (D. Mass. 1998); *Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*, Civ. A. No. 97-734-A, 1998 WL 724000, at *3, *6-*7 (E.D. Va. Apr. 10, 1998).

[5] Google cites *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997), for the proposition that the "use of 'a trade name or a trademark' takes place only when the appellation is used 'as an indicator of origin and/or quality of particular goods or services.'" Google Br. at 7. The quoted language from *Exxon*, however, did not set limits on what constitutes actionable use of a mark under the Lanham Act. Rather, the Fifth Circuit was merely trying to illustrate the difference between use of a mark "as a device of corporate identity and its use as a trade name or trademark." 109 F.3d at 1083. *See also* J. T. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:11.50 (4th ed. 2007) (hereinafter "MCCARTHY") ("[T]he Lanham Act nowhere explicitly states that 'use as a trademark' is required for an accused use to be an infringement."). The Fifth Circuit has recognized MCCARTHY as the leading authority on trademark law and frequently relies upon it. *See, e.g., Pebble Beach Co.*, 155 F.3d at 539, 541 n.7; *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998).

**Plaintiff American Airlines, Inc.'s Response to**
**Defendant's Motion to Dismiss and Brief in Support Thereof – Page 7**

882929_1.DOC

terms. *Id.* at 1022-23. The Ninth Circuit held: "Federal jurisdiction over trademark cases rests on the Commerce Clause, sweeps as broadly as possible, and clearly encompasses the circumstances of this case." *Id.* at 1024 n.11.

Similarly, in *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228 (10th Cir. 2006), a manufacturer of suntan products brought suit for trademark infringement against unauthorized resellers of its suntan products. Australian Gold alleged that defendants had paid a search engine, Overture, to "buy" Australian Gold's trademarks as keywords to guarantee that any Internet user searching for those trademark terms would receive defendants' website as one of the top three search listings. *Id.* at 1231-33. The Tenth Circuit held that this constituted a use in commerce.

> Defendants paid Overture.com to list Defendants in a preferred position whenever a computer user searched for Plaintiffs' trademarks. All of these actions were attempts to divert traffic to Defendants' web sites.
> . . .
> Thus, Defendants used the goodwill associated with Plaintiffs' trademarks in such a way that consumers might be lured to the lotions from Plaintiffs' competitors. This is a violation of the Lanham Act.

*Id.* at 1239.

Moreover, the overwhelming majority of district courts that have considered whether the "sale" of trademarks as keywords in a search engine constitute a use in commerce under the Lanham Act have held that it does constitute a use in commerce. Typical of these decisions is *Edina Realty, Inc. v. TheMLSOnline.Com,* 80 U.S.P.Q.2d 1039 (D. Minn. 2006). In that case, the District Court stated:

> While not a conventional 'use in commerce,' defendant nevertheless uses the Edina Realty mark commercially. Defendant purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement. . . . Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce.

*Id.* at 1042-43. Six other district courts -- including one within this Circuit -- have reached the same conclusion: the sale of trademarks as keywords in a search engine constitutes "use in commerce" for purposes of the Lanham Act.[6]

In two additional cases, district courts expressly rejected the exact same arguments made by Google here. In *GEICO v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004), Google argued, "that the complaint fails to allege . . . 'trademark use.'" *Id.* at 702. The district court rejected Google's argument.[7] Google lost this same issue again in *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, Case No. C 03-5340 JF (RS), 2005 WL 832398 (N.D. Cal. Mar. 30, 2005). There, the district court not only denied Google's motion to dismiss but, after substantial discovery, also rejected Google's motion for summary judgment concluding "that the sale of trademarked terms in the [Google] program is a use in commerce for the purposes of the Lanham Act." *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF, 2007 U.S. Dist. LEXIS 32450, at *20-21 (N.D. Cal. Apr. 18, 2007).

Google's failure to address this line of cases is highlighted by its incorrect assertion that "[t]he only federal appellate court" to consider the use of a trademark to trigger Internet

---

[6]  *See Kinetic Concepts, Inc. v. BlueSky Med. Group Inc.*, No. SA-03-CA-0832-RF, 2005 U.S. Dist. LEXIS 32353, at *32-33 (W.D. Tex. Nov. 1, 2005); *J.G. Wentworth, S.S.C. v. Settlement Funding LLC*, Civ. No. 06-0597, 2007 U.S. Dist. LEXIS 288, at *16-17 (E.D. Pa. Jan. 4, 2007); *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 284-85 (D.N.J. 2006); *Int'l Profit Assocs., Inc. v. Paisola*, 461 F. Supp. 2d 672, 677 n.3 (N.D. Ill. 2006); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 323 (D.N.J. 2006); *Rescuecom Corp. v. Computer Troubleshooters USA, Inc.*, 464 F. Supp. 2d 1263 (N.D. Ga. 2005).

