CTJ/RMT
ORIGINAL
FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT WORTH DIVISION
2007 OCT 22 PM 3: 27
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | |
| vs. | § | CIVIL ACTION NO. 4-07-CV-487-A |
| | § | |
| GOOGLE, INC. | § | |
| | § | |
| Defendant | § | |

# DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

Joseph F. Cleveland, Jr.

BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: (817) 338-1700
Facsimile: (817) 870-2265

Michael H. Page
Klaus H. Hamm
Benjamin W. Berkowitz

KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.



# DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

## I. INTRODUCTION

A simple example from paragraph 67 of American's complaint demonstrates just how far American asks this Court to expand the scope of trademark law. American alleges that the following four-line advertisement infringes the trademark "American Airlines":

<u>United Airlines</u>
Book Your Trip on United & Save.
E-Fares, Last Minute Deals & More!
www.united.com

Even though the advertisement does not contain the words "American Airlines," even though its title says "<u>United Airlines</u>," even though its text says "Book Your Trip on United," and even though it lists the "www.united.com" internet address, American asserts that this ad infringes its *American Airlines* mark, simply because it appears next to search results for "american airlines."

As Google's opening brief points out—and as this example illustrates—American's complaint is an illegitimate attack on competition, not a legitimate claim for trademark infringement. A party cannot infringe a trademark if it does not use the trademark *as a trademark*, and (for example) the United ad most definitely does not use "American Airlines" as a trademark. It is true that United Airlines literally "uses" the American Airlines trademark as the criterion to identify potential customers of American's so that it can offer them travel services under its own brand. This marketing strategy, however, is not *trademark* use: United does nothing to create the impression that American has any connection to the travel services United promotes.

Google's opening brief aptly compares this "use" of "american airlines" to a generic ibuprofen company that pays for shelf placement next to Advil. The generic manufacturer is literally "using" the Advil name to target potential Advil customers, but it does not use the name to suggest affiliation with Advil. Just as a drugstore customer will ask the shopkeeper where Advil is located and is directed to an aisle where Advil is stocked as well as less expensive

generic products; an internet user will ask Google where websites relevant to "american airlines" are located and is directed to a web page displaying links for American Airlines' website as well as for other websites that may sell airline tickets. Neither case constitutes trademark use nor trademark infringement.

American argues that a "more appropriate analogy would be that of a drugstore putting its generic ibuprofen inside Advil® boxes and mixing them in among the real Advil® products." Am. Br. at 2. This absurd analogy would hold true if United Airlines actually used American's trademark in the text of its ad; for example, if the United ad had the title "<u>American Airlines</u>." In that counterfactual example, United would be using the American trademark to suggest an affiliation with American, and a customer would not know that the ad really promoted United until it clicked on the Sponsored Link and landed on the United website. In reality, however, the United ad is titled "<u>United Airlines</u>" *not* "<u>American Airlines</u>." Under the drugstore analogy, the appropriate trade name is on the generic ibuprofen box and the customer knows what is in the box the moment he sees it on the shelf (even though it is located next to an Advil box).

Google understands that trademark use could occur if advertisers incorporated third-party trademarks into the text of their ads. That is one of the considerations that led Google to forbid this practice. Once a trademark owner notifies Google that it does not want others to include the trademark in their ads, Google takes down third-party ads displaying that trademark and blocks others from appearing in the future. American's revamped Advil analogy and its opposition depend on pretending Google's policy does not exist. For this and other reasons stated below, American's complaint should be dismissed for failure to state a claim.

## II. FACTS

Although the allegations in American's complaint must be accepted as true for purposes of this motion, a complaint may not make general allegations that contradict its specific allegations. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003). American does just that.

<u>First</u>, American distorts Google's policy regarding the use of trademarks in ads that appear on Google. That policy is simple. If a party does not want others to use its trademarks in

DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT    PAGE 2
NO. 4-07-CV-487-A                                                                                                                            275947.1

the text or title of ads, Google forbids it:

> When we receive a complaint from a trademark owner, we only investigate the use of the trademark in ad text. **If the advertiser is using the trademark in ad text, we will require the advertiser to remove the trademark and prevent them from using it in ad text in the future.** Please note that we will not disable keywords in response to a trademark complaint.[1]

