American Airlines Inc v. Google Inc

CTJRMT
ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DROP BOX
MAY —
5.33
CLERK, U.S. DISTRICT COURT
By _____
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

AMERICAN AIRLINES, INC.,

          Plaintiff,

    -v.-

GOOGLE INC.,

          Defendant.

No. 4:07-CV-487-A

## PLAINTIFF'S MOTION TO COMPEL AND BRIEF IN SUPPORT

Dee J. Kelly
  State Bar No. 11217000
Dee J. Kelly, Jr.
  State Bar No. 11217250
Lars L. Berg
  State Bar No. 00787072
KELLY HART &
HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown
  admitted pro hac vice
George A. Nicoud III
  admitted pro hac vice
GIBSON, DUNN &
CRUTCHER LLP
One Montgomery St., Ste. 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Terence P. Ross
  admitted pro hac vice
Howard S. Hogan
  admitted pro hac vice
GIBSON, DUNN &
CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

CLERK OF COURT
2008 MAY -7 PM 5: 33
RECEIVED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FORT WORTH DIVISION

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND BACKGROUND FACTS ........................................................ 1

II.   CERTIFICATION ................................................................................................ 2

III.  ARGUMENT ..................................................................................................... 3

    A.   Google's Objections Concerning Its Broad Match and Suggested Keywords ........ Should Be Overruled........................................................................................... 3

        1.   Request Numbers 8 and 11 Seek Relevant Information. ........................... 3

        2.   Google's Objections Do Not Justify Its Refusal to Provide Responsive Documents or Electronically Stored Information.................. 6

    B.   Federal Rule 34 Requires Google to Produce Electronically Stored Information in Response to Requests for Production. ........................................... 9

    C.   Google Interfered with Proper Questioning of Its Corporate Representatives. .... 15

    D.   The Meet and Confer Process Has Not Resolved These Discovery Disputes. ..... 16

IV.   PRAYER.......................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Howell v. Standard Motor Prods., Inc.*,
   No. 4:99-CV-987-E, 2001 WL 456241 (N.D. Tex. Apr. 27, 2001) ........................................ 15

*In re United States*,
   864 F.2d 1153 (5th Cir. 1989) ...................................................................................... 6, 8, 13

*Kamatani v. BenQ Corp.*,
   No. Civ.A. 2:03-cv-437, 2005 WL 2455825 (E.D. Tex. Oct. 6, 2005) ................................... 15

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
   894 F.2d 1482 (5th Cir. 1990) ............................................................................................... 6

*Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*,
   No. 01 Civ. 9280(AGS), 2002 WL 87696 (S.D.N.Y. Jan. 23, 2002) .................................... 15

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
   No. Civ.A. 00-981-RRM, 2002 WL 818061 (D. Del. Apr. 30, 2002) .................................... 15

**Rules**

Fed. R. Civ. P. 30 ........................................................................................................................ 7

Fed. R. Civ. P. 34 ............................................................................................................. 8, 10, 12

Fed. R. Civ. P. 37 ................................................................................................................... 1, 2

This action challenges Google Inc.'s ("Google") unauthorized sale of the trademarks of American Airlines, Inc. ("American") to divert consumers away from American's own website and toward websites that promote American's competitors. In discovery, American needs information being withheld by Google concerning Google's broad match program and Google's systems that recognize when Internet users are using Google's search engine to seek American's services. Google, however, has refused: (1) to produce information responsive to certain of American's requests for production; (2) to give American access to critical responsive electronically stored information; and (3) to allow its witnesses to answer basic questions that test the thoroughness of Google's search for responsive documents. As a result, American brings this motion pursuant to Rule 37 of the Federal Rules of Civil Procedure seeking an order: (1) overturning Google's complete objections to two of American's document requests; (2) requiring Google to give American access to "electronically stored information" responsive to American's Requests for Production; and (3) overruling Google's frequent objections and instructions not to answer deposition questions that probed the sufficiency of Google's document search.

