American Airlines Inc v. Google Inc                                                                 Doc. 37



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | |
| | § | 4-07-CV-487-A |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |

### DEFENDANT GOOGLE INC'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT

Michael H. Page
Klauss H. Hamm
Benjamin W. Berkowitz
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

Joseph F. Cleveland, Jr.
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Facsimile: 817/870-2265

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

ORIGINAL

Dockets.Justia.com

## TABLE OF CONTENTS

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTS | 1 |
| | A. Documents in the possession of t:m | 2 |
| | B. Documents in the possession of Reprise Media | 4 |
| | C. Documents in the possession of SmartMedia | 5 |
| | D. The documents withheld by American | 6 |
| III. | ARGUMENT | 7 |
| | A. The common legal interest exception to the confidentiality requirement of the attorney-client privilege does not protect from discovery documents in the possession of the third-party marketing companies. | 8 |
| | B. The documents in the possession of the marketing firms are not privileged because American's attorneys did not hire the marketing companies for the purpose of rendering legal advice or assisting with legal representation. | 10 |
| | C. American waived any privilege that existed over the t:m documents when it knowingly and voluntarily produced them to Google. | 12 |
| | D. American is not entitled to claim work-product protection. | 13 |
| IV. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Page(s)

### Federal Cases

*Cellco Partnership d/b/a Verizon Wireless v. Nextel Communication, Inc.*,
  2004 WL 1542259, No. 03-725 (S.D.N.Y. July 9, 2004) ............................................. 12

*Dorf & Stanton Communications, Inc. v. Molson Breweries*,
  100 F.3d 919 (Fed. Cir. 1996) ................................................................................... 12

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  218 F.R.D 125 (E.D. Tex. 2003) ........................................................................... 11, 13

*Hodges, Grant & Kaufmann v. United States*,
  768 F.2d 719 (5th Cir. 1985) ..................................................................................... 14

*In re Auclair*,
  961 F.2d 65 (5th Cir. 1992) ....................................................................................... 13

*In re Federal Trade Commission*,
  2001 WL 396522, No. M18-304, (S.D.N.Y. April 19, 2001) ........................... 10, 11, 12

*In re Kaiser Aluminum & Chem Co.*,
  214 F.3d 586 (5th Cir. 2000) ..................................................................................... 14

*In re LTV Sec. Litig.*,
  89 F.R.D. 595 (N.D. Tex. 1981) ................................................................................ 10

*In re Santa Fe Int'l Corp.*,
  272 F.3d 705 (5th Cir. 2001) .................................................................................. 9, 10

*John Labatt Ltd. v. Molson Breweries*,
  1995 WL 23603, Nos. 93 CV 75004 and 94 CV 71540 (S.D.N.Y.
  January 20, 1995) ...................................................................................................... 12

*SEC v. Brady*,
  238 F.R.D. 429 (N.D. Tex. 2006) ......................................................................... 8, 9, 13

*United States v. Citgo Petroleum Corp.*,
  2007 WL 1125792, No. No. C-06-563 (S.D. Tex. April 16, 2007) ......................... 13, 14

*United States v. Davis*,
  636 F.2d 1028 (5th Cir. 1981) ............................................................................. 11, 13

*United States v. El Paso Co.*,
  682 F.2d 530 (5th Cir. 1982) ................................................................................ 9, 13

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ...................................................................................... 11

*United States v. Rodriguez*,
  948 F.2d 914 (5th Cir. 1991) ....................................................................................... 9

### Federal Statutes

Fed. R. Civ. P. 26 .............................................................................................................. 14
Fed. R. Civ. P. 45 ......................................................................................................... 2, 4, 7

# GOOGLE'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT

Defendant Google, Inc. ("Google") hereby moves to compel the production of documents, and in support thereof would state as follows:

## I. INTRODUCTION

Plaintiff American Airlines, Inc. ("American") sued Google, claiming that Google permitted others to misuse American's trademarks when placing advertisements on Google's website. Near the center of this controversy are three marketing firms that American used to analyze and place paid advertising on search engines, including Google. American now seeks to shield some of its communications with these third parties and some of these third parties' internal communications by claiming that the documents are protected from discovery by *American's* attorney-client privilege. But the attorney-client privilege applies only to confidential communications between a party and *its* attorney. American does not have a privilege over its communications with *third parties* or their internal communications.

