IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | |
| | § | 4-07-CV-487-A |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |

### DEFENDANT GOOGLE INC'S RESPONSE TO PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF

Joseph F. Cleveland, Jr.
State Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/870-2265Michael H. Page

Michael H. Page
Klauss H. Hamm
Benjamin W. Berkowitz
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.



## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................. ii

I. INTRODUCTION ................................................................. 1

II. FACTS ......................................................................... 2

    A. Google's Search Engine ................................................... 2

    B. Google's Keyword Tool .................................................... 4

    C. Google's Offer of Compromise ............................................. 4

III. ARGUMENT AND AUTHORITIES .................................................... 5

    A. Google has produced data responsive to Request No. 11 .................... 5

    B. Google does not have reasonably accessible data responsive to Request No. 8 ... 7

    C. American unreasonably demands additional "electronically stored information" even though Google has provided American with more than 3,000,000 pieces of data and American's requests do not seek the additional data described in its Motion ... 9

    D. American's deposition questions seeking privileged information ........... 11

IV. CONCLUSION ................................................................... 11

CERTIFICATE OF SERVICE ........................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Dondi Properties Corp. v. Commerce Savings and Loan Assn.,
    121 F.R.D. 284 (N.D. Tex. 1998) .................................... 1

**RULES AND REGULATIONS**

Fed. R. Civ. P. 26(b)(2)(B) ............................................. 8, 9

Fed. R. Civ. P. 30(b)(6) ................................................ 11

Fed. R. Civ. P. 34(b)(1)(A) ............................................. 10

# DEFENDANT GOOGLE INC'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND BRIEF

## I. INTRODUCTION

> Requests for production should not be excessive or designed solely to place a burden on the opposing party, for such conduct in discovery only increases the costs, duration, and unpleasantness of any case.

*Dondi Properties Corp. v. Commerce Savings and Loan Assn.*, 121 F.R.D. 284, 293 (N. D. Tex. 1998) (quoting Dallas Bar Association Guidelines of Professional Courtesy).

\*\*\*

American Airlines refuses to enter into any negotiated solution that would resolve this Motion Compel short of intervention by this Court. In some cases, Google *already* has produced all responsive information. Indeed, Google already has produced to American millions of pieces of data, which has taken specially designed computer programs and hundreds of hours to gather, and Google has offered to provide still more data. Google has asked American to identify what further information it actually wants. In response, American has rejected all of Google's offers of compromise and refused to make any counterproposals, or even to clarify its requests, insisting that Google simply withdraw its objections and certify that it has produced all responsive information, including information responsive to requests that are not even subjects of its motion to compel. That is not reasonable. Google is, however, willing to offer American up to 50 additional hours of computer programming time to collect additional data responsive to American's requests as a way to resolve this Motion.

As for American's specific arguments, first, American argues that Google has not produced documents in response to Request No. 11 from its Second Requests for Production. The text of Request No. 11 is conspicuously absent from American's Motion and, instead, the Motion describes a demand entirely different from the request American served. Google already has produced the documents responsive to Request No. 11.

Second, American argues that Google has not produced data responsive to Request No. 8 from its Second Requests for Production. This Request seeks data from Google's Keyword

DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S
AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF
CASE NO. 4-07-cv-487-A

PAGE 1

291834.1

Tool. Since American filed its Motion, Google produced Keyword Tool data extracted for a 12-month period—a process that required Google to write a computer program, and that consumed 40 hours of engineering time and 200 hours of computer processor time. Without even considering the adequacy of this data, American insists that Google agree to produce older data as well. Google has not refused to do so—it has merely asked American to look at the data already produced and articulate why it needs the older, less relevant and cumulative data. That American has refused to do.

American also argues that Google has not provided it with sufficient electronically stored information responsive to its requests. In fact, Google has provided American with a spreadsheet containing more than 3,000,000 different pieces of data about its advertising. As for the Google Analytics data that American demands in its Motion, it is not sought by the requests on which American has moved.

