American Airlines Inc v. Google Inc

Doc. 69

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| Plaintiff | § § § | CIVIL ACTION NO. |
| v. | § § | 4-07-CV-487-A |
| GOOGLE, INC., | § § | |
| Defendant | § | |

## DEFENDANT GOOGLE INC'S MOTION FOR CLARIFICATION OF JUNE 16, 2008 ORDER GRANTING AMERICAN AIRLINES "ACCESS" TO ELECTRONICALLY STORED INFORMATION AND BRIEF IN SUPPORT THEREOF

Joseph F. Cleveland, Jr.
Richard H. Gateley
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Facsimile: 817/870-2265

Michael H. Page
Klauss H. Hamm
Benjamin W. Berkowitz
Ajay S. Krishnan
Ragesh K. Tangri
Rachael Meny
Daralyn J. Durie
Melissa J. Miksch
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.



Dockets.Justia.com

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................. ii

I.    INTRODUCTION AND BACKGROUND ................................................. 1

II.   ARGUMENT AND AUTHORITIES ..................................................... 3

     A.    Under Applicable Law, Google Can Provide American With Database Access While Establishing Reasonable Protections Needed To Protect Third Parties and The Databases' Information ........................... 3

     B.    Without The Reasonable Limitations Proposed by Google, There Is No Way to Protect Irrelevant Third Parties' Confidential Information ......... 6

     C.    Granting American Unlimited Access to These Databases Would Threaten The Integrity of Third Parties' Valuable Account Information ....... 8

     D.    In the Alternative, The Court Should Enter a Protective Order Limiting American's Right to Access These Databases ........................... 10

III.  CONCLUSION ..................................................................... 11

CERTIFICATE OF CONFERENCE ....................................................... 13

CERTIFICATE OF SERVICE ........................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003) ................................. 3, 4

*Uniroyal Chemical Co. v. Syngenta Crop Protection*, 224 F.R.D. 3 (D. Conn. 2004) ........ 4, 5

*United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978) ............................... 10

**STATE CASES**

*Ameriwood Industries, Inc. v. Liberman*, 2006 WL 3825291 (E.D. Mo. 2006) .............. 4

*Bob Barker Co., Inc. v. Ferguson Safety Products, Inc.*, 2006 WL 648674
    (N.D. Cal. 2006) ..................................................................... 4

*Jones v. Goord*, 2002 WL 1007614 (S.D.N.Y. 2002) ................................... 3

*In re Lowe's Companies, Inc.*, 134 S.W.3d 876 (Tex. 2004) ............................ 4

*Malone Mortgage Co. Am., Ltd. v. Martinez*, 2003 WL 23272381 (N.D. Tex. 2003) ........ 10

*Menke v. Broward County Sch. Board*, 916 So.2d 8 (Fla. Dist. Ct. App. 2005) ............ 4

*Texaco, Inc. v. Dominguez*, 812 S.W.2d 451 (Tex. App.-San Antonio 1991) ................ 3

*U & I Corp. v. Advanced Medical Design, Inc.*, 2008 WL 821992 (M.D. Fla. 2008) .......... 4

**FEDERAL RULES**

Fed. R. Civ. P. 34 ..................................................................... 1, 4

Fed. R. Civ. P. 34(a) .................................................................. 3, 4

Fed. R. Civ. P. 26 (c) .................................................................. 10

# DEFENDANT GOOGLE INC'S MOTION FOR CLARIFICATION OF JUNE 16, 2008 ORDER GRANTING AMERICAN AIRLINES "ACCESS" TO ELECTRONICALLY STORED INFORMATION AND BRIEF IN SUPPORT THEREOF

## I. INTRODUCTION & BACKGROUND

On June 16, 2008, the Court ordered Google to provide American Airlines with "access" to certain electronic information by June 26, 2008. Google believes that this Order is clear and that Google has complied with the Order.

First, American misconstrues the scope of the Court's Order as requiring access to *all* underlying databases and systems from which any responsive information has been extracted, including information that has *already* been produced to American in electronic form pursuant to an agreement between the parties. App. 17. The Court's Order was correctly limited to *responsive* information, not all systems and databases at Google. Nor is that how American characterized its request in the May 7, 2008 motion to compel that resulted in the Court's Order. Instead, American indicated that it was seeking under Rule 34 access to specific "databases" that Google offers to its advertisers regarding those advertisers' campaigns and that had not previously been produced by Google. The Motion states that American seeks data that "Google's advertisers are given every day access to," specifically the "'Google Analytics' program." (Motion at 11) The only databases specifically referred to in American's reply brief are "AdWords" and "Google Analytics," and American highlighted for the Court that it had requested "Google Analytics repeatedly ... in meet and confer sessions." (Reply at 9) Because the AdWords and Analytics databases were the only databases requested by American in its papers, these are the databases that Google is making available pursuant to the Court's Order.[1]

