ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2008 JUL -2 PM 2:20

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,                    §
                                            §
                         Plaintiff          §          CIVIL ACTION NO.
                                            §
v.                                          §
                                            §          4-07-CV-487-A
GOOGLE, INC.,                               §
                                            §
                         Defendant          §

## APPENDIX IN SUPPORT OF
## DEFENDANT GOOGLE INC'S MOTION FOR
## CLARIFICATION OF JUNE 16, 2008 ORDER

Joseph F. Cleveland, Jr.
Richard H. Gateley
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Facsimile: 817/870-2265

Michael H. Page
Klauss H. Hamm
Benjamin W. Berkowitz
Ajay S. Krishnan
Ragesh K. Tangri
Rachael Meny
Daralyn J. Durie
Melissa J. Miksch
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4-07-487-A |
| | § | |
| GOOGLE, INC. | § | |
| | § | |
| | § | |
| Defendants. | § | |

## APPENDIX IN SUPPORT OF DEFENDANT GOOGLE INC.'S
## MOTION FOR CLARIFICATION OF JUNE 16, 2008 ORDER

Defendant Google Inc. ("Google") files this its appendix in support of its motion for clarification of June 16, 2008 order.

Respectfully submitted,

_____ ,

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
Richard H. Gateley
Texas Bar No. 07752500
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: 817/338-1700
Metro: 817/429-9181
Facsimile: 817/870-2265

Michael H. Page
Klauss H. Hamm
Benjamin W. Berkowitz
Ajay S. Krishnan
Ragesh K. Tangri
Rachael Meny
Daralyn J. Durie

Melissa J. Miksch
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2008, a copy of Defendant's Appendix was served on Plaintiff's attorneys of record as follows:

Dee J. Kelly                    **Via Hand Delivery**
Dee J. Kelly, Jr.
Lars L. Berg
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Frederick Brown                 **Via First Class Mail**
George A. Nicoud III
Gibson, Dunn & Crutcher LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104

_____
Joseph F. Cleveland, Jr.

| Tab | Description | App. No |
|------|-------------|---------|
| A | Letter dated June 23, 2008 re: Access to Google's Electronic Data | APP 01-02 |
| B | Letter dated June 24, 2008 re: access to Google's databases | APP 03-05 |
| C | Declaration of David Baker | APP 06-11 |
| D | Declaration of Philip Mui | APP 12-16 |
| E | Letter dated June 25, 2008 re: Discovery Order | APP 17-19 |
| F | Letter dated June 26, 2008 re: Response to June 25 letter | APP 20-22 |
| G | Letter dated June 26, 2008 re: Orbitz Entities | APP 23-24 |
| H | Letter dated July 1, 2008 re: Databases | APP 25-28 |



A

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

_____

One Montgomery Street  San Francisco, California 94104-4505

(415) 393-8200

www.gibsondunn.com

FBrown@gibsondunn.com

June 23, 2008

**Direct Dial**
(415) 393-8204

**Fax No.**
(415) 374-8420

Client No.
T 01022-00512

<u>VIA ELECTRONIC MAIL</u>

Daralyn J. Durie, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA  94111

Re:   *Access to Google's Electronic Data*

Dear Daralyn:

Are you available for a second conference call tomorrow at 9 am PT to continue our meet and confer discussion from Friday?

Google's suggestion that on June 26 it would provide American Airlines "access" to Google's electronic data through a single computer terminal at Google's Mountain View headquarters during Google's business hours would effectively deny American Airlines the relief awarded by the Court.  Not only would Google's plan severely limit who could access the data and the days and times that access would be allowed, but, as we understand your proposal, Google also will not allow copying, printing or manipulation of the data, thus further crippling American Airlines' ability to use the information in discovery or at trial.  Google's suggestion that American Airlines should first review the data and then discuss with Google whether copying or printing is appropriate is not workable nor acceptable and would further delay American Airlines' use of the information that should have been produced several months ago. With the discovery deadline fast approaching, no further delay is tolerable.  American Airlines' experts and outside counsel need unlimited access at their offices in Fort Worth, Dallas, Washington and San Francisco and the ability to copy, print and otherwise use the data they have discovered.  Google's concern for the confidentiality of the data should be adequately protected by the Confidentiality Agreement that Google already entered into to govern the use and sharing of such data if Google marks it as Highly Confidential, as we expect that it will.

