

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2008 JUL -2 PM 3: 57

CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br>           Plaintiff, <br><br> -v.- <br><br> GOOGLE INC., <br><br>           Defendant. | No. 4:07-CV-487-A |

## PLAINTIFF'S SECOND MOTION TO COMPEL AND FOR SANCTIONS AND BRIEF IN SUPPORT

Dee J. Kelly
  State Bar No. 11217000
Dee J. Kelly, Jr.
  State Bar No. 11217250
Lars L. Berg
  State Bar No. 00787072
**KELLY HART &**
**HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown
  admitted pro hac vice
George A. Nicoud III
  State Bar No. 15017875
Jason B. Stavers
  admitted pro hac vice
GIBSON, DUNN &
CRUTCHER LLP
One Montgomery St., Ste. 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Terence P. Ross
  admitted pro hac vice
Howard S. Hogan
  admitted pro hac vice
GIBSON, DUNN &
CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

# TABLE OF CONTENTS

**Page**

I. CERTIFICATION ...................................................................................................... 2

II. ARGUMENT ........................................................................................................... 2

    A.    Google Has Violated The Court's June 16 Order. .................................................. 2

    B.    Google's Failure to Take Appropriate Steps to Preserve Relevant Documents Also Merits Sanction. .......................................................................... 7

    C.    Google Has Not Produced Relevant Broad Match Information. .......................... 11

    D.    Despite the June 16 Order, Google Has Not Provided Any Additional Related Keyword Information. ........................................................................... 13

    E.    Google Also Continues To Withhold Documents Concerning Its Other Advertisers. .................................................................................................... 14

    F.    Google Has Not Produced All of Its Evidence of Confusion. .............................. 17

    G.    Google Has Failed to Produce Relevant and Responsive Documents Revealed by Google and its Employees in Deposition Testimony....................... 20

IV. PRAYER ................................. .................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chilcutt v. United States,*
   4 F.3d 1313 (5th Cir. 1993) ................................................................. 7

*Consol. Aluminum Corp. v. Alcoa, Inc.,*
   244 F.R.D. 335 (M.D. La. 2006) ...................................................... 7, 10

*Morton v. Harris,*
   628 F.2d 438 (5th Cir. 1980) ................................................................. 7

*Truck Treads, Inc. v. Armstrong Rubber Co.,*
   818 F.2d 427 (5th Cir. 1987) ................................................................. 7

## Statutes

Fed. R. Civ. P. 34(b)(2)(C) ..................................................................... 12

Fed. R. Civ. P. 37(a)(1) .............................................................................. 2

Plaintiff American Airlines, Inc. ("American") again seeks to compel the production of documents and electronically stored information from Google. Google has yet to fully comply with the Court's June 16, 2008 Order. With the July 3 summary judgment and August 11 discovery cutoffs quickly approaching, Google continues its strategy of withholding critical relevant information in the apparent hope that it can wear down American or run out the clock. American brings this Second Motion to Compel and Brief in Support (the "Second Motion") pursuant to Rule 37(a) seeking another discovery order requiring Google to provide discovery and pursuant to Rule 37(b) seeking appropriate sanctions for Google's failure to comply with the Court's June 16 Order.

This motion addresses seven of Google's major discovery misdeeds: (1) violation of the Court's June 16 Order; (2) failure to timely instruct its employees to preserve documents; (3) refusal to provide more than a scintilla of information about how Google's "broad match" service works and insufficient information on broad match revenues and other needed information about such matching; (4) failure to produce *any* additional electronically stored information related to the keywords that it has encouraged advertisers to use through Google's Keyword Suggestion Tool; (5) omission of any information on its efforts to encourage advertisers to use, without authorization, trademarks not owned by those advertisers; (6) failure to produce sufficient information on consumer confusion, including but not limited to Google's many studies on consumer confusion, its employees' communications on that subject and consumer complaints of confusion; and (7) withholding discrete documents or categories of documents which are responsive to American's requests and have been confirmed to exist by the deposition testimony of current and former Google employees.

# I.
## CERTIFICATION

American certifies that, in compliance with Fed. R. Civ. P. 37(a)(1), it has in good faith

conferred in person, by correspondence, and by phone with counsel for Google on several

occasions over many weeks in an effort to obtain the information that is the subject of this

motion. Because these efforts have been unsuccessful, American has filed this Motion in order

to obtain the discovery it needs within a time frame sufficient to comply with the Court's

October 26, 2007 Order Setting Schedule and Providing Special Pre-Trial Instructions.

# II.
## ARGUMENT

### A.    Google Has Violated The Court's June 16 Order.

In its first motion to compel[1] American sought access to "all electronically stored

information" that is responsive to American's Requests for Production. First Motion at 18.

American identified as examples a number of requests for production that Google had failed to

fulfill, including Requests for Production 4-5, 10, 22, and 28-32 of American's First Request for

Production (App. Ex. C, pp. 021-022, 024-027) and Numbers 3, and 8-11 of American's Second

Request for Production (*id.* Ex. E, pp. 051-054). First Motion at 9-10. American made clear that

it was seeking access to responsive information maintained in "Google Analytics *or any other*

*data base, whether or not that function was called out by name.*" First Reply at 9-10. American

mentioned the following databases as examples of the vast array of data that Google had been

---

[1] The briefs filed in relation to the First Motion to Compel will be identified as "First Motion" (Plaintiff's Motion to Compel and Brief in Support, dated May 7, 2008, Docket No. 34); "First Opposition" (Defendant Google Inc.'s Response to Plaintiff American Airlines, Inc.'s Motion to Compel, dated May 15, 2008, Docket No. 44); and "First Reply" (Plaintiff's Reply Brief Relative to its Motion to Compel, dated May 21, 2008, Docket No. 56).

shielding from discovery since late 2007: databases made available to Google's customers (First

Motion at 13); databases made available to Google's sales force (First Motion at 14); employee

custodial files (First Motion at 14, n. 7); information stored in "AdWords, Google Analytics or

elsewhere" (First Reply at 9). In its Opposition brief, Google, mentioned the following

electronically stored data when it argued that it had fully complied with American's discovery

requests: Ads Database (First Opposition at 10, and the declarations of D. Baker and K. Hamm

filed with the Opposition); Keyword Tool (First Opposition at 8 and declaration of A. Haque

filed with the Opposition); Search Query Performance Report (declaration of P. Han filed with

the Opposition). In the Objections to the requests for production, Google attempted to establish

undue burden by arguing that is electronic data was "spread across a vast array of data.." Second

Requests for Production, Nos. 8, 11 (previously filed as pp. 59, 62 of Appendix of First Motion).

