

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

                Plaintiff,

    -v.-

GOOGLE INC.,

                Defendant.

No. 4:07-CV-487-A

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dee J. Kelly
  State Bar No. 11217000
Dee J. Kelly, Jr.
  State Bar No. 11217250
Lars L. Berg
  State Bar No. 00787072
KELLY HART &
  HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown
  admitted pro hac vice
George A. Nicoud III
  State Bar No. 15017875
GIBSON, DUNN &
  CRUTCHER LLP
One Montgomery St., Ste. 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Terence P. Ross
  admitted pro hac vice
Howard S. Hogan
  admitted pro hac vice
GIBSON, DUNN &
  CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

958247_1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................1

II.    SUPPORTING EVIDENCE................................................................................2

III.   SUMMARY JUDGMENT STANDARD ...........................................................2

IV.    ARGUMENTS AND AUTHORITIES...............................................................3

       A.    There Is No Evidence to Support
             Google's Affirmative Defense of Justification. .......................................4

       B.    There Is No Evidence to Support
             Google's Affirmative Defense of Unclean Hands. ..................................6

       C.    There Is No Evidence to Support
             Google's Affirmative Defense of Laches. ................................................9

       D.    There Is No Evidence to Support
             Google's Affirmative Defense of Fair Use. ...........................................10

       E.    There Is No Evidence to Support
             Google's Affirmative Defense of Nominative Use. ...............................14

       F.    There Is No Evidence to Support
             Google's Affirmative Defense of Failure to Mitigate............................16

       G.    There Is No Evidence to Support
             Google's Affirmative Defense of Estoppel.............................................17

       H.    There Is No Evidence to Support
             Google's Affirmative Defense of Waiver................................................18

CERTIFICATE OF SERVICE ....................................................................................21

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.,*
 180 F.3d 247 (5th Cir. 1999), *cert. denied*, 528 U.S. 1078 (2000)...........................................16

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242, 160 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).......................................................2-3

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.,*
 693 F.2d 1155 (5th Cir. 1982) ...........................................................................................9

*Bank of Saipan v. CNG Fin. Corp.,*
 380 F.3d 836 (5th Cir. 2004) ..........................................................................................6, 8

*Barney Holland Oil Co. v. Fleetcor Tech., Inc.,*
 2006 WL 3803150 (N.D. Tex. Dec. 27, 2006) (McBryde, J.), *aff'd*, 2008 WL
 1817618 (5th Cir. Apr. 23, 2008) .....................................................................................2-3

*Biggs v. Cabela's, Inc.,*
 2004 WL 530167 (N.D. Tex. Feb. 23, 2004) (McBryde, J.) ....................................................8

*Calbillo v. Cavender Oldsmobile, Inc.,*
 288 F.3d 721 (5th Cir. 2002) ...............................................................................................3

*Celotex Corp. v. Catrett,*
 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).............................2, 6, 8, 13, 16-18, 20

*Coca-Cola Co. v. Koke Co. of America,*
 254 U.S. 143, 41 S.Ct. 113, L.Ed. 189 (1920).......................................................................6

*Compliance Review Servs., Inc. v. Callista Davis-Osuawu,*
 2006 WL 2385291 (S.D. Tex. Aug. 17, 2006) (Werlien, J.) ...................................................13

*Crescent Towing and Salvage Co., Inc. v. M/V Anax,*
 40 F.3d 741 (5th Cir. 1994) .................................................................................................2

*Elvis Presley Enters., Inc. v. Capece,*
 141 F.3d 188 (5th Cir. 1998) ...............................................................................................9

*Forsyth v. Barr,*
 19 F.3d 1527 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).......................................................3

*Garden City Boxing Club, Inc. v. Johnson,*
 2008 WL 918137 (N.D. Tex. Jan. 15, 2008) (Means, J.) ........................................................9

*Healthpoint, Ltd. v. Ethex Corp.,*
 273 F. Supp. 2d 817 (W.D. Tex. 2001)..................................................................................6

*Ironclad L.P. v. Poly-America, Inc.*,
  No. 3:98-CV-2600-P, U.S. Dist. Lexis 10728 (N.D. Tex. July 28, 2000)...............................10

*Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*,
  341 F.3d 415 (5th Cir. 2003) .......................................................................................17

*Oliva v. Ramirez*,
  2007 WL 2436305 (D.P.R. Aug. 21, 2007) ............................................................................6

*Pebble Beach Co. v. Tour 18 I Ltd.*,
  155 F.3d 526 (5th Cir. 1998) .......................................................................................14

*Q-Tips, Inc. v. Johnson & Johnson*,
  108 F. Supp. 845 (D.N.J.), *aff'd*, 206 F.2d 144 (3rd Cir.), *cert. denied*, 346 U.S. 867
  (1953)..........................................................................................................6

