American Airlines Inc v. Google Inc     Doc. 84

NORTHERN DISTRICT OF TEXAS
FILED

DROP BOX
JUL - 3 2008

CLERK, U.S. DISTRICT COURT

By _____ Deputy

ORIGINAL
CT1/AMT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

              Plaintiff

v.

GOOGLE, INC.,

              Defendant

§§§§§§§§§§§§§§

CIVIL ACTION NO.

4-07-CV-487-A

# GOOGLE INC'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Joseph F. Cleveland, Jr.
Richard H. Gateley
BRACKETT & ELLIS
A Professional Corporation
100 Main Street
Fort Worth, TX 76102-3090
Telephone: 817/338-1700
Facsimile: 817/870-2265

Michael H. Page
Klauss H. Hamm
Benjamin W. Berkowitz
Ajay S. Krishnan
Ragesh K. Tangri
Rachael Meny
Daralyn J. Durie
Melissa J. Miksch
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415/391-5400
Facsimile: 415/397-7188

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

ORIGINAL



Dockets.Justia.com

# TABLE OF CONTENTS

| | | | | **Page** |
|---|---|---|---|---|
| I. | Summary | | | 1 |
| II. | Introduction | | | 4 |
| III. | Statement of Facts | | | 5 |
| | A. | The Internet, Search Engines, and Google | | 5 |
| | B. | Google's Advertising Policies | | 7 |
| | C. | Google's Trademark Policy | | 9 |
| | D. | American's Complaint and Effort to Establish Confusion | | 10 |
| IV. | Summary Judgment Standard | | | 17 |
| V. | Summary of Argument | | | 17 |
| VI. | Argument | | | 19 |
| | A. | Google Is Not Liable For Direct Infringement | | 19 |
| | | 1. | Google Has Not Made Trademark Use of American's Marks | 19 |
| | | 2. | There Is No Evidence of Actionable Confusion | 20 |
| | | 3. | Google's Liability For Any Residual Confusion Should Be a Matter of Contributory, Not Direct Liability | 24 |
| | | 4. | American Has Offered No Evidence Whatsoever For Eight of Its Nine Claimed Trademarks | 25 |
| | B. | Google Is Not Liable For Contributory or Vicarious Infringement | | 25 |
| | C. | In Any Event, Google Is Protected By the Lanham Act Safe Harbor | | 27 |
| | D. | Google Is Not Liable For Dilution | | 29 |
| | | 1. | Google Cannot Dilute American's Marks Because It Does Not Make Trademark Use of Those Marks | 29 |
| | | 2. | The Advertisements American Has Identified Are Specifically Exempted From the Dilution Statute | 30 |
| | | 3. | No Advertisers Are Blurring or Tarnishing American's Marks | 31 |
| | | 4. | In Any Event, the TDRA Precludes a Damages Claim | 31 |
| | E. | American's Various State Law Claims Must Also Fail | | 32 |

**TABLE OF CONTENTS**
**(cont'd)**

|  |  | Page |
|---|---|---|
| 1. | Trademark-Based Claims | 32 |
| 2. | Misappropriation | 33 |
| 3. | Tortious Interference With Contract | 33 |
| VII. | Conclusion | 34 |

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
414 F.3d 400 (2d Cir. 2005) ...............................................................................20, 21

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) .....................................................................................20

*Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*,
815 F.2d 500 (8th Cir. 1987) .....................................................................................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................17, 18, 26

*Century 21 Real Estate Corp. v. Lendingtree Inc.*,
425 F.3d 211 (3d Cir. 2005) .....................................................................................31

*DaimlerChrysler AG v. Bloom*,
315 F.3d 932 (8th Cir. 2003) .....................................................................................20

*Dial One of the Mid-South, Inc. v. BellSouth Telecoms., Inc.*,
269 F.3d 523 (5th Cir. 2001) .....................................................................................29

*Elvis Presley Enters. v. Capece*,
141 F.3d 188 (5th Cir. 1998) .....................................................................................33

*Exxon Corp. v. Texas Motor Exchange, Inc.*,
628 F.2d 500 (5th Cir. 1980) .....................................................................................21

*Getty Petroleum Corp. v. Shore Line Oil Co.*,
642 F. Supp. 203 (E.D.N.Y. 1986) ............................................................................34

*Government Employees Ins. Co. v. Google Inc.*,
77 U.S.P.Q.2d 1841 (E.D. Va. Aug. 8, 2005) ...........................................................29

*Gucci Am., Inc. v. Hall & Assocs.*,
135 F. Supp. 2d 409 (S.D.N.Y. 2001) ......................................................................28

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
955 F.2d 1143 (7th Cir.1992) ....................................................................................27

*Hendrickson v. eBay, Inc.*,
165 F. Supp. 2d 1082 (C.D. Cal. 2001) .....................................................................28

*Henri's Food Prods. Co. v. Kraft, Inc.*,
717 F.2d 352 (7th Cir. 1983) .....................................................................................21