[7]  The *GEICO* district court did not, as Google represents, subsequently hold "that triggering Sponsored Links does not violate the Lanham Act." Google Br. at 9. Rather, the district court held that GEICO had not met its burden of proving confusion as a matter of fact, and granted summary judgment only on that aspect of GEICO's claim. *GEICO v. Google, Inc.*, No. 1:04CV507 LMB, 2005 WL 1903128, at *7 (E.D. Va. Aug. 8, 2005).

advertisements concluded that it was not a "use under the Lanham Act." Google Br. at 8. In fact, the referenced case, *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005), did *not* even involve the use of trademarks as keywords in a search engine. The defendant in *1-800 Contacts* did not publicly advertise or offer the plaintiffs' trademarks as a trigger for ads, let alone sell these trademarks to customers.[8] In contrast, Google's programming not only allows its customers to purchase rights to use the actual AA Marks, but Google also affirmatively encourages the use of AA Marks in the Google search engine. Compl. ¶¶ 73-75, 91, 104, 169. Because of the significant limitations on the holding of *1-800 Contacts*, even one of the cases cited by Google in support of its motion found that "the Complaint states a claim upon which relief can be granted with respect to the allegation that Defendant purchased the keyphrase 'dating ring(s).'" *Hamzik v. Zale Corp./Delaware*, 3:06-cv-1300, 2007 U.S. Dist. LEXIS 28981, at *11-12 (N.D.N.Y. Apr. 19, 2007) (citing *J.G. Wentworth*, 2007 U.S. Dist. LEXIS 288, at *16-17).[9]

---

[8]  The defendant in *1-800 Contacts* established a series of consumer interest categories such as "financial services" or "health care." Each category contained many URL's (often in the hundreds) with a mix of generic and trademarked terms. An advertiser could buy a category, but not a specific trademark, as a trigger for the delivery of a pop-up ad whenever one of the URLs within the purchased category was accessed by an Internet user. 414 F.3d at 411-12. Moreover, the Second Circuit's decision also relied heavily on the fact that the defendant added "www" and ".com" to the trademarks at issue in finding no use in commerce. *Id.* at 408-09 (defendants "transform" plaintiff's trademark "into a word combination that functions more or less like a public key"). Google, in contrast, does not "transform" the AA Marks -- it uses the actual marks both in its AdWords directory and in the text of many of its Sponsored Links. Compl. ¶¶ 50, 55, 60-62, 64-65, 67, 69, 73-77, 91, 102-04, 111-14, 120-21, 129-30.

[9]  Google's assertion that courts "[o]ver and over again . . . make the point that placing internet ads next to search results for a particular company's trademark is indistinguishable from perfectly legitimate uses of trademarks . . . in more traditional settings," Google Br. at 9, is misleading. All the district court cases to which Google cites are within the Second Circuit.

[Footnote continued on next page]

In sum, AA's well-pleaded allegations concerning Google's use of its marks "in commerce," *e.g.,* Compl. ¶ 91 (incorporated by reference into every cause of action in the Complaint), should be more than sufficient to survive Google's motion to dismiss.

### C. "Likelihood Of Confusion" And "Fair Use" Cannot Be Resolved On A Rule 12(b)(6) Motion.

To the extent Google argues that it has not made a "trademark use" of the AA Marks because its use is not likely to cause consumer confusion, the argument fails. First, the Complaint adequately pleads that Google's use of the AA Marks is likely to cause confusion and this averment must be accepted as true for purposes of this motion. Compl. ¶¶ 39, 50, 62, 78, 80, 83, 86-87, 92-94, 101-03, 112-13. Second, the question of whether any particular use of a trademark is likely to cause consumer confusion is "fact-intensive" and "cannot be conducted properly without a trial." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.,* 41 F.3d 223, 224-25 (5th Cir. 1995).