Although this policy is clear, American ignores it, claiming that Google "does not make an affirmative commitment" to refrain "from publishing Sponsored Links that infringe on the proprietary trademarks or service marks of others." Am. Br. at 4 n.3. Fortunately, the Court can consider Google's actual policy—quoted and cited in American's complaint—rather than American's mischaracterization of it. Compl't ¶50 & n. 11; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S.Ct. 2499, 2509 (2007) ("courts must consider … when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Second, American misrepresents how Sponsored Links are displayed, claiming they are designed to be indistinguishable from natural search results because they share the same "color, typeface, and font size." Am. Br. at 3. However, the numerous screen shots from Google pages displayed in American's complaint demonstrate that Sponsored Links are always distinguished from natural search results. Compl't ¶¶ 64, 65, 67, 69. Sponsored Links appear in a *shaded box* titled "Sponsored Links" above the search results, and Sponsored Links next to the search results are *separated by a solid line* and appear under the title "Sponsored Links." *Id.* American also asserts that "Internet users do not understand Google's 'Sponsored Links' to be advertisements," but the study it cites states the opposite: while "there are some differences in how users feel that search engines can make paid results most obvious to them[, a]ll agree that using the words 'PAID' or 'SPONSORED' is the most effective."[2]

---

[1] http://www.google.com/tm_complaint_adwords.html (visited Oct. 17, 2007) (emphasis added).

[2] *See* Deborah Fallows, *Search Engine Users: Internet searchers are confident, satisfied and trusting—but they are also unaware and naïve*, at 25 (2005), at http://www.pewinternet.org/pdfs/PIP_Searchengine_users.pdf.

## III. ARGUMENT

**A. A party cannot infringe if it does not use the trademark as a trademark.**

Contrary to American's arguments, the "trademark use" requirement exists. If a defendant is using a plaintiff's trademark "in a 'non-trademark' way - that is, in a way that does not identify the source of a product - then trademark infringement and false designation of origin laws do not apply." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003); *see also 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002).

Although American claims the Fifth Circuit has not adopted this trademark use requirement, a close reading of *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997), demonstrates otherwise. The Fifth Circuit held that the plaintiff could not sustain a trademark dilution claim against Exxon because it did not allege use of the relevant mark "as an indicator of origin and/or quality of particular goods and services." *Exxon Corp.*, 109 F.3d at 1083. While American argues that the Fifth Circuit was "merely trying to illustrate the difference between use of a mark 'as a device of corporate identity and its use as a trade name or trademark,'" it neglects to mention that the court provided this illustration when considering a trademark dilution claim premised "upon matters wholly unrelated to the defendant's use of the allegedly diluting mark *as a trademark*[.]" *Compare* Am. Br. at 7 n.5 *with Exxon Corp.*, 109 F.3d at 1084 (emphasis in original). The Fifth Circuit "reject[ed] this highly unorthodox view of trademark law." *Exxon Corp.*, 109 F.3d at 1084; *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 656 (N.D. Tex. 2001) ("claim must be premised upon the defendant's use of the allegedly diluting mark as a trademark").[3]

American's final attempt to undermine the trademark use requirement is a strawman,

---

[3] *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009-10 (5th Cir. 1975), does not limit the trademark use doctrine. American quotes a part of the opinion that discusses the likelihood of confusion analysis, not the trademark use analysis. Am. Br. at 6. As American acknowledges in section I(C) of its brief, trademark use and likelihood of confusion require separate analysis. *See also 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005) (considering likelihood of confusion before considering trademark use "puts the cart before the horse").

attributing to Google the position that only a visible display of a mark can be use. Am. Br. at 6-7. Obviously, silence can in some circumstances be an affirmative misstatement of source. When someone orders a Coke and the waiter silently returns with an unmarked glass of Pepsi, there is an implicit use of the mark even though no one utters or displays the word "Coke." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250 (9th Cir. 1982). But Google, unlike the waiter, makes no representation that American is the source of the Sponsored Links. Instead, it provides a link to American's own website, along with clearly labeled alternatives: to complete the analogy, the waiter returns with a tray of clearly marked cans of Coke, Pepsi, and others.[4]