## I.
## INTRODUCTION AND BACKGROUND FACTS

Google encourages advertisers to purchase the use of the trademarks and service marks that identify American to consumers (collectively, the "American Marks"). Google also assists those advertisers in diverting Internet traffic away from American's website when consumers are trying to find the American Airlines website. Google sells the American Marks to its advertisers in at least two ways: (1) by selling to advertisers the right to use American Marks as "keywords" that trigger advertisements that Google misleadingly labels as "Sponsored Links", and (2) by

using the American Marks to trigger these "Sponsored Links" even when Google's advertisers have chosen not to buy the American Marks as keywords. Google calls the latter program "broad match." With broad match, Google places American's Marks into a secret list of terms that Google sells – but never fully explains to advertisers – in order to trigger "Sponsored Links" for advertisers when consumers use American Marks as search terms in Google. In fact, Google sets broad match as the default setting for all of its advertisers and requires advertisers to opt out of broad match in order to stop its use. *See* App. Ex. G, pp. 65-67 (Google's Responses to American's First Interrogatories, Response No. 5).[1]

As set forth in detail below, Google has not lived up to its obligations to provide relevant information concerning its Sponsored Link and broad match sales program, even though those issues are at the heart of this lawsuit.

## II.
## CERTIFICATION

American certifies that, in compliance with Fed. R. Civ. P. 37(a)(1), it has in good faith conferred in person, by correspondence, and by phone with counsel for Google on several occasions over many weeks in an effort to obtain the information that is the subject of this

---

[1] Pursuant to the Court's order in this case and Local Rule 7.1(i), American filed a separate appendix with this motion, which has been consecutively paginated by plaintiff. References to exhibits contained in this motion use the following convention: "App. Ex. [letter]; p. [number]" refers to the appendix exhibit letter and page number. Parentheticals include short hand descriptions of the exhibits that correspond to the more formal descriptions set forth in the table of contents to the appendix. Some of the documents American intends to include in the Appendix have been designated by Google as confidential or highly confidential under the terms of a Confidentiality Agreement between the parties (App. 26-36). Such documents cannot be unilaterally filed, and American intends to follow the procedures contemplated under the Confidentiality Agreement for filing such documents. The current Appendix contains placeholders (Ex. L, O, and V) in lieu of the actual documents. American intends to supplement its Appendix with the actual documents as soon as possible.

motion. Because these efforts have been unsuccessful, American has filed this motion in order to obtain the discovery it needs within a time frame sufficient to comply with the Court's October 26, 2007 Order Setting Schedule and Providing Special Pre-Trial Instructions. Without this discovery, American will be severely prejudiced in opposing Google's anticipated summary judgment motion, which is due to be filed on July 3, and in proving its own case at trial. Discovery is scheduled to close on August 11.

## III.
## ARGUMENT

Google has failed to produce documents and electronically stored information within its possession, custody, or control responsive to American's requests for production that have been pending since as early as October 2007. Further, Google has interposed multiple boilerplate objections that make it impossible for American to understand what additional responsive information may exist, let alone whether Google has any intention to produce such information. Therefore, American seeks the Court's intervention to resolve three discrete issues that go to the heart of Google's discovery failures.

**A.  Google's Objections Concerning Its Broad Match and Suggested Keywords Should Be Overruled.**

Google has refused to provide responsive documents or electronically stored information to Request Numbers 8 and 11 of American's Second Requests for Production (respectively, "Request No. 8" and "Request No. 11"). *See* App. Ex. E, pp. 51-52, 53. As set forth below, American respectfully requests that the Court overrule Google's objections to these requests.

**1.  Request Numbers 8 and 11 Seek Relevant Information.**

*Request No. 11*

Request No. 11 seeks documents, defined to include electronically stored information, regarding Google's "broad match" program. *See* App. Ex. E, pp. 48, 53 (Definition No. 9,

Request No. 11). Specifically, American asked Google to provide electronically stored information concerning: (a) the number of Sponsored Links that were triggered by broad match in response to a search for an American Airlines Mark or confusingly similar term; and (b) the number of Internet users who "clicked through" these Sponsored Links triggered by broad match. *Id.* Other requests sought additional information about broad match Sponsored Links, as well as other Sponsored Links triggered by the use of the American Airlines Marks or confusingly similar terms. *See* App. Ex. A, pp. 8, 9, 13, 14 (Request Nos. 4-5, 28, 31); App. Ex. E, p. 50-51 (Request No. 3); App. Ex. F, pp. 57-58 (Response to Request No. 3).