By this motion, Google seeks to compel the production of documents in the possession of third parties, but which American has withheld as privileged. Pursuant to Rule 45(d)(2)(B), Google herewith submits *in camera* documents produced to Google but later identified as privileged by American for the Court to make a determination of American's claim.

## II. FACTS

The facts relating to this discovery dispute are straightforward. American has sued Google for alleged consumer confusion relating to third parties who advertise on Google's website using keywords that are allegedly the same as or similar to American's trademarks. Google has sought discovery from American and the marketing firms with whom it contracts regarding evidence of consumer confusion, damages, and issues relating to Google's affirmative defenses, including its defense of unclean hands. Many of the relevant documents are in the possessions of TM Advertising, LP ("t:m"), Reprise Media, and SmartMedia, third-party marketing firms hired by American to place advertisements and analyze the performance of

advertising on Google and other search engines.[1]

At an in-person meet-and-confer meeting held in San Francisco, California, on November 7, 2007, counsel for American informed Google that it must serve third-party subpoenas on the marketing firms that assist American with advertising, informing Google that these firms were not American's "agents."[2] American's position on this issue forced Google to expend time and resources on the cumbersome process of seeking third-party discovery from each of these marketing firms, substantially delaying the production of documents highly relevant to this litigation.

**A.     Documents in the possession of t:m**

On November 26, 2007, Google subpoenaed t:m for documents related to American's trademark infringement allegations and claims for damages.[3] On February 7, 2008, after t:m agreed to produce responsive documents, American expressed concern that some of the documents might contain highly confidential and irrelevant business information. American requested that Google permit American to review the documents for such highly confidential business information before producing the documents to Google. Google agreed to allow American to review t:m's document production, provided that American complete its review within one week, produce the documents to Google by February 14, 2008, and provide a log of any documents withheld. American agreed that it would produce the t:m documents by February 14, 2008.[4]

On February 15, 2008, American produced the t:m documents, while acknowledging that many of them were documents over which American claimed privilege.[5] American's counsel wrote: "I understand that some of the documents [in the t:m Production] should be covered by the attorney-client privilege, but given the circumstances, we did not believe it would be

---

[1] App-05 – App-034

[2] App-001. American's attorneys made this statement in the context of refusing to search for documents in the possession of t:m and American's other marketing firms.

[3] App-035 – App 042

[4] App-043

[5] App-044

---

GOOGLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS                                              PAGE 2
AND BRIEF IN SUPPORT
No. 4-07-cv-487-A                                                                                    291327.1

appropriate to withhold at this time the documents in t:m's possession."[6] American also included with the t:m document production a 74-page spreadsheet that identified documents within the t:m production that American believed to be privileged.[7] American, however, produced these documents despite its belief that they were privileged.

On February 20, 2008, American apparently changed its mind about its decision to produce t:m documents that it believed were privilege. American's counsel wrote: "American believes that the [t:m document production] contains documents that are shielded from discovery by the attorney-client privilege. I have already provided you with a spreadsheet identifying the documents on the DVD to which American asserts the attorney-client privilege."[8] American demanded that Google return not only the documents American claimed were privileged, but the entire two-DVD t:m document production.[9] But American did not explain its basis for its claimed privilege. Instead, American stated that it would address the appropriateness of its privilege assertions "at a later date."[10]

Upon receiving American's February 20, 2008, demand for the return of documents it had produced five days earlier, Google ceased its review of the t:m documents and sequestered the documents pursuant to Federal Rule of Civil Procedure 45(d)(2)(B).[11] In a February 22, 2008, letter, Google informed American that it had sequestered the documents pursuant to Rule 45(d)(2)(B), but that Google did not believe that American had a legitimate claim of privilege over the documents.[12] Counsel for Google explained:

> At this point, it appears that American has twice waived any privilege that it could claim over these documents. The first waiver took place when American shared these communications with a third party, t:m, whom American has already stated in this litigation is not its agent. The second waiver took place when American

---

[6] App-045 – App-046.

[7] App-047-App-120

[8] App-121

[9] Id.

[10] Id.