Finally, American argues that Google blocked American from deposing Google's corporate representative, an in-house paralegal working with Google's legal department, about Google's document collection effort. This is simply not true. Google's counsel instructed its corporate representative not to answer only those questions which clearly sought attorney-client communications. Since the filing of American's motion, the parties have now resolved the dispute concerning the privilege objections made at the deposition and, therefore, this issue is moot.

## II. FACTS

The following background information about Google is relevant to this Opposition.

### A. Google's Search Engine

Google's search engine provides search results to users around the world for free. Google's tries to provide search results that are most relevant to users' queries. When a user enters a **search query**, Google's search engine reviews web pages that Google has indexed and returns a list of web pages ranked in order of relevance.

Google's revenues are derived primarily from advertising. Google's primary advertising

tool is the AdWords Program, which creates a list of ads (labeled as "**Sponsored Links**") that are displayed along the top and the right side of Web search results. The Sponsored Links are distinguished from the Web search results by three methods: (1) Sponsored Links are labeled "Sponsored Links"; (2) Sponsored Links displayed above Web Search results appear in a shaded yellow box; (3) Sponsored Links displayed to the right of Web Search results are separated from the Web Search results by a vertical line.

Just as Google seeks to provide its users with the results that are most relevant to their queries, so too does Google seek to match Sponsored Links as closely as possible to its users' search queries. The AdWords Program achieves this, in part, by allowing advertisers to select, for each of their Sponsored Links, **keywords**. If a user enters a search query that matches a keyword chosen by an advertiser to trigger a Sponsored link, that Sponsored link might be shown to that user. For example, an electronics store might choose to display its Sponsored Links to people searching for "computers," "desktop computers," or "Dell."

Google offers advertisers the option to select among four different types of keywords: Broad Match, Phrase Match, Exact Match and Negative Keywords. App 001. If an advertiser selects a **Broad Match** keyword, Google will trigger the advertiser's Sponsored Link if the search query contains the keyword in combination with other terms or if it contains a synonym of the keyword. *Id.* Thus, using the previous example, if the electronics store selected the keyword "laptop computers," Google would automatically trigger the store's Sponsored Link when a user entered the search query "fast laptop computers" or "portable computers." A **Phrase Match** keyword matches to a search query when the search query contains the keyword phrase exactly, *regardless of whether* other terms are in the user's query: an ad keyed on "laptop computers" will appear if the user types either "laptop computers" or "Dell laptop computers," but not "computers and laptops." *Id.* With **Exact Match**, an ad may be triggered only when the user's search query is an exact match with the advertiser's keyword: an ad keyed on "laptop computers" will appear if the user types "laptop computers," but not "Dell laptop computers" or "computers." *Id.* Finally, a **Negative Keyword** will prevent the display of a Sponsored Link

**DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S**                          **PAGE 3**
**AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF**
**CASE NO. 4-07-cv-487-A**                                                                                                 291834.1

when the search query contains the negative keyword: a keyword of "computers" with a negative keyword of "laptop" would trigger an ad on searches for "computers" or "desktop computers," but not one for "laptop computers." *Id.*

B.   **Google's Keyword Tool**

To provide users with relevant Sponsored Links—and, at the same time, to assist advertisers in crafting campaigns that will reach interested users—Google created the Keyword Tool. When an advertiser enters a proposed keyword, the Keyword Tool automatically analyzes search history patterns and returns a list of keywords that are related to the proposed keyword. App 003. An advertiser typing in "apple" may get a list that includes "Apple iPod" and "golden delicious apple." Armed with this list, an advertiser can decide to add additional keywords, change the type of matching chosen for a given keyword, or add "negative keywords." In the "apple" example above, if two advertisers—one who sells electronics and one who sells fruit— each entered "apple" and got the same list, the first might add "iPod" as a keyword and "golden delicious" as a negative keyword, while the other might do the opposite.