---

[1] During the parties' June 20, 2008 meet and confer over the scope of the Court's Order, Google explicitly told American that it construed this Order to require access to the AdWords and Analytics databases. App. 20. American did not inform Google either when the parties spoke on June 20 or in its subsequent letter of June 23, 2008, that it believed the Order entitles American to access additional databases or systems. *Id.* It was only in American's June 25 letter, the day before Google's deadline to comply with the Court's order, that American first claimed that the Order was not limited to AdWords and Analytics data. *Id.*

The Adwords and Analytics databases are "live" electronic databases, and AA is being provided access to them while they are actually running. App. 21. Google is providing American with live access to these databases in San Francisco, the city where American's primary counsel is located, and has gone so far as to offer to provide access at American's outside counsel's offices in order to minimize any inconvenience. App. 28. Google is giving American the ability to review, copy and export data out of the databases. App. 03. Google is also providing the databases to American using a trained Google employee who is available full time to help American navigate through the databases. App. 04. Additionally, Google is providing the databases in a way that allows American to view the relevant data it desires (and discuss it) without interference. App 04-05; App. 21-22. This is a wholly reasonable method of ensuring that American has access to the relevant information while also ensuring that American will not inadvertently harm the databases, will not inadvertently alter the third party information contained therein, and will not inadvertently access confidential, but wholly irrelevant, information regarding American's competitors and other third parties. *Id.*

American is now demanding that Google must do more. American claims that Google must provide American with the ability to log directly into these two "live" databases without any supervision or limitations in four different locations throughout the U.S., 24 hours a day, 7 days a week. App. 01; App. 17-18. American is effectively seeking the ability to walk into Google's place of business, roam around without any supervision at any time of the day, and open and review any doors, files and cabinets it wants, even if it might inadvertently alter or destroy third parties' and Google's information or read irrelevant and confidential information. Discovery does not work this way, especially when the databases at issue comprise the core of Google's multi-billion dollar business, are essential to Google's ability to provide advertising

services to its customers, and contain both relevant and irrelevant information, much of which is confidential, proprietary information from American's direct competitors and other third parties. "Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations." *In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) (emphasis added); *see also Texaco, Inc. v. Dominguez*, 812 S.W.2d 451, 455-456 (Tex. App. - San Antonio 1991, *orig. proceeding*) ("[T]o permit an adversary to search through its opponent's files exceeds the bounds of permissible discovery." ).

American continues to claim that Google is violating the Court's June 16, 2008 order unless it provides American with unfettered and unsupervised access wherever and whenever American desires. Thus, to end this dispute, Google requests that the Court make clear that Google has complied with the Court's Order. In the alternative, Google requests that the Court enter a protective order adopting the reasonable limitations that Google has set on American's "access".

## II. ARGUMENT AND AUTHORITIES

### A. Under Applicable Law, Google Can Provide American With Database Access While Establishing Reasonable Protections Needed To Protect Third Parties And The Databases' Information.

Electronic databases like the Google AdWords and Analytics databases at issue here pose unique concerns in the discovery arena because, while they contain some information responsive to a discovery request, that information cannot be easily separated from an enormous amount of data which is non-responsive and beyond the scope of discovery. Indeed, many courts have held that access to a computer system and/or database is highly intrusive and should only be allowed in rare circumstances. *See, e.g., Jones v. Goord*, 2002 WL 1007614 (S.D.N.Y. 2002) (denying motion to compel access to internal databases due to the burden, expense, and risk of exposing confidential information). For example, in *In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003), the Eleventh Circuit held that a plaintiff was not entitled to direct, unlimited access to

Ford's computer databases, explaining that "Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations." *Id.* at 1316. The Eleventh Circuit held that the district court abused its discretion in granting the plaintiff access to the databases "regardless of relevance, privilege or confidentiality." *Id.* at 1317.[2]