**APP 01**

Google had a full opportunity to argue before the Court that American Airlines' access to Google's electronic information should be severely limited, as Google now proposes. Google never made that argument and now is barred from the self-help remedy it wants to impose. Google's failure to suggest a restricted use to the Court is especially surprising in that Google has known for several weeks that American Airlines objected to restrictions, beyond those negotiated in the Confidentiality Agreement, in the use or access to Google's data by its outside counsel or experts. When Google proposed several weeks ago and thus before the Court's Order that "conversion" data be sent to American Airlines on a single encrypted hard-drive where the data could not be copied, printed or shared, American Airlines' rejected that proposal as unworkable. American Airlines cannot now accept the significant, unilateral restrictions that Google seeks to impose on the electronic data that is the subject of the Court's Order.

American Airlines also needs to hear from Google as to whether Google, in light of the Court's ruling, will attempt to continue to object to producing keyword and broad match data requested by American Airlines' in its third and fourth requests for production and in its second set of interrogatories, as well as in Google's forthcoming responses to American's third set of interrogatories.

Please also send a copy of each notice that Google has sent to its advertisers concerning American Airlines' access to Google's electronic data or the Order of the Court.

Very truly yours,

Frederick Brown

FAB/tm

100469956_1.DOC



B

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

RAGESH K. TANGRI
RTANGRI@KVN.COM

June 24, 2008

**VIA E-MAIL**

Frederick Brown
Gibson Dunn & Crutcher LLP
One Montgomery Street
San Francisco, CA 94104-4505

Re:   *American Airlines, Inc. v. Google Inc.*

Dear Fred:

I write in response to your June 23, 2008 letter, and to clarify Google's proposal to provide American Airlines with access to the electronic "AdWords" and "Analytics" databases. At the outset, I note that we disagree with your assertions that issues regarding how American will receive access to these databases were already decided by the Court's prior order. We also disagree with your assertion that Google has waived any right to set reasonable restrictions on, or to determine the necessary protections regarding, American's access to Google's electronic information at issue. The issue of what reasonable restrictions and protections are required for access given the structure of the databases, and the nature of the third party information contained therein, are specific issues that were not previously pending before the Court and were not decided by the Court.

As we have previously told American, Google is willing to provide American with access to the front ends of these electronic databases via a terminal. Given American's request to have access to data in San Francisco, we will make this terminal available at our offices in San Francisco. We currently intend to provide American to access to the data at our offices in San Francisco on Thursday, June 26, 2008.[1]

---

[1] Additionally, in order to facilitate a compromise on this issue, Google is willing to determine whether it is feasible to provide American with access to the AdWords database at one or more of the American office locations listed in your letter, via a Google employee who might be able to bring the computer needed to access the database remotely (and to print or save such data) to such locations and who could provide the supervision needed while not compromising American's review. Please let us know if this approach would provide a solution to the parties' disagreement over access and, if it will, we will promptly determine how to make this solution

Contrary to your assertion, Google is not seeking to limit American's ability to copy or print data from these databases. Instead, if American accesses these databases at our offices, American will have the ability to copy or print from the databases either via printouts saved as PDFs (which can in turn be printed in hard copy) and/or via data saved in electronic formats such as a spreadsheet, depending upon how the database allows such information to be saved or printed. We are still confirming the exact details of how to provide American with such access while safeguarding the integrity of the data and the rights of Google's customers, but we believe we will be able to allow American to print and export data in substantially the same manner that Google's advertiser users have the ability to do.

Your letter demands that Google provide American with "unlimited" access to the Google databases at issue, at American's offices located in numerous cities. To be clear, Google is not trying to limit American's access to the databases in any unreasonable way – Google is simply trying to ensure that American can have access to the databases in a manner that will ensure that American is only accessing the parts of the databases that are relevant to this litigation. Google is also trying to ensure that American will not, during its access, even unintentionally alter the databases' content. Indeed, these databases contain information related to hundreds of thousands of third party advertisers, but only 55 advertisers' accounts are currently at issue in this litigation. Further, as American is aware, Google has been attempting to notify these 55 advertisers about American's request to access their data so that any such third parties will have an opportunity to seek relief. No such notice has been provided to the thousands of others with accounts that have not been implicated in this litigation. Moreover, these databases also contain information that is not related to the matters at issue in this litigation. Given these issues, a minimal level of protections are needed to ensure that, despite American's access to the databases, the databases' integrity are protected and information that belongs to third parties, including American's competitors, is also protected.