On June 16, 2008, the Court issued an Order requiring Google "to give American access

by June 26 to all electronically stored information that is responsive to each of plaintiff's

requests for production."

Despite the Court's Order, *Google has repeatedly insisted that it need only provide*

*Google with access to AdWords and Analytics, nothing more.* *See* App. Ex. HH, pp. 263-265

(June 26, 2008 letter from R. Tangri) ("Providing American with access to the AdWords and

Analytics databases satisfies the Court's Order."); App. Ex. RR, pp. 399-402 (July 1, 2008 letter

from R. Tangri) ("[W]e explicitly told you that we construed this Order to require access to the

AdWords and Analytics databases."). American reminded Google in writing that the Court's

Order could not be rewritten to limit American's access and asked that all responsive

electronically stored information be produced. App. Ex. GG, pp. 260-262 (June 25, 2008 letter

from F. Brown). Google, however, prefers to pick and choose what it wants to share with American rather than comply fully with the Court's Order.

The true extent of Google's databases and systems responsive to the Court's Order were revealed for the first time in Google's Court Ordered Statement submitted on May 22, 2008. There, when Google was boasting about its discovery efforts, it stated that it had searched for electronic information in "the following databases and systems: Beaker, Keyword Tool, Trakken/Trax, G-mail emails, IMAP emails, Outlook/Exchange emails, ads database, Google's external website, Google's internal website, a few days of daily log files, and Google wiki pages for N.A. Direct Sales Travel Vertical, N.A. Online Sales Industry Info, N.A. Online Sales Policy – Trademark, Main QuerryRewrite, Main AKSS, Google Ads UI, Ads Experiment Group Documentation, Ads Review PM, How AdsReview Works, How beaker Works, and Consumer Ads UI." App. Ex. R, pp. 158-176 (Google's Declaration Submitted Pursuant to the Court's May 16, 2008 Order, at p. 9) (words spelled as in Google's submission). Yet Google continues to deny American access, even in the face of the Court's Order, to the very electronic databases and systems that Google has acknowledged contain relevant information.

Through Richard Holden, Google's Director of Product Management and designated witness under Rule 30(b)(6) on various issues related to electronic databases, Google admitted that it had even more relevant electronically stored information, including: a Product Development Database, which tracks the development of Google's tools and products for advertisers, App. Ex. II, pp. 266-285 (Holden Tr. 38:5-14); an Internal Computing System, which contains overall advertiser and campaign information, *id.* at 44:10-45:25); a serving and logging system for AdWords, which may informally be called the Ads System, *id.* at 38:15-39:20; internally hosted web-pages, which are an easy way for Google's employees to

communicate about many advertiser related projects, *id.* at 42:5-44:9; reports on ads quality, *id.* at 41:3-10; and Objectives and Key Results, which are posted on an internal web-page and where Google's managers and employees list their goals and projects for the next calendar quarter, *id.* at 32:19-34:14. *See also id.* at 15:18-24, 60:9-62:13, 274:13-275:9 (describing topics Mr. Holden was designated to speak to on behalf of Google).

As ordered by the Court, American should be given immediate access to all of the electronically stored information that contains responsive information, no matter where located and no matter what name Google uses to refer to the database or system.[2]

Google is not only withholding relevant electronically stored information, but is also imposing improper limitations on American's access to the information it is providing. Initially, Google required American's lawyers and experts to go to Google's counsel's office in San Francisco to access the limited data that Google is providing. Then, several days later and the day before American filed this motion, Google offered to provide access at American's counsel's office in San Francisco, albeit under the supervision of Google's counsel. Had Google wanted to provide a single point of supervised access, then Google should have raised that before the Court in its First Opposition, rather than engaging in this self-help limitation. Furthermore, the slow and incremental process by which Google has parceled out its limited compliance is yet another stalling tactic that prejudices American's ability to press its case.

Google has identified no technological impediment to providing access to the AdWords and Analytics databases in multiple offices of American's counsel. Access may be provided

---

[2] If Google contends that one or more databases mentioned in this motion contain no relevant information, it should provide a detailed, sworn written explanation setting forth the kinds of information contained in the databases or systems and why that information is not relevant to the issues subject to the discovery requests.

through a computer connected to the internet and the issuance of a user name and password for the appropriate databases. Indeed, hundreds if not thousands of Google's employees access some or all of this electronically stored information over the Internet.[3] Google admitted as much through Mr. Holden's deposition, *id.* (Holden Tr. 43:24-44:9), as did the Google personnel who monitored American's recent limited access.

Google also insists that American's access be overseen by Google personnel and copies of what American's counsel reads turned over to Google's counsel. Such oversight invades American's counsel's mental impressions and thought processes. Further, the restrictions are unnecessary. For example, Google has raised the false specter of American's counsel changing the data it is viewing. App. Ex. FF, pp. 257-259 (June 24, 2008 letter from R. Tangri at 2). Not only is that suggestion insulting – it either suggests that American's representatives are not smart enough nor honest enough to avoid changing the data they are viewing – it does not take into consideration that Google should be able to resolve the issue by providing American passwords that are limited to read only access, by keeping a "change history," or through other reasonable means. Google also is providing American with only static pictures of the limited data it has been allowed to see (i.e. screenshots), rather than the dynamic view that the jury and Court deserve so that they can see the extent of Google's conduct.