*Slaughter-Cooper v. Kelsey Seybold Med. Group P.A.*,
  379 F.3d 285 (5th Cir. 2004) ................................................................................ 18-19

*Stewart v. Murphy*,
  174 F.3d 530 (5th Cir.), *cert. denied*, 528 U.S. 906 (1999)......................................................3

*Sugar Busters LLC v. Brennan*,
  177 F.3d 258 (5th Cir. 1999) .......................................................................................11

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001).............................................................14

*United States v. Central Gulflines, Inc.*,
  974 F.2d 621 (5th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993).............................................2

*Vortex Mfg. Co. v. Ply-Rite Contracting Co.*,
  33 F.2d 302 (D. Md. 1929) .........................................................................................7

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*,
  698 F.2d 786 (5th Cir. 1983) .......................................................................................11

**State Cases**

*City of Fredericksburg v. Bopp*,
  126 S.W.3d 218 (Tex. App.—San Antonio 2003, no pet.).............................................................6

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*,
  962 S.W.2d 507 (Tex. 1998)........................................................................................17

*Knight v. Volkart*,
  No. 13-01-00858-CV, 2002 WL 316 23580 (Tex. App.-Corpus Christi, Nov. 21,
  2002, *no writ*)...................................................................................................8

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,*
   29 S.W.3d 74 (Tex. 2000)....................................................................................4

*Tenneco Inc. v. Enter. Prods. Co.,*
   925 S.W.2d 640 (Tex. 1996)..............................................................................19

**Federal Statutes**

15 U.S.C. § 1115(b)(4) ........................................................................................11

**Federal Rules**

Fed. R. Civ. P. 33(d) ......................................................................................12, 14

Fed. R. Civ. P. 56(c) ..........................................................................................2-3

Plaintiff, American Airlines, Inc. ("American"), files this Brief in Support of Plaintiff's Motion for Partial Summary Judgment and respectfully shows the Court as follows:

## I.    INTRODUCTION

American sued defendant, Google Inc. ("Google"), to stop Google's unauthorized sale of American's trademarks and service marks (collectively, the "American Marks") to other entities. Specifically, Google encourages advertisers to purchase the American Marks to divert Internet traffic away from American's website. Google unlawfully sells the American Marks to its advertisers in at least two ways: (1) by selling the right to use American Marks as "keywords" that trigger advertisements that Google misleadingly labels as "Sponsored Links," and (2) by using the American Marks to trigger competitors' "Sponsored Links," even when Google's advertisers have chosen not to buy the American Marks as keywords.

This motion addresses eight of the eleven affirmative defenses Google asserted in its answer: justification, unclean hands, laches, fair use, nominative use, failure to mitigate, estoppel, and waiver. (Google's Answer, filed 11/7/07 [Docket 21]).[1] The basis for American's motion is straightforward: Google's answers to American's interrogatories relative to these affirmative defenses evidence that Google lacks factual support the affirmative defenses. Accordingly, American respectfully requests that the Court grant partial summary judgment dismissing eight of those affirmative defenses.

---

[1]    American does not seek summary judgment on Google's affirmative defenses of no damages, limited remedies, or preemption. *See* Answer, ¶¶ 174, 176, and 177.

## II.    SUPPORTING EVIDENCE

Pursuant to the Local Rules, American has filed contemporaneously with its motion and this brief a separate Appendix of Evidence in Support of American's Motion for Partial Summary Judgment containing the following exhibits:

Exhibit A:         Defendant Google Inc.'s Responses to Plaintiff American Airlines, Inc.'s First Set of Interrogatories to Defendant Google Inc.;

Exhibit B:         Form S-1 Registration Statement, Google Inc., April 29, 2004.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when, as here, the summary judgment record establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Google bears the burden of proving its affirmative defenses at trial; and, therefore, also bears the burden of proving those defenses on summary judgment. *See United States v. Central Gulflines, Inc.*, 974 F.2d 621, 629 (5th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993) (an affirmative defense places the burden of proof on the party pleading it); *Crescent Towing and Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994) (the party that has the burden of proof on an affirmative defense at trial has the burden of proof on summary judgment). In these circumstances, American may carry its initial burden of establishing that there is no genuine issue of material fact by simply pointing to the absence of evidence to support Google's affirmative defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Barney Holland Oil Co. v. Fleetcor Tech., Inc.*,

2006 WL 3803150, *4 (N.D. Tex. Dec. 27, 2006) (McBryde, J.), *aff'd*, 2008 WL 1817618 (5th Cir. Apr. 23, 2008).

For Google to avoid summary judgment, it must set forth specific facts showing there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248. This requires Google to "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). Neither conclusory allegations nor unsubstantiated assertions will suffice. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). Further, the specific evidence presented must be material, and the substantive law determines what facts are material. *Anderson*, 477 U.S. at 248. A dispute as to a material fact is "genuine" under Rule 56(c) only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to preclude summary judgment. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.), *cert. denied*, 528 U.S. 906 (1999). Summary judgment is proper here because Google cannot demonstrate that there is a genuine issue of material fact for trial on its affirmative defenses of justification, unclean hands, laches, fair use, nominative use, failure to mitigate, estoppel, and waiver.