*Holiday Inns v. 800 Reservation*,
86 F.3d 619 (6th Cir. 1996) .......................................................................................20

*Inwood Labs. v. Ives Labs*,
456 U.S. 844 (1982) ...................................................................................................26

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*,
285 F.3d 848 (9th Cir. 2002) .....................................................................................21

*Lockheed Martin Corp. v. Network Solutions Inc.,*
 194 F.3d 980 (9th Cir. 1999) ..................................................................25, 26, 29

*Louis Vuitton Malletier, S.A. v. Haute Diggity Dog, LLC,*
 507 F.3d 252 (4th Cir. 2007) ...............................................................................30

*Matrix Essentials v. Emporium Drug Mart, Inc.,*
 988 F.2d 587 (5th Cir. 1993) ...............................................................................23

*Multimin USA, Inc. v. Walco Int'l,*
 2007 WL 1791265 (N.D. Tex. June 20, 2007) ....................................................23

*New Kids on the Block v. News Am. Publ'g., Inc.,*
 971 F.2d 302 (9th Cir. 1992) ...............................................................................31

*New York Times v. Sullivan,*
 376 U.S. 254 (1964) .............................................................................................29

*Oral-B Laboratories v. Mi-Lor Corp.,*
 810 F.2d 20 (2d Cir. 1987) ..................................................................................24

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
 494 F.3d 788 (9th Cir. 2007) ...............................................................................27

*Pirone v. MacMillan, Inc.,*
 894 F.2d 579 (2d Cir. 1990) ................................................................................19

*Polymer Tech. Corp. v. Mimran,*
 975 F.2d 58 (2d Cir. 1992) ..................................................................................26

*Rescuecom Corp. v. Google Inc.,*
 456 F. Supp. 2d 393 (N.D.N.Y. 2006) ................................................................29

*S.S. Kresge Co. v. United Factory Outlet, Inc.,*
 598 F.2d 694 (1st Cir. 1979) ...............................................................................22

*Saxlehner v. Wagner,*
 216 U.S. 375 (1910) .............................................................................................24

*Scott Fetzer Co. v. House of Vacuums, Inc.,*
 381 F.3d 477 (5th Cir. 2004) ..........................................................................23, 31

*Sony Corp.,* 464 U.S. at 439 n.19 .............................................................................26

*TIG Ins. Co. v. Sedgwick James,*
 276 F.3d 754 (5th Cir. 2002) ..........................................................................18, 25

*TMI, Inc. v. Maxwell,*
 368 F.3d 433 (5th Cir. 2004) ..........................................................................31, 33

*Ty Inc. v. Perryman,*
 306 F.3d 509 (7th Cir. 2002) .............................................................................4, 9

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*,
  865 S.W.2d 214 (Tex. App. 1993), Waco --1993, writ denied ................................. 33

*United States ex rel. Farmer v. City of Houston*,
  523 F.3d 333 (5th Cir. 2008) ...................................................................................... 17

### State Cases

*Seelbach v. Clubb*,
  7 S.W.3d 749 (Tex. App.-Texarkana 1999, pet. denied) ......................................... 33

*Wuv's Int'l v. Love's Enterprises, Inc.*,
  208 U.S.P.Q. 736 (D. Colo. 1980) ............................................................................ 21

### Federal Statutes

15 U.S.C. § 1114(2)(C) .................................................................................................. 28

15 U.S.C. § 1125(2)(B) .................................................................................................. 32

15 U.S.C. § 1125(2)(C) .................................................................................................. 32

15 U.S.C. § 1125(c)(1) ................................................................................................... 29

15 U.S.C. § 1127 ............................................................................................................ 19

15 U.S.C. 1125 § (c)(2)(B) ............................................................................................ 29

15 U.S.C. 1125 § (c)(2)(C) ............................................................................................ 29

15 U.S.C. 1125 § (c)(5)(A) ....................................................................................... 29, 32

15 U.S.C.§ 1125(c)(3)(A) .............................................................................................. 30

18 U.S.C. § 2510 ............................................................................................................ 28

### Other Authorities

Stacey L. Dogan & Mark A. Lemley, *Trademarks and Consumer Search
  Costs on the Internet*, 41 Hous. L. Rev. 777 (2004) ................................................ 20

Thomas McCarthy, Trademarks and Unfair Competition § 32:188,
  at 32-387 ....................................................................................................... 21, 22, 30

# GOOGLE'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.    Summary

In its Complaint, American brought suit against Google on the following grounds: (1) federal trademark/service mark infringement (Count I); (2) contributory trademark/service mark infringement under the Lanham Act (Count II); (3) vicarious trademark/service mark infringement under the Lanham Act (Count III); (4) false representation under the Lanham Act (Count IV); (5) dilution under the Lanham Act (Count V); (6) trademark infringement under Texas law (Count VI); (7) trademark dilution under Texas law (Count VII); (8) unfair competition under Texas law (Count VIII); (9) misappropriation under Texas Law (Count IX); (10) tortious interference with contract (Count X); and (11) money had and received (Count XI).