Google's position is similarly flawed if it intends for its "trademark use" argument to incorporate the notion that its use of the AA Marks constitutes "fair use" because it does not suggest affiliation, sponsorship, or approval. *See, e.g., Pebble Beach Co.,* 155 F.3d at 546. Fair use is an affirmative defense that a defendant must plead and prove. *See, e.g., Sugar Busters LLC v. Brennan,* 177 F.3d 258, 271 (5th Cir. 1999). Moreover, the fair use defense raises fact-

---

[Footnote continued from previous page]
*See, e.g., Rescuecom Corp. v. Google, Inc.,* 456 F. Supp. 2d 393, 398-400 (N.D.N.Y 2006) (describing approvingly the line of cases holding Google's practice to be a use in commerce, but finding itself bound by Second Circuit case law). This Court is not bound by Second Circuit precedent and is free to follow *all* of the courts outside of the Second Circuit on this issue. It should also be noted that the language that Google quotes from *FragranceNet.com, Inc. v. FragranceX.com, Inc.,* 493 F. Supp. 2d 545, 551-52 (E.D.N.Y. 2007), Google Br. at 9, comes not from the court's discussion of use in commerce, but from the part of the opinion discussing the more narrow doctrine of "passing off," which AA has not asserted here.

specific issues not properly resolved through a motion to dismiss. *GEICO*, 330 F. Supp. 2d. at 704.[10]

## II.    THE COMMUNICATIONS DECENCY ACT DOES NOT IMMUNIZE GOOGLE'S UNLAWFUL CONDUCT.

The Communications Decency Act ("CDA") provides in pertinent part:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). This provision confers a limited immunity from certain causes of action such as defamation upon a narrow class of defendants. It is an affirmative defense which must be pleaded by a defendant which then bears the burden of proof as to whether immunity attaches. And, "[b]ecause 'invocation of Section 230(c) immunity constitutes an affirmative defense [, a]s the parties are not required to plead around affirmative defenses, such an affirmative defense is generally not fodder for a Rule 12(b)(6) motion.'" *Doctor's Assocs., Inc. v. QIP Holders, LLC*, 82 U.S.P.Q.2d 1603, 1603-04 (D. Conn. 2007) (*quoting Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004)). *See also Landry-Bell v. Various, Inc.*, Civ. A. No. 05-1526, 2006 U.S. Dist. LEXIS 6662, at *2 (W.D. La. Feb. 1, 2006).

In order for a defendant to enjoy immunity under the CDA, it must establish that: (1) it is a provider or user of an interactive computer service; (2) it is not an "information content

---

[10] A fair use defense would fail on the merits as well. As the Complaint alleges, Google uses bold-face type to highlight the AA Marks when they appear in the text of Sponsored Links and uses background colors and other visual cues to misdirect the attention of Internet users to Sponsored Links. Compl. ¶¶ 64-65, 67, 69. This is not fair use. *See Pebble Beach Co.*, 155 F.3d at 546 (use of a mark as an "attention-getting symbol" is not a fair use); *CICCorp., Inc. v. Aimtech Corp.*, 32 F. Supp. 2d 425, 439-40 (S.D. Tex. 1998) (use of mark in "large, red letters" creates fact issue precluding summary judgment on fair use defense).

provider" with respect to the information posted;[11] and (3) the asserted claim treats the defendant as a publisher or speaker of information originating from a third party. *See MCW, Inc. v. badbusinessbureau.com, LLC*, Civ. A. No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *27-28 (N.D. Tex. Apr. 19, 2004). Google may not take advantage of the CDA's immunity because it is an "information content provider" with respect to the advertisements at issue.

The Complaint does not claim Google is only liable for publishing information provided by third parties. Rather, AA seeks relief from Google's direct role in the creation of the Sponsored Links at issue. In particular, the Complaint alleges that Google actively encourages, instructs, and participates in the creation and posting of the Sponsored Links, including creation of the intentionally confusing "Sponsored Links" heading and visual appearance. Compl. ¶¶ 47, 73-75, 91, 104, 169.