### B. American does not allege that Google has used its trademark as a trademark.

American next suggests that appellate authority holds that trademark-triggered search engine advertising is trademark use. As Google's opening brief explains, the only circuit court opinion to consider the trademark use requirement in internet advertising expressly held that there is no trademark use when trademarks in domain names trigger pop-up internet advertising. *1-800 Contacts*, 414 F.3d at 412. American tries to distinguish this case. But *all seven* lower court opinions decided in the Second Circuit since *1-800 Contacts* found *1-800 Contacts* to be undistinguishable and concluded that keyword-triggered advertising on search engines (such as in this case) does not constitute trademark use.[5]

---

[4] Although American flatly declares, with no support, that "When Internet users enter a trademark term into a search engine, they expect to be directed to the website of that trademark's owner," in its complaint, American concedes otherwise. Am. Br. at 2 n.2. American acknowledges that Google produces "a search results page that lists the websites that may relate to the customer's search terms and their corresponding links." Compl't ¶ 32. In other words, Google does not operate like a restaurant filling an order. When someone enters a search term into Google, he does not expect to taken directly to the most relevant search result (unless he clicks on the "I'm Feeling Lucky" button, which takes users who search for "american airlines" directly to American's site). Instead he expects a list—sometimes millions of items long—of relevant search results.

[5] *S & L Vitamins, Inc. v. Australian Gold, Inc.*, 2007 WL 2932778 (E.D.N.Y. 2007); *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545 (E.D.N.Y. 2007); *Site Pro-1, Inc. v Better Metal, LLC*, 2007 WL 1385730 (E.D.N.Y. 2007); *Hamzik v. Zale Corp./Delaware*, 2007 WL 1174863 (N.D.N.Y. 2007); *Rescuecom Corp. v. Google Inc.*, 456 F. Supp. 2d 393 (N.D.N.Y. 2006); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 431 F. Supp. 2d 425 (S.D.N.Y. 2006). By way of selective quoting, American incorrectly asserts that *Hamzik* supports a finding of trademark use. Am. Br. at 10. That opinion actually held that "Case law makes it clear that merely displaying alternative products in response to a computer search on a tradename is not a Lanham Act use." *Hamzik*, 2007 WL 1174863, at *3. It then went on to rule that because the defendant displayed the trademark at issue in the *text* of its advertisement, the "trademark *does* appear on the displays associated with the goods" and trademark use exists. *Id.* As Google continually emphasizes, its policy forbids the display of trademarks that American complains about in ad

The circuit court opinions cited by American, on the other hand, did not address the "trademark use" requirement. In fact, *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004), supports Google's position.[6] In that case, the court considered keyword-triggered *"unlabeled* banner advertisements," noting that "if a banner advertisement clearly identified its source," there would be no liability. *Id.* at 1025, n. 16 (emphasis added). Google forbids advertisers from using the trademarks of others in ads if the trademark owner complains and, as the screenshots included in American's complaint demonstrate, every ad displayed on Google displays a specific destination URL (other than American's), which is the source of the advertisement. *See* Compl't ¶¶ 64, 65, 67, 69. Thus, under *Playboy*, Google is not liable because the advertisements clearly identify their source.

The other appellate authority relied upon by American is *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006). The court in this case, however, did not consider the trademark use issue either. Moreover, this September, an opinion involving the same trademark holder—Australian Gold—explicitly held that there is no trademark use. *S & L Vitamins, Inc. v. Australian Gold, Inc.*, 2007 WL 2932778, *5.

American also notes that some district courts have adopted its position. Am. Br. at 8-9. Google acknowledges a district court split. American cites seven opinions in its favor[7] and Google cites seven opinions in its favor. Google submits that the opinions it cites are far more thorough and better reasoned. In the end, the issue is one of first impression for this Court.

C. **American's complaint cannot survive Google's motion to dismiss because American fails to allege *infringing* use.**

In its opening brief, Google explained that certain ads that contain text similar to American's marks are noninfringing because they constitute legitimate and fair uses by companies that sell actual American products and services or report news and analysis about

---

text.

[6] Footnote 11 explicitly states that the court considered only jurisdictional issues when and not the "trademark use" requirement. *Id.* at 1024 n.11.

[7] In one opinion, *Kinetic Concepts, Inc. v. BlueSky Med. Group, Inc.*, 2005 U.S. Dist. LEXIS 32353, at *32-33 (W.D. Tex. 2005), however, the court nowhere addresses the trademark use requirement.