The importance of this broad match data is beyond dispute. American alleges that Google misleads consumers by representing paid advertisements as supposedly objective, relevant search results in order to fool consumers into using an advertised Internet website rather than the website they were looking for. *See* Compl. ¶¶ 4-5, 33-40, 47.

In the course of discovery, American has learned that Google displays a large number of these "Sponsored Links" on its search results pages because Google has broad "matched" the American Marks or designated them as "synonyms" to the search terms that its advertisers actually purchased. *See, e.g.,* App. Ex. G, pp. 65-67 (Google's Responses to American's First Interrogatories, No. 5). According to Google, it requires that advertisers use this broad match program unless they specifically opt out of that program and select a different option. *Id.*

To date, Google has refused to provide significant responsive information concerning Sponsored Links that appear as a result of Google's use of the American Marks in its broad match program. Google's own discovery requests, however, confirm that broad match is an

important issue in this case. *See* App. Ex. N, p. 91 (Google's 30(b)(6) Notice, Topic 6) (seeking discovery from American with respect to "broad match keywords").[2]

*Request No. 8*

Request No. 8 seeks equally relevant information concerning Google's efforts to encourage its customers to use the American Marks as keywords to trigger their own advertisements. *See* App. Ex. E, pp. 47, 51-52 (Definition No. 8, Request No. 8). More specifically, it asks for information about the specific keywords that Google has itself suggested to its advertisers and potential advertisers when they "have designated one of the American Airlines Marks as a Keyword in one of Google's Advertising Programs." *Id.* at 51-52.

As set forth in greater detail in the Complaint, Google has created a specific program that affirmatively suggests keywords to its users and potential users. Compl. ¶¶ 73-75. In particular, when a Google user identifies a generic term related to the airline industry or an American Mark as a potential keyword, Google itself suggests still more American Marks or other terms that are confusingly similar. *Id.* In fact, Google's own website brags that Internet users can "[e]nter any word to see related keywords." *Id.* ¶ 75. Because Google claims that it is nothing more than an innocent publisher of the advertisements of third-parties, it is entirely reasonable for Google to produce information about the keywords that Google has itself suggested to its advertisers. To show the extent of the problem, American also seeks to learn how many of Google's customers

---

[2] The broad match data that Google asserts that is has produced to date is inadequate to respond to American's requests and is only a small fraction of the broad match data that Google should have produced.

followed Google's suggestions and how much Google earned from diverting consumers away from American in this fashion. App. Ex. E, pp. 51-52 (Request No. 8).[3]

For these reasons, American's Requests Numbers 8 and 11 are not only relevant, they are directed at issues that are central to this case.[4]

### 2. Google's Objections Do Not Justify Its Refusal to Provide Responsive Documents or Electronically Stored Information.

Despite its vaunted ability to search through massive quantities of electronic data in fractions of a second, Google's primary objection that it asserts in its objections to Requests 8 and 11 is that they involve "undue burden or cost."[5] Google repeats the same formulaic recitation in response to both requests — that the requested information is electronically stored, has not previously been gathered into a hard-copy document form, is "spread across a vast amount of data," and that "extracting it would require an unreasonable amount of engineering, computing, and analytical resources." *See* App. Ex. F, pp. 59, 62 (Responses to Requests No. 8

---

[3] Request No. 8, moreover, was designed to address Google's failure to produce all documents and electronically stored information responsive to American's First Requests for Production. *See, e.g.,* App. Ex. A, pp. 10-11, Request No. 10 (requesting "[a]ll documents relating to the use of the American Airlines Marks or Terms Similar To The American Airlines Marks, in any lists of 'More Specific Keywords,' 'Similar Keywords' or any other suggestions of terms, phrases or words to be sold, marketed, promoted, offered, designated, used, or included as Keywords or other designated search terms in Google's Advertising Programs, or in the text of Sponsored Links or other messages published as a part of Google's Advertising Programs"). *See also id.,* pp. 13-14, Request Nos. 28, 30.