[11] App-001 at para. 3

[12] App-122 – App-123

produced them to us while simultaneously stating that they are privileged.[13]

On February 28, 2008, American promised to provide Google with the documents from t:m's production over which American was not claiming a privilege by "no later than next week."[14] However, Google did not receive American's production of the "cleansed" t:m documents until March 20, 2008.[15] The production did not include a privilege log. American did not provide a privilege log until April 3, 2008,[16] and did not identify the persons on the log until April 9, 2008.[17]

On April 9, 2008, having finally received sufficient information to evaluate American's claim of privilege, counsel for Google sent an email to counsel for American once again explaining that the documents on the log were not privileged and that any privilege that may have existed over the documents had been waived.[18] On April 11, 2008, American responded that it would address "some of those issues by the middle of next week."[19] On April 17, 2008, counsel for Google called counsel for American to discuss the issue. During the meet-and-confer, American continued to take the position that it had a valid claim of privilege over the documents in the possession of t:m and its other marketing firms and that Google was not entitled to review them.[20] On April 28, 2008, American served Google with an amended privilege log for the t:m documents.[21] To date, American has not permitted Google to review these documents.

B. **Documents in the possession of Reprise Media**

Reprise Media, a t:m sister company, is a third-party marketing firm that American has

---

[13] *Id.*

[14] App-124

[15] App-125

[16] App-126 – App-136

[17] App-137 – App-139

[18] App-140 – App-141

[19] App-142 – App-143

[20] App-002 at para. 4

[21] App-144 – App-149

contracted with to place and analyze American's keyword-triggered advertising on Google and other search engines.[22] Google served Reprise Media with a document subpoena on December 21, 2007.[23] On February 15, 2008, Reprise notified Google that it produced the Reprise Media documents directly to counsel for American, as t:m had done with its documents.[24] Google requested that American review the documents and produce them by February 22, 2008.[25] When American finally produced the documents to Google on April 14, 2008—two months after it received them from Reprise Media—American indicated it had removed documents that it considered privileged from the production.[26] On April 24, 2008, counsel for American produced a privilege log for eleven emails it had withheld from the Reprise Media production.[27]

C. **Documents in the possession of SmartMedia**

SmartMedia, like t:m and Reprise Media, is a third-party marketing firm that American has contracted with to place and analyze American's keyword-triggered advertising on Google and other search engines.[28] Google served SmartMedia with a document subpoena on December 21, 2007.[29] On March 17, 2008, SmartMedia produced 61,731 pages of documents and on April 2, 2008, it produced an additional 219 pages.[30] On April 10, 2008, American asserted that the SmartMedia production "contains material that should be shielded from discovery by the attorney-client privilege or the work product exemption" and demanded that Google turn over *the entire SmartMedia production*.[31] In making this demand, American stated: "Whether or not American's assertion of the privilege is appropriate is an issue we intend to address with you at a

---

[22] App-005 – App-034
[23] App-150 – App-157
[24] App-158
[25] *Id.*
[26] App-159
[27] App-160
[28] App-005 – App-034
[29] App-161 – App-167
[30] App-168 – App-169
[31] App-171

later date."[32] American did not provide a privilege log or specify which documents in the 62,000-page production were privileged.

On Monday, April 14, 2008, Google responded that Rule 45(d)(2) required American to specify the documents over which it was claiming privilege and did not entitle American to demand that Google turn over the entire 62,000-page SmartMedia production.[33] Google agreed not to further review any documents produced by SmartMedia until Monday, April 21, 2008, to provide American with a further opportunity to provide a log of the documents over which it was asserting privilege.[34] American provided Google with a privilege log on Monday, April 21, 2008.[35] The log asserted privilege over 105 documents. Upon receipt of the log, Google sequestered the identified documents.[36]

### D. The documents withheld by American

According to American's privilege logs, American has removed or redacted approximately 800 pages of documents from the t:m, SmartMedia and Reprise Media productions. American asserts privilege over 61 documents from the t:m production, 168 documents from the SmartMedia production, and 11 documents from the Reprise production.[37] The documents on the privilege logs consist primarily of email. All of the emails include people who do <u>not</u> work for American. According to American, these people are employees of the third-party marketing firms. Many of the emails do not include a single person who works for American. Many of the emails do not include an attorney.

Of the SmartMedia documents over which American now asserts a claim of privilege, sixty-seven documents are purely third-party communications involving neither American

---

[32] Id.

[33] App-172

[34] App-173 – App-175

[35] App-176 – App-186

[36] App-002 at para. 5

[37] App-114 - App-149; App-160; App 176 - App-186. While American has indicated it will provide redacted versions of eight of the eleven Reprise Media documents, it has not yet done so.

lawyers nor American employees.[38] Eighty-one documents were communications involving no attorneys.[39] Of the t:m documents, twenty-two documents are purely third-party communications involving neither American lawyers nor employees and twenty-eight documents involve no attorneys.[40] Of the eleven Reprise documents, five of the eleven documents are purely third-party communications.[41] Of the remaining documents, all are communications involving at least one third-party employee from t:m, SmartMedia or Reprise. None are confidential between American and its attorneys. Accordingly, American has no legitimate claim that these documents are privileged.