C.   **Google's Offers of Compromise**

On April 9, 2008, counsel for Google and American discussed American's request for Broad Match data on the telephone. App 075-076 at ¶ 3. During the call, Google repeatedly asked American to explain what broad match data it sought through Request No. 8 from its Second Set of Requests. *Id.* American did not provide an explanation then or at any point thereafter until it filed its Motion to Compel on May 7, 2008. *Id.*

On May 9, 2008, Google produced to American 581 pages of data extracted from Google's Keyword Tool. App 076 at ¶ 4. That data contained one year's worth of information from the Keyword Tool related to American Airlines' trademarks and 135 other terms that American claims are similar. App at 024, ¶ 4.

On May 13, 2008, counsel for Google met with counsel for American Airlines in San Francisco to discuss possible approaches to resolving the issues raised in American's Motion to Compel. During that meeting, Google made several proposals to American. Regarding the

**DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S**     **PAGE 4**
**AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF**
**CASE NO. 4-07-cv-487-A**     291834.1

information from the Keyword Tool, Google suggested that American look at the year's worth of data and then decide if it really needs more data and Google would agree to provide it if American articulated a reasonable basis for its need. App at 076, ¶¶ 5-6. American took the position that it would only resolve the dispute if Google withdrew its objections to the request. *Id.* Google also proposed a resolution of Request No. 11 from American's Second Set of Requests, which seeks Broad Match data. Google explained that it had in fact already produced data responsive to this request in February and explained that American's interpretation of the requests was flatly contradicted by the words of the request. *Id.* ¶ 7. Google explained that because the request as interpreted by American sought information about search queries, it was especially burdensome, but that Google would extract a representative sample. *Id.* American insisted that it would only resolve the dispute if Google withdrew its objections to the request. *Id.*

Finally, on May 15, Google proposed to American that Google would provide 50 hours of engineering time to American to pull data of American's choosing, subject to confidentiality limitations, as a way to resolve all the document production issues in American's Motion. American has not accepted that offer. *See* App. 080.

### III. ARGUMENT AND AUTHORITIES

**A.  Google has produced data responsive to Request No. 11**

Google already has produced data fully responsive to Request No. 11. Nevertheless, American attempts to make an issue of the request by attempting to rewrite it. Request No. 11 seeks:

> Documents sufficient to identify and provide the following information concerning all Broad Match Keywords that Google or its programming have designated to trigger the Sponsored Links of *a Google Customer that has designated an American Airlines Mark as a Keyword* in one of Google's Advertising Programs: (a) the number of page views of each Sponsored Link triggered by a use of such a Broad Match Keyword; and (b) the number of times that an Internet user "clicked through" a Sponsored Link triggered by a use of such a Broad Match Keyword.

*See* App 016 (emphasis added).

Request No. 11 seeks data only about when "a Google Customer ... has designated an American Airlines Mark as a *Keyword*." (Emphasis added). In other words, it seeks information about what happens when an *advertiser* uses "American Airlines" to target its advertisements. More specifically, it seeks information about Sponsored Links triggered by a Broad Match keyword that is an American Airlines trademark, including the number of times such Sponsored Links have appeared and the number of times users have clicked on them.

In its motion, American incorrectly states that Request No. 11 seeks data about Sponsored Links displayed when someone enters an American Airlines trademark as a *search query*. American's Motion states that the request seeks "(a) the number of Sponsored Links that were triggered by broad match *in response to a search for an American Airlines Mark* or confusingly similar term; and (b) the number of Internet users who 'clicked through' these Sponsored Links triggered by broad match." Mot. at 4 (emphasis added). In other words, American now wants information about what happens when someone searching for information types in "American Airlines."

Documents sufficient to show when "a Google Customer ... has designated an American Airlines Mark as a Keyword" (what Request No. 11 actually seeks) and when someone "search[es] for an American Airlines Mark or confusingly similar term" (what American incorrectly argues Request No. 11 seeks) are two entirely different things. Sponsored Links on Google are displayed when a keyword matches a search query. Advertisers pick the keywords and users pick the search query. In addition to attempting to rewrite Request No. 11 from "keywords" to "search queries," American further misrepresents Request No. 11, stating that it seeks information about terms "confusingly similar" to American Airlines Marks, when the request is limited to information about "American Airlines Mark[s]" only.