In those rare circumstances where courts have found a need to provide access to a party's internal databases, it has been universally recognized that such access must be carefully monitored and that necessary restrictions must be put in place to protect non-responsive and possibly confidential data contained in the databases. *See, e.g., U & I Corp. v. Advanced Medical Design, Inc.*, 2008 WL 821993, *6 (M.D.Fla., 2008) (holding that in order "to gain direct access to the respondent's databases, the court must...protect respondent with respect to preservation of his records, confidentiality of non-discoverable matters and costs"); *Uniroyal Chemical Co. v. Syngenta Crop Protection*, 224 F.R.D. 53 (D. Conn. 2004) (denying request for unrestricted access to database, holding that it was sufficient to make the database available for inspection by plaintiffs counsel and designated individuals); *Bob Barker Co., Inc. v. Ferguson Safety Products, Inc.*, 2006 WL 648674, at *5 (N.D. Cal. 2006) (refusing to allow party direct access to other party's computer databases, but noting that such access could be warranted "...with adequate procedural safeguards in place to minimize business disruption and to restrict disclosure of irrelevant or proprietary material"); *In re Ford Motor Co.*, 345 F.3d at 1317 (quoting Fed. R. Civ. P. 34, and stating that a court, before allowing access to a party's databases, "must protect respondent with respect to preservation of his records, confidentiality of nondiscoverable matters, and costs."); *see also In re Lowe's Companies, Inc.*, 134 S.W.3d 876 (Tex. 2004) (rejecting as overbroad discovery order which allowed one party access to the other side's database without any limitation as time, place or subject matter.)

---

[2] *See also e.g., Ameriwood Industries, Inc. v. Liberman*, 2006 WL 3825291, *4 – 5 (E.D. Mo. 2006) (holding that Rule 34(a) does not give the requesting party the right to search through all of the responding party's records and setting forth an extensive process for accessing an opposing party's computer hard drives to ensure privacy); *Menke v. Broward County Sch. Bd.*, 916 So. 2d 8, 11 (Fla. Dist. Ct. App. 2005) (appeals court quashed subpoena granting unfettered access to computer because such access was overbroad where it exposed confidential, privileged information to the opposing party).

This case law makes clear that the Court's prior order requiring Google to provide "access" to certain of its electronic databases does not, as American now contends, allow American wholly unfettered and unsupervised access to all information contained in the databases at issue, including the competitive and confidential information of third parties that is far beyond any relevance to this case or the pending discovery requests. It also makes clear that, under existing discovery law, Google is allowed to set reasonable restrictions on American's ability to review these databases in order to ensure that American does not exceed the permissible scope of discovery, to safeguard the privacy and property rights of third parties and to protect the integrity of the databases and the information they contain. *See Uniroyal Chemical Co.*, 224 F.R.D. 53 (D. Conn. 2004) (denying request for unrestricted access to database, holding that it was sufficient to make the database available for inspection by plaintiffs counsel and designated individuals).

In light of this law and the Court's June 16, 2008 order, Google is now:

- Providing American with access to the information that is located in the AdWords and Analytics databases and that is found within the accounts for the 55 advertisers which American has previously told Google that it wants information about;

- Offering American access to these databases at American's counsel's offices in San Francisco, California, rather than requiring American to travel to Google's headquarters;

- Giving American access to these databases using a trained Google employee who is available full time to help American navigate through the databases;

- Giving American the ability to print and/or save the data as desired, limited only by the databases' own technological limitations. Google then promptly provides that information to American, labeling such information under the protective order and ensuring that Google has a copy of what is produced.

*See* App. 03-05; App. 20-22; App. 25-28. All of these steps are needed to ensure that American has access to the relevant information but also to protect that information, and the databases, and to protect against disclosure of irrelevant information.

B.  **Without The Reasonable Limitations Proposed By Google, There Is No Way to Protect Irrelevant Third Parties' Confidential Information.**

American's current demands for "unlimited" and unsupervised access to the AdWords and Analytics databases are unjustified under the Court's existing order, and operative law. Indeed, such unfettered access would allow American to review vast amounts of sensitive and competitive information belonging to hundreds of thousands of third parties whose data has nothing to do with this lawsuit.

First, although American has informed Google that it seeks information from 55 specific advertisers' accounts,[3] both the AdWords and the Analytics databases contain account information for more than hundreds of thousands of third parties. App. 04; App. 07 at ¶3; App. 14 at ¶3.

Second, as Google has explained to American, it is not technologically possible for Google to provide American with the full "access" to information from the named 55 advertisers' accounts that American demands, without also providing American with access to vast amounts of competitively sensitive information for these third parties that is wholly irrelevant to this litigation.[4] App.14-15 at ¶¶ 8-11; App. 08-09 at ¶¶ 9–12. In the AdWords database, for example, Google cannot provide American with direct access to the 55 named advertisers' accounts without providing American with access to <u>all</u> of the information held in these third parties' accounts. App. 08 at ¶¶ 9–11. This unnecessarily intrudes on these third parties' privacy rights, given that the AdWords database is also the primary database for storing many other types of information unrelated to AdWords accounts or ads, including, for example,

---

[3] For these 55 advertisers, Google has been able to obtain contact information for almost all of these advertisers and has sent notifications to those that it has contact information for in order to notify them that American will be accessing their information in these databases. Some of these third parties have informed Google that they object to providing American with this data. *See e.g.*, App. 23-24.