For example, as we have previously told American, it is not technologically possible to provide American with completely unsupervised access to the 55 advertisers' account information contained in the databases, without also providing American with unlimited access to account information for advertisers who have nothing to do with this lawsuit and who have not consented to sharing their information. Thus, a Google employee must be present to assist American's access to the databases, in order to ensure that American only accesses the account information for the particular advertisers at issue in this litigation and which have not taken steps to object to American's request for their account information. Similarly, Google cannot provide American with completely unsupervised access to the databases because such access could allow American to modify or delete information located within the databases. Thus, a Google employee must be present in order to ensure that American does not inadvertently alter or delete valuable account information that belongs to third-parties, including American's direct competitors. Google's concerns about these issues are not addressed by the parties'

work.

Confidentiality Agreement because such concerns relate to the databases' integrity, and to ensuring that American does not access data beyond the 55 advertisers, not to disclosure issues.

Your letter also requests information regarding the keyword and broad match issues. A response on those issues will follow shortly.

Please let me know if you have any questions.

Sincerely,

Ragesh K. Tangri

RKT/rem

cc:    Lars L. Berg
       Howard Hogan

**APP 05**



C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | |
| | § | 4-07-CV-487-A |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |


## DECLARATION OF DAVID BAKER IN SUPPORT OF DEFENDANT GOOGLE INC'S MOTION FOR CLARIFICATION OF JUNE 16, 2008 ORDER GRANTING AMERICAN AIRLINES "ACCESS" TO ELECTRONICALLY STORED INFORMATION

I, David Baker, declare as follows:

1.      I am currently employed by defendant Google Inc. ("Google") as the Uber Tech Lead of Google's Engineering department.  Unless expressly stated below, I have personal knowledge of the facts set forth in this declaration, and could testify competently thereto if called as a witness.

2.      Based on my work at Google, I am familiar with Google's AdWords database, its current capabilities and limitations.

3.      Google's AdWords database currently contains records for more than hundreds of thousands of third party companies that advertise on Google or have obtained AdWords account numbers from Google.  This database is also the primary database for storing many other types of information unrelated to AdWords accounts or ads, including for example data related to products not yet launched, transient data types used for internal processing purposes, AdSense data, data related to the operation and configuration of applications, Google print, and experimental auctions.

4.      The information contained in the AdWords database is highly sensitive and proprietary for Google's customers, and Google's commitment to maintain the confidentiality of this data is core to Google's business model and success.  Even within Google, broad access to the AdWords database is restricted.

5.      The data stored in Google's AdWords database currently comprises tens of terabytes of data, much more data than I understand exists as the number of print holdings stored in the U.S. Library of Congress.

6.      Advertisers who are provided access to Google's AdWords database are not given the ability to view account information regarding any other advertiser's AdWords account.  Instead, each advertiser which has access to the AdWords database can only view its own, specific account information located within the AdWords database.

7.      I understand that, as part of this litigation, American has currently provided

**APP 07**

Google with the names of 55 advertisers. I also understand that American is now asking Google to provide it with access to the information contained within those 55 advertisers' AdWords accounts.

8. Given the large numbers of third party advertisers that have account information located within the AdWords database, these account information for these 55 advertisers constitutes a tiny fraction of the total number of accounts located within the AdWords database.

9. Google does not currently have the ability to provide American (or any user) with access to the AdWords database in a manner that would allow American to view complete account information for the 55 designated advertisers without also being able to view complete account information for all of the hundreds of thousands of other companies that have AdWords accounts and information stored within the AdWords database. Thus, if American is provided unsupervised access to the AdWords database, American would have the ability to view complete account information for all of the other companies that have account information located in the database from the beginning of Google's relationship with each advertiser

10. Google also cannot easily create a system that would allow American to access complete account information for a specified group of AdWords accounts (*i.e.* the 55 named advertisers) and not allow American to access account information for all AdWords accounts located in the database. Based on my work at Google, I believe that creating a system which might allow a user to only access information from specific accounts is a difficult and expensive engineering process which would reasonably require a 3 person engineering team to accomplish. I also believe that creating this system would take a 3 person engineering team at least 4 months of full time engineering work to accomplish.

11. Google also cannot simply extract from the database the accounts for the 55 advertisers listed by American, and provide American with a separate database with just these accounts, because these accounts only exist within the larger database and it is not possible to isolate them from the database as a whole.

12. Because Google cannot provide American with access to the AdWords database

in a manner that would provide American with access to certain specified accounts (such as the 55 designated advertisers' accounts) but not provide American with access to account information for hundreds of thousands of other companies, I believe that the only reasonable method of ensuring that American can only access the limited number of accounts which are relevant to this litigation is to have a Google employee assist American in accessing the database in order to prevent American from making changes to the account information.