Because Google's continued resistance to this Court's June 16 Order constitutes discovery abuse, American requests that the Court issue an additional Order sanctioning Google

_____

[3] Google has not identified any system or database that cannot be accessed via the internet. American knows that AdWords and Analytics may be accessed in that way and believes that other databases and systems may also be accessed remotely.

for failing to comply fully with its June 16 Order.[4]  American's specific requested sanctions are detailed in the Prayer for Relief, *infra*.

**B.    Google's Failure to Take Appropriate Steps to Preserve Relevant Documents Also Merits Sanction.**

Google failed to instruct its employees to preserve documents for ten months or more after this litigation was threatened and two months or more after the complaint was filed.  But a party that "reasonably anticipates litigation" must "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006).  Google itself argued in a related lawsuit that the duty to preserve attaches when "future litigation" is "probable."  App. Ex. B, pp. 004-012 (Google December 26, 2006 brief in support of motion for sanctions in *Google v. American Blind & Wallpaper Factory, Inc.*, at 19).

Google should have issued the requisite litigation hold notice at the very latest by December 19, 2006, when American notified Google of its intent to file this lawsuit and the parties entered into a written Standstill Agreement that recognized the seriousness of the litigation threat.  *See* App. Ex. A, pp. 001-003 (Standstill Agreement, including a tolling of the statute of limitations).  Indeed, only one week later Google chastised American Blind &

---

[4]  Under Rule 37(b) and the case law of this Circuit, this Court may award appropriate sanctions up to and including an order determining issues of liability or eliminating defenses. *See, e.g., Truck Treads, Inc. v. Armstrong Rubber Co.*, 818 F.2d 427, 429 (5th Cir. 1987) (affirming termination sanctions for party's "failure to respond adequately to discovery requests and obey a court order in connection therewith"); *Morton v. Harris*, 628 F.2d 438, 440 (5th Cir. 1980) (affirming sanctions where the party's "tactics and gamesmanship constituted a willful effort to both evade and frustrate discovery.").  Indeed, where, as here, a party has been warned by the Court that sanctions might be forthcoming, there is no requirement that the party's conduct be "willful or contumacious" or that the moving party demonstrate affirmative prejudice as a result.  *See Chilcutt v. United States*, 4 F.3d 1313, 1317-24 (5th Cir. 1993).

Wallpaper Factory, Inc., for failing to impose a timely litigation hold of its own. Yet Google itself did not issue a hold notice. And when American's complaint was filed in August 2007, Google still did not issue a hold notice in this case for many months after litigation was explicitly threatened. In fact, Google did not instruct *any* of its employees to preserve documents for this case until October 1, 2007, and even then it did not instruct all of the relevant individuals. App. Ex. R, pp. 172-176 (Google's Declaration Submitted Pursuant to the Court's May 16, 2008 Order). Google did not provide the necessary retention instructions to many individuals with relevant information until much later. Over 60 employees were not asked to preserve documents until more than a year after Google was informed of the serious threat of litigation and five months after the lawsuit was filed.[5] Indeed, one individual, Lauren Gellman, was identified by Google in its December 5, 2007, Initial Disclosures as an individual with non-privileged discoverable information, but was not instructed to preserve documents relevant to the litigation until *April 21, 2008*. Two others similarly identified in those disclosures—David Green and Sarah Hobbs—*were never given the preservation instruction at all*. When asked to explain why it did not timely issue a timely litigation hold notice in this case, Google provided no real explanation, but incorrectly asserted that the discovery conducted in prior litigation was sufficient. App. Ex. T, pp. 188-189 (May 27, 2008 Letter from Fred Brown, at 2); App. Ex. X, pp. 211-215 (June 5, 2008 Letter from Klaus Hamm, at 5). To the contrary, Google's prior

---

[5] Eighteen(18) employees were notified on October 1, 2007; fifty (50) on November 7, 2007; three (3) on November 20, 2007; ten (10) on November 27, 2007; fifteen (15) on December 12, 2007; seventeen (17) on December 13, 2007; nine (9) on January 11, 2008; two (2) on February 20, 2008, three (3) on February 26, 2008; two (2) on February 27, 2008; three (3)on March 4, 2008; three (3) on March 9, 2008; one (1) on March 20, 2008; one (1) on March 27, 2008; one (1) on April 2, 2008; forty (40) on April 21, 2008 and two (2) on April 28, 2008.

involvement in numerous prior lawsuits should only have confirmed for Google that future litigation on this topic was probable.

It is now clear from the testimony of former Google employees that responsive documents have likely been destroyed through Google's failure to issue timely litigation hold notices. For example, former Google employee Jeffrey Zidell testified that he routinely threw away hand-written notes that he took on presentations to clients. App. Ex. P, pp. 139-153 (Zidell Tr. at 139:12-142:1). Mr. Zidell's testimony also revealed that Google altered highly-relevant documents in an attempt to prevent them from falling into American's hands, *after this litigation had commenced*. While Mr. Zidell's testimony about the purposeful alteration of one document was, to put it mildly, less than clear,[6] the Google account manager who reported to him (Ms. Antsis), testified that she and Mr. Zidell decided to alter an existing document before a "copy" was sent to American to hide from American written proof that Google was urging non-owners of trademarks to bid on the marks they did not own. App. Ex. DD, pp. 242-248 (Antsis Tr. at 92:15-25, 102:23-103:19). *Compare* App. Ex. LL, pp. 301-336 (Google Mobile presentation as presented on a computer screen to American, encouraging American to buy the marks of its competitors) *with id.* Ex. LL, pp. 337-372 (the so called "copy" of the Google Mobile presentation sent by e-mail to American, with the competing trademark terms deleted).