## IV.    ARGUMENT AND AUTHORITIES

Google has disclosed no evidence to support the affirmative defenses at issue. When American served interrogatories on Google to uncover the factual support, if any, for its affirmative defenses, Google provided no facts or evidence whatsoever. Instead, in responses verified only by Rose Hagan, Google's Senior Trademark Counsel, Google provided legal argument, assertions made "on information and belief," and statements that "Google believes"

various matters. Google also indicated that it "may discover" facts, but since Google has not supplemented its interrogatory responses, the record suggests that Google does not consider any discovered facts worthy of disclosure. As a result, American respectfully requests that the court grant summary judgment as to Google's affirmative defenses of justification, unclean hands, laches, fair use, nominative use, failure to mitigate, estoppel, and waiver.

**A.     There Is No Evidence to Support Google's Affirmative Defense of Justification.**

To prevail on its affirmative defense of justification, Google must prove either (1) an exercise of its own legal rights or (2) a good-faith claim to a colorable legal right even if that claim proves to be mistaken. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 80 (Tex. 2000).

Excerpted below is the interrogatory American served to uncover the facts, if any, that purportedly supports Google's affirmative defense of justification:

### INTERROGATORY NO. 1:

With respect to Google's "Second Affirmative Defense: Justification," set forth in its Answer to this lawsuit, state all facts that support Google's averment that "any purported misconduct in this case was by entities who were or are licensed by American," including but not limited to the identity of such "entities" and the facts upon which Google concludes that they "were or are licensed by American."

Google's response, excerpted below, takes three paragraphs to say that Google believes it might find evidence of facts that might support a claim by companies other than Google that they were exercising their legal rights:

## RESPONSE TO INTERROGATORY NO. 1:

. . . Subject to and without waiving Google's general and specific objections, Google responds as follows:

None of the advertisements identified by American in its Complaint infringe American's trademarks. To the extent that American can prove a particular advertisement infringed its marks, the conduct of the advertiser and/or Google may have been justified.

*On information and belief,* American has permitted third parties to use American's trademarks or has failed to enforce its trademark rights vis-à-vis these third parties. These same third parties are responsible for some of the advertisements about which American now complains. American has never identified to Google which third parties it has permitted to use its trademarks and which it has not. *Google also believes* that American has entered into licensing, partnership, and affiliate agreements, directly or indirectly, with companies to direct traffic to American's website.

*Google believes* that many of the advertisements about which American complains are advertisements by persons or entities that have agreements, licenses or business relationships with American such that they are permitted by American to sell and/or advertise American's products and/or services. In addition, *Google believes* that American's course of business with the various advertisers may have created implied licenses regarding the use of American's alleged marks or constitutes actual or implied consent. The precise identities of persons and entities with which American has such arrangements, along with the precise nature of these arrangements, are facts that are in American's possession and which Google has sought and will continue to seek through written and deposition discovery in this case. As a result of American's conduct, Google acted with justification.

(App. 003-5) (emphasis added).

Google's belief that some advertisers might be justified in using the American Marks does not establish that Google was exercising a legal right or had a good faith claim to a colorable legal right. Google says nothing about who these unidentified advertisers might be. Google similarly says nothing about the steps, if any, it took to ascertain whether any advertisers were licensed or otherwise authorized to use the American Marks. Accordingly, summary

judgment is warranted because there is no evidence to support the necessary elements of Google's affirmative defense of justification. *Celotex Corp.*, 477 U.S. at 323-25.

**B.** **There Is No Evidence to Support Google's Affirmative Defense of Unclean Hands.**

To prevail on its affirmative defense that American's equitable claims are barred by the doctrine of unclean hands, Google must prove that: (1) American's misconduct in connection with the merits of the controversy between the parties has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing; (2) Google has been seriously injured by American's misconduct; and, (3) the alleged wrong cannot be corrected without applying the doctrine of unclean hands. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.)).