To recover on a claim of trademark infringement under the Lanham Act and under Texas law, a plaintiff must show that the mark is legally protectable. It must then show that the mark is infringed by proving that the defendant uses (1) any reproduction, counterfeit, copy, or colorable imitation of the mark; (2) without consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive. Google does not make trademark use of American's marks, and the use it does make of American's marks does not cause confusion, mistake or deception. To recover damages under the Lanham Act against online providers of content written by another, the plaintiff must prove that the defendant is not an innocent infringer. Any infringement by Google is innocent.

To recover on a claim for contributory infringement under the Lanham Act, a plaintiff must prove direct infringement by a third party and that the defendant intentionally induced the third party to infringe or continued to supply its product to one whom it knows or has reason to now is engaging in trademark infringement. No third parties have placed advertisements on

Google that infringe American's trademarks, Google has not induced a third party to do so, Google has not intentionally induced any third party to infringe American's marks, and no Google products are accused in this action. To recover damages under the Lanham Act against online providers of content written by another, the plaintiff must prove that the defendant is not an innocent infringer. Any contributory infringement by Google is innocent.

To recover on a claim for vicarious trademark infringement under the Lanham Act, a plaintiff must prove direct infringement by a third party and that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product. No third parties have placed advertisements on Google that infringe American's trademarks, Google does not have an apparent or actual partnership with any advertisers at issue, and Google and the advertisers at issue do not have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product, to the extent that there any infringing products. To recover damages under the Lanham Act against online providers of content written by another, the plaintiff must prove that the defendant is not an innocent infringer. Any vicarious infringement by Google is innocent.

To recover for false representation under the Lanham Act, a plaintiff must prove that the defendant uses a designation, in interstate commerce, in connection with goods, which designation is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the defendant's goods, and that the plaintiff has been or is likely to be damaged by these acts. Google does not make trademark use of American's marks, and the use it does make of American's marks does not cause confusion, mistake or deception. To recover damages under the Lanham Act against online providers of content written by another, the plaintiff must prove that the defendant is not an innocent infringer. Any false representation by Google is innocent.

To recover for dilution under the Lanham Act, a plaintiff must prove that it owns a famous mark that is distinctive, that the defendant has commenced using a mark in commerce on its own products or services that is diluting the famous mark, that a similarity between defendant's mark and the famous mark gives rise to an association between the marks, and that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark. Google does not make trademark use of American's marks and any such use does not cause confusion, mistake or deception. Google also does not use American's marks on its own products or services, any use by Google's advertisers is fair or nominative use, and no advertiser is blurring or tarnishing American's marks.

To recover for trademark dilution under Texas law, the plaintiff must show the ownership of a distinctive mark and a likelihood of dilution. Google does not dilute American's marks.

To recover for unfair competition under Texas law, a plaintiff must establish two elements: (1) the plaintiff's trade name has acquired a secondary meaning through usage; and (2) the similarity of the name used by the defendant would be likely to confuse the public. Any use by Google of American's trademarks is not likely to confuse the public.

To recover for misappropriation under Texas Law, a plaintiff must prove the creation of its product through extensive time, labor, skill and money, the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition, and commercial damage to the plaintiff. Google does not offer any product or service that competes with any product or service offered by American.

To recover for tortious interference with an existing contract, a plaintiff must prove the existence of a contract subject to interference, a willful and intentional act of interference, that the act was a proximate cause of the plaintiff's damages, and actual damage or loss. Google did not encourage American's travel agents to breach their contract with American with knowledge

and intent to encourage a breach, American suffered no damages or loss, and American acquiesced in any breach.

To recover for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. Google does not hold money that belongs to American.

## II.    Introduction

It is a fundamental principle of trademark law that ownership of a trademark does not confer a property right "in gross" over the term itself, but merely conveys a limited right to prevent certain specific uses of the mark that are likely to confuse consumers as to the source or origin of goods. *See Ty Inc. v. Perryman*, 306 F.3d 509, 510 (7th Cir. 2002). People and businesses use trademarks every day: in conversation, in news reporting, in songs and in books. The Pepsi Challenge involved a comparison with Coke. A used car dealership can advertise Ford trucks for sale. And this legal brief can use those trademarked terms in explaining why not all uses of trademarked terms are actionable.

There is nothing per se unlawful about using a trademark to "divert" customers from purchasing a competitor's product. Truthful comparative advertising is lawful. So are other acts designed to allow consumers to choose between competing products. Manufacturers pay to place lesser-known brands next to more popular brands on store shelves, and generic pharmaceuticals next to brand-name equivalents. Trademark law does not prohibit the manufacturer of a generic substitute for Advil from paying a pharmacy to put its product on the shelf next to Advil and even touting its equivalence. Nor does the law prohibit a pharmacist, when asked where Advil is located, from directing a customer to aisle 6, where the pharmacist has placed both Advil and its competitors.