This Court has previously held that when a defendant actively solicited and encouraged the posting of defamatory information and then created titles and headings for the defamatory website postings, the defendant was "responsible" for the creation or development of the defamatory information and was not entitled to CDA immunity. *MCW, Inc.*, 2004 U.S. Dist. LEXIS 6678, at *31-32. Similarly, the Ninth Circuit recently refused immunity under the CDA in circumstances comparable to those at issue here. In *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 489 F.3d 921 (9th Cir. 2007), the Ninth Circuit held, over the objection of *amicus* Google, that an online roommate matching service could be deemed an "information content provider" even though the information that it posted was provided by third

---

[11] An "information content provider" is defined in the CDA as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

parties. The Ninth Circuit reasoned that the defendant website's search mechanism and e-mail notifications alerting members to new postings indicated that defendant was neither a passive pass-through of information provided by others nor a mere facilitator of expression by third parties. By categorizing, channeling, and limiting the distribution of users' profiles, Roommates.com provides an additional layer of information that it is "responsible" at least "in part" for creating or developing. *Id.* at 929.

In fact, the only reported decision addressing CDA immunity in the context of search engine keywords denied immunity to the search engine. In *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D. N. J. 2006), the district court held: "Immunity does not seem to fit here because the alleged fraud is the use of the trademark name in the bidding process, and not solely the information from third parties that appears on the search results page." *Id.* at 295.

The Complaint here states an even more compelling case for denying CDA immunity than *MCW, Inc.*, *Roommates.com, LLC* and *800-JR Cigar*. The Complaint avers that Google contributes the most confusing aspects of the Sponsored Link advertising program. This includes Google's decision to use a layout and a title or heading – "Sponsored Links" – that is clearly designed to confuse consumers into believing that these advertisements are officially "sponsored" by AA. Compl. ¶¶ 47, 61, 65, 67, 69, 83, 121. In addition, the Complaint avers that Google actively encourages its advertisers to select and use AA Marks in the title and text of their Sponsored Links. *Id.* ¶¶ 73, 75, 80. These allegations support a finding that Google is an "information content provider," jointly responsible with its advertisers for the Sponsored Links. *See, e.g., Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1149 (D. Ariz. 2005) (denying CDA immunity because complaint averred that defendants "solicit individuals to

submit reports with the promise that individuals may ultimately be compensated for their reports.").[12]

### A. CDA Immunity Is Inapplicable To AA's State Law Claims.

Google makes the conclusory assertion that the CDA provides it with immunity from all AA's "state law claims." Google Br. at 21. This is inaccurate. In fact, even if Google could take advantage of the CDA's immunity provision, none of the state law causes of action set out in the Complaint would be subject to CDA immunity.

The CDA only provides immunity from state law causes of action in which a defendant acted as "a publisher or speaker of information," such as libel. Two causes of action in the Complaint, however, are not based on Google's role as "a publisher or speaker of information." Count X of the Complaint is based on Google's actions in knowingly inducing AA's online travel agencies to breach provisions of a contract that requires them to refrain from purchasing, using, or registering any keywords or search terms that are identical or similar to, or contain, any of the AA Marks. Compl. ¶¶ 159-66. Count XI asserts a claim for money "had and received" by Google that in all right belongs to AA. Neither of these claims depend on the act of publishing communications. These causes of action, therefore, are not based on Google's publication of its Sponsored Links, and CDA immunity is therefore inapplicable to these claims.

In addition, nothing in the CDA's immunity provision "shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Thus, the CDA does

_____

[12] The decision in *Prickett v. Infousa, Inc.*, Case No. 4:05-CV-10, 2006 U.S. Dist. LEXIS 21867 (E.D. Tex. Mar. 29, 2006), is not to the contrary. There, "the Defendant did not play a significant role in creating or developing the information at issue." *Id.* at *17. Here, for the reasons discussed above, Google has created or induced the elements of its Sponsored Links that are most likely to cause consumer confusion.

not provide Google immunity with respect to Counts VI (state trademark infringement); VII (state trademark dilution); VIII (unfair competition based on sales of the AA Marks); IX (misappropriation of trademark), or any of AA's federal trademark-based claims. Each of these causes of action relate to the misuse of AA's Marks by Google and, therefore, are claims "pertaining to intellectual property." The plain language of the statute, moreover, makes no distinction between state and federal intellectual property claims; indeed, it refers to "*any* law pertaining to intellectual property." 47 U.S.C. § 230(e)(2) (emphasis added).[13]

In *Zeran v. America Online, Inc.*, 958 F. Supp. 1124 (E.D. Va. 1997), the district court concluded that Section 230 reflects Congress' unambiguous intent to retain state law remedies, except in event of clear conflict between those remedies and Section 230. Specifically, the district court held that Congressional intent in enacting Section 230 was not "to preclude any state regulation of the Internet, but rather to eliminate obstacles to the private development of blocking and filtering technologies capable of restricting inappropriate online content." *Id.* at 1131 ("[T]he CDA reflects no congressional intent, express or implied, to preempt all state law causes of action concerning interactive computer services."). This decision was affirmed by the Fourth Circuit. *See Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997).