American.[8] These activities—and the advertising connected with them—are simply not prohibited by trademark law. *See* Motion to Dismiss at 10-12; *see also S&L Vitamins, Inc.*, 2007 WL 2932778, at *7 (when advertiser sells plaintiff's trademarked products, "'there is nothing improper with [the] purchase of sponsored links to their websites' when searching for the Marks") (quoting *Merck & Co.*, 425 F. Supp. 2d at 416).

Rather than confront Google's argument substantively, American argues it would be improper for the Court to rule now because "the fair use defense raises fact-specific issues not properly resolved through a motion to dismiss." Am. Br. at 11-12. However, courts routinely grant motions to dismiss when the allegations demonstrate fair use as a matter of law. *See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1466-67 (9th Cir. 1993) (affirming dismissal of trademark infringement claims under 12(b)(6) where trademark use was fair use as a matter of law); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972-74 (C.D. Cal. 2007); *Arnold v. ABC, Inc.*, 2007 WL 210330 (S.D.N.Y. 2007) (granting motion to dismiss where facts as alleged in complaint demonstrated "fair use"). Here, dismissal is appropriate because the screenshots that American includes in its complaint show only non-infringing use. Significantly, American does not contest that the advertisers are selling legitimate American products and services or providing news and analysis about American.

American's only argument on the merits is contained in a footnote: "Google uses bold-face type to highlight the AA Marks when they appear in the text of Sponsored Links and uses background colors and other visual cues to misdirect the attention on Internet users to Sponsored Links." *See* Am. Br. at 12 n.10.[9] The idea that any bolding of words could result in a trademark

---

[8] American's complaint lists ads on Google that display terms that are *similar* to American's trademarks, but these terms are *not* American's trademarks. The fact is that while American owns the well-known "American Airlines" trademark, that phrase is descriptive. Instead it describes dozens of American airlines. Trademark protection does not extend to descriptive terms similar to American's trademark, such as an "American airline." The one example of an actual American trademark appearing in ad text is paragraph 64 of the complaint, which shows a third-party advertisement with the American trademark "AA" in its text. Despite American's familiarity with Google's trademark-takedown policy—which requires trademark owners to notify Google so that Google does not have to guess which marks trademark owners do not want appearing in third-party advertisements—American does not allege that it notified Google that it wants Google to block "AA" from third-party advertisements.

[9] American cites *Pebble Beach Co. v. Tour*, 155 F.3d 426, 546, 144 F.3d at 546, for the proposition that "use of a

violation is simply not present in the fair use doctrine or in trademark law. Moreover, the screenshots in American's complaint demonstrate that, in *all* Google search results, the bolded words are simply whatever words the user searched for, not words Google has chosen to bold. *See* Compl't. ¶¶ 64, 65, 67, 69, 70. If the user searches for "fares," the same ads will appear with only "fares" bolded.

D. **The Communications Decency Act ("CDA") immunizes Google against most of American's complaint.**

American makes three unconvincing arguments that the CDA does not immunize Google. First, citing cases from outside the Fifth Circuit, American argues that because CDA immunity is an affirmative defense it cannot be considered on a motion to dismiss. In the Fifth Circuit, however, a court can and should consider an affirmative defense if it "appears on the face of the complaint." *Garret v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991); *Neel v. Rehberg*, 577 F.2d 262, 264 (5th Cir. 1978) ("[A]n affirmative defense ... may be raised by a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6)."). Thus, courts within the Fifth Circuit routinely grant CDA immunity defenses set forth in motions to dismiss. *See, e.g., Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843 (W.D. Tex. 2007); *Doe v. Bates*, 2006 WL 3813758 (E.D. Tex. 2006); *see also MCW, Inc. v. Badbusinessbureau.com LLC*, 2004 WL 833595, *7 ("CDA ... is an appropriate ground for dismissal ... under Rule 12(b)(6).").

Second, American argues that CDA immunity does not apply because Google is an "information content provider" of the advertisements, rather than merely their publisher. But American's complaint decisively concedes that Google "publishes" advertisements *provided by third parties*. Compl't at ¶¶ 38, 48, 50, 77; *see also DiMeo III v. Max*, 2007 WL 2717865, *2

---

mark as an 'attention-getting symbol' is not fair use." Am. Br. at 12 n. 10. However, that case involved the defendant placing the plaintiff's marks prominently on advertising and promotional material, using the marks on its menu, and using the marks on signs directing players to each tee. *See Pebble Beach Co.*, 155 F.3d at 546. American also cites *CICCorp, Inc. v. Aimtech Corp*, 32 F. Supp. 2d 425, 439-40 (S.D. Tex. 1998), for the proposition that "use of [a] mark in 'large, red letters' creates [a] fact issue precluding summary judgment on [the] fair use defense." Am. Br. at 12 n. 10. However, *CICCorp* simply never stated that the fact that the letters were large or red were the reasons for denying summary judgment. Rather, the court looked at a number of facts, not present in the current case, demonstrating that the defendant was using the plaintiff's marks as its own.