[4] Google asserts a relevance objection with respect to Request No. 8 but not as to Request 11.

[5] Google has mentioned other objections in meet and confer discussions, but those other objections were not timely raised in the actual objections to the requests and any such objections are thus waived. *See, e.g., In re United States,* 864 F.2d 1153, 1156 (5th Cir. 1989).

---

and 11). Google does not, however, provide any specifics as to why this information is burdensome to access.

This sort of general and conclusory objection is insufficient to sustain Google's objections. *See, e.g., McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) ("[T]he party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive. . . . [T]o say an interrogatory [is] 'overly broad, burdensome, oppressive and irrelevant' [is] not adequate to voice a successful objection to an interrogatory. We see no reason to distinguish the standards governing responses to interrogatories from those that govern responses to production requests.") (citation and some internal punctuation omitted).

American has provided Google with ample opportunities to justify its burden objection, but Google has not explained why it cannot provide the requested information. *See, e.g.,* App. Ex. I, pp. 73-74 (addressing Google's objections to Request Nos. 8 and 11 by letter). In particular, American asked Google to proffer a witness under Rule 30(b)(6) concerning "Google's preservation of, search to find and produce documents in this action." *See* App. Ex. H, p. 70 (American's 30(b)(6) Notice, Topic 16); App. Ex. O, p. 95 (Altherr Tr. at 5:16-21). Google's designated witness, Leslie Altherr, testified that she did not recall whether Google had done any "searching of its Google Analytics [program] for information . . . responsive to requests in this case," App. Ex. O, p. 114 (Altherr Tr. at 102:12-103:18), and was not able to provide any information about its attempts "to gather information responsive to requests by American Airlines related to the Broad Match functionality within AdWords." *Id.*, pp. 113-114 (Altherr Tr. at 101:23-102:2). In fact, Google could offer no information whatsoever concerning "how much effort would be required in terms of hours, in terms of persons, in terms of money, that would

have to be expended [for] Google to respond to American Airlines' requests that have been made for information related to the Broad Match functionality of AdWords." *Id.*, p. 114 (Altherr Tr. at 102:4-11). *See also id.*, pp. 111-112 (Altherr Tr. at 93:14-96:7) (explaining that Google could not even provide any information as to effort already expended in responding to American's requests for production).

Google's burden objection rings particularly hollow in the face of its own promotional materials concerning the depth and breadth of the information that Google promises to provide to its advertisers about broad match in the regular course of business. *See* App. Ex. T, pp. 145-148 (printouts from Google websites, at 6-9). According to Google, its "Search Query Performance Reports" can tell its advertisers "what users (a.k.a. potential customers) are searching on when they find and click on" their Sponsored Links, including through broad match. *Id.*, p. 148 (printouts from Google websites, at 9). Further, Google promises that its advertisers can carefully track on a daily basis the impact of each particular broad matched keyword on their sales. *Id.* Google has provided no explanation why it cannot provide this information to American.

In short, Google has not provided specific information about its alleged burden, and any after-the-fact justification would be insufficient. *See, e.g.*, *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[W]hen a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."). Accordingly, Google's objections should be overruled and Google should be compelled to provide all responsive documents and electronically stored information to Requests 8 and 11.

**B. Federal Rule 34 Requires Google to Produce Electronically Stored Information in Response to Requests for Production.**

American's Requests for Production seek the production of electronically stored information within Google's possession, custody or control. *See* App. Ex. A, pp. 7-8 (American's First Requests for Production), Definition No. 12 (defining "document" to include "records in electronic, mechanical, magnetic, optical, or electric form . . . including but not limited to computer data, computer files, computer programs . . . and all other electronically stored information"). *See also id.* Ex. E, pp. 48-49 (American's Second Requests for Production), Definition No. 13 (same).