Typical of the supposedly privileged documents, the very first item on American's privilege log of the t:m documents is an email from one t:m employee to another t:m employee. No American employee is a party to the communication and neither the sender nor recipient is an attorney. Nothing in American's privilege log indicates that American or its attorneys were even aware that this email was being sent. This is a purely third-party communication, yet American is claiming it is a privileged American communication. American reasons that this email "[r]eflects legal advice of [American's] counsel (D. Broadfield) re use of service marks."[42]

### III. ARGUMENT

"The attorney-client privilege protects from disclosure confidential communications made to obtain a lawyer's professional advice and assistance." *SEC v. Brady*, 238 F.R.D. 429, 438 (N.D. Tex. 2006). In order to establish the attorney-client privilege, American must show that all of the following conditions have been met:

1) the asserted holder of the privilege is or sought to become a client;

2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication was

---

[38] App-176 – App-186
[39] *Id.*
[40] App-144 – App-149
[41] App. 160
[42] App-150 at para. 1

acting as a lawyer;

3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of serving primarily either (i) an opinion on law or (ii) legal service or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

4) the privilege has been claimed and not waived by the client.

*Id.* at 438. The privilege exists so that a client may communicate with its attorney. *United States v. El Paso Co.*, 682 F.2d 530, 539 n.7 (5th Cir. 1982). Once "the secrets pass through the client's lips to others," the privilege is waived. *Id.*

A party seeking to withhold documents from production on the basis of a claim of privilege bears the burden of demonstrating the applicability of the privilege. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 n. 7 (5th Cir. 2001); *United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991) ("The burden of establishing privilege rests on the party who invokes it."). Accordingly, American bears the burden of proof as to each element necessary to show its entitlement to withhold the documents on its logs based on its claims of privilege.

Although the privilege normally applies only to communications between a lawyer and his client, in limited circumstances the privilege can extend to third party communications. First, communications to third parties may be privileged if the parties share a common legal interest by virtue of being co-defendants or potential co-defendants in a civil or criminal action. Second, communications with a third party may be protected where the third party was retained specifically to assist the client's lawyers with the legal representation.

The communications that Google seeks to compel are presumptively not privileged because "strangers," *i.e.*, third parties, participated in each of them. Nor, as discussed below, can American meet its burden to show that either of the above exceptions apply.

A. **The common legal interest exception to the confidentiality requirement of the attorney-client privilege does not protect from discovery documents in the possession of the third-party marketing companies.**

American may claim that the documents possessed by t:m, SmartMedia and Reprise

Media are protected by a common legal interest ("CLI") privilege, which is an exception to the general rule that no attorney-client privilege attaches to communications with third parties. Under Fifth Circuit precedent, there are two types of communications protected under the CLI privilege: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991). Moreover, because the CLI privilege is "'an obstacle to truthseeking,' it must 'be construed narrowly to effectuate necessary consultation between legal advisers and clients.'" *In re Santa Fe Int'l* at 710 (quoting *In re LTV Sec. Litig.*, 89 F.R.D. 595, 606 (N.D. Tex. 1981) (Higginbotham, J.)). To the extent the privilege protects communications between *potential* co-defendants, "there must be a palpable threat of litigation at the time of the communication." *Id.* at 711. "[W]hen the threat of litigation is merely a thought rather than a palpable reality, the joint discussion is more properly characterized as a common business undertaking, which is unprivileged and certainly not a common legal interest." *Id.* at 714.

This CLI privilege does not apply because the marketing firms are not parties—or potential parties—in this action or any related action. It is not enough that American may have communicated legal advice to the marketing firms for purpose of ensuring compliance with American's general legal obligations. In *In re Santa Fe Int'l*, an antitrust defendant sought to protect documents from discovery that had been shared among lawyers for different drilling companies. The documents were legal memoranda circulated for the purpose of ensuring compliance with antitrust laws and the avoidance of future liability. Because the memoranda were pre-litigation, however, they were not protected from discovery by the CLI privilege. *Id.* at 713.