Google has *already* produced the data *actually* sought by Request No. 11. Google has produced data that contains information about every advertisement ever displayed by Google when an American Airline trademark is a broad match keyword, the number of times those Sponsored Links have appeared and the number of times an Internet user clicked on one. App at

**DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S**     **PAGE 6**
**AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF**
**CASE NO. 4-07-cv-487-A**     291834.1

027, ¶ 4. As Google explained to American in *January*, the data table's column called "Type" refers to keyword type so American is able to use this data to determine which keywords listed are Broad Match Keywords. App at 020. The table also has a field called "Impressions," which refers to the number of times a Sponsored Link has appeared, and a column called "Clicks," which refers to the number of times someone has clicked on a Sponsored Link.

Thus, Google has produced data sufficient to identify for every "Google Customer that has designated an American Airlines Mark as a Keyword ... (a) the number of page views of each Sponsored Link triggered by a use of such a Broad Match Keyword; and (b) the number of times that an Internet user "clicked through" a Sponsored Link triggered by a use of such a Broad Match Keyword." Because this is exactly the information called for by Request No. 11, Google has complied with this request.

American is still not satisfied, however, and continues to assert that its request is broader in scope than it is. Nevertheless, Google *still* has tried to meet and confer on this additional issue. Google explained that American was seeking a *huge* volume of data, but that Google would extract a representative sample so that American could review and determine if it was sufficient. App at 076, ¶ 7. American has refused to respond to this offer of compromise.

Trying to produce all such data is just not feasible. App at 023, ¶ 7. Google began providing a tool called the Search Query Performance Report to advertisers in June 2007. App 022 at ¶ 3. This tool contains data, subject to certain limitations, from May 2, 2007 to the present about the search queries that trigger Sponsored Links with Broad Match keywords. *Id.* To retrieve data from May 2, 2007 to the present that identifies the queries that triggered Sponsored Links when American Airlines trademarks are keywords would take approximately five weeks. *Id.* at 23, ¶ 6. Obtaining data that identifies the keywords when an American Airlines trademark is a search query would take far longer because this would require a search of all queries and there are far more queries than keywords. *Id.* at ¶ 7.

**B.      Google does not have reasonably accessible data responsive to Request No. 8.**

The 2006 amendments to the Federal Rules of Civil Procedure specifically address

situations when a party demands electronic information that is not reasonably accessible. It states that "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).

Google has already produced one year of data responsive to Request No. 8, an effort that has been burdensome. Further collection would only increase the burden for the reasons detailed below.

> Request No. 8 seeks:
>
> Documents sufficient to identify and provide the following information concerning all Related Keywords that Google or its programming have suggested to Google Customers and/or Internet users *when such Google Customers and/or Internet users have designated one of the American Airlines Marks as a Keyword in one of Google's Advertising Programs*: (a) the number of times that Google or its programming suggested that such Related Keyword be used, in terms of page views or other available measure; (b) the number of times that a Google Customer followed Google's suggestion and designated such Related Keyword to be used as a Keyword in Google's Advertising Program; (c) the number of page views of each Sponsored Link triggered by a use of such a Related Keyword; and (d) the number of times that an Internet user "clicked through" a Sponsored Link triggered by a use of such a Related Keyword.

*See* App at 014-015 (emphasis added). This request seeks information about Google's Keyword Tool, as the term "Related Keywords" is defined by referencing paragraphs 73 to 75 of American's Complaint. These paragraphs contain images of Google's Keyword Tool. *See* Compl. ¶¶ 73-75.

In an attempt to resolve this dispute, Google has produced an entire year's worth of data from the Keyword Tool regarding American Airlines trademarks. [redacted]

DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S
AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF
CASE NO. 4-07-cv-487-A

PAGE 8

291834.1

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━. It took Google 40 hours of engineer time and 200 hours of computer processor time to gather this information. *See* App at 025, ¶ 5. Collecting data from the 10 previous months (June 2006 to March 2007) would take an estimated 30 hours of engineer time and 170 hours of computer processor time and collecting data from the 11 months before that (August 2005 to June 2006) would take an estimated 80 hours of engineer time and 300 hours of computer processor time. *See* App at 025, ¶¶ 6-7.