[4] Moreover, because of the dynamic manner in which these databases work, Google cannot simply extract from the database the accounts for the 55 advertisers listed by American, and provide American with a disk, or smaller

data related to products not yet launched, transient data types used for internal processing purposes, AdSense data, data related to the operation and configuration of applications, Google print, and experimental auctions. App. 08 at ¶¶ 3. This is highly sensitive and confidential data from third parties and Google's ability to maintain the confidentiality of this data is core to Google's business model and success. App. 07 at ¶¶ 3-4; App. 23-24.

Similarly, with respect to the Analytics database, there are numerous different categories of competitive information contained within each user's account, only a tiny portion of which is even arguably relevant to this case. App. 14-15 at ¶¶ 8–11. Thus, for example, an Analytics user's accounts can contain wholly irrelevant information regarding a third party's products and competitive strategies, such as aggregated information about visits to a third party's own websites, including the typical geographic locations of its visitors or how long was typically spent on a website. App. 14-15 at ¶¶ 9-11. Google does not maintain these third parties' websites and thus is not in a position to disclose such information. Moreover, the accounts contain detailed analysis about access to these third-parties' websites by means other than Google – such as through other search engines – which are clearly not at issue in this case. Any such information cannot be disclosed because, beyond being irrelevant to this case, it is confidential and proprietary competitive information regarding third parties.

By way of analogy, American's demand for complete access to a third-party's entire Analytics account is analogous to a demand that a financial institution like Charles Schwab provide complete access to every account maintained by a particular individual simply because one account for that person included one trade that was relevant to the case. This is not a defensible position, and Google's customers expect and deserve that Google make an effort to shield sensitive, irrelevant information.

---

database, with just these accounts. App. 08-09, 14-15.

Given these issues, Google has carefully considered how to provide American with the required "access" to these databases, while ensuring that American does not inadvertently access irrelevant information and does not have the ability to review account information for the hundreds of thousands of third party account holders who are irrelevant to this litigation. Google's ultimate decision to have one Google employee assigned to provide American with access to these databases and to assist American in locating the relevant responsive information contained therein is the most reasonable way to provide American access, while ensuring that Google can also protect the databases and the third party information contained therein.[5] App. 14-15 at ¶¶ 11-13; App. 9 at ¶¶ 16-17. American is simply wrong to claim that the Court's order somehow prevents such protections or otherwise allows American to rummage, unsupervised, through these databases wherever and whenever it sees fit.[6]

### C. Granting American Unlimited Access to These Databases Would Threaten The Integrity of Third Parties' Valuable Account Information.

Finally, and perhaps most importantly, Google needs to have reasonable restrictions placed on American's access of these databases in order to ensure that American can examine, but not modify or delete, any information in the databases. This is an especially significant problem because many of the 55 advertisers with information that American seeks to review are American's competitors. Thus, American's request for "unlimited" and unsupervised access to these databases would, essentially, give American unlimited access to its competitors' information and a means by which it could inadvertently change such information.

---

[5] Because Google needs to have American's access to the live databases assisted by a Google employee, American's demand to have access to these databases on demand and 24 hours a day, 7 days a week at 6 different locations in the U.S is obviously impossible to satisfy. Google notes, however, that it is providing American with hard copies, and electronic versions, of the data that American wishes to take from the databases. Thus, American is free to use such information at its own offices, once it has identified it on, and copied it from, the live databases.

[6] Indeed, Google restricts this type of unfettered access to these databases even on its own premises in order to minimize such risks. App. 07 at ¶ 14. It is entitled to this same level protection when the information is being disclosed to an outside party.

First, as to the AdWords database, Google does not currently have the ability to provide American (or any third party user) with complete access to the AdWords database in a "read only" manner, *i.e.* in a manner that would allow American to view other companies' account information but not allow American to make changes to the information contained within any of the accounts that it views. App. 09 at ¶¶ 14–16. Moreover, it would be prohibitively expensive and very time consuming for Google to create a "read only" option for this database. App. 09 at ¶ 15. Similarly, as to the Analytics database, Google does not currently have the ability to provide American with limited access to the relevant parts of the database, while also ensuring that American cannot make changes to the information contained in the database. App. 15-16 at ¶¶ 14-15. Thus, the only currently existing, reasonable method of ensuring that American can access to the relevant parts of both databases, while also ensuring that American cannot change any information contained therein, is to give American access with the help of a trained Google employee. App. 09-10 at ¶¶ 16-17; App. 16 at ¶16.