13.     Advertisers who are provided access to the AdWords database receive the ability to make changes to their own AdWords account information. Advertisers who are provided access to the AdWords database do not have the ability to view, or make changes to, any other advertiser's AdWords account information.

14.     Google does not currently have the ability to provide American (or any third party user) with complete access to the AdWords database in a "read only" manner, *i.e.* in a manner that would allow American to view other companies' account information but not allow American to make changes to the information contained within any of the accounts that it views.

15.     Google also cannot easily create a system that would allow American to access complete account information in a "read only" manner so that American could not make changes to the account information that it views. Based on my work at Google, I believe that creating a system which might allow a user to only have "read only" access to such accounts so that they cannot make any changes to the account would also be a difficult and expensive engineering process which would reasonably require a 3 person engineering team to accomplish. I also believe that creating this system would take a 3 person engineering team at least 4 months of full time engineering work to accomplish.

16.     Because Google cannot provide American with access to the AdWords database in a manner that would prevent American from making changes to the account information it reviews, I believe that that the only reasonable method of ensuring that American does not make changes to the account information it views is to have a Google employee assist American in accessing the database in order to prevent American from making changes to the account

information. Indeed, if American is provided unsupervised access to account information located within the AdWords database, there is a risk that American could, even inadvertently, change information within the accounts it views. These changes could be made to account information owned by third parties, including American's direct competitors. Moreover, if American made changes to a third party's account information, even inadvertent changes could prevent a third party's advertisements from appearing on Google as the third party desires, or otherwise altering a third party's advertisements or account information – causing damages to both the third party's business and to Google's business.

17. Unless Google has one of its employees assist American in monitoring the AdWords database, there is no reasonable method available to Google to ensure that American does not make changes to third party account information contained within the database. Google does not have any existing mechanism by which Google is alerted when a user makes changes to information contained within the AdWords database. Thus, if American was provided unsupervised and unlimited access to the AdWords database whenever it desires, the only way that Google could monitor American's activity in order to ensure that American does not make unwarranted or unauthorized changes to a third party's account information would be for Google to assign a Google employee to monitor the AdWords database on a 24 hour a day, 7 day a week basis in order to confirm whether American is making unauthorized changes to third parties' account information while American views such information. Moreover, even if Google could provide such around the clock monitoring, due to latencies that exist within the AdWords database, there would continue to be some risk that American might be able to make changes to third parties' account information which might not be detected before the changes impacted the third parties' account information, thus altering third parties' advertisements or account information and harming third parties' business and/or Google's business.

I state under penalty of perjury that the foregoing statements are true and correct and that this declaration was executed on June 25, 2008 at Mountain View, California.

**APP 10**

DAVID BAKER



**D**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | |
| | § | 4-07-CV-487-A |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |

## DECLARATION OF PHILIP MUI IN SUPPORT OF DEFENDANT GOOGLE INC'S MOTION FOR CLARIFICATION OF JUNE 16, 2008 ORDER GRANTING AMERICAN AIRLINES "ACCESS" TO ELECTRONICALLY STORED INFORMATION

I, Philip Mui, declare as follows:

1.     I am currently employed by defendant Google Inc. ("Google") as the product manager of Google Analytics.  Unless expressly stated below, I have personal knowledge of the facts set forth in this declaration, and could testify competently thereto if called as a witness.

2.     Based on my work at Google, I am familiar with Google Analytics, its current capabilities and limitations.

Google Analytics is a tool that companies and individuals can use to gather web traffic information, analyze and report such information, regarding websites specified by the companies or individuals and the visitors who visit such websites.

**The Numerous Third Parties Affected by American's Request for Data:**

3.     Google Analytics currently contains records for hundreds of thousands of companies and individuals that are Analytics account holders.

4.     Each Analytics account holder specifies the web pages that it wishes its Analytics account to analyze.  Some accounts thus analyze more than one web site or analyze numerous different web pages for numerous different companies.  For example, for account holders such as advertising agencies, an agency may use its Analytics account to monitor numerous different web sites for different third party clients at the same time.  Furthermore, the collection of data is triggered when account holders place appropriate tags on web pages, and thus, an account may contain data collected from various web pages that are not necessarily from a singular website or section of a website.

5.     I understand that, as part of this litigation, American has currently provided Google with the names of 55 advertisers or advertising agencies.  I also understand that American is now asking Google to provide it with access to the information contained within those 55 account holders' Analytics accounts.