---

[6] Mr. Zidell initially testified that the presentation had not been changed after it was presented to American and that he did not remember that competitive trademarks appeared in the presentation. App. Ex. P, pp. 139-153 (Zidell Tr. at 162:4-23). He then reversed himself and admitted that, in fact, he remembered a discussion about a change, but that he did not remember the change itself. *Id.* Ex. P, pp. 139-153 (Zidell Tr. at 163:8-14). Finally, he reversed himself again and admitted that the changes were, in fact, to the branded keywords page. *Id.* Ex. P, pp. 139-153 (Zidell Tr. at 171:5-172:13).

The testimony of one of Google's 30(b)(6) witnesses also confirms that he did not retain hand-written notes. Richard Holden is Google's Director of Product Management and was offered by Google to testify as to four separate topics identified by American as relevant to this case. App. Ex. F, pp. 057-059 (American's February 21, 2008 30(b)(6) Notice); *id.* Ex. II, pp. 266-285 (Holden Tr. 15:18-24, 60:9-62:3, 274:13-275:9). And yet, Google did not instruct Mr. Holden to retain his documents until April 2, 2008, over a year after Google had notice of the probability of litigation with American, six months after American served its first set of Requests for Production, and six weeks after American served its 30(b)(6) Notice. App. Ex. R, pp. 158-176 (Google's Declaration Submitted Pursuant to the Court's May 16, 2008 Order). As a result, Mr. Holden, who sometimes took extensive hand-written notes at meetings over the years, threw those notes away. *Id.* Ex. II, pp. 266-285 (Holden Tr. 29:5-30:24).[7]

Under such circumstances, where documents have or may have been destroyed or altered by a party, courts have not hesitated to require the offending party to (1) provide additional discovery, including additional depositions, relating to the whether evidence was preserved, and if not, the harm to the non-destroying party and (2) bear the costs, including fees, of the party seeking additional discovery. *Consol. Aluminum Corp.*, 244 F.R.D. at 347-48. *See also* App. Ex. B, pp. 004-012 (Google's December 26, 2006 brief in support of motion for sanctions in *Google v. American Blind & Wallpaper Factory, Inc.*, at 18-20).

---

[7] A good example of Mr. Holden's note taking are the notes he took just days before his deposition as he prepared for his Rule 30(b)(6) responsibilities. App. Ex. II, pp. 266-285 (Holden Tr. 66:12-69:22, 88:1-89:25, 209:22-213:17, 260:11-261:6); *id.* Ex. JJ, pp. 286-295 (Exhibits 210 to 213, 217 from Mr. Holden's deposition).

**C.     Google Has Not Produced Relevant Broad Match Information.**

American claims that Google has violated American's trademark rights by developing a "broad match" system so that when Internet users enter the American Marks or confusingly similar terms into Google's search engine, Google takes the Sponsored Link advertisements of advertisers who have *not* asked to be connected to the American Marks, and posts them in a way that is likely to cause substantial consumer confusion. *See* First Motion at 1-5. The requests that were the subject of the First Motion sought this information and this Court overruled Google's objections to these requests in its June 16 Order. However, Google has not yet provided any documents in response to that Order.

In addition to Google's failure to provide documents responsive to the Requests that were the subject of American's First Motion, Google also continues to make similar objections and withhold information responsive to later requests that seek similar materials and were in-part designed to overcome Google's objections to earlier discovery. For example:

- Request No. 2 of American's Third Requests for Production seeks information "available to Google . . . concerning each Sponsored Link or other message published as a part of Google's Advertising Programs that was triggered by a Keyword or other designated search term that incorporates one or more of the American Airlines Marks or Terms Similar To The American Airlines Marks," App. Ex. I, pp. 072-085;

- Request No. 13 of American's Third Requests for Production seeks "[d]ocuments and electronically stored information sufficient to identify the 100 Broad Match Keywords that Google or its programming have most frequently designated to trigger the Sponsored Links of Google Customers that have designated an American Airlines Mark as a Keyword in one of Google's Advertising Programs," *Id.*, pp. 072-085; and

- Request No. 14 of American's Fourth Requests for Production seeks "data used by Google or its programming to broad match search queries containing American Airlines Marks or Terms Similar to the American Airlines Marks to Keywords which are not American Airlines Marks or Terms Similar to the American Airlines Marks," App. Ex. M, pp. 105-118.

*See also id.* Ex. 105-118, pp. (American's Fourth Requests for Production, Nos. 1-5, 10-13, 15).

Each of these requests seeks information about the terms Google has linked to the American

Marks through broad match, how many consumers clicked on these ads instead of links to the American Airlines website, how much Google has made from this repeated diversion of its users away from American, and documents related to the systems whereby Google conducts these activities.

Google refuses to provide this information. In some cases, Google asserts outright objections to the requests as a whole. *See* App. Ex. U, pp. 199-200 (Google's Response to Request Nos. 10, 11 of American's Fourth Requests for Production). Elsewhere, Google is attempting to limit its response to what it labels as "high-level" information (which Google defines to mean that which it makes available to the public on its web site), and refuses to provide details about how Google's broad match programs have analyzed and used the American Marks. *See id.*, pp.195-197.

In response to American's remaining broad match requests, Google asserts a range of boilerplate objections and only offers to produce responsive information subject to American's willingness to agree to artificial limits on these requests through a meet and confer on these topics. *Id.*, pp. 190-203 (Google's Response to Request Nos. 4, 5, of American's Fourth Requests for Production); *id.* Ex. O, pp. 126-138 (Google's Response to Request Nos. 2, 13 of American's Third Requests for Production).