Google must also prove that the conditions complained of existed at the time American filed suit. *See, e.g.*, *Coca-Cola Co. v. Koke Co. of America*, 254 U.S. 143, 147, 41 S.Ct. 113, 65, L.Ed. 189 (1920) ("the plaintiff's position must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time."); *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 848 (W.D. Tex. 2001). An unclean hands defense may not be based on conditions that terminated before American filed suit. *Coca-Cola*, 254 U.S. at 147; *see also Oliva v. Ramirez*, 2007 WL 2436305, *5 (D.P.R. Aug. 21, 2007) (alleged pre-suit inequitable conduct cannot support an unclean hands defense); *Q-Tips, Inc. v. Johnson & Johnson*, 108 F. Supp. 845, 869-70 (D.N.J.) (unclean hands defense failed where the plaintiff ceased making the alleged misrepresentations prior to filing suit), *aff'd*, 206 F.2d 144 (3rd Cir.), *cert. denied*, 346 U.S. 867 (1953); *Recamier Mfg. Co. v. Harriet Hubbard Ayer, Inc.*, 59 F.2d 802, 808 (S.D.N.Y. 1932) ("In applying the 'unclean hands' rule, the situation as it exists at the

time of suit is the guide.  A party is not penalized because of misrepresentations that have been abandoned before that time, even though they may have been effective in building up his business."); *Vortex Mfg. Co. v. Ply-Rite Contracting Co.*, 33 F.2d 302, 313 (D. Md. 1929) ("[m]isrepresentations that have been discontinued before commencement of a suit cannot be availed of as a defense."

Excerpted below are the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of unclean hands and Google's response:

**INTERROGATORY NO. 2:**

With respect to Google's "Fifth Affirmative Defense: Unclean Hands," set forth in its Answer in this lawsuit, state all facts that support Google's averment that "American's claims are barred by the doctrine of unclean hands," including but not limited to what misconduct American engaged in that supports this averment and what personal injury or harm Google has suffered as a result thereof.

**RESPONSE TO INTERROGATORY NO. 2:**

. . . Subject to and without waiving Google's general and specific objections, Google responds as follows:

None of the advertisements identified by American in its Complaint infringe American's trademarks.  To the extent that American can prove a particular advertisement infringed its marks, American's claim is barred by the doctrine of unclean hands.

*On information and belief*, prior to December 13, 2006, American ran advertisements on Google that are precisely the types of advertisements about which American now complains.  In particular, American designed and ran advertisements using broad-match keywords that were designed by American to appear when consumers ran searches for American's competitors.  *On information and belief*, American runs or ran keyword-triggered advertisements targeting users searching for its competitors' marks on other Internet search engines and, *possibly*, in other forums.

Discovery is ongoing.  *Google may discover* that American has engaged in other misconduct that bars it from pursuing its claims or from pursuing certain relief.  American's specific acts of inequitable conduct are facts that are in

American's possession and which Google has sought and will continue to seek through written and deposition discovery in this case.

(App. 005-6) (emphasis added).

Again, Google responds with statements of its beliefs and hopes for what it might find in discovery, but entirely absent are any facts supporting the affirmative defense of unclean hands. Moreover, Google's response demonstrates that summary judgment is proper because the only wrongdoing Google speculates about occurred prior to December 13, 2006, which was eight months before American filed this lawsuit. (American's Complaint, filed 08/16/07 [Docket 1]). This falls far short of any showing that American's alleged misconduct continued and existed at the time American filed suit against Google. Summary judgment is therefore warranted on Google's affirmative defense of unclean hands. *Celotex Corp.*, 477 U.S. at 323-25; *Biggs v. Cabela's, Inc.*, 2004 WL 530167, *7 (N.D. Tex. Feb. 23, 2004) (McBryde, J.) (summary judgment is warranted on an unclean hands affirmative defense if there is no supporting evidence).

Further, Google's unclean hands defense, as described in its own interrogatory response, also fails because the doctrine "should not be applied when the defendant has not been seriously harmed and the wrong complained of can be corrected." *Knight v. Volkart*, No. 13-01-00858-CV, 2002 WL 316 23580, at pg 8 (Tex. App.-Corpus Christi, Nov. 21, 2002, *no writ*); *see also Bank of Saipan*, 380 F.3d at 842 (unclean hands doctrine is inapplicable altogether where the plaintiff's sins do not affect or prejudice the defendant). Google has not averred – let alone offered any proof – that American's alleged keyword search advertising harmed or prejudiced Google. To the contrary, even if Google were correct that American had run advertising of the kind about which it now complains, such conduct would have benefited Google – not harmed it. As a result, American is entitled to summary judgment on Google's unclean hands defense. *See,*

*e.g., Janes v. Watson*, 82 U.S.P.O. 2d 1906 (W.D. Tex. 2006) (granting summary judgment as to unclean hands defense where defendant "has failed to produce any evidence as to the 'seriousness' of the harm he has suffered and that the wrong complained of, *i.e.*, breach of contract, cannot be corrected without applying the unclean hands doctrine").