American cannot deny these basic principles of trademark law. As a result, American

seeks to carve out a special rule for internet search engines that would prohibit the equivalent of a pharmacist placing a generic substitute next to Advil and then directing a customer to that aisle. The analysis can and should stop right there, because the use of a trademark to facilitate product placement is not an actionable "trademark use" under the law. What American really wants is to prevent lawful comparative advertising – a remedy trademark law does not provide.

Even if targeted advertising could be a "trademark use," Google would still be entitled to summary judgment because American can produce no evidence of actual confusion. American's own expert argues that consumers are confused by the presence of ads on the Internet only because he counts as confused consumers who believe – *correctly* – that they can obtain American Airlines tickets through authorized travel agents such as Orbitz and Travelocity. Nor does their expert control for baseline confusion that is not attributable to alleged trademark infringement. Once American's own expert report is corrected to account for these fundamental errors, even he cannot demonstrate any confusion.

## III.    Statement of Facts

### A.    The Internet, Search Engines, and Google

The Internet is the largest collection of information in the history of the world. There are over 15 *billion* English-language Web pages on the Internet, more than one for every man, woman, and child on the planet. App. at 003. Precisely because there is so much information on the Internet, the medium would be useless unless there were some way for people to find what they were looking for somewhere among those billions of pages. That's where search engines like Google come in. Google uses sophisticated technology to help people find what they are looking for. The technology isn't perfect, of course, given that people themselves may not know exactly what they are looking for and different people may use the same word to look for different things or different words to look for the same thing. As a result, Google doesn't give

people who search the Internet just one search result. Rather, Google typically returns thousands (or even millions), ranked according to how relevant Google's proprietary algorithm predicts each page will be.[1] Thus a search for "aa" will yield results both for American Airlines and Alcoholics Anonymous. App. at 005.[2] A search for "American Airlines" yields the official American Web page, but also encyclopedia entries and information – such as stories about flight attendant furloughs and flight cancellations – that one would not expect to find on an official site. App. at 006. For example, here is a snapshot of the results of a search for "American Airlines:"

---

[1] For example, a search for "airlines" produced roughly 134 million search results, App. at 004; a search for "American Airlines" produced 19,200,000 search results, App at 006.

[2] Contemporaneously with its Motion to Compel, Google has filed an Appendix. Citations to the Appendix will be designated by "APP" followed by the specific page number of the Appendix supporting the assertion. Some of the documents in Google's Appendix (Exhibits V and W) have been designated by American as highly confidential under the terms of the parties' confidentiality agreement. This document cannot be unilaterally filed, and Google intends to follow the procedures contemplated under the Confidentiality Agreement. The current Appendix contains placeholders for these Exhibits in lieu of the actual documents. Google intends to supplement its Appendix with the actual document as soon as possible.



## B. Google's Advertising Policies

Google provides its search engine to users for free. Google can afford to do this because it allows companies to advertise on its search result pages. Advertising can be annoying; Google tries to make ads less annoying and more valuable to consumers by targeting the ads to what

users are looking for. As a result, users searching for cars are likely to find ads related to cars, not pianos or dresses. Similarly, users searching for "airlines" will find ads for airlines and travel agents. App. at 004.

Google allows advertisers to bid for the right to have their ads appear when users search for particular terms. An advertiser can bid to have its ad appear when a user's search query contains or relates to a particular "keyword." Thus a travel agent can bid to have its ad appear when a user searches for "airlines" but not "pots and pans." Google allocates advertising space according to an auction scheme that ranks ads based on the advertiser's bids as well as Google's automated assessment of the relevance or quality of the ads. App. at 22, ¶ 10.

Because advertisers cannot always predict how a user will phrase a search, advertisers who advertise only when a search exactly matches their chosen keywords (what Google calls "exact match") may miss a lot of relevant searches. An advertiser who buys advertising space for the word "airlines" using an exact match would not have ads appear if the user searched for "airline" or for "US airlines" or for "all airlines." To avoid this problem, Google allows advertisers to use Broad Match keywords. With Broad Match keywords, an ad may appear even if the user includes the terms in a different order within the search or even if the search includes synonyms of the keywords rather than the keyword itself. Thus, an advertiser who bids on the Broad Match keyword "tennis shoes" might have its ads appear when a user searches for "shoes for tennis" or "adidas tennis shoes" or "tennis sneakers." App. at 21-22, ¶ 4, 5. As a result, a competitor to American Airlines could have a sponsored link displayed alongside search results for "American Airlines" even though the competitor did not bid on any trademarked term as a keyword. An advertiser can also specifically ask that its ads not appear when certain combinations of words appear. Thus United Airlines could bid on the keyword "airlines" but specify that its ads not appear when the search is for "American Airlines." But, in that example,

United's ad would not appear in conjunction with a search for "United Southwest American Airlines" either.