---

[13] Google is also incorrect that Count IV of AA's Complaint for false representations and false designation of origin under Section 43(a) of the Lanham Act, Compl. ¶¶ 119-26, is not an "intellectual property" claim. "[T]he key test for determining whether [] a false designation has occurred" under Section 43(a) is the same as trademark infringement -- likelihood of confusion. *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 557 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999). *See also NFL Properties v. Playoff Corp.*, 808 F. Supp. 1288, 1290 (N.D. Tex. 1992) ("Ordinarily, the same set of facts enabling a plaintiff to recover under Section 1114 will enable recovery under Section 1125."). Even a brief review of the Complaint makes clear that this count arises from "misleading uses of" the AA Marks. Compl. ¶¶ 121-23.

In *Gucci Am., Inc. v. Hall & Associates*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001), the district court specifically allowed state intellectual property claims to proceed in the face of a motion to dismiss similar to that asserted here by Google. *Id.* at 415. And, in *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006), the Eleventh Circuit pointedly refused an invitation from Amazon.com to invoke CDA immunity in connection with a state law intellectual property claim and instead adopted *Gucci*'s formulation that the relevant question is "whether Plaintiff's complaint would withstand a motion to dismiss even in the absence of § 230." *Id.* at 1324.

These cases are consistent with the CDA's legislative history, which was to "provide[] 'Good Samaritan' protections from civil liability for providers or users of an interactive computer service for actions to restrict or to enable restriction of access to objectionable online material [and] overrule [particular] decisions which have treated such providers and users as publishers or speakers of content that is not their own." H.R. Rep. 104-458, at 194 (1996). *See also* 141 Cong. Rec. H 8470-71 (daily ed. Aug. 4, 1995) (CDA purpose was to "establish as the policy of the United States that we do not wish to have content regulation by the Federal Government of what is on the Internet"; "[T]he last person I want making that decision [on Internet content] is the Federal Government"). Nothing in the CDA's legislative history evinces an intent to deprive states of their ability to police intellectual property claims, let alone to set aside the plain language of the statute to do so.[14]

---

[14] Although Google cites to the Ninth Circuit's decision in *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102 (9th Cir. 2007), the Ninth Circuit's conclusion is not binding on this Court, and is, in fact, contrary to the plain statutory command that the CDA "shall [not] be construed to limit or expand any law pertaining to intellectual property," 47 U.S.C. § 230(e)(2).

### III. THE COMPLAINT PLEADS DIRECT, CONTRIBUTORY, AND VICARIOUS TRADEMARK INFRINGEMENT.

#### A. Google Directly Infringes The AA Marks.

The Complaint avers that Google is directly infringing the AA Marks not only by selling rights to use the AA Marks as keyword triggers, but also by formatting the Sponsored Links in a way designed to induce confusion and by publishing the AA Marks in the title and text of its Sponsored Links in spite of its claimed policy to prevent such uses. *E.g.,* Compl. ¶ 61 (Google's use of AA Marks within the titles and text of some Sponsored Links misleadingly communicates to consumers that such links are endorsed/sponsored by AA, or that such websites are official AA websites); ¶ 83 ("Google's misappropriation of the [AA] Marks as keyword triggers and its use of terms confusingly similar to [AA] Marks in the Sponsored Link text are therefore likely to cause confusion . . ."); ¶ 121 ("Google's use of the [AA] Marks or terms confusingly similar thereto in the title or text of Sponsored Link advertisements conveys the misleading commercial impression to the public. . . ."). Further, the Complaint also specifically alleges that Google knowingly used the AA Marks in these infringements. *See id.* ¶¶ 80, 87(G), 101. Thus, the Complaint adequately states a claim for direct trademark infringement. *See, e.g., Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003) (defendant that "actively and knowingly caused the infringement" may be held directly liable).