---

(3d Cir. Sept. 29, 2007) (dismissing complaint under CDA because complaint alleges defendant is "publisher of the comments" at issue, not that defendant "authored the comments"). Belatedly realizing that it has plead CDA immunity, American seeks to rewrite its allegations. American now claims that its "Complaint avers that Google actively encourages its advertisers to select and use AA Marks in the title and text of their Sponsored Links," citing paragraphs 73, 75 and 80. Am. Br. at 14. *None* of these paragraphs—nor anything else in American's complaint—support this argument (which is utterly false and could not be pled in good faith). Paragraphs 73 and 75 speak only to the keywords that trigger advertisements and *not* to the text of the advertisements. Paragraph 80 is even further off point, containing only the conclusory allegation that Google has an ineffective trademark policy that fails to prevent trademark violations.

American also argues that because Google creates the "Sponsored Links" title and guidelines for formatting Sponsored Links, it is the information content provider for the Sponsored Links themselves. This argument fails because these typical publisher activities of labeling ads and providing formatting restrictions are not the same thing as creating the allegedly infringing content. American notes that this Court held a defendant was not immune from liability for defamatory third-party postings under the CDA because the defendant created titles and headings for defamatory website postings. But in *MCW* it was the headings and the titles *themselves*, which contained messages such as "Con Artists," "Scam," and "Ripoff," that were defamatory. *MCW,* 2004 WL 833595 at *9 n.10.[10]

Third, American argues that even if CDA immunity applies, it has not asserted causes of action covered by CDA immunity. American contends that the CDA does not apply to its claims for tortious interference with contract and money had and received because these claims do not

---

[10] Another case that American relies on to make a similar point, *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 489 F.3d 921 (9th Cir. 2007), is not the last word because the Ninth Circuit intends to reconsider the decision *en banc* and has stated that it may not be cited as precedent. *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, --- F.3d ----, 2007 WL 3013891 (9th Cir. 2007). As for *800-JR Cigar, Inc. v. GoTo.com*, 437 F.Supp.2d 273 (D.N.J. 2006), the court's extremely summary treatment of this issue is simply wrong. In *800-JR Cigar*, the court held that a search engine was a content provider for ads because it permitted an advertiser to have a trademark trigger its ad. A publisher's role in choosing the *placement* of an ad, however, is not a role in creating the *content* of the ad.

treat Google as a publisher or speaker of information and that the CDA only applies to publisher-type torts such as libel. *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 849 (W.D. Tex. 2007), rejected this argument where—as here—no claim would exist without publication.

American next argues that the CDA cannot apply to its claim for Lanham Act false representation because this is an intellectual property claim. But American ignores the U.S. Supreme Court case Google relied upon in its opening brief, *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 667 (1999), which unambiguously held that a false representation claim under the Lanham Act is *not* an intellectual property claim.

Finally, American argues that its state law claims for violation of trademark infringement, trademark dilution, unfair competition and misappropriation are not exempted by the CDA because they pertain to intellectual property. The recently decided *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007), however, concluded after an in-depth analysis that the CDA provides immunity against *all* state law claims. In any case, claims for unfair competition and misappropriation are not claims pertaining to intellectual property under any interpretation of the CDA, and American does not explain its assertion to the contrary.

## IV. CONCLUSION

For the reasons set forth above and those set forth in Google's opening brief (which addresses several issues not addressed herein due to space limitations), Google requests that the Court dismiss American's complaint in its entirety and enter such other and further relief to which it may be justly entitled.

Dated: October 22, 2007

Respectfully submitted,

*[signature]*

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/429-9181

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Benjamin W. Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

**Via Hand Delivery**

Dee J. Kelly
Dee J. Kelly, Jr.
Lars L. Berg
Michael D. Anderson
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Date: October 22, 2007

Joseph F. Cleveland, Jr.