For example, among other things, American's October 19, 2007 Requests for Production (App. Ex. A) called for the production of:

- Documents relating to instances in which any of the American Marks and similar terms "has been sold, marketed, promoted, offered, designated, used, or included as a Keyword or other designated search term in any of Google's Advertising Programs," Request No. 28, App. pp. 13-14;

- Documents showing specific categories of information for each "Sponsored Link or other messages published as a part of Google's Advertising Programs that was triggered by a Keyword or other designated search term that incorporates one or more of the" American Marks and similar terms, Request No. 31, App. pp. 14-15;

- Documents that "show calculations and/or estimates of the total amount of revenues, profits, and other consideration that Google has received or expects to receive from the sale, marketing, promotion, offering, designation, use, or inclusion of" American Marks and similar terms "as Keywords or other designated search terms in Google's Advertising Programs," Request No. 22, App. p. 14;

- Documents reflecting the total number of searches that Internet users have made using Google search engines by entering the American Marks and similar terms "as one of the words, phrases, or terms designated, included, or used in the search request," Request No. 32, App. p. 15; and

- Documents relating to the use of the American Marks and similar terms in "any . . . suggestions of terms, phrases, or words to be sold, marketed, promoted, offered, designated, used, or included as Keywords or designated search terms in Google's Advertising Programs," Request No. 10, App. pp. 10-11;

*See also id.,* Request No. 5, App. p. 9, Request No. 29, App. p. 14; Request No. 30, App. p. 14.

Similarly, Google's Second Set of Requests not only called for the production of broad match

and suggested keyword data, as discussed above, but also other electronically stored information.

*See* App. Ex. E, pp. 50-53 (Request Nos. 3, 8-11).

Google has objected to these requests on the ground that if responsive electronically

stored information does not exist in a pre-existing format or document, it only has an obligation

to produce such information in response to a specific interrogatory. *See, e.g.,* App. Ex. S,

pp. 134-135 (April 4, 2008 Letter from Klaus Hamm, at 1-2) (objecting that the production of

"information" is "not properly the subject of a request for production of documents" because

"Google has *no documents* that provide the summary information") (emphasis in original). This

is not a correct statement of the law.

Rule 34 was amended effective December 1, 2006, to require access to electronically

stored information. In relevant part, Rule 34(a) now reads:

> A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .

The Committee Note to the 2006 Amendment specifically acknowledges that:

> [e]lectronically stored information may exist in dynamic databases and other forms far different from fixed expression on paper. Rule 34(a) is amended to confirm that discovery of electronically stored information stands on an equal footing with the discovery of paper documents. . . . Rule 34(a)(1) is intended to be broad enough to cover all current types of computer-based information, and flexible enough to encompass future changes and developments. . . . Rule 34(a)(1) is also amended to make clear that parties may request an opportunity to test or sample materials sought under the rule in addition to inspecting and copying them.

Google, in fact, boasts to its advertisers that it already has such "dynamic databases," that are equipped to provide a broad array of data concerning the campaigns of advertisers whose Sponsored Links were triggered by American Marks. Google's advertisers are given every day access to Google's electronic databases to view this electronically stored information. Google's own website describes its "Google Analytics" program as "a full-featured, powerful analytics package," which allows a customer to "compare the behavior and profitability of visitors who were referred from each of [its] ads, keywords, search engines, and emails" and to "track[] cost data for all [its] campaigns and combin[e] that data with conversion information on a page-by-page basis." *See* App. Ex. T, pp. 149-150 (printouts from Google websites, at 10-11). *See also id.*, pp. 151-156 (printouts from Google websites, at 12-17) (explaining Google Analytics' ability to capture information concerning site usage, conversion rates, ecommerce activity, average time on site, average page views and visits per day, click-through rates, and other data); App. Ex. U, pp. 158-167 (description of Google Analytics by Google's-proclaimed "Analytics Evangelist," providing demonstrations as to Google's ability to track every move of web users with respect to their Sponsored Links and linked sites). In particular, in presentations that Google has made *to American*, Google has represented that its Google Analytics program allows Google to tell its advertisers "[w]hich keywords resulted in sales of a certain product." App. Ex. W, p. 183 (excerpts of Google presentation concerning Google Analytics); *see also id.* at 189 (boasting of the ease of use of the broad array of data accumulated by Google Analytics).

Instead of giving American direct access to these electronic databases, Google has produced only a spreadsheet that it created specially for this litigation. *See* App. Ex. P, p. 118 (March 21, 2008 Letter from Klaus Hamm, at 2). This spreadsheet is insufficient and does not satisfy Google's discovery obligations.