Moreover, any litigation-related communications between American and the marketing firms was ancillary to their business relationship, which means that they are not protected by the CLI privilege. In *In re Federal Trade Commission*, 2001 WL 396522, No. M18-304, (S.D.N.Y. April 19, 2001), in litigation with Rexall Sundwon, Inc., a seller of dietary supplements, the FTC sought discovery from Avrett, a non-party advertising agency for Rexall. A lawyer for Rexall

had worked closely with Avrett, discussing legal issues associated with advertising materials, advising Avrett on the general legal parameters for advertising dietary supplements, and advising Avrett on the potential legal objections that television networks might have concerning advertisements. Avrett relied on the Rexall in-house lawyer to ensure that all legal and regulatory requirements were met and regularly forwarded material on to her to review. *Id.* at *1-2. The court, however, found that Rexall was not entitled to claim a CLI privilege over the materials disclosed to Avrett. While the court observed that the in-house Rexall lawyer had given legal advice to Avrett, it found that this legal advice was "ancillary to the business relationship" and therefore did not give rise to an attorney-client or CLI privilege. *Id.* at *5.

American has made no showing that the t:m, SmartMedia and Reprise Media documents involve legal advice related to the joint defense of these companies with American in a pending criminal or civil matter. As a result, these documents are not protected by a CLI privilege. Google respectfully requests that the Court review these documents *in camera* to determine whether such a privilege applies.

**B.     The documents in the possession of the marketing firms are not privileged because American's attorneys did not hire the marketing companies for the purpose of rendering legal advice or assisting with legal representation.**

American may claim that the documents possessed by t:m, SmartMedia and Reprise Media are protected by the attorney-client privilege because the third-party marketing firms were acting as American's "representatives." A mere agency relationship, however, will not establish protection under the attorney-client privilege. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D 125, 134 (E.D. Tex. 2003). A party claiming the attorney-client privilege for communications between an attorney and a third party or for documents possessed by that third party must prove that the third party's services enabled the giving of legal advice. *Id.* at 135; *United States v. Davis*, 636 F.2d 1028, 1043 n. 17 (5th Cir. 1981). Communications with third-party representatives are only privileged when the "communications are made 'for the purpose of obtaining legal advice *from the lawyer*.'" *Ferko*, 218 F.R.D. at 135 (emphasis in original) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).

Significantly, communications to a third-party marketing firm made for purposes of

conforming the client's advertising strategy with its litigation strategy are not privileged. In *John Labatt Ltd. v. Molson Breweries*, 1995 WL 23603, Nos. 93 CV 75004 and 94 CV 71540 (S.D.N.Y. January 20, 1995), the court considered a motion to compel documents created by a marketing and public relations firm for Labbatt. The documents at issue were handwritten notes that included details of the issues in litigation, statements of Labatt's legal strategy in the litigation, legal advice concerning advertising use of the trademarks related to the litigation in view of litigation positions, legal advice concerning public relations in view of the litigation positions, and other information concerning litigation issues as they related to the advertising and public relations activities of the marketing firm on behalf of Labatt. The court ordered the production of these notes. That Labatt chose to brief the personnel of its third-party marketing firm so that the content of the advertising placed "would not undercut the theories expounded in the litigation" did not mean that the content of its communications to the marketing firms were protected by the attorney-client privilege. *John Labatt Ltd., supra*, at *1, *aff'd Dorf & Stanton Communications, Inc. v. Molson Breweries*, 100 F.3d 919 (Fed. Cir. 1996). "Having explained these [legal] theories and … the pending litigation to Third Parties rather than conducting such discussions in-house, Plaintiffs are not entitled to claim attorney-client privilege." *Id.*

In a similar case, *Cellco Partnership d/b/a Verizon Wireless v. Nextel Communication, Inc.*, 2004 WL 1542259, No. 03-725 (S.D.N.Y. July 9, 2004), Verizon issued a subpoena to Nextel's advertising agency, TBWA, requesting the production of communications between TBWA employees and Nextel employees. TBWA withheld seven documents on the ground of attorney-client privilege. Of the seven documents TBWA claimed were protected by the attorney-client privilege, six of them were e-mails sent by a Nextel marketing employee to TBWA employees containing advice conveyed to the Nextel marketing employee by Nextel's in-house counsel. The seventh was an e-mail by Nextel's in-house counsel to other Nextel employees and one TBWA employee. *Cellco P'ship*, at *1. The court, however, concluded that Nextel had waived its attorney-client privilege by disclosing the information to its third-party marketing firm and ordered the documents produced. *Id.* at *1-2. *See also In re Federal Trade Commission*, 2001 WL 396522, No. M18-304 (S.D.N.Y. April 19, 2001).

GOOGLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
No. 4-07-cv-487-A

PAGE 11

291327.1

To prove that the documents in the possession of the third-party entities are privileged, American must show that it hired t:m, Reprise Media and SmartMedia for the specific purpose of assisting with the legal representation. *See Ferko*, 218 F.R.D. at 135; *Davis*, 636 F.2d at 1043 n. 17. American, however, can make no such claim. American hired the marketing firms not in connection with legal representation, but rather for purposes of its general advertising campaigns. As a result, American cannot claim privilege over its communications with these firms or their internal communications.

C. **American waived any privilege that existed over the t:m documents when it knowingly and voluntarily produced them to Google.**

The party asserting the attorney-client privilege must prove that the confidentiality of the communications have been preserved; otherwise, the client "forfeits" his claim to the privilege. *El Paso*, 682 F.2d at 539. Disclosure of attorney-client communications to a third party who lacks a common legal interest generally waives the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992).

On February 15, 2008, American waived any privilege or work-product[43] claim that existed over the t:m documents when it knowingly and voluntarily produced them to Google.[44] American made its production knowing of the existence of the documents over which it now claims a privilege and, in fact, highlighted these documents as privileged to Google when it produced them, stating: "I understand that some of the documents [in the t:m Production] should be covered by the attorney-client privilege, but given the circumstances, we did not believe it would be appropriate to withhold at this time the documents in t:m's possession."[45] American also included with the t:m document production a 74-page spreadsheet that identified documents within the t:m production that American believed to be privileged.[46] Thus, despite its knowledge of the allegedly privileged nature of the documents, American nevertheless produced them and

---

[43] Work-product protection is waived when work-product is produced to an adversary. *United States v. Citgo Petroleum Corp.*, 2007 WL 1125792, No. C-06-563, at *3 (S.D. Tex. April 16, 2007); *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006).

[44] App-044 – App-046

[45] App-045 – App-046

thereby waived any claim to privilege. There was nothing "inadvertent" about American's production.

### D. American is not entitled to claim work-product protection.

The party asserting the work-product protection has the burden of showing that the materials warrant work-product protection. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). Under federal law, materials over which a claim of work-product protection is made must be prepared in anticipation of litigation or for trial. In other words, the party had reason to anticipate litigation and "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem Co.*, 214 F.3d 586, 593 (5th Cir. 2000). Excluded from work-product protection are "materials assembled in the ordinary course of business or pursuant to public requirements unrelated to litigation." Fed. R. Civ. P. 26(b)(3); *United States v. Citgo Petroleum Corp.*, 2007 WL 1125792, No. No. C-06-563 (S.D. Tex. April 16, 2007).

A review of the t:m and SmartMedia privilege logs shows that American has designated numerous documents as protected by the work-product protection which clearly were not prepared in anticipation of litigation. For example, American has designated a memorandum with the Bates range AAG-TM-40844 – AAG-TM-40845 as attorney work-product.[47] Neither the sender nor the recipient of this memorandum was an American employee. Similarly, the privilege log gives no indication that the document was prepared on behalf of American or in response to a request from American relating to litigation. To the contrary, the privilege log indicates only that the memorandum "reflects response to request from [American's] counsel… for information upon which to base legal advice re trademark search results for AA advertising tagline."[48] This description indicates that the memorandum was not prepared in anticipation of litigation, but rather for general advertising purposes. Moreover, the date of the document is February 24, 2004, more than three-and-a-half years before American sued Google.

---

[46] App-047 – App-120

[47] App-144 – App-149

[48] *Id.*

GOOGLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
No. 4-07-cv-487-A

PAGE 13

291327.1

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court enter an order requiring American to produce to Google immediately the documents over which it has improperly asserted a claim of privilege and permitting Google to review those documents currently in its possession but presently segregated from review.

Dated: May 8, 2008

Respectfully submitted,

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/429-9181

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Ajay S. Krishnan
California Bar No. 222476
Benjamin W. Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Plaintiff American Airlines, Inc. on May 8, 2008, who was opposed to this motion. Therefore, it is presented to the Court for its determination.

_____
Joseph F. Cleveland, Jr.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

**Via Hand Delivery**

Dee J. Kelly
Dee J. Kelly, Jr.
Lars L. Berg
Michael D. Anderson
Kelly Hart & Halman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Date: May 8, 2008

Joseph F. Cleveland, Jr.