Because the additional data American seeks would take an estimated 110 hours of engineer time and 470 hours of computer processor time, this data is not reasonably accessible and this demand constitutes an undue burden. *See* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."). In an effort to mediate a middle ground, however, Google suggested that American review the year's worth of date before deciding whether it really needs more, and Google would be prepared to meet and confer and try to resolve the dispute. App at 076, ¶ 6. American took the position that it would only agree if Google withdrew its burden objection and agreed that American could obtain the additional data without regard to burden and at American's sole discretion. That is not a reasonable effort to resolve this dispute. Google has further offered to resolve this motion by giving American fifty hours of engineering time. American apparently has rejected that as well.

C.  **American unreasonably demands additional "electronically stored information" even though Google has provided American with more than 3,000,000 pieces of data and American's requests do not seek the additional data described in its Motion.**

American's Motion demands that Google produce "electronically stored information" even though Google already has provided American with a vast quantity of information about the Sponsored Links that American claims infringe its trademarks. Google produced this information after extensive meet and confer regarding the quantity of data that Google would provide. On January 10, 2008, Google agreed to extract for American extensive data about all keywords that are American Airlines' trademarks or similar terms, once American provided a list

of allegedly similar terms. App at 019. American responded by providing a list of 144 terms. *See id.* Even though Google explained that gathering this data was burdensome and explained exactly what it would provide, at the time American did not seek to have Google extract any additional data. *See id.* Google then provided American with the information about each of the 144 terms. *See* App at 026. Google is providing American with updated information that contains even more data. This update required 15 hours of engineer time and seven days of computer processor time. App at 028, ¶ 5.



American's Motion states that Google should also provide American with access to information stored by its Google Analytics product. *See* Mot. 11-12. But the requests listed in the Motion do not come close to describing this information with "reasonable particularity" as required by Federal Rule of Civil Procedure 34(b)(1)(A). *Id.* at 9. Indeed, American never even sought Google Analytics data until its Third Set of Requests for Production, which American's Motion admits "are not the subject of this motion." *Id.* 17 n. 9. In its Motion, American requests electronic discovery concerning "click-stream data," "conversion rates," "depth of visit data" and other data from Google Analytics. This information is clearly sought by Request No. 2 from

DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S  
AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF  
CASE NO. 4-07-cv-487-A

PAGE 10

291834.1

American's Third Set of Requests for Production, but it is not described with reasonable particularity by any requests listed in American's Motion. Compare Mot. at 12 with App at 037, Request No. 2 (seeking "click stream data," "conversion rate," "depth of visit" and "other data" from "Google Analytics").

### D. American's deposition questions seek privileged information.

Finally, American moves to compel the production of information protected by the attorney-client privilege. American contends that Google interfered with the questioning of its corporate representative, Leslie Altherr.[1] Not so. Google objected to such questions because they called for privileged communications and instructed Ms. Altherr not to answer. Google, however, did not prevent American from inquiring into what Google actually *did* when it collected documents for production in this case, a line of questioning which is proper and which does not encroach on attorney-client communications. Since the filing of American's motion, the parties have now resolved the dispute concerning the privilege objections made at the deposition and, therefore, this issue is moot.

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests the Court to deny American's Motion to Compel.

---

[1] Ms. Altherr was deposed pursuant to Fed. R. Civ. P. 30(b)(6) to answer questions regarding Google's "search to find and produce documents in this action."

Respectfully submitted,

[signature]

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/429-9181

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Ajay S. Krishnan
California Bar No. 222476
Benjamin W. Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/39-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

**DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S**        **PAGE 12**
**AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF**
**CASE NO. 4-07-cv-487-A**        291834.1

Respectfully submitted,

*(signature)*

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/429-9181

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Ajay S. Krishnan
California Bar No. 222476
Benjamin W. Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/39-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

**DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF'S**     **PAGE 12**
**AMERICAN AIRLINES, INC.'S MOTION TO COMPEL AND BRIEF**
**CASE NO. 4-07-cv-487-A**     291834.1