Second, the risks inherent in allowing American unfettered, and unsupervised, access to database information that American can inadvertently alter during its review cannot be underestimated. For the AdWords database, if American were to make unauthorized changes to a third party's data during its review, such changes could cause severe damages to the third party's business and to Google's business. App. 09-10 at ¶¶ 16–17. Similarly, for the Analytics database, if American were to make unauthorized changes to third parties' data during its review, such changes could require the third parties to incur costs, and additional effort, to ensure that no such changes are made or to locate and remedy such changes once they have been made. App. 15-16 at ¶¶ 14–15. And, for both databases, Google does not have a reasonable, economically feasible way to ensure that, if American has unfettered and unsupervised access to the databases, American does not make any changes to any account information during its review of such

information. App.09; at ¶¶ 16–17; App. 15-16 at ¶¶ 14–15. Thus, Google has provided American with access to these databases in the only way that will provide reasonable protections to prevent such changes from occurring – providing a Google employee who can facilitate American's access to the database, while ensuring that American does not inadvertently alter or delete valuable account information that belongs to third-parties.

D.  **In The Alternative, The Court Should Enter A Protective Order Limiting American's Right to Access These Databases.**

A court may enter a protective order limiting discovery upon a showing of "good cause." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order must show the necessity for its issuance, which requires "'. . . a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Malone Mortgage Co. Am., Ltd. v. Martinez*, 2003 WL 23272381, at *2 (N.D. Tex. 2003) (*quoting United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)). Upon such a showing, the Court may enter a protective order governing the scope of discovery, including:

> (A) forbidding disclosure or discovery;
>
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> * * *
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery of certain matters.

Fed. R. Civ. P. 26(c).

Courts routinely grant protective orders to place limits on a party's improper and unjustified fishing trips where, as here, the discovery sought places dramatically more burden upon the adversary and innocent third parties than the value of the information warrants. Moreover, courts may narrow discovery requests that go far beyond a plaintiff's legitimate needs and amount to a massive invasion of a defendant's business affairs. Here, it is clear that a protective order is needed in order to prevent American from accessing database information that concerns hundreds of thousands of irrelevant third parties, from accessing database information

regarding the 55 named advertisers which irrelevant to the issues in dispute here, from inadvertently changing database information and from inadvertently damaging databases that are key to Google's, and third parties' businesses. *See supra.*

Consequently, in the alternative to the Court clarifying the scope of its June 16, 2008 order, Google seeks a protective order that limits American's access to Google's AdWords and Analytics databases and includes Google's current, reasonable limitations on American's access to these databases. Google also requests that this protective order provide that American's access to these databases should be provided in a way that bars American from accessing the accounts of any advertisers beyond the 55 it has identified as being relevant to this case, that prevents American from reviewing any information which is not relevant to American Airlines' keywords and that prevents American from inadvertently changing or damaging the databases. This is the only way to protect Google, and thousands of third parties, from the dangers of American's current demand for unlimited and unsupervised access to these databases.

### III. CONCLUSION

The databases at issue here contain third parties' and Google's information that is highly sensitive, extremely valuable and, because of its "live" nature and database format, highly susceptible to corruption and inadvertent changes. Given the serious consequences that would result from any inadvertent changes or damage to this information, and from an unwarranted review of third parties' irrelevant information, Google respectfully requests that the Court grant Google's motion and clarify that Google is complying with the Court's order by providing American with access to the database subject to a few reasonable limitations that protect the databases and their information. In the alternative, Google respectfully requests that the Court issue a protective order which adopts the reasonable limitations that Google has set on American's "access" Google's electronically stored information.

Respectfully submitted,

[signature]

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
Richard H. Gateley
Texas Bar No. 04378900
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/870-2265

**OF COUNSEL:**

Michael H. Page
California Bar No. 154913
Klaus H. Hamm
California Bar No. 224905
Ajay S. Krishnan
California Bar No. 222476
Benjamin W. Berkowitz
California Bar No. 244441
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Plaintiff American Airlines on July 2, 2008, who was opposed to this motion. Therefore, it is presented to the Court for its determination.

Joseph F. Cleveland, Jr.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

**Via Hand Delivery**

Dee J. Kelly
Dee J. Kelly, Jr.
Lars L. Berg
Michael D. Anderson
Kelly Hart & Halman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

**Via First Class Mail**

Frederick Brown
George A. Nicoud III
Gibson, Dunn & Crutcher LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104

Date: July 2, 2008

Joseph F. Cleveland, Jr.