6.     Given the fact that an Analytics account can have a web-property which collects data from numerous web sites, or numerous web sites from numerous different companies, I believe that providing American with unlimited access to this information has the potential to

provide American with information that is much broader than information that is specifically relevant to the 55 named advertisers or advertising agencies at issue in this litigation.

7.  Also, given the hundreds of thousands of third parties that have account information located within Google Analytics, the account information for these 55 advertisers constitutes a tiny fraction of the total number of accounts located within the Analytics database.

**The Broad Nature of Third Party Information At Issue Here:**

8.  Companies and individuals that have Analytics accounts can have numerous types of information stored within their account. A very small part of such information, for accounts where it exists, would be information related to keywords or information regarding a user's Google ad campaigns.

9.  Companies and individuals with Analytics accounts also typically have numerous other types of information stored within their account, including information that is completely unrelated to keyword or paid ad-related issues. Much of this additional information is information that third parties are likely to find to be competitively important or useful.

10.  For example, an Analytics user's account can include numerous details about the types of visitors that visit a user's specified websites, such as the geographic origins of a website's visitors, browser types which the visitor used to view the website, % new visitors, etc. A user's account can also include numerous details about a specific visit to a user's specified website, such as how long a visitor spent reviewing the website, # searches or events per session, *etc.* There are also non-paid compaign tracking information such as organic, referral, and direction traffic. A user's Analytics account can also provide information about whether there are other websites that refer visitors to a user's specified websites, information that could disclose the existence of referral agreements between third party companies or individuals.

11.  Additionally, because Analytics account holders can designate multiple websites as websites they want to analyze within one Analytics account, providing American with access to an account holder's Analytics account would potentially provide American with access to websites that are unrelated to topics in dispute in this litigation. For example, the information

within one Analytics account could include information about an account holder's travel related web page, but also about its web page for investors or its web page for the account holder's own employees.

Google does not currently have a method of allowing American to access part of the information related in a user's Analytics account (such as the keywords or ad campaign information) while also preventing American from accessing other, confidential or irrelevant parts of the account (such as a third party's information that is competitively useful and unrelated to keywords or advertising issues or account information related to websites that are not travel related). Based on my work at Google, I believe that creating a system which might allow American to only access the third party Analytics' information that is relevant to this lawsuit is a difficult and expensive engineering process which would reasonably require take more than 10 engineers at least 6 months of full time engineering work to design, implement, test and launch.

**The Risk That American Could Change Third Party's Account Information**

12.     Companies and individuals with Google Analytics receive the ability to make changes to their own Analytics account information. However, each company and individual do not have the ability to view, or make changes to, any other account holder's Analytics account information unless explicitly granted by the other holder within their Analytics account.

13.     Because Google cannot provide American with access to Analytics in a manner that would prevent American from reviewing third party information that is unrelated to this lawsuit, I believe that that the only reasonable method of ensuring that American does not access non-relevant and potentially competitively important information is to have a Google employee assist American in accessing a client's Analytics reporting front end in order to extract only information relevant to this case.

14.     If American is provided unsupervised full access to account information located within the Analytics, there is a risk that American could, even inadvertently, change information within the accounts it views. These changes could be made to account information owned by third parties, including American's direct competitors. Any changes that American made to a

third party's account information could hurt a third party account holder. For example, it takes an average client a significant amount of time to properly set up its Analytics account. If American makes changes to a third party's account, the third party will have to incur additional time to fix these changes. Such changes include goals and filters setup, user management, query parameter filtering, *etc.*

15.     Currently, Google does not have any existing mechanism by which Google is alerted when a user makes changes to information contained within Analytics and does not have any method of tracking such changes. Thus, if American was provided unsupervised and unlimited access to clients' Analytics accounts, third parties would likely have to undergo significant efforts to ensure that American did not inadvertently change data in its review, such as taking a snapshot of its account data before American's review and then having someone compare the status of its account after American's review.

16.     Additionally, if American is provided unsupervised and full access to clients' Analytics, there is no way for Google to know what documents, if any, American chooses to save or print from the database. Thus, without a Google employee present to ensure that Google obtains a copy of all data American obtains, American will be able to save or print data from the database without any guarantee that Google will obtain a copy of the data Google is therefore producing from Analytics.

I state under penalty of perjury that the foregoing statements are true and correct and that this declaration was executed on June 25, 2008 at Mountain View, California.

_____
PHILIP MUI

**APP 16**