This admitted withholding of responsive documents is improper, and Google cannot justify its production failures in this manner. Under Fed. R. Civ. P. 34(b)(2)(C), "[a]n objection to part of a request must specify the part *and permit inspection of the rest.*" (emphasis added).

Even in response to a direct interrogatory, Google refuses to provide significant information about its broad match program. American's Interrogatory No. 9 asks for "a detailed explanation of the algorithm, process, mechanism, or technique by which Google or its

programming broad matches a search query to a Keyword." App. Ex. V, pp. 204-209. Google objects on the ground that "[n]either the proprietary processes by which Google matches keywords to queries nor the methods by which Google populates data tables are relevant to this action." App. Ex. V, pp. 204-209. Subject to this limitation, Google was only willing to point American, under Rule 33(d) of the Federal Rules of Civil Procedure, to the explanation of broad match that Google offers to the public on its website, and to a single outdated document which is described on its face as "In progress? (as of July 23, 2003)." *Id.*; *see also* App. Ex. MM, p. 373 (G004-000180971). Google did not provide anything that approaches the "detailed explanation" requested, Although broad match is a core issue in this case, Google is determined never to reveal the details of how it works. Google is fighting hard to deny American evidence that will show Google's responsibility in designing how its advertisers' AdWords campaigns end up infringing American's trademarks as a result of Google's not its advertisers' actions.

As of the date of this motion, Google still has not disclosed the requested broad match information. This has already prejudiced American because American's survey, damages and marketing experts could not process this broad match information or incorporate into their expert reports, which already have been submitted.

**D.      Despite the June 16 Order, Google Has Not Provided Any Additional Related Keyword Information.**

In its First Motion to Compel, American recited Google's failure to produce evidence of the keywords that Google has specifically suggested to advertisers related to the American Airlines Marks. Because of Google's pre-Order objections to providing related keyword information, American served further requests that were not yet ripe to be included in the First Motion concerning keywords. Request No. 10 of American's Third Requests for Production asked Google to produce documents or electronically stored information sufficient to identify the

50 "related keywords" that Google had suggested most often. App. Ex. I, pp. 072-84 (Third Requests for Production, No. 10). After Google objected that it "does not log the output of its Keyword Tool" (App. Ex. O, pp. 126-138 (Response and Objection to No. 10 of American's Third Request for Production)), American asked whether Google had any other mechanism besides a "log" to calculate which terms it has recommended most. Google has not responded.

To probe this issue further, on April 15, American served its Fourth Requests For Production. Number 12 sought "documents related to algorithms, processes, mechanisms or techniques used by Google or its programming to identify Keywords that it suggests, offers, provides or otherwise makes known to Google Customers as part of any optimization or other service provided to Google Customers." App. Ex. M, pp. 105-118. Google's response, served May 29, objected to this request in its entirety on the grounds that it was "vague, overbroad, compound, unduly burdensome," and that such documents are "wholly irrelevant to the issues in this case." Google has not produced *any* documents or information responsive to these requests nor argued that they had already been satisfied.

As American argued in its First Motion to Compel, because Google claims that it is nothing more than an innocent conduit to the advertising choices of its advertisers, American needs to know how and when it has suggested that its advertisers use the American Marks. *See* First Motion at 5-6. American had hoped that the Court's June 16 Order overruling Google's past objection to providing related keyword data would resolve this issue. To date, it has not.

**E.      Google Also Continues To Withhold Documents Concerning Its Other Advertisers.**

American served its Third Requests for Production on Google on March 17, 2008. Included among the March 17 set were the following specific requests:

- Request No. 3 seeks documents "concerning all ... selling of Google's Advertising Programs to [travel] advertisers or potential advertisers";

- Request No. 4 seeks documents "concerning all Studies ... prepared by or for Google relating to [travel] companies"; and

- Request No. 7 seeks documents "concerning the effectiveness for advertisers of ... the use of trademarks or brands as keywords."

App. Ex. I, pp. 072-084. Each of these requests seeks information that is directly relevant to Google's involvement in and promotion of the use of the American Marks, Google's knowledge of responses of its Internet searchers to its sponsored link ads, and the representations that Google makes to advertisers about the capabilities of these "sponsored links."

In each case, Google did not enter a complete objection or state that it could not identify any responsive information because of vagueness. Rather, Google merely objected to the request's alleged breadth and promised that "it will meet and confer with American to narrow the scope of [the] request[s]." More specifically:

- Google considers Request No. 3 overbroad "to the extent it seeks documents not related to the designation of third-party trademarks as keywords."

- Similarly, Google objects to Request No. 4 as overbroad "to the extent it seeks documents regarding companies that have not designated American's trademarks as keywords and to the extent it seeks documents not related to such designations."

- And Google's only specific objection to Request No. 7 is that it "is not limited in any way as to relevant advertisers, specific keywords, specific trademarks, or in any other meaningful way."

App. Ex. O, pp. 126-138.[8]

---

[8] Google also asserts a confidentiality objection to Request Nos. 3, 4, and 7. App. Ex. O, pp. 126-138. However, no such agreements trump the discovery rules and Google has provided no confidentiality agreement between it and the advertisers at issue, in any case. On the contrary, Google's terms of use specifically provide that such information may be disclosed through legal process as required during the course of litigation, App. Ex. KK, pp. 296-300, and the Confidentiality Agreement in place between Google and American in this litigation provides the necessary protections. App. Ex. D, pp. 032-042.

As argued above, it is improper for Google to withhold responsive information that is not subject to objections. In its response to each of the Requests against which it asserts an overbreadth objection, Google admits that the Request targets relevant documents but has inexplicably refused to produce them.