**C.    There Is No Evidence to Support Google's Affirmative Defense of Laches.**

To prevail on its affirmative defense that American's claims are barred by the doctrine of laches, Google must prove: (1) delay in asserting American's rights; (2) lack of excuse for the delay; and, (3) undue prejudice to Google caused by the delay. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998); *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982); *Garden City Boxing Club, Inc. v. Johnson*, 2008 WL 918137 *6.

Excerpted below are the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of laches and Google's response:

**INTERROGATORY NO. 3**:

　　　　With respect to Google's "Sixth Affirmative Defense: Laches," set forth in its Answer to this lawsuit, state all facts that support Google's averment that "American's claims are barred, by the doctrine of Laches", including but not limited to what steps American allegedly failed to take that support this averment and what prejudice or harm Google has suffered as a result thereof.

**RESPONSE TO INTERROGATORY NO. 3:**

　　　　. . .  Subject to and without waiving Google's general and specific objections, Google responds as follows:

　　　　American has had notice of how Google's search engine and advertising programs work, at the latest, since it began using those programs, and American has known about Google's current trademark policy since it was announced in April 2004.  To the extent American alleges that Google's search engine and advertising programs infringe American's marks, then Google has been injured and/or prejudiced by American's failure to timely assert its alleged rights.  Google

was induced by American's failure to timely assert its claims to invest significant sums in research, product development, marketing and other efforts.

(App. 006-7).

Inevitably, there is a delay between the discovery of wrongful conduct and the filing of suit. Laches, however, rarely attaches when that delay is less than the statute of limitations. There is no dispute that American filed suit within the limitations period; Google did not assert a statute of limitations defense at all.

More importantly, Google's interrogatory response reflects no facts – much less suggests the existence of any evidence – indicating that American's alleged delay was unexcused or that Google suffered undue prejudice. This failure is hardly surprising in light of Google's knowledge that its practices were likely to subject it to trademark infringement lawsuits. Indeed, Google itself said as much in the securities filings it made in connection with the initial public offering of stock in Google Inc. Referring to the very same change in trademark policy referenced in its interrogatory response here, Google said in 2004 that one effect of this "change in policy" was that Google "may be subject to more trademark infringement lawsuits." App. 076 (Form S-1 Registration Statement, Google Inc., April 29, 2004, p. 10). Given that Google expected to be sued, it has no ground for complaining that it was sued somewhat later than it apparently expected. *See Ironclad L.P. v. Poly-America, Inc.*, No. 3:98-CV-2600-P, U.S. Dist. Lexis 10728 at p. 34-35, 43-44 (N.D. Tex. July 28, 2000) (laches defense inapplicable where "plaintiff's delay did not cause defendant prejudice"). Summary judgment is therefore appropriate.

**D.    There Is No Evidence to Support Google's Affirmative Defense of Fair Use.**

To prevail on its affirmative defense that American's trademark-infringement claims are barred by the doctrine of fair use, Google must prove that it used American's Marks

descriptively rather than as terms that identify American's goods and services. The fair-use doctrine recognizes that in ordinary conversation and commerce there are legitimate uses of another's trademarks. Thus, the doctrine allows a party to use a term in good faith to describe goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense. *See* 15 U.S.C. § 1115(b)(4); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 791 (5th Cir. 1983); *Sugar Busters LLC v. Brennan,* 177 F.3d 258, 270-71 (5th Cir. 1999). The fair-use doctrine does not apply if a term is used as a mark to identify, rather than describe, the markholder's goods or services. *See Sugar Busters LLC,* 177 F.3d at 271.

Excerpted below is the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of fair use:

**INTERROGATORY NO. 4**:

> With respect to Google's "Seventh Affirmative Defense: Fair Use," set forth in its Answer in this lawsuit, state all facts that support Google's averment that "American's claims are barred, in whole or in part, by the doctrine of fair use," including but not limited to all facts that support the conclusion that Google and the Google Customers that made use of the American Airlines Marks only used the American Airlines Marks "otherwise than as a mark" and in a way that is descriptive of and used fairly and in good faith only to describe the goods or services of" Google or such Google Customers.

And excerpted below is Google's response, which is nothing more than a general comment about the fair-use doctrine and an unsubstantiated and lengthy discussion parading as "fact." *See Reese,* 926 F.2d at 499.

**RESPONSE TO INTERROGATORY NO. 4:**

. . . Subject to and without waiving Google's general and specific objections, Google responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Google identifies the advertisements identified by American in its Complaint, which is attached hereto as Exhibit A.

Discovery in this case is ongoing and American has not yet identified all of the advertisements about which it is complaining.