It is important to note the distinction between a search term – the term which is entered by the user – and the keyword – the term that triggers the display of the sponsored link. A Google user does not know or have reason to care what keyword was used by an advertiser to target its ads – instead, the user simply types in a query and sees ads relevant to his search. App. at 22, ¶ 9.

## C. Google's Trademark Policy

Advertisers sometimes seek to have their ads appear opposite a search for a competitor's trademark; indeed, American itself has done so. American bid to have its ads run opposite searches for Delta's trademark "Sky Miles" and other airline brands, *see* App. at 26, at least until its lawyers told it to stop when they filed this lawsuit. App. at 24. But its American Airlines Vacations unit insisted on running ads opposite its competitors because "[t]hey want to be where there [sic] competitors are." *Id.*

Some (though by no means all) trademark owners have complained to Google that some advertising might confuse consumers. Of course not all ads are likely to confuse consumers: ads appear in virtually every walk of commercial life, and consumers are unlikely to be confused into thinking that an ad titled "Alcoholics Anonymous" is in fact provided by American, which has also registered the mark AA.

Hundreds of millions of ads appear on Google every day. App at 21, ¶ 3]. Google cannot review all of these ads manually; instead, it has adopted trademark policies and procedures designed to minimize the possibility that these ads might confuse consumers.

First, Google distinguishes ads from search results: ads are set off to the top and right side of the search results page and the top ads are shaded. App. at 004. And Google labels ads

as "Sponsored Links," a term approved by the Federal Trade Commission to identify paid ads as such. App. at 028-031.

Second, Google has a trademark complaint procedure under which trademark owners who believe that specific ads are confusing can seek to restrict them. If a trademark owner owns a valid trademark and files a complaint with Google, Google will implement a filtering system to ensure that the trademarked term does not appear in the text of related ads. App. at 032, ¶ 4. Google's policy is, if anything, *overprotective* of trademark owners: it prohibits even clearly lawful uses of a trademarked term in comparative advertising ("Four out of five dentists prefer Brand X to Brand Y") and truthfully advertising the presence of trademarked goods for sale ("Buy Used Fords and Chevys Here"). Google has processed American's complaint under its trademark policy and disables any ad that uses the term "American Airlines" in the text of the ad. App. at 032-033, ¶ 6. While the electronic filtering system isn't perfect – no computer system is – if the system does make an error Google employees will manually disable an ad that uses a forbidden term when alerted to its existence. App. at 32, ¶ 5.

### D. American's Complaint and Effort to Establish Confusion

American filed this complaint on August 16, 2007, alleging infringement of nine of its trademarks. In the course of the litigation, however, American has dramatically expanded its claims of ownership, and now claims that it suffers damages whenever anyone runs ads opposite no less than 222 different Internet searches, including not only trademarked terms such as "American Eagle" (despite the well-known clothing company named "American Eagle Outfitters") and "AA" (despite the well-known Alcoholics Anonymous organization), but also on a wide variety of searches that seem designed to find not just American the trademark owner but airlines flying to the U.S. more generally ("airline american travel," "connections american," "american air flights," and "airlines America," among others) or indeed any combination of the

letters "A" and "A." App. at 037-040.

American has offered no evidence of any confusion whatsoever with respect to eight of its nine marks, much less evidence with respect to any of the 222 other searches it now claims are off-limits to advertising. The evidence it has offered is limited to a survey by Kent D. Van Liere of consumers with respect to the mark "American Airlines." App. at 052, ¶ 29. Van Liere's survey sampled 800 shopping mall patrons across the country. Each participant saw one of four stimuli purporting to represent Google results pages for searches for "American Airlines." App at 051, ¶ 26.

The first stimulus, Test 1, showed organic search results and five sponsored links, one of which included the words "American Airline" in its text. App. at 054, ¶ 40; App. at 062-063.



**GOOGLE'S BRIEF IN SUPPORT OF ITS MOTION**
**FOR SUMMARY JUDGMENT**
**NO. 4-07-cv-487-A**

**PAGE 12**

The second stimulus, Test 2, showed organic search results and five sponsored links, none of which included thee word "American" in the ad copy. App. at 054-055, ¶ 41; App. at 062-063.

Test 2



Stimuli Control 1 and Control 2 showed virtually the same organic search results as Test 1 and Test 2, respectively, but contained no sponsored links.  App. 056, ¶¶ 44-46; App. at 065-066.

## Control 1



**Control 2**



Each participant was asked to indicate "which link or links, if any, do you think would take you to an American Airlines company website?" and then to indicate, for the remaining links, "which link or links, if any, do you think are endorsed by American Airlines?" The participant was then asked to explain the reasons for his answer(s). App. at 052, ¶¶ 30-32.

With regard to the "American Airlines" mark, Van Liere purports to identify confusion among a minority of consumers. To try to create the appearance of actionable confusion, Van Liere made a number of questionable assumptions and decisions.[3] First, he did not use an actual Google search results page selected at random from the 11,000 provided to him, but instead used two search result pages provided to him by American's counsel that do not accurately represent what a Google user sees today. App. at 069; 077. One is a search from May of 2001, for which the statute of limitations has long since run. App. at 078-079.