#### B. Google Contributorily Infringes The AA Marks Because It Induces Infringement And Knowingly Participates Therein.

Contributory trademark liability is established when a defendant: (1) intentionally induces, causes, or materially contributes to the infringing conduct of another *or* (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement. *Choice Hotels, Int'l, Inc. v. Westhill Hotels I Ltd.*, No. CIV.A. 3:95-CV-1470P,

1996 WL 706876, at *4 (N.D. Tex. Dec. 4, 1996). The averments of the Complaint satisfy either test.

First, Google is *incorrect* when it asserts that AA "has not alleged that Google intentionally induced any advertisers to use -- much less infringe -- American's marks." Google Br. at 13-14. To the contrary, the Complaint avers that: "Google actively encourages advertisers to use trademarks, service marks, and terms confusingly similar thereto as keyword triggers." Compl. ¶ 73. *See also id.* ¶ 91 (Google "encourage[es] third-party advertisers to bid on the [AA] Marks"); ¶ 104 (Google "induces . . . third-party advertisers to infringe the [AA] Marks and/or provides such third-party advertisers with aid and material contribution to the third-party advertisers' violations of the Lanham Act"). In fact, the Complaint includes examples demonstrating Google's programming in the act of inducing advertisers to use the AA Marks. *Id.* ¶¶ 74-75.

Second, Google plays a significant role in its advertisers' use of AA Marks as keyword triggers and in the confusing nature of the Sponsored Links themselves. In *GEICO v. Google*, the district court held an allegation that a search engine "monitors and controls the third-party advertisements is sufficient to plead the actual or constructive knowledge required to allege contributory infringement." 330 F. Supp. 2d at 705. The district court's decision in *GEICO* relied on the Ninth Circuit's decision in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999). In *Lockheed Martin,* the Ninth Circuit held that contributory trademark liability is appropriate when a defendant exercises "[d]irect control and monitoring of the instrumentality" used to effect the infringement. *Id.* at 984. *See also Dunkin Donuts, Inc. v. Mercantile Ventures,* 22 U.S.P.Q.2d 1721, 1729 (W. D. Tex. 1992) ("A person who knowingly participated in furthering the . . . infringement is liable as a contributing party").

AA has averred that Google knows of AA's rights in its AA Marks, Compl. ¶¶ 80, 87(G), 101, and monitors and controls the use of the AA Marks in its search engine. For example:

- "Google's advertising programs also allow confusing uses of [AA] Marks in the text of the Sponsored Link advertisements . . . although Google has the technical capability to prevent many, if not all, such uses if Google wanted to do so," Compl. ¶ 77;

- "Google has the right and ability to control the use of the [AA] Marks . . . . in its search engine-based advertising programs," *id.* ¶ 111;

- "Google has the ability to refrain from making infringing use of proprietary marks as part of its keyword-triggered advertising program," *id.* ¶ 51; and

- It is Google who decides to post "its Sponsored Link advertisements in a color, typeface, and font size that are not appreciably different than the results that Google's PageRank system generates" and labels them with a designation, "Sponsored Links," which is itself confusing because "Google does not inform consumers who has done the 'sponsoring,'" *id.* ¶ 47.

The Complaint adequately states a claim for contributory trademark infringement.[15]

### C. Google Vicariously Infringes The AA Marks Because It Has The Right And Ability To Control The Use Of AA Marks In The Sponsored Links.

A defendant "may be held vicariously liable for [trademark] infringing activity even if he is not the person actually carrying out the infringing activity if he has the right and ability to supervise the activity and also has a direct financial interest in it." *Choice Hotels, Int'l, Inc.*, 1996 WL 706876, at *3 (*citing what is now* MCCARTHY § 25-21). In *GEICO*, the district court

---

[15] Google mistakenly relies on domain name register cases, such as the Ninth Circuit's decision in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d at 980, and this Court's decision in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648 (N.D. Tex. 2001), to escape liability for contributory infringement. These cases are inapposite. Unlike Network Solutions, which performs the ministerial function of registering domain names on behalf of the Internet Corporation for Assigned Names and Numbers and the United States Department of Commerce, 141 F. Supp. 2d at 651, Google has set up its Sponsored Links system with an affirmative intent to profit from the confusion that it sews. Compl. ¶¶ 35, 41, 87.

applied this same test and found that Google could be held vicariously liable "[b]ecause [plaintiff] alleged that [Google] and the advertisers control the appearance of the advertisements on [the] search results page and the use of [plaintiff's] trademarks therein." 330 F. Supp. at 705.