Google's spreadsheet provides only limited data – in categories determined and defined solely by Google. As discussed above, Google has not provided the requested broad match and related keywords data. *See, e.g.,* App. Ex. R, pp. 125-126 (March 31, 2008 Letter from Frederick Brown, at 1-2). In addition, Google's spreadsheet does not provide: (1) query-specific information (the data provided was aggregated by advertiser and Keyword); (2) click-stream data, including conversion rates, depth of visit and other data requested by American; or (3) financial data, including maximum cost-per-click bids and other data requested by American. *See, e.g.,* App. Ex. M, p. 85 (March 14, 2008 Letter from Howard Hogan, at 2) (citing various Requests for Production). The click-stream data and other related data such as conversion rates, depth of visit, and bounce rates are particularly important because they evidence how many Internet users experience initial interest confusion or are otherwise diverted to American's competitors. *See* App. Ex. T, pp. 154-157 (printouts from Google websites explaining these concepts, at 15-18).

The spreadsheet is also deficient because Google has refused to provide written definitions for the abbreviated column titles of this sheet which are needed to understand the contents of the columns, even though Google created the spreadsheet specifically for this litigation. *Compare* App. Ex. M, p. 84 (March 14, 2008 Letter from Howard Hogan, at 1) (asking Google, *inter alia*, "to identify the meaning of the various fields set forth in [the] spreadsheets") *with* App. Ex. P, p. 118 (March 21, 2008 Letter from Klaus Hamm, at 2) (refusing to identify the meaning of the fields at issue and asserting that "[t]he appropriate discovery method for obtaining information about documents we produce is by way of an interrogatory or a deposition") *and* App. Ex. S, p. 136 (April 4, 2008 Letter from Klaus Hamm, at 3) (repeating Google's refusal and attempted justification). Rule 34(a)(1)(A) obliges Google to translate

electronically stored information into "a reasonably usable form." Insisting that American ferret out the contents of its custom-made spreadsheet through other forms of discovery is simply not providing that electronic data in a "reasonably usable form."

Next, Google has suggested that the information contained in the spreadsheet fulfills its obligation to provide electronically stored information because it presented its plan to use such a spreadsheet during a November 2007 meet and confer conference in this case. *See* App. Ex. P, p. 118 (March 21, 2008 Letter from Klaus Hamm, at 2) (justifying Google's production deficiencies by referencing its unilateral November 2007 representations). American, however, *never* agreed in advance that the information Google chose to provide would satisfy Google's discovery obligations; American only agreed to allow Google to *start* with that approach to see if it might work. *See, e.g.*, App. Ex. Q, pp. 122-123 (March 31, 2008 Letter from Lars Berg, at 1-2) ("American never agreed that Google could withhold any information that had been requested. We . . . told you that American would assess Google's original production to see if it fulfilled Google's obligations to answer American's requests."). Because this data compilation was configured solely to fit Google's preferences as to what it wanted to reveal instead of American's need for information as articulated in its discovery requests, the data Google chose to provide does not suffice. *See id.* ("We have now assessed the information Google provided and have informed you of substantial deficiencies in that production.").

Finally, Google's 30(b)(6) testimony makes clear Google regularly provides comparable information to its advertisers by giving them direct access to its databases, App. Ex. O, p. 116

(Altherr Tr. at 116:7-117:3), and to its sales force as they encourage customers to buy more of

Google's services. *Id.*, p. 116 (Altherr Tr. at 115:7-117:3).[6]

Although Google has represented it will produce additional *unspecified* information "[i]f

we have it and can assemble and access it without undue burden," *See* App. Ex. S, pp. 134-135

(April 4, 2008, Letter from Klaus Hamm, at 1-2), the request for the broad match and related

keyword information has been pending since January 2, 2008, *see* App. Ex. D, pp. 38-39

(January 2, 2008 Letter from Howard Hogan, at 2-3). Yet Google still has not provided any

additional relevant information after numerous meet and confer sessions and several broken

promises to do so. Further, Google provides no indication as to when any responsive

information will be produced and what information may be forthcoming, if at all.[7]