Moreover, there is no basis to Google's claim that American is not entitled to communications with third parties concerning the use of third-party-owned trademarks in Google's advertising programs. American has alleged – and believes that these documents will bear out – that Google has engaged in a pattern of encouraging its advertisers to make use of the trademarks of others with no authorization to use those marks. Because Google denies it had such a practice, a review of these documents is the only way that American can test or verify this defense. In addition, Google's documents related to the value of trademarks in its sponsored links campaigns are directly relevant to the injury sustained by American due to Google's use of American's trademarks.[9]

---

[9] American has engaged in extensive meet and confer efforts to resolve this dispute. On March 31, American limited its request to advertisers who have spent more than $100 to purchase rights to use American Marks or confusingly similar terms. *See* App. Ex. K, pp. 090-098 (March 31, 2008 Letter from Fred Brown, at 2-3). Google then served the formal objections that are the subject of this motion, promising to meet and confer further. *See* App. Ex. O, pp. 126-138. Google, however, made no effort whatsoever to contact American to meet and confer on these Requests until American asked to meet and confer with Google on this and other unresolved issues. *See* App. Ex. T, pp. 188-189 (May 27, 2008 Letter from Fred Brown, at 1-2); *Id.* Ex. W, p. 210 (May 30, 2008 E-mail from Fred Brown). Google responded that that it would not produce responsive documents until after this conference because Google considered the requests to be "inappropriate" and "American should explain to us why it believes these requests are appropriate." *See* App. Ex. X, pp. 211-215 (June 5, 2008 Letter from Klaus Hamm, at 1). Following the meet and confer, American once again attempted to explain the need for this information and even offered to compromise by limiting itself to 55 specifically named Google advertisers. *See* App. Ex. Y, pp. 216-219 (June 13, 2008 Letter from Fred Brown, at 1-2).

**F.     Google Has Not Produced All of Its Evidence of Confusion.**

American has propounded several requests seeking Google's records of confusion. Initially, American's First Set of Requests for Production, dated October 22, 2007, sought (among other things) "[a]ll documents relating to consumer or user complaints, reactions and responses regarding the presentation or display of Google's Sponsored Links" (No. 46); "[a]ll documents relating to consumer or user understanding or perception of Google's Sponsored Links" (No. 47); "all documents relating to consumer or user confusion related in any way to Google's Sponsored Links, Google's Advertising Programs, and/or the use of Keywords in search engines" (No 48); and "all documents relating to consumers' ability, or lack thereof, to recognize Google's Sponsored Links as paid advertisements" (No. 49). App. Ex. C, pp. 013-031.

After several months passed and Google had not produced these materials, American propounded more specific requests seeking the results of its surveys and studies into consumer confusion. App. Ex. E, pp. 043-056 (American's Second Requests for Production, Nos. 4-7). American made quite clear to Google that it sought all responsive documents on this subject. *See, e.g.,* App. Ex. G, pp. 060-065 (March 14, 2008 letter from H. Hogan at 3); *id.* Ex. K, pp. 090-098 (March 31 letter from F. Brown at 3); *id.* Ex. I, pp. 072-084 (American's March 17, 2008 Third Requests for Production, No. 8) (seeking "[a]ll documents and electronically stored information analyzing or reporting on the effect on consumers of the layout, design or wording of the results page that a consumer sees after conducting a Google search....").

When Google still stood on formulaic limitations of this subject matter, *see* App. Ex. L, pp. 099-104 (April 4, 2008 letter from K. Hamm at 4-5), American served additional discovery requests intended to resolve the dispute by overcoming Google's objections. *See* App. Ex. M, pp. 105-118 (American's April 15, 2008 Fourth Requests for Production, No. 17) (seeking "all

documents concerning the role of trademarked terms in consumer search activity, including but not limited to studies, surveys, reports, analyses, opinions, memoranda, or communications.").

Google's limited responsive production shows that it conducted a series of surveys that showed a substantial level of consumer confusion. App. Ex. NN, pp. 374-376 (G004-000005594-96); Ex. NN, pp. 377-380 (G004-000005597-600); and Ex. OO, pp. 382, 384 (G004-00186938, G004-00187043) (all marked confidential by Google so not quoted here).

Despite the undisputed existence of these studies, Google's production of documents related to these studies and others has been extremely limited. In particular Google has not produced documents related to the planning and development of these studies, and few original instruments of the studies themselves such as screener questionnaires, survey questionnaires, copies of stimuli used, or verbatim responses. Except for the conclusions and high-level results found in the produced materials, Google has produced no data or analysis from the studies. It has not produced raw response data, draft statistical analysis, or discussions of the raw data.

In the mean time, Google also apparently has *not* searched its databases for evidence of actual instances of confusion. Although Google claims to have robust systems to preserve evidence of user complaints, either through its e-mail system or its Trakken (or Trax) database, App. Ex. H, pp. 066-071 (Milliken Tr. at 33:8-35:24; 72:1-24); *id.* Ex. J, pp. 085-089 (Altherr Tr. at 11:23-12:5; 30:11-32:1), Google has acknowledged that when it searched its records for relevant documents, it pointedly did not search for the terms "confusing," "confusion," or "confused." App. Ex. R, pp. 158-176 (Google's Declaration Submitted Pursuant to the Court's

May 16, 2008 Order, at 5-10); *id.* Ex. X, pp. 211-215 (June 5, 2008 letter from K. Hamm at 2-3, n.1).[10]

As a result, American propounded Request Numbers 2 and 3 of American's Fifth Set of Requests for Production seeking, respectively, "[a]ll documents, including but not limited to those maintained in the Trakken system, that relate to consumer confusion (either showing confusion or lack of confusion) with, criticism of, or suggestions for improvement for: Sponsored Links, the relationship of Sponsored Links to natural search results, the layout of the paid and unpaid search results page, the use of the terms 'Sponsored Links' or the relationship between the consumer's search query and the paid results presented by Google" and "[a]ll documents related to Google's search results pages and which contain the word 'confusion' or its synonyms, such as 'misleading,' or 'misunderstanding,' or any derivative thereof, such as 'confusing' or 'confuse.'" App. Ex. S, pp. 177-187.