In this lawsuit, American complains about the use of its trademarks as keywords even if American's marks never appear in the advertisements and are never displayed in any way to the consumer. However, when an advertiser on Google merely triggers an advertisement to a user who has searched for terms textually the same as an American mark, neither Google nor the advertiser is using the trademark to identify the source of the advertiser's products or services. Trademark law does not provide a trademark owner with absolute authority over the words in a trademark such that no one else may utter those words without the trademark holder's consent. People and businesses use trademarks every day, in conversation, in news reporting, in songs and in books. Rather the law is designed to prevent consumer confusion by those who brand their own goods or services with a mark sufficiently similar to the mark holder's mark that consumers may be deceived into believing there is some connection between the two. Numerous courts have concluded that when a Sponsored Link on Google is triggered by a keyword that is the same as text constituting a mark held by a trademark owner, no trademark use has occurred.

Even if this court were to find that trademark use had occurred, advertisements about which American complains would be protected by the doctrine of fair use. Fair use in trademark law permits advertisers who use the trademarked terms in their descriptive sense, for comparative advertising, or for speakers to criticize, comment upon, compare, and even satirize companies, products, and advertising slogans. *On information and belief,* the vast majority (if not all) of the advertisements about which American complains are protected by the doctrine of fair use. In addition, *on information and belief,* consumers are not deceived into believing that Google's advertisers are American or affiliated with American.

Regarding the few advertisement about which American alleges that its marks appear in the text of the advertisements, American complains about advertisements from sellers of American's services or merchandise, Compl. ¶¶ 64, 65, 67, and 69, and about advertisements from websites that provide news and information about American. Compl. ¶¶ 64-65.

The advertisements provided by sellers of American's services or merchandise do not make improper use of American's marks because sellers are allowed to accurately describe what they sell. Even if sellers are not authorized by American to sell American's products and services, sales of genuine trademarked products outside the confines of an authorized distribution system do not give rise to a cause of action under the Lanham Act. In other words, American has no cause of action for ad text that truthfully advertises the sale of American's products and services.

American also complains about websites that provide news and information about American. Trademark law does not prohibit news organizations from using the names of the entities that they report about. Such use is fair use. For example, American complains about an ad for "www.TheStreet.com," which states "Get up to date information, news & analysis on Americanairlines.com." Compl. ¶ 65. "The Street" is a website with news and financial information about publicly traded companies, including American. Here, The Street is not using the words to promote a competing service, but rather as a description of the company about which it is providing news analysis and information. No one could reasonably be confused that The Street is holding itself out to be American. Another advertisement about which American complains is an advertisement by "AA.com-Promotion.info." Compl. ¶ 64. The text of the advertisement states "Free AA Travel Offers." *Id.* The ad indicates that the website provides information about promotions on American and the website itself links to a series of articles. Again, the advertiser is not using American's trademark to promote a competing service but rather to describe the company about which the site provides information. Thus, the use is fair and non-actionable.

In addition, some advertisements may use words or phrases the same as or similar to American's marks for geographic purposes to describe airlines in America. Such use is fair and non-actionable.

(App. 008-10) (emphasis added).

An interrogatory response based solely on information and belief that "the vast majority (if not all) of the advertisers about which American complains are protected by the doctrine of fair use" falls far short of establishing that Google has any evidence showing that the American Marks were used descriptively. Accordingly, summary judgment is appropriate on Google's fair-use defense. *See Celotex Corp.*, 477 U.S. at 323-25; *Compliance Review Servs., Inc. v. Callista Davis-Osuawu*, 2006 WL 2385291, *5 (S.D. Tex. Aug. 17, 2006) (Werlien, J.) (failure

to adduce evidence that the defendant used another's mark descriptively rather than as a trademark or that the defendant acted fairly and in good faith proves fatal to the fair-use defense).

**E.     There Is No Evidence to Support Google's Affirmative Defense of Nominative Use.**

To prevail on its affirmative defense that American's trademark-infringement claims are barred by the doctrine of nominative use, Google must prove: (1) use of only so much of the American Marks as necessary to identify a product or service and (2) the use does not suggest affiliation, sponsorship, or endorsement by American. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998), *abrogated on other grounds*, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

Excerpted below are the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of nominative use and Google's response:

**INTERROGATORY NO. 5:**

> With respect to Google's "Eighth Affirmative Defense: Nominative Use," set forth in its Answer in this lawsuit, state all facts that support Google's averment that "American's claims are barred, in whole or in part, by the doctrine of nominative use," including but not limited to: (a) why the products or services offered by Google and Google Customers are not readily identifiable without use of the American Airlines Marks; (b) how Google and the Google Customers that made use of the American Airlines Marks only used so much of the American Airlines Marks as is reasonably necessary to identify the products or services offered by Google and Google Customers; and (c) what Google and the relevant Google Customers did to prevent consumers from concluding that American Airlines did not sponsor or endorse their products or services.