Second, Van Liere never asked users about whether they were confused about the source of any goods (such as whether tickets being offered for sale were really American Airlines tickets). For example, he reports no question along the lines of "where would you click to find American Airlines tickets?" Instead, he asked participants "which link or links . . . would take you to an American Airlines company website?" App. at 052. By contrast, the report from Google's expert Simonson, the only one to ask about product or source confusion, finds a rate of confusion of between 0% and 2%. App. at 136-137, ¶¶ 13, 16.

Third, Van Liere identifies users as confused if they point to any of a number of different advertisers *who do in fact offer legitimate American Airlines tickets*. He conceded that he could draw no conclusions about whether the advertisements he tested were false or misleading. App. at 068. In fact, it turns out that of the 12 advertisements in his survey, 7 were for entities through whom one could book American Airlines tickets, including travel agents founded by American

---

[3] For a more detailed discussion of those many problems, see App. at 180-181, ¶¶ 53-54.

Airlines itself. App. at 184-189; App. at 007; App. at 190-228; App. 008-009; App. at 238; App. at 240-275; App. 010-011; App. at 237; App. at 229-235; App. at 012-013; App. at 276-277; App. at 015; App. at 020.[4]

## IV.  Summary Judgment Standard

Summary judgment should be granted when the evidence, "when viewed in the light most favorable to the non-movant, show[s] that there is no genuine issue as to any material fact. Though the court must draw all justifiable inferences in favor of the non-moving party, a genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citations omitted).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting Celotex 477 U.S. at 325). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Id.*

## V.  Summary of Argument

Google does not make a "trademark use" of American's marks, as the Lanham Act requires, because it does not use American's marks to designate the source or origin of goods to

---

[4] They are: funjet.com, cheaptickets.com (which appeared twice), orbitz.com (which appeared twice), Travelocity.com, and bookairlinetickets.com. Notably, Orbitz and Travelocity are not only authorized sellers of American Airlines tickets, they were also *founded* by American. App. at 407-543.

consumers. And even if it did, the evidence in this case unambiguously demonstrates that whether there is confusion depends critically on the text of the advertisement, who runs the advertisement, and what goods and services that advertiser actually provides. The fact that any potential liability depends on the conduct of particular advertisers means that it is the advertiser, not Google, who is the putative direct infringer. As a result, Google could be at most a contributory infringer. In fact, however, American has failed to come forward with evidence that *any* particular advertisement is likely to confuse consumers, so there is no direct infringement to which Google could contribute. And even if some advertisers were in fact infringing on American's marks, Google should not be liable under the "narrow" doctrine of contributory infringement because its policies evidence both its intent and its diligent effort to prevent any such infringement.

American's dilution claims are likewise fatally flawed. Trademark dilution requires that the defendant use the plaintiff's term or a colorable variant "as a mark or trade name;" Google has not done so. Nor can it be liable for contributing to dilution by another; American cannot point to a single advertiser that has confused the connection between American and its marks -- indeed, all the advertisers American has identified had a lawful right under the dilution statute to run their ads.

American's assorted state law claims also fail. With one exception – tortious interference with contract – they are based on its trademark claims, and stand or fall with them. The tortious interference claim fails because American has not shown any damages, and American previously acquiesced in any breach by the travel agents and has now cured any problem by itself.

Finally, even were American able to survive summary judgment, the Lanham Act specifically excludes the possibility of damages on either American's trademark infringement or its dilution claim, and summary adjudication on the issue of damages is appropriate.

## VI.  Argument

### A.  Google Is Not Liable For Direct Infringement

Unlike a typical trademark case, in which the defendant is alleged to have used the plaintiff's trademark to sell goods in competition with the plaintiff, American does not allege that Google uses the American marks to brand any goods or that it competes with American. Rather, American's theory is an attenuated one: (1) Google allows advertisers to target ads that might be of interest to a user by bidding on keywords such as "American Airlines" and "Airlines", (2) users are confused into clicking on those ads based on their proximity to search results, and (3) Google is responsible for this confusion because it allows advertisers to run ads in proximity to search results for American Airlines.  American's reasoning falls far short of making out a claim for direct infringement by Google.

#### 1.  Google Has Not Made Trademark Use of American's Marks

"A 'trademark use' . . . is one indicating source or origin." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990). The Lanham Act defines such a use as occurring in the context of services "when [the mark] is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.  While the Fifth Circuit has not discussed trademark use, the Second Circuit has directly evaluated it in the Internet context and held that it is a requirement of any Lanham Act claim: *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005).[5]  A "trademark use" is more than the use of a trademark:  trademark law has never given trademark owners exclusive control over any use of their marks.  Rather, the

---

[5] Nor is the Second Circuit alone. *See, e.g., Holiday Inns v. 800 Reservation*, 86 F.3d 619, 624-26 (6th Cir. 1996) (defendants who never advertised or promoted protected marks did not "use" them in context of Lanham Act); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679–80 (9th Cir. 2005) (finding the appropriate inquiry in evaluating the "in connection with" requirement, as "whether [defendant] offers *competing* services to the public"); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003) ("[T]he licensing of a toll-free telephone number, without more, is not a 'use' within the meaning of the Lanham Act . . . ."); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002).

law is designed to prevent consumer confusion about the source or origin of goods. *See* Stacey L. Dogan & Mark A. Lemley, *Trademarks and Consumer Search Costs on the Internet*, 41 HOUS. L. REV. 777 (2004).