As set forth above, the Complaint avers numerous specific facts in support of the conclusion that Google controls the appearance of the advertisements on its search results page and the use of the AA Marks therein. Paragraphs 111-118 of the Complaint explicitly set forth AA's vicarious trademark infringement claims with even greater precision. For example:

- "Google has the right and ability to control the use of the [AA] Marks or terms confusingly similar to the [AA] Marks in its search engine-based advertising programs," Compl. ¶ 111;

- This use "is likely to cause confusion among consumers, and constitutes infringement of [AA's] rights in the [AA] Marks," *id.* ¶ 112; and

- "Google receives a direct financial benefit from the third-party advertisers' unauthorized use of the [AA] Marks or terms confusingly similar thereto," *id.* ¶ 114.

Thus, the Complaint adequately states a claim for vicarious trademark infringement.

## IV. AA'S STATE LAW CLAIMS ARE PROPERLY PLEADED.

### A. The Complaint Sufficiently Pleads A Claim For Unfair Competition.

To establish an unfair competition claim under Texas law, a plaintiff must prove that a defendant committed an illegal act that interfered with the plaintiff's ability to conduct its business. *See Settlement Capital Corp v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 734 (N.D. Tex. 2004). The illegal act may consist of a violation of criminal law or any independent tort. *See id.* In particular, the same conduct that AA has alleged in support of its other claims may also support a claim for unfair competition as a matter of well-established Texas law. *See, e.g., DP Wagner Mfg., Inc. v. Pro Patch Sys., Inc.*, 434 F. Supp. 2d 445, 462 (S.D. Tex. 2006) (false advertising under the Lanham Act); *Horseshoe Bay Resort Sales Co. v.*

*Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.-- Austin 2001, pet. denied) (federal trademark infringement); *Settlement Capital Corp.*, 319 F. Supp. 2d at 734 (tortious interference claim). In particular, "[u]nfair competition results if [defendant's] use of the name is calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates." *Douglas v. Taylor*, 497 S.W.2d 308, 310 (Tex. Civ. App.-- Houston [1st Dist.] 1973, no writ).

Count VIII of the Complaint avers that Google committed illegal acts that interfered with AA's ability to conduct its business. Specifically, the Complaint pleads facts supporting several independent torts.[16] In addition to these independent torts, the Complaint avers other conduct by Google that interfered with AA's ability to conduct its business. For example:

- designing its Sponsored Links to "draw consumers *away* from American Airlines' websites" and to "websites of airlines that compete with American Airlines," Compl. ¶¶ 60, 63;

- "misleadingly communicat[ing] to consumers that [Sponsored Links] are endorsed or sponsored by American Airlines or its affiliates," *id.* ¶ 61;

- "caus[ing] confusion in the marketplace for air transportation and related services," *id.* ¶¶ 83-84;

- setting up a system "wherein American . . . [is] forced to pay Google to reduce the likelihood that consumers will be confused," *id.* ¶ 85; and

- "aid[ing] third parties in 'hijacking' consumers," *id.* ¶ 66.

These allegations properly state an unfair competition claim under Texas law.

---

16 These independent torts are: federal trademark infringement; contributory trademark infringement under the Lanham Act; vicarious trademark infringement under the Lanham Act; false representations under the Lanham Act; dilution under the Lanham Act; trademark infringement under Texas law; dilution under Texas Law; misappropriation under Texas law; tortious interference with contract; and money had and received.

## B.  The Complaint Sufficiently Pleads A Claim For Misappropriation.

To establish a misappropriation claim under Texas law, a plaintiff must prove: (1) the creation of a product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.*, a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004).

The Complaint avers that AA created the AA Marks through almost eighty years of extensive labor, innovation, business acquisitions, and revolutionary marketing. Compl. ¶¶ 14-31.  The Complaint also alleges that Google uses the AA Marks by selling the "right" to use those marks to third-party advertisers who compete with AA. *Id.* ¶¶ 5, 60-63, 65, 67-68, 73, 76, 85.  By doing so, Google competes with AA by drawing away its customers. *Id.* ¶¶ 5, 63, 66, 84. Finally, the Complaint avers that Google's actions caused AA commercial damage by misdirecting its customers and potential customers, *id.*; by diluting and tarnishing the value of the AA Marks, *id.* ¶ 84, 130-32; by forcing AA to pay Google to post its own advertisements in order to minimize consumer confusion, *id.* ¶ 85; and by Google's unjust enrichment at AA's expense, *id.* ¶¶ 97, 107, 116, 135, 141, 150, 156, 164.[17]

---

[17]  Rather than attack the specific elements of a cause of action, Google argues that Count IX does not plead that Google appropriated AA's name or likeness.  Google Br. at 24-25.  This, however, is not required.  *See Dresser-Rand Co.*, 361 F.3d at 839; *Southwest Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 441 (N.D. Tex. 2004).  Whether a defendant appropriated a plaintiff's name or likeness is an element of an invasion of privacy claim, not one for misappropriation.  *See, e.g., Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007).