---

[6] While Google has not yet made any customer privacy objections to these requests, it could not sustain such objections if, as expected, it raises that objection in opposition to this motion. First, that objection would be untimely. *See, e.g.*, *In re United States*, 864 F.2d at 1156. Second, the "Terms of Use" that Google requires of its customers specifically allow Google to share such information with others as required during the course of litigation. *See* App. Ex. T, pp. 141, 144 (printouts from Google websites at 2, 5, explaining, for example, that proprietary data may be disclosed without the customer's prior written consent, if "required by law, regulation or court order"); *id.*, p. 142 (explaining, at 3, that personal information may be shared "to resolve a charge dispute or by legal process"). And third, the confidentiality agreement between Google and American in this case provides sufficient confidentiality protections for information exchanged in discovery. *See* App. Ex. C, pp. 26-36.

[7] The need for electronically stored information is particularly acute in this case because, according to Google, it has not even searched the files of all employees that Google itself identified as having relevant information, to determine if they possess responsive documents. *Compare* App. Ex. B, pp. 20-25 (Google's Initial Disclosures, providing a list of individuals that "Google believes . . . are likely to have non-privileged, discoverable information"), *with* App. Ex. K, p. 80 (list of Google employees whose documents have been searched for responsive documents). Google's corporate representatives have admitted at deposition that Google did not search the files of at least ten (10) individuals named in Google's Initial Disclosures. App. Ex. L, pp. 83 (Millikin Tr. at 48:7-10); App. Ex. O, pp. 108-109 (Altherr Tr. at 68:23-72:15).

---

Accordingly, American respectfully requests that the Court enter an order compelling Google to give American within ten (10) days either access to its responsive electronically stored information or a copy of responsive electronically stored information in a reasonably usable form.

## C. Google Interfered with Proper Questioning of Its Corporate Representatives.

When American became frustrated with Google's behavior in refusing to produce adequate documents and electronically stored information, American gave notice that it intended to depose Google pursuant to Fed. R. Civ. P. 30(b)(6) to answer questions concerning Google's "search to find and produce documents in this action." *See* App. Ex. H, pp. 69-72 (Notice of Deposition pursuant to Rule 30(b)(6)). Although American has now had the opportunity to depose two Google representatives with respect to Google's compliance with its discovery obligations, even these depositions have been needlessly restricted by Google. To be precise, during the course of these depositions, Google's counsel interposed repeated objections and, even more importantly, instructed the witnesses not to answer scores of questions about such relevant topics as the criteria that Google used to gather documents and select custodians from whom to gather documents. For example, Google's counsel would not even let its witness answer whether it had searched particular databases for responsive information. *See, e.g.*, App. Ex. O, pp. 116 (Altherr Tr. at 114:15-115:6). In total, Google instructed Ms. Altherr no fewer than 46 times not to answer questions about Google's search or communications with its employees about what documents Google was gathering.[8]

_____

[8] Appendix Exhibit V, pp. 168-171, summarizes the questions to which Google issued an instruction not to answer.

Instructions not to answer are generally proper only on grounds of privilege. *See, e.g.,* *Howell v. Standard Motor Prods., Inc.,* No. 4:99-CV-987-E, 2001 WL 456241, at *3 (N.D. Tex. Apr. 27, 2001) ("It is highly improper . . . for an attorney to instruct a deponent not to answer non-privileged questions."). Google, however, has not met this burden. *See, e.g., Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.,* No. 01 Civ. 9280(AGS), 2002 WL 87696, at *1 (S.D.N.Y. Jan. 23, 2002) ("Defendant has requested and will be granted the opportunity to depose a Rule 30(b)(6) witness who is knowledgeable about the nature and extent of the [document] search as well as document retention and location."); *Tulip Computers Int'l B.V. v. Dell Computer Corp.,* No. Civ.A. 00-981-RRM, 2002 WL 818061, at *5, *8 (D. Del. Apr. 30, 2002) (holding that the defendant should provide a 30(b)(6) witness who could answer questions regarding, *inter alia,* where the defendant searched for documents). *See also Kamatani v. BenQ Corp.,* No. Civ.A. 2:03-cv-437, 2005 WL 2455825, at *7 (E.D. Tex. Oct. 6, 2005) (acknowledging plaintiffs' search for discovery into defendant's "efforts to collect documents" and their demand for "a 30(b)(6) witness to testify as to [defendant's] efforts to obtain documents in this case").