Google's responses, again, speak volumes. In both cases, Google objects that the requests are "vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." App. Ex. EE, pp. 249-256. Although Google promised to meet and confer with American with respect to Request No. 2, *id.*, Google still has not produced the documents that underlie its own surveys into consumer confusion or evidence of searches for consumer confusion among its Trakken system and other internal sources. Google refused outright to produce any of the confusion documents responsive to Request No. 3 on the ground that a search for these records would be an "unwarranted invasion of the privacy of Google's users and clients." *Id.* Indeed, When Google did provide limited access to AdWords and

---

[10] It is also unclear whether Google has searched for consumer complaints that may have come in by fax or conventional mail. App. Ex. H, pp. 066-071 (Milliken Tr. at 72:25-73:24).

Analytics databases on June 26, Google's counsel made a point of noting that American would not be granted access to Google's other systems that may contain responsive information such as its Trakken database. App. Ex. HH, pp. 263-265 (June 26, 2008 letter from R. Tangri at 1).

**G.**   **Google Has Failed to Produce Relevant and Responsive Documents Revealed by Google and its Employees in Deposition Testimony.**

Recent depositions of two current Google employees and one former Google employee have revealed that Google is improperly withholding specific documents and categories of documents that are responsive to American's requests. In response to repeated inquiries, Google has provided no justification for its refusal to turn over these documents.

On May 6, 2008, American took the deposition of Mr. Jeffrey Zidell. Until early March, 2008, Mr. Zidell was a Google executive responsible for managing Google's sales and support team in Dallas for clients including *American*, Southwest Airlines, Continental Airlines, Delta Air Lines, AirTran, Travelocity, and others in the travel business. *See* App. Ex. P, pp. 139-153 (Zidell Tr. 10:2-11:21). Members of his team were responsible for assisting Google's clients with their keyword-based search advertising campaigns, "optimizing" their campaigns. including suggesting keywords, and drafting ads for the advertisers. *Id.*, pp. 139-153 (Zidell Tr. 17:8-17:12).

Mr. Zidell's testimony revealed for the first time many broad categories of documents that Google had previously hidden from American during discovery. For example, Mr. Zidell disclosed that Google had: (1) "weekly accomplishment reports" that he and his team wrote about their efforts each week to sell and manage the American and other travel accounts (2) a "sales force automation system" where he and his team made notations relevant to their sales calls and management issues related to American and other travel accounts, (3) "spreadsheets" revealing sales plans and results to American and other travel accounts; (4) "preparatory

materials" for sales calls and others meetings with American and other travel accounts; (5) "customized" versions of sales materials and studies for American and other travel accounts; (6) electronic "calendars" for him and his team that were available for viewing by team members and managers at Google; (7) Google's Objectives and Key Results, known within Google as "OKRs" which identified Google's goals for its sales and account management employees, and likely others, and that were used as a management tool by Google; (8) Mr. Zidell's handwritten notes of sales and other calls on American and others (if not already destroyed by Google after litigation was threatened); and (9) Excel spreadsheets, Powerpoint presentations and Word folders maintained on Mr. Zidell's computer. *See* App. Ex. P, pp. 139-153 (Zidell Tr. 57:22-59:8, 19:22-20:9, 93:2-93:20, 138:6-138:19, 148:17-149:15, 18:1-19:16, 139:12-142:1, 87:18-89:10).

The Objectives and Key Results, or OKRs, deserve special mention. One of Google's corporate representatives, testified that Google "has a culture that very much believes in" OKRs. *See* App. Ex. II, pp. 266-285 (Holden Tr. 33:6-8) He continued: "We, we believe that all product managers and managers should have [OKRs] on a quarterly basis" so that the organization's objectives can be aligned among its employees. *Id.* at 33:6-34:14. It is likely that Google's employees involved with Google's confusion studies, other aspects of consumer confusion, Google's revenues from selling trademark terms, sales and optimization to American's competitors in the travel vertical, the design of broad match, key-word suggestion and key-word-insertion address issues relevant to this case in their OKRs. American requests that Google be ordered to produce the OKRs of those employees listed in the attached list. App. Ex. SS, pp 403-406 (Google Employees From Whom American Seeks "Objectives and Key Results" Documents).

On June 19, 2008, American took the deposition of Cindy Antsis, who reported to Mr. Zidell and managed the American account for Google. Ms. Antsis testified that she communicated with her co-workers on a daily basis using Google's instant messaging service, G Talk. App. Ex. DD, pp.242-248 (Antsis Tr. 38:21-40:20). Instant messaging is an increasingly popular means of employee communication at technology companies like Google, as it provides for fast and convenient "real-time" discussion of issues. And the few transcripts that Google did produce make it clear that Google employees had relevant conversations using this medium. App. Ex. PP, pp. 385-391 (August 22, 2007 discussion between "carried@google.com" and Shelby Stengle regarding lawsuit with American); App. Ex. PP, pp. 396-397 (discussion between Cindy Antsis and Tran Hang regarding customer complaints about the use of trademarks as keywords). But Google has so far produced a total of *three* instant messaging transcripts, and Google's May 22, 2008 Court Ordered Statement does not list instant messaging as one of the sources from which Google collected documents.