**RESPONSE TO INTERROGATORY NO. 5:**

> . . .   Subject to and without waiving Google's general and specific objections, Google responds as follows:
>
> Pursuant to Federal Rule of Civil Procedure 33(d), Google identifies the advertisements identified by American in its Complaint, which is attached hereto as Exhibit A.

Discovery in this case is ongoing and American has not yet identified all of the advertisements about which it is complaining. Nevertheless, it is clear that many of the advertisements are for products or services that cannot readily and completely be identified without American's marks or terms similar to American's marks. For example, in American's complaint American identified advertisements for services that enable customers to compare prices between different airlines, including American, and/or to purchase tickets from these airlines. These services must use American's marks in order to completely and accurately describe their services. Moreover, the advertisements do nothing to suggest sponsorship or endorsement by American. Other examples evident from American's complaint include advertisements for services that provide information about American. As above, these services must use American's marks in order to completely and accurately describe their services. For example, The Street, which provides information and investment advice about American, cannot completely describe this service to consumers without using American's marks. As above, these advertisements do nothing to suggest sponsorship or endorsement by American.

In addition, searches for terms the same as or similar to American's marks may trigger advertisements for other entities for reasons entirely unrelated to American's marks. There are several ways in which an advertiser's choice of keywords or keyword phrases can be "matched" to the search terms entered by the user. For instance, an advertiser can designate desired keywords or keyword phrases as "broad match" terms, which is the default choice. As its name suggests, broad match is an expansive matching algorithm. Broad match keyword phrases—such as "tennis shoes"—will match with user queries as long as each word in the keyword phrase (or variant or select synonym thereof) is included in the query, regardless of order. So, an advertiser who designates "tennis shoes" as a broad match keyword phrase will match with any of the following search queries: "tennis shoes," "shoes tennis," "red tennis shoes," "tennis red shoes," "buy tennis shoes," "tennis sneaker," and "buy tennis sneakers."

Given the nature of the broad match algorithm, American's competitors' ads also appear in response to a user query for "American Airlines" even though the competitor never bid on the keyword phrase "American Airlines" or anything like it. For instance, if American's competitors designated "airlines" as a broad match keyword, their ads would be triggered by a search for "American Airlines."

(App. 010-13).

Once again, Google's response does not point to any specific evidence that supports the elements of its affirmative defense of nominative use. *Reese*, 926 F.2d at 499. As a result, Google has no evidence of the essential elements of its affirmative defense: (1) use of only so

much of the American Marks as necessary to identify a product or service; and (2) the use does not suggest affiliation, sponsorship, or endorsement by American. Summary judgment is therefore proper. *See Celotex Corp.*, 477 U.S. at 323-25.

**F.    There Is No Evidence to Support Google's Affirmative Defense of Failure to Mitigate.**

To prevail on its affirmative defense that American failed to mitigate its damages, Google must prove that American lacked diligence in mitigating its damages and the amount by which American's damages were increased by such failure to mitigate. *See 50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 258 (5th Cir. 1999), *cert. denied*, 528 U.S. 1078 (2000).

Excerpted below is the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of failure to mitigate.

**INTERROGATORY NO. 6:**

> With respect to Google's "Ninth Affirmative Defense: Failure to Mitigate," set forth in its Answer in this lawsuit, state all facts that support Google's averment that "[a]ssuming without conceding that the Complaint states a claim, American has failed to mitigate its damages, if any," including but not limited to what steps American allegedly failed to take to mitigate its damages and the effect that such failures allegedly cause don (sic) American Airlines' claim for damages.

In its response, excerpted below, Google ignored the millions of dollars American paid to Google to buy American's own trademarks as keywords in order to mitigate the harm caused by Google in selling American's Marks to others. Instead of acknowledging that Google was the direct beneficiary of American's mitigation efforts, Google completely evaded the interrogatory and identified no facts in support of the alleged failure to mitigate:

**RESPONSE TO INTERROGATORY NO. 6:**

. . . Subject to and without waiving Google's general and specific objections, Google responds that American and its agents have not yet produced complete damages information and that discovery on damages has not taken place. Until such information is provided and discovery is completed, Google cannot provide a complete answer to this interrogatory. Google also responds that American has failed to present evidence thus far that it has requested that each of the advertisers cease and desist from the conduct about which American complains. Google also responds that American has unreasonably delayed in bringing suit.

(App. 013-14).

Accordingly, summary judgment is proper on Google's affirmative defense of failure to mitigate. *See Celotex Corp.*, 477 U.S. at 323-25.

**G.      There Is No Evidence to Support Google's Affirmative Defense of Estoppel.**

To prevail on its affirmative defense that American is estopped from asserting its claims because of American's purported conduct, actions, and communications to others, including Google, Google must prove: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *See Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 422 (5th Cir. 2003) (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998)).