Google does not use the term "American Airlines" as a brand. It is not selling any product or service using that term as an identifier. Indeed, it is not displaying the American marks or any variant of them to any consumer at all. It is simply not illegal to use a trademark to decide where to place products on a grocery store shelf or – as here – when to allow travel agents to offer genuine American Airlines tickets or competitor to run truthful comparative advertisements. Merely offering advertising space is not a way of indicating source and origin and is not the sort of use of a trademark the law condemns. Google is not making a "trademark use" of American's mark by allowing advertisers to reach Internet users who might be interested in their products or services rather than serving those advertisements indiscriminately to the world at large.

Because the crucial element of "trademark use" is absent, American cannot make out a case of infringement, and summary judgment is appropriate. As the Second Circuit explained, "[n]ot only are 'use,' 'in commerce,' and 'likelihood of confusion' three distinct elements of a trademark infringement claim, but 'use' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." *1-800 Contacts, Inc.*, 414 F.3d at 412; *accord DaimlerChrysler*, 315 F.3d at 939.

### 2. There Is No Evidence of Actionable Confusion

In order to support a claim of trademark infringement, the level of likely customer confusion must be meaningful. Courts differ on the threshold showing of confusion that is required, but confusion usually needs to extend to at least 15% or 20% of consumers. *See Exxon*

*Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500 (5th Cir. 1980) (finding 15% source confusion plus 23% associational confusion evidence of likelihood of confusion). Levels of confusion below 10% or even 20% are de minimus and likely to reflect survey noise rather than actual consumer deception. *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir. 1983) (7.6% confusion too low to support finding of infringement); *Wuv's Int'l v. Love's Enterprises, Inc.*, 208 U.S.P.Q. 736, 756 (D. Colo. 1980) (9% insufficient to support a finding of confusion); *cf.* 6 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 32:188, at 32-387 ("Figures below 20% become problematic").

Applying this standard, the data of American's own expert sinks American's claim. For Test 1, Van Liere's survey found that only one person in 200 (0.5%) identified Mexicana Airlines as the first place to look for American Airlines, and only 8 of 200 (4.0%) identified it as a source for American Airlines at all. App. at 112. This is less confusion than manifested with respect to Control 1, which found a baseline rate of confusion of 11%. App. at 058, Table 3. Indeed, people were more likely to identify an *encyclopedia entry* (Wikipedia) that appeared well down the list of search results as the home of American Airlines than to identify Mexicana Airlines's ad as a link to American Airlines. App. at 110 (showing 1.0% first-choice and 6.0% overall confusion with respect to the Wikipedia entry). The ads for Orbitz, Travelocity, and CheapoAir similarly created less confusion than the Wikipedia search result. Van Liere's Test 2 produced even less confusion: for that stimulus, only one ad – the one for United Airlines – produced as much confusion (up to 13.5%) as the Wikipedia search result (up to 13%). Ads for US Airways, BookAirlineTickets, Cheap Tickets, Orbitz, and CheapoAir all produced significantly less confusion than the Wikipedia search result. App. at 054-059.[6]

---

[6] The results for Van Liere's "endorsement" question show even less confusion – for Test 1, four of six ads created less confusion than the Wikipedia search result; for Test 2, *no* ad showed as much confusion as the Wikipedia search result. App. at 115, 118-119.

Taken together, the tests in Van Liere's survey produced only two ads out of twelve that have even marginally relevant "confusion" percentages – a FunJet ad and the United Airlines ad. Only the Funjet ad generated any substantial residual or "net" confusion in Van Liere's study.[7] But the Funjet ad dates from 2001, well before the statute of limitations.[8] Thus American provided no evidence of any actionable ad that had any meaningful residual confusion.