## C.    The Complaint Sufficiently Pleads A Claim For Money Had And Received.

A claim for money had and received is an equitable claim for recovery aimed at determining "to which party does the money, in equity, justice, and law, belong." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). The claim is not premised upon a defendant's wrongdoing; rather, it focuses on the justice of the case and whether the money received by a defendant rightfully belongs to another. *See Verizon Employee Benefits Comm. v. Frawley*, Civ. A. No. 3:05-CV-2105-P, 2007 WL 2051113, at *4 (N.D. Tex. July 12, 2007). To prevail on a money had and received claim, a plaintiff must prove "that defendant holds money which in equity and good conscience belongs to [plaintiff]." *Bank of Saipan*, 380 F.3d at 840.

Google argues that the Court must dismiss AA's claim for money had and received because "American has not alleged facts sufficient to demonstrate *ownership* over the funds or that it is a party in any *privity of contract*." Google Br. at 24 (emphasis added). Google's argument, however, misconstrues Texas law. AA is not required to allege facts showing ownership of the money or any privity of contract. To the contrary, a money had and received claim survives a Rule 12(b)(6) motion when a plaintiff pleads facts alleging that the defendant obtained money that in equity and good conscience belongs to another. *See Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, Civ. No. 3:06-CV-0575-P, 2007 WL 2729935, at *16 (N.D. Tex. Sept. 18, 2007). Count XII of the Complaint adequately pleads this.

The Complaint avers that AA owns the AA Marks and possesses the exclusive right to use, license, sell, and/or authorize the use of the AA Marks. Compl. ¶ 168. Contrary to that exclusive right, Google not only allows, but encourages advertisers to pay it to use those marks to trigger the display of Sponsored Link advertisements. *Id.* ¶¶ 5, 38, 60-67, 72-74, 76, 91-92, 101-04, 120-21, 169. As a result, Google receives a direct financial benefit from the advertisers' payment for the unauthorized use of the AA Marks. *Id.* ¶¶ 46, 76, 80, 114, 169. To this end,

"Google has obtained money from its advertisers and American Airlines by undue advantage, and holds money that in equity and good conscience belongs to American Airlines." *Id.* ¶ 171. And – despite Google's assertion to the contrary – the Complaint also avers that Google's misconduct forced AA to pay Google directly in order to protect consumers from confusion. *Id.* ¶¶ 85, 170. These factual averments are sufficient to withstand a Rule 12(b)(6) challenge.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Google's motion to dismiss.

Respectfully submitted,

Dated:  October 9, 2007
        Fort Worth, Texas

Dee J. Kelly
State Bar No. 11217000
Dee J. Kelly, Jr.

OF COUNSEL                          State Bar No. 11217250
Terence P. Ross                     Lars L. Berg
(*pro hac vice*)                    State Bar No. 00787072
Howard S. Hogan                     Michael D. Anderson
(*pro hac vice*)                    State Bar No. 24031699
GIBSON, DUNN & CRUTCHER LLP         KELLY HART & HALLMAN LLP
1050 Connecticut Avenue, N.W.       201 Main Street, Suite 2500
Washington, D.C.  20036             Fort Worth, Texas 76102
Phone: (202) 955-8500               Phone: (817) 332-2500
Fax: (202) 467-0539                 Fax: (817) 878-9280

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all parties via certified mail, return receipt requested and e-mail on October 9, 2007.

Joseph F. Cleveland, Jr.
Brackett & Ellis
100 Main St., Suite 100
Fort Worth, TX 76102-3090
817/338-1700
Fax: 817/870-2265 FAX
Email: jcleveland@belaw.com

Benjamin W. Berkowitz
Klaus H. Hamm
Michael H. Page
Keker & Van Nest LLP
710 Sansome St.
San Francisco, CA 94111
415/391-5400
Fax: 415/397-7188
Email: bberkowitz@kvn.com
Email: khamm@kvn.com
Email: mhp@kvn.com

Dee J. Kelly