Google has blocked questions that were designed to show that Google has yet to take its discovery obligations seriously. As a result, American has no alternative but to request respectfully that the Court overrule each of Google's instructions not to answer and to present their witnesses again for deposition within 10 days and at Google's sole expense.

**D.     The Meet and Confer Process Has Not Resolved These Discovery Disputes.**

Finally, the meet and confer process has done little to move Google into compliance with its discovery obligations. For example, at a November 7, 2007 meet and confer, Google attempted to dictate unilaterally the scope of its obligations to produce electronically stored information. No number of meetings since then has yielded any additional responsive electronically stored information.

Similarly, in a March 5, 2008, meet and confer session between the parties, American specifically asked for organizational charts, and Google represented that no such charts existed. Two weeks later, however, American *showed* an example of one of these supposedly non-existent charts to Google's designated corporate representative, who then confirmed that Google has additional organizational charts that have not been produced, especially within the sales organization. App. Ex. O, pp. 109-110 (Altherr Tr. at 73:3-75:1). Even when faced with the knowledge that American knew about Google's organizational charts, Google delayed producing any additional organizations charts until about two months after the March 5 meet-and-confer request.

In fact, Google has refused even reasonable requests to explain one of its objections, that American's definition of "Broad Match Keyword" somehow differs from its own. *Compare* App. Ex. F, pp. 55-62 (Google's Responses to American's Second Requests for Production, Reservation of Rights and General Objections, ¶ 31) (vaguely indicating a difference between the definitions) *with* App. Ex. J, pp. 78-79 (February 29, 2008 Letter from Howard Hogan, at 3-4) (explaining the apparent similarity between Google's definition and American's and asking for clarification of Google's objection—a request to which Google has made no response).

While there have been in person meetings, too many letters and several phone calls, Google has made no real progress in responding to American's meet and confer efforts, necessitating the present motion.[9]

---

[9] American recently received Google's responses and objections to American's Third set of Requests for Production. Because Google has committed to meeting and conferring with American about many of these requests, American's Third set of Requests for Production are not the subject of this motion. American hopes that the resolution of this motion will clarify issues related to the Third set of Requests for Production, but respectfully reserves the right

[Footnote continued on next page]

## IV.
## PRAYER

For the foregoing reasons, American respectfully requests that the Court enter an order:

(1) overruling Google's objections to providing requested broad match and related keyword data;

(2) requiring Google to give American access to all "electronically stored information" that is responsive to American's Requests for Production within ten (10) days either by giving American access to this information directly or by providing American a copy of this information in a reasonably usable form; and (3) overruling Google's objections to American's inquiries into the sufficiency of Google's document search and requiring Google to present its corporate witnesses again for deposition within 10 days and at Google's sole expense.

Respectfully submitted,

*[signature]*

Dee J. Kelly (State Bar No. 11217000)
Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
George A. Nicoud III (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

---

[Footnote continued from previous page]
   to address such requests in a future motion if the relevant issues are not sufficiently clarified through this motion to resolved through the meet and confer process.

---

Terence P. Ross (admitted *pro hac vice*)
Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF CONFERENCE

I certify that counsel for American has had several conferences regarding the merits of this motion to compel, including a final conference by phone on May 7, 2008 between me for American and Klaus Hamm for Google. Google opposes the relief sought in this motion. This motion is, therefore, presented to this Court.

Lars L. Berg

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on the 7th day of May, 2008 to Defendant's counsel, as follows:

*Via CMRRR #7007 0710 0000 0927 8167*
*and Email*
Joseph F. Cleveland, Jr.
BRACKETT & ELLIS, P.C.
100 Main Street
Fort Worth, TX 76102-3090

*Via CMRRR #7007 0710 0000 0927 8174*
*and Email*
Michael H. Page
Klaus H. Hamm
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704

Lars L. Berg