These documents are relevant because they test Google's assertion that it does not attempt to persuade non-trademark owners to purchase the marks of others, they evidence Google's substantial involvement with its clients' ads (thus contradicting Google's claim that it was a passive player not responsible for the content of the ads), they address Google's past statements with respect to the value of trademark terms as keywords, and they provide insight into the financial impact of the use of trademark terms in their sponsored link campaigns and

Google's motives and methods with respect to such trademark uses. *Id.* Google's continuing refusal to acknowledge the relevance of these categories seems calculated to stall production.[11]

## IV.
## PRAYER

For the foregoing reasons, American requests that the Court enter an Order under Rule 37(b)(2) finding that Google has violated the Court's June 16, 2008 Order and awarding appropriate sanctions. American also requests that the sanctions order require that Google provide access, within two business days of the issuance of the Court's order, to American's counsel at their offices in Fort Worth, Dallas, Washington, D.C. and San Francisco to all electronically stored information in Google's possession, custody or control, that is responsive to American's discovery requests. That access is to be provided without Google or its attorneys present.

American also requests that the Court enter and order under Rule 37 (a):

1. A finding that Google did not issue a timely instruction to its employees to preserve documents relevant to the litigation and, to assist the Court in determining what sanction

---

[11] On May 8, 2008, two days after Mr. Zidell's deposition, American asked Google to produce these documents and others. *See* App. Ex. Q, pp. 154-157 (May 8, 2008 Letter from Fred Brown). When Google finally respond on June 5, it demanded that American "explain why American believes that the listed documents are relevant to this litigation." *See* App. Ex. X, pp. 211-215 (June 5, 2008 Letter from Klaus Hamm, at 2). While American believed that the relevance of these documents was readily apparent, American set out its explanations of relevance, none of which were accepted by Google. *See* App. Ex. Z, p. 220 (June 16, 2008 e-mail of Fred Brown) (repeating request to produce the documents identified in Mr. Zidell's deposition); *Id.* Ex. AA, pp. 221-225 (June 17, 2008 e-mail of Ragesh Tangri) (demanding again that American "share [its] reasoning" why the remaining "categories are likely to contain relevant documents"); *Id.* Ex. BB, pp. 226-238 (June 17, 2008 e-mail of Fred Brown with attachment) (providing a detailed list of reasons that each category requested is relevant to the case); *Id.* Ex. CC, pp. 239-241 (June 18, 2008 e-mail of Ragesh Tangri) (repeating Google's assertion that American has "not been able to share your reasoning with us").

shall be imposed, allowing American to take five (5) depositions of no longer than three hours each by September 15 to explore document retention and destruction issues, with Google to bear all the expenses, including American's legal fees associated with taking those depositions. In aid of those depositions, Google shall produce documents requested by American related to each employee or former employee of Google who is deposed pursuant to this order. These documents shall be produced within five (5) business days of the request from American.

2.  An order overruling Google's objections and requiring Google to fully respond to the following discovery by American, within ten (10) days of the issuance of this Order: Requests for Production 2-5, 7, 8, 10-13 (Set 3); 1-5, 10-15, 17 ( Set 4); 2, 3 (Set 5); Interrogatory 9.

3.  An order requiring Google, within ten (10) days of the issuance of this Order, to produce Objectives and Key Results for the individuals listed in App. Ex. SS of the Motion to Compel, to produce transcripts of all non-privileged instant messaging transcripts which are responsive to any American Request for Production, and to produce the following responsive documents and categories of documents identified by Jeffrey Zidell in his deposition:

    a.  "weekly accomplishment reports" that Mr. Zidell and his team wrote about their efforts each week to sell and manage the American and other travel accounts;

    b.  "sales force automation system" where he and his team made notations relevant to American and other travel accounts;

    c.  "spreadsheets" revealing sales efforts to American and other travel accounts;

    d.  "preparatory materials" for meetings with American and other travel accounts;

e.      "customized" versions of sales materials and studies;

f.      electronic calendars for him and his team that were available for viewing by team

        members and managers at Google;

g.      Mr. Zidell's and his team's handwritten notes of meetings with American and

        others; and,

h.      Excel spreadsheets, Powerpoint presentations and Word folders maintained on

        Mr. Zidell's or his team's computers.


DATED: July 2, 2008

                                    Respectfully submitted,

                                    _____
                                    Dee J. Kelly (State Bar No. 11217000)
                                    Dee J. Kelly, Jr. (State Bar No. 11217250)
                                    Lars L. Berg (State Bar No. 00787072)
                                    KELLY HART & HALLMAN LLP
                                    201 Main Street, Suite 2500
                                    Fort Worth, Texas 76102
                                    Phone: (817) 332-2500
                                    Fax: (817) 878-9280

                                    Frederick Brown (admitted *pro hac vice*)
                                    George A. Nicoud III (State Bar No. 15017875)
                                    GIBSON, DUNN & CRUTCHER LLP
                                    One Montgomery St., Suite 3100
                                    San Francisco, CA 94104
                                    Phone: (415) 393-8200
                                    Fax: (415) 986-5309

                                    Terence P. Ross (admitted *pro hac vice*)
                                    Howard S. Hogan (admitted *pro hac vice*)
                                    GIBSON, DUNN & CRUTCHER LLP
                                    1050 Connecticut Avenue, N.W.
                                    Washington, D.C. 20036
                                    Phone: (202) 955-8500
                                    Fax: (202) 467-0539

                                    *Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned counsel for defendant does hereby certify that conferences regarding the merits of Plaintiff's Second Motion to Compel and Brief in Support were attempted with counsel for defendant in person, by telephone, and through written correspondence on, *inter alia*, June 13, 16, 17, 20, 25 and July 1, 2008. No resolution could be reached. This motion is therefore presented to this Court.

_____
Lars L. Berg

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on July 2 2008 to

Defendant's counsel, as follows:

> Joseph F. Cleveland, Jr. via CMRRR and email
> BRACKETT & ELLIS, P.C.
> 100 Main Street
> Fort Worth, TX  76102-3090
>
> Michael H. Page via CMRRR and email
> Klaus H. Hamm
> KEKER & VAN NEST LLP
> 710 Sansome Street
> San Francisco, CA  94111-1704

Lars L. Berg