Excerpted below are the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of estoppel and Google's response:

**INTERROGATORY NO. 7:**

With respect to Google's "Tenth Affirmative Defense: Estoppel," set forth in its Answer in this lawsuit, state all facts that support Google's averment that "American is estopped, in whole or in part, from obtaining the relief requested in the Complaint against Google by reason of American's conduct,

actions and communications to others, including but not limited to Google," including but not limited to: (a) what "conduct, actions and communications" support this averment; (b) how Google relied on such "conduct, actions and communications;" and (c) what prejudice or harm Google has suffered as a result thereof.

## RESPONSE TO INTERROGATORY NO. 7:

. . . Subject to and without waiving Google's general and specific objections, Google responds as follows:

*On information and belief,* American has permitted third parties to use American's trademarks or has failed to enforce its trademark rights vis-à-vis these third parties. These same third parties are responsible for some of the advertisements about which American now complains. American has never identified to Google which third parties it has permitted to use its trademarks and which it has not. Google also believes that American has entered into licensing, partnership, and affiliate agreements, directly or indirectly, with companies to direct traffic to American's website. As a result of its conduct, American is now estopped from asserting its claims against Google. Many of these facts are facts that are in American's possession and which Google has sought and will continue to seek through written and deposition discovery in this case.

(App. 014-15) (emphasis added).

Relying again on the "on information and belief" phrase, Google offers speculation and argument rather than facts and evidence. Absent evidence, American is entitled to summary judgment on Google's affirmative defense of estoppel. *See Celotex Corp.*, 477 U.S. at 323-25; *Source, Inc.*, 2006 WL 2381594 at *8 (summary judgment is proper on estoppel when there is no evidence to support that defense).

**H.** **There Is No Evidence to Support Google's Affirmative Defense of Waiver.**

To establish its affirmative defense that American waived any rights it may have, Google must prove: (1) an existing right, benefit, or advantage held by American; (2) American's actual or constructive knowledge of its existence; and, (3) American's actual intent to relinquish the right or intentional conduct inconsistent with the right. *See Slaughter-Cooper v. Kelsey Seybold*

*Med. Group P.A.*, 379 F.3d 285, 290 (5th Cir. 2004); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

Excerpted below are the interrogatory American served to uncover the facts, if any, that purportedly support Google's affirmative defense of waiver and Google's response:

**INTERROGATORY NO. 8:**

> With respect to Google's "Eleventh Affirmative Defense: Waiver," set forth in its Answer in this lawsuit, state all facts that support Google's averment that "American has waived, in whole or in part, any rights it may have to institute an action for the alleged wrongdoings of which it complains by reason of American's conduct, actions and communications to others, including but not limited to Google," including but not limited to: (a) what "conduct, actions and communications" support this averment; (b) how Google relied on such "conduct, actions and communications;" and (c) what prejudice or harm Google has suffered as a result thereof.

**RESPONSE TO INTERROGATORY NO. 8:**

> . . . Subject to and without waiving Google's general and specific objections, Google responds as follows:
>
> *On information and belief*, American has permitted third parties to use American's trademarks or has failed to enforce its trademark rights vis-à-vis these third parties. The same third parties are responsible for some of the advertisements about which American now complains. American has never identified to Google which third parties it has permitted to use its trademarks and which it has not. Google also believes that American has entered into licensing, partnership, and affiliate agreements, directly or indirectly, with companies to direct traffic to American's website. As a result of its conduct, American has waived its claims against Google. Many of these facts are facts that are in American's possession and which Google has sought and will continue to seek through written and deposition discovery in this case.

(App. 015-17) (emphasis added).

Again, Google's reliance on the "on information and belief" phrase is misplaced. Google simply failed to provide any facts or evidence that establish any of the elements of Google's affirmative defense. Accordingly, summary judgment is proper on Google's affirmative defense

of waiver. *See Celotex Corp.*, 477 U.S. at 323-25; *Source, Inc.*, 2006 WL 2381594 at * 8

(summary judgment is proper on waiver when there is no evidence to support that defense).

Respectfully submitted,

*[signature]*

Dee J. Kelly (State Bar No. 11217000)
Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
George A. Nicoud III (State Bar No. 15017875)
GIBSON, DUNN & CRUTCHER LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Terence P. Ross (admitted *pro hac vice*)
Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on July 3, 2008 to

Defendant's counsel, as follows:

*Via CMRRR #7007 0710 0000 0927 8693*
*and Email*
Joseph F. Cleveland, Jr.
BRACKETT & ELLIS P.C.
100 Main Street
Fort Worth, TX 76102-3090

*Via CMRRR #7007 0710 0000 0927 8709*
*and Email*
Michael H. Page (Pro Hac Vice)
Klaus H. Hamm (Pro Hac Vice)
Benjamin Berkowitz (Pro Hac Vice)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704


Lars L. Berg