Moreover, many of the ads Van Liere found "confusing" to even a small number of consumers – and the only one he found confusing to a substantial number – were for sites *authorized* to book American Airlines tickets. App. at 184-189; App. at 007; App. at 190-228; App. 008-009; App. at 238; App. at 240-275; App. 010-011; App. at 237; App. at 229-235; App. at 012-013; App. at 276-277; App. at 015; App. at 020. That means that there is no reason to believe that survey participants who identified those sites as "endorsed by" American Airlines were confused at all – American had in fact endorsed those sites by entering into a contractual arrangement with them. *Id.* Indeed, numerous participants in Van Liere's survey correctly identified the relationship between these travel agents and American Airlines in their responses to the question "why did you choose this link." App. at 164, ¶¶ 18-19 (listing 12 such responses). Inexplicably – or, perhaps, all too explicably – Van Liere chose to ignore these responses to his own question and count these participants as confused. App. at 161-162, 165-

---

[7] Of those two ads, the United ad had only 0.5% residual confusion – that is, only one study participant out of 200 was confused by the United ad but was not confused by the concededly-noninfringing Wikipedia search result. It is "net" confusion after filtering out controls, not raw confusion numbers, that is relevant to the Lanham Act, and a confusion level of 0.5% is not actionable. *See, e.g., S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694 (1st Cir. 1979) (survey that purported to show 7.2% confusion did not prove likely confusion, because the control level of confusion was 5.7%, and once the court subtracted out that background confusion, 1.5% residual confusion was insufficient); 6 McCARTHY, *supra*, §32:187, at 32-384-85; J. Jacoby, *Experimental Design and Selection of Controls in Trademark and Deceptive Advertising Surveys*, 92 Trademark Rptr. 890, 905 (2002).

[8] Both ads ran at the top of the page, and it seems likely that their placement, not the use of any trademark, caused study participants to click on that ad. We can't know for sure, because Van Liere did not follow standard study protocol and rotate the placement of different ads to determine that effect. [*See* App. at 080; *compare* App. at 136, ¶ 12 (documenting his rotation of different ads "needed to control for possible order effects.")

166, ¶¶ 13-14, 22; App. at 081, 083; *see generally* App. at 081-097.

It is well established in the Fifth Circuit that a company that sells a trademarked product is entitled to advertise truthfully that it does so. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477 (5th Cir. 2004) ("Independent dealers and repair shops may use a mark to advertise truthfully that they sell or repair certain branded products so long as the advertisement does not suggest affiliation with or endorsement by the markholder."); *Matrix Essentials v. Emporium Drug Mart, Inc.*, 988 F.2d 587 (5th Cir. 1993) ("trademark law does not apply to the sale of genuine goods bearing a true mark even if the sale is without the mark owner's consent."); *Multimin USA, Inc. v. Walco Int'l*, 2007 WL 1791265 (N.D. Tex. June 20, 2007). As a result, it makes no sense to speak of those advertisements as infringing or of consumers who correctly identified them as an authorized seller endorsed by American Airlines as "confused."

Only a few companies in Van Liere's tests – Mexicana Airlines, United Airlines, and CheapoAir – were not in fact authorized by American. Of course, Mexicana and United do in fact sell airline tickets. They too are legally entitled to advertise the availability of their competing tickets to those who might buy American Airlines tickets, just as the makers of competing perfumes are entitled to advertise their similarity to name brands and one brand of toothpaste can claim to be better than another name brand. "Comparative advertising is in the public interest" because it communicates information *about* the trademark owner and its product. *Oral-B Laboratories v. Mi-Lor Corp.*, 810 F.2d 20, 25 (2d Cir. 1987); *Saxlehner v. Wagner*, 216 U.S. 375, 380 (1910) (allowing imitator to use trademark "to tell the public what they are doing, and to get whatever share they can in the popularity of the [trademarked product] by advertising that they are trying to make the same article, and think that they succeed"); *accord Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503–04 (8th Cir. 1987) (upholding competitor's use of the Calvin Klein mark OBSESSION if used in a nondeceptive, comparative

manner). While American may want to avoid this kind of competition, trademark law gives it no right to do so.

How, then, can Van Liere claim that as many as 32% of consumers were confused? The answer is twofold. First, he treats as "confused" anyone who clicks on a Web page other than American's official page, even though most of those pages are authorized sellers of American Airlines tickets and most of the remainder are lawful comparative advertisements. Second, he then *adds together* the small number of people who were "confused" by individual ads, trying to create the illusion that there is overall confusion about ads when in fact people are generally not confused by any given ad. This is roughly akin to finding 1% of people who are confused by an ad in a magazine, finding another 1% who are confused by a second ad, another 1% by a third, and adding them up together to conclude that the magazine as a whole confuses consumers and so *all* the ads should be banned even though none of them individually is confusing. That is not good survey practice, and it is not the law.

American must present facts that create a genuine issue of material fact for trial. But Van Liere's flawed summation of his data is not a "fact." *TIG Ins. Co.,* 276 F.3d at 754. The real facts are the data, which speak for themselves: there is no actionable confusion in the ads American identifies.

### 3. Google's Liability For Any Residual Confusion Should Be a Matter of Contributory, Not Direct Liability

Even taking Van Liere's expert report at face value, despite its many flaws, American cannot possibly claim that it provides evidence that *every* ad he tested is likely to confuse consumers. Thus, even if this Court were to find some residual confusion sufficient to survive summary judgment, it is evident from the preceding discussion that whether or not a particular ad is confusing to consumers depends on who places the ad, whether they have a lawful right to do so, where the ad is located, and what is in the text of the ad. The advertiser controls all these