

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> -v.- <br><br> GOOGLE INC., <br><br> Defendant. | No. 4:07-CV-487-A |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR CLARIFICATION AND BRIEF IN SUPPORT

Dee J. Kelly
  State Bar No. 11217000
Dee J. Kelly, Jr.
  State Bar No. 11217250
Lars L. Berg
  State Bar No. 00787072
KELLY HART &
HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown
  admitted pro hac vice
George A. Nicoud III
  State Bar No. 15017875
Jason B. Stavers
  admitted pro hac vice
GIBSON, DUNN &
CRUTCHER LLP
One Montgomery St., Ste. 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Terence P. Ross
  admitted pro hac vice
Howard S. Hogan
  admitted pro hac vice
GIBSON, DUNN &
CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | ARGUMENT | | 1 |
|  | A. | Google's Attempt To Limit the Scope of the June 16 Order is Inappropriate. | 1 |
|  | B. | Google's Definition of "Access" Is Not Practical or Consistent with its Discovery Obligations. | 5 |
|  | C. | Google's Offers to "Resolve" this Dispute Are Inadequate. | 8 |
|  | D. | The Only Fair Remedy for Google's Discovery Violations is an Order Striking Google's Answer. | 12 |
| II. | PRAYER | | 14 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Computer Acceleration Corp. v. Microsoft Corp.*,
 Case No. 9:06-CV-140, 2007 U.S. Dist. LEXIS 63760 (E.D. Tex. Aug. 28,
 2007) ................................................................................................................. 6

*Emerick v. Fenick Indus., Inc.*,
 539 F.2d 1379 (5th Cir. 1976) ........................................................................... 13

*Fresh Am. Corp. v. Wal-Mart Stores, Inc.*,
 Civ. A. No. 3:03-CV-1299-M, 2005 U.S. Dist. LEXIS 10086 (N.D. Tex.
 May 25, 2005) .................................................................................................... 6

*Google Inc. v. American Blinds & Wallpaper Factory Inc.*,
 5:03-cv-05340-JF (N.D. Cal. settled August 31, 2007) ................................... 12

*In re Ford Motor Co.*,
 345 F.3d 1315 (11th Cir. 2003) .......................................................................... 7

*Plasticsource Workers Comm. v. Coburn*,
 No. 07-50399, 2008 U.S. App. LEXIS 2440 (5th Cir. Feb. 1, 2008) .............. 13

*Sithon Maritime Co. v. Mansion*,
 No. CIV. A. 96-2262-EEO, 1998 WL 182785 (D. Kan. Apr. 10, 1998) ........... 2

*Smith v. Smith*,
 145 F.3d 335 (5th Cir. 1998) ............................................................................ 13

*U & I Corp. v. Advanced Medical Design, Inc.*,
 8:06-CV-2041-T-17EAJ, 2008 WL 821993 (M.D. Fla. Mar. 26, 2008) ........... 2

*Uniroyal Chemical Co. v. Syngenta Crop Protection*,
 224 F.R.D. 53 (D. Conn. 2004) .......................................................................... 7

*United States v. 49,000 Currency*,
 330 F.3d 371 (5th Cir. 2003) ............................................................................ 13

**RULES**

Fed. R. Civ. P. 37 ..................................................................................................... 13

Although styled as "Motion for Clarification," Google's July 2 motion seeks two significant modifications of the Court's June 16, 2008 Order. First, Google wrongly assumes that the Order required it to provide access to only two of its many databases and systems, rather than "all electronically stored information that is responsive to each of plaintiff's requests for production" as ordered by the Court. No explanation is offered for redefining "all" to mean something much different from "all." Second, Google now requests that the Court augment the Order with conditions that Google never requested in its opposition to the original motion to compel. These requests are untimely and unwarranted.

**I.**
**ARGUMENT**

A. **Google's Attempt To Limit the Scope of the June 16 Order is Inappropriate.**

The Court's June 16 Order provided that Google must give American access to "all electronically stored information that is responsive to each of plaintiff's requests for production," but Google now pretends that "the AdWords and Analytics databases were the only databases requested by American in its papers" and the only databases that Google need make available to comply with the Court's June 16 Order. Clarification Motion at 1.

Google's position is not supported by the words of the Order. The Court's words, "*all* electronically stored information that is responsive to each of plaintiff's requests for production" are not subject to misunderstanding. Yet Google attempts to redefine "all" to mean just two databases.

American was aware of Google's penchant for playing games with definitions, so American was careful to state in its first motion to compel that it was seeking access to "Google Analytics *or any other data base, whether or not that function was called out by name*" and "stored information . . . in AdWords, Google Analytics *or elsewhere*." Plaintiff's Reply Brief

1

Relative to its Motion to Compel, May 21, 2008 (Docket No. 56) ("Reply") at 9-10 (emphasis added).[1] In recent meet and confer correspondence, American pointed Google to its previous requests for information beyond the AdWords and Analytics databases, Exhibits in Support of Plaintiff's Second Motion to Compel (Docket Nos. 72-73) ("Mot. to Compel App.") Ex. GG, pp. 260-262 (June 25, 2008 F. Brown letter); Plaintiff's Appendix of Exhibits in Opposition to Defendant's Motion for Clarification, dated July 10, 2008 ("Mot. for Clarification App.") Ex. F, p. 51-52 (June 29, 2008 F. Brown e-mail). Google's response ignored that record and insisted that American "identify any additional information covered by the Court's order beyond what is obtainable through AdWords and Analytics." Mot. to Compel App. Ex. RR, pp. 399-402 (July 1, 2008 R. Tangri letter at 2) (previously appended to Google App. at 25-28). That demand by Google was a rejection of the Court's Order and a re-litigation of the motion Google had already lost. Moreover, it is Google's responsibility to identify for American where responsive information resides, not the other way around. *See, e.g., Sithon Maritime Co. v. Mansion*, No. CIV. A. 96-2262-EEO, 1998 WL 182785, at *9 (D. Kan. Apr. 10, 1998) ("When a party responds to a request for production, it does not necessarily fulfill its duty by producing all documents 'reasonably accessible' to it. Parties must produce all responsive documents, assert a legitimate objection to such production, or obtain an extension of time, if necessary.").[2]

---

[1] Plaintiff's Second Motion to Compel and for Sanctions and Brief in Support, dated July 2, 2008 (Docket No. 71) ("American's Second Motion to Compel") lists the many databases that were called out by name in the first motion to compel and accompanying briefs. *See* American's Second Motion to Compel at 2-3.

[2] In fact, one of the cases cited by Google demonstrates why its approach is flawed. As the Court noted in *U & I Corp. v. Advanced Medical Design, Inc.*, 8:06-CV-2041-T-17EAJ, 2008 WL 821993, at *9 (M.D. Fla. Mar. 26, 2008), "[i]t is not the court's role, nor that of opposing counsel, to drag a party kicking and screaming through the discovery process."

On the second day of the meet and confer session ordered by the Court, and *after Google's in-house representative curiously left the meet and confer session to return to California*, Google's outside lawyers were left behind to make a startling and major revelation: Google had another highly relevant database that it had withheld during ten months of litigation. That database, called "Ads Query Log" contains information long sought by American concerning broad match. The "Ads Query Log" is among the "all electronically stored information" ordered produced by the Court in its June 16 Order, yet it was not revealed until American's counsel asked for a sworn statement that Google had no additional hidden databases or systems containing relevant information. Google's outside counsel explained that the "Ads Query Log" contains electronically stored information related to all search terms that have been entered into the Google search engine. The Ads Query Log, which to date Google has concealed apparently even from its own outside counsel, would allow American to identify Sponsored Links that Google published in response to particular search terms, including those that used broad match functionality, and for each Sponsored Link: what keyword was purchased by an advertiser that led Google to publish the Sponsored Link, and what revenues Google received as a result of the publication of these Sponsored Links. This data goes to the heart of American's contentions in the case.

The Ads Query Log was responsive to several of American's discovery requests concerning broad match that were addressed in American's original motion to compel.[3] That

---

[3] In fact, since October, 2007, American has sought "[a]ll documents relating to the . . . designation, use, or inclusion of one or more of the American Airlines Marks or Terms Similar to the American Airlines Marks as . . . designated search terms in Google's Advertising Programs." *See* Mot. to Compel App., Ex. C, pp. 013-031 (American's First Request For Production No. 5); *see also id.* (Nos. 4, 21, 22, 28, 29, 31, 32); Plaintiff's Motion to Compel and Brief in Support, dated May 7, 2008 (Docket No. 34) ("American's First Motion to Compel") at 4 (listing many of these requests). In fact, on January 2, 2008, American highlighted its need "to

[Footnote continued on next page]

database should have been produced long ago. Google understands the importance of broad match to this case. In fact, Google's recently filed motion for summary judgment uses broad match as a way to attempt to shift responsibility to its advertisers and to escape liability for Google's own actions. *See, e.g.,* Defendant Google Inc.'s Brief in Support of Its Motion for Summary Judgment, dated July 3, 2008 (Docket No. 84) ("Google Summary Judgment Brief") at 8, 34. Google's response throughout discovery, however, has been to insist that the information sought related to broad match does not exist or had already been produced. In particular:

- In a March 21, 2008 letter, Google represented that the broad match information sought "is not tracked on a keyword basis." Mot. for Clarification App. Ex. D, pp. 45-46 (March 21, 2008 K. Hamm letter, at 2-3).

- In an April 4 letter, Google represented that the broad match data sought "is not stored in Google's ads database and thus cannot be included in a spreadsheet of data from that database," Mot. to Compel App. Ex. L, pp. 099-104 (April 4, 2008 K. Hamm letter, at 2).

- In Google's May 15, 2008 Response to Plaintiff American Airlines, Inc.'s Motion to Compel and Brief (Docket No. 44) ("Google Motion to Compel Opposition Brief"), Google represented both (1) that it is "just not feasible" to produce all responsive broad match data, *id.* at 7, and (2) that all the information that was feasible to produce had already been produced, *id.*

- Google claimed that is "does not have or maintain reasonably accessible records" responsive to American's request for "the total number of searches that Internet users have made using any and all Google search engines by entering into such search engines the American Airlines Mark or Term Similar To The American Airlines Marks as one of the words, phrases, or terms designated, included, or used in the search request," Mot. to Compel App. Ex. 3, pp. 013-031 (Google's Response to

---

[Footnote continued from previous page]
know what terms Google has designated to trigger a 'broad match' to the American Marks" and the resulting "number of clicks," Mot. for Clarification App. Ex. B, pp. 22 (Jan. 2, 2008 H. Hogan letter); Google itself put broad match further at issue by citing it as the basis of its nominative use defense, *id.* Ex. C, pp. 11-12 (Google's response to American's Interrogatory No. 5), and American propounded many more requests for production asking for this information in many different ways. *See* Mot. to Compel App. Ex. E, pp. 051-054 (American's Second Request for Production No. 3, 11); *id.* Ex I, pp. 080-083 (American's Third Requests for Production, Nos. 2, 13); *id.* Ex. M, pp. 113-117 (American's Fourth Requests for Production, Nos. 1-5, 10-15); American's Second Motion to Compel at 11-12.

4

Request No. 32 of American's First Requests for Production); *see also id* (Responses to Request Nos. 5, 21, 22, 28, 29, 31).

We now know that each of these statements is grossly misleading at best, and that the "Ads Query Log" contains the information that American has long been seeking.

These misstatements did not stop with Google's discovery responses or Google's statements during the meet and confer process. In the sworn declaration of Paul Yan submitted by Google to this Court, Mr. Yan testified:

> Prior to developing the SQP [Search Query Performance report offered to advertisers], there was no practical way for Google to obtain information about the search queries that resulted in the display of particular Sponsored Links.

Mot. for Clarification App. Ex. E, p. 50 (Yan Decl. ¶ 5). At the very best, Google's submission of Mr. Yan's declaration, and the commentary in Google's opposition papers to American's First Motion to Compel, can only be seen as a deliberate attempt to conceal from both American and the Court that Google possessed the highly relevant Ads Query Log database.

### B. Google's Definition of "Access" Is Not Practical or Consistent with its Discovery Obligations.

The bulk of Google's Clarification Motion is devoted to seeking the Court's approval for a number of restrictions that Google has unilaterally instituted to limit the ways in which it "complies" with the Court's June 16 Order. Specifically, without first moving the Court for permission, Google has limited American to: (1) accessing AdWords and Analytics information at its offices;[4] (2) making all such access subject to the constant supervision and monitoring of a

---

[4] Google initially insisted that access be allowed only at its headquarters in Mountain View. Mot. for Clarification App. Ex. G, pp. 53 (June 23, 2008 F. Brown letter). It then allowed access at its counsel's offices in San Francisco. Mot. to Compel App. Ex. FF, pp. 257-259 (June 24, 2008 R. Tangri letter); *id.* Ex. GG, pp. 260-261 (June 25 F. Brown letter); *id.* Ex. HH, pp. 262-265 (June 26, 2008 R. Tangri letter). On July 1, Google offered to allow access at American's counsel's office in San Francisco. *Id.* Ex. QQ, p. 398 (July 1, 2008 M.

[Footnote continued on next page]

Google employee with a Google lawyer nearby; and (3) recording the data provided to American in the form of frozen images of what appears on Google's computer screen as a dynamic database. Clarification Motion at 5. These restrictions are not consistent with the Court's June 16 Order and invade the ability of American's counsel to develop their attorney work product in confidence.

As a preliminary matter, Google's arguments are untimely. Google could have, in opposing American's First Motion to Compel, advanced the argument that the access sought by American should be "carefully monitored and that necessary restrictions must be put in place." Clarification Motion at 4. It did not do so. *See* Google Motion to Compel Opposition Brief, *passim*.[5] Google cannot use a motion for clarification as an opportunity to raise arguments that it should have raised in the first instance but failed to make. *See, e.g., Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, Civ. A. No. 3:03-CV-1299-M, 2005 U.S. Dist. LEXIS 10086, at *2-4 (N.D. Tex. May 25, 2005) (Lynn, J.) ("Reconsideration of a prior order is an extraordinary remedy that should be used sparingly" and not to rehash "arguments that could have been offered or raised before"); *Computer Acceleration Corp. v. Microsoft Corp.*, Case No. 9:06-CV-140, 2007 U.S. Dist. LEXIS 63760, *2-3 (E.D. Tex. Aug. 28, 2007) ("To permit such a motion at this point would defeat the purpose of court intervention, which was to obtain finality to a long-running and costly discovery dispute.").

---

[Footnote continued from previous page]
 Miksch e-mail); *id.* Ex. RR, p. 399-402 (July 1, 2008 R. Tangri letter). All such access is limited and supervised.

[5] Moreover, Google's argument that this access should not be allowed, *see* Clarification Motion at 3, is nothing more than a repetition of its argument that the original motion to compel should be denied. *See* Google Motion to Compel Opposition Brief at 9-11.

But even ignoring the timeliness of Google's arguments, the restrictions being unilaterally imposed by Google are burdensome, disruptive, and impermissibly encroach upon the mental processes of American's counsel. With summary judgment motions pending and a trial three months away, American requires access to the database outside the limited business hours that a designated Google employee will be available. To prosecute this action effectively in the face of Google's discovery abuse, American requires that its counsel and experts have access to the database at American's counsel's office in Fort Worth, Dallas, Washington, D.C., and San Francisco. And American requires that it be able to obtain the information in question, not merely the static graphic images printed by Google. The data in question is, as Google has repeatedly pointed out, voluminous. American needs to work with this data to understand it, not merely to browse it or take a still picture of a limited portion of it.

Third, the presence of Google's employees in the accessing process gives Google unfair access to American's work product. None of the cases cited by Google suggests that constant, in-person monitoring is required when a party is given access to its opponent's databases.[6]

Contrary to Google's hyperbole, American does not "claim that the Court's order . . . allows American to rummage, unsupervised, through these databases wherever and whenever it sees fit." Clarification Motion at 8. Instead, American's counsel wrote to Google on June 25 that "American commits not to access electronically stored information beyond that which it

---

[6] For example, in *Uniroyal Chemical Co. v. Syngenta Crop Protection*, 224 F.R.D. 53, 58 (D. Conn. 2004), the court ordered the producing party to make the database in dispute "available for inspection by Syngenta's outside counsel and the designated Syngenta employees, provided a confidentiality agreement is signed and no notes or copies are retained by Syngenta employees." This is provides for *greater* access than American seeks; American has not demanded direct access by American employees. Google also relies on *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003), but in that case, the 11th Circuit only reversed an order granting access to databases where the trial court did not permit the producing party the chance to file an opposition to the motion to compel and where the order did not limit access to responsive information only. These are not the circumstances of this case.

requested in discovery and that which was ordered produced by the Court. Surely Google employees can find a way to issue limited passwords or instruct American on to how to avoid inadvertent access to information that is not within the Court's Order. American's representatives will faithfully follow those instructions." Mot. to Compel App. Ex. GG, p. 261 (June 25, 2008 F. Brown Letter, at 2). Google ignored that commitment when it complained to this Court that American seeks unfettered and potentially destructive access to its data.[7] Moreover, Google's data is subject to the protections of the Confidentiality Agreement that Google itself co-authored. *Id.* Ex. D, pp. 032-042 (Confidentiality Agreement). Google can provide American with such reasonable instructions it deems necessary, consistent with Google's obligations under the Court's order, so that American can avoid taking any steps that might alter or affect this data.

C.  **Google's Offers to "Resolve" this Dispute Are Inadequate.**

As set forth in the Report on Court Ordered Conference filed on July 8, 2008 (Docket No. 90), representatives of both Google and American met over the course of two days to try to resolve the issues raised in American's Second Motion to Compel and Google's Clarification Motion. Unfortunately, most of the differences were not resolved. *Id.* Although Google did offer to produce some of the highly relevant information it had previously withheld to partially resolve the issues raised in American's Second Motion to Compel, Google's offers were much too little and much too late. Further, in at least one very significant case, Google's offer was withdrawn without explanation.

---

[7] Google also has never explained why it cannot do for American what it does for each of its many thousands of advertisers: issue a user-name, an account number and a password for certain accounts, not for accounts as a group, but for each account separately.

1.  **Access To All Electronically Stored Information.** As described above, Google has not agreed to provide American with anything close to "all" responsive electronically stored information as ordered by the Court. At most, Google proposed to make available, on a supervised basis at a single location, access to a limited number of databases and systems in addition to the AdWords and Analytics databases. Google still refuses, however, to provide any access to American Airlines to Google's: (1) user search log data; (2) internal websites; (3) e-mails or instant messaging systems; (4) the newly disclosed Ads Query Log; (5) Product Design Database; or (6) Keyword Tool Data. Instead, Google has offered only to conduct limited searches of those systems or databases, sometimes limited to only a few days' of data.

2.  **Spoliation Discovery.** The parties also did not reach an agreement as to American Airlines' request that the Court allow spoliation discovery. Google must understand that its failure to issue a "no destruction" memorandum until far after the lawsuit was threatened and even too long after it was filed puts it a risk of a serious sanction, yet Google continues to act as though it has done nothing unusual or wrong for which it needs to make amends. For a serial, sophisticated litigant like Google with top notch legal talent both within the corporation and on the outside, such an error was, at a minimum, reckless. American already has uncovered the fact that some documents were destroyed and it needs to be allowed to discover the full extent of Google's destruction of relevant information.

3.  **Broad Match Documents.** On the first day of the meet and confer ordered by this Court, Google offered to produce additional responsive documents concerning broad match, including the highly relevant portion of its source code that implements the algorithm used to broad match key words to search terms, such as American's trademarks. But on the second day of the meet and confer, Google withdrew this offer of source code without explanation. Instead,

Google returned to its pre-Order position of offering only "high-level" descriptions of the Google broad match process and insubstantial information about the millions of dollars that Google has made in using American's marks in Google's broad match program.

4. **Related Keyword Documents.** Google has not produced and, as far as it has disclosed, is not even querying its databases for additional information about the "Related Keywords" that it has suggested to advertisers. As described in greater detail by the parties in connection with American's First Motion to Compel, Google has previously admitted that it possesses additional Related Keyword data. *See* Reply at 3; Mot. for Clarification App. Ex. H, pp. 56 (Haque Decl. ¶¶ 7-8). Its refusal to turn this data over to American in the face of the Court's June 16 Order defies explanation.

5. **Google Documents Presented to Advertisers.** Google has offered to produce additional responsive documents maintained by account representatives and management of Google who have responsibility for a list of 55 travel accounts identified by American Airlines. At this point, it is unclear whether this will include documents in which Google recommended or discussed with one or more of these advertisers bidding on or use in any way the trademark of a competitor. In any event, Google should provide documentation of all instances in which it has actively encouraged any advertiser to bid on or use the trademarks of a competitor, as Google encouraged American to do. Mot. to Compel App. Ex. LL, pp. 301-336 (Google Mobile presentation as presented on a computer screen to American, encouraging American to buy the marks of its competitors); *see also* American's Second Motion to Compel at 9-10 (explaining how Google altered this slide in the version initially provided to American). American has alleged that Google has acted in conformity with this practice to encourage the use of American's or others' marks – a practice Google falsely denies – and this information is

necessary to allow American to respond to Google's denials and Google's summary judgment argument that it should not be held responsible for the choices it blames on its advertisers. *See* Google Summary Judgment Brief at 25 (arguing that Google is doing nothing more than "helping others to run advertisements"); *id.* at 26 ("American must come forward with proof that Google itself caused or encouraged infringers to place misleading ads on its search results page.").

      **6.**      **Evidence of Confusion.** Google has represented, in conclusory fashion, that it will produce non-privileged documents relating to the results of its surveys and studies into consumer confusion and the design of its user interface. Although Google has represented that it will simultaneously produce a privilege log of responsive information to be withheld, it remains unclear whether Google will provide enough information to allow American to test Google's assertions of privilege or to respond fully to Google's assertion in its summary judgment papers that it expends "substantial time and resources to try to prevent advertisers from confusing consumers." Google Summary Judgment Brief at 26. Tellingly, however, Google has declined to represent that it will search its e-mail systems or other relevant databases for instances in which the words "confusing," "confusion," "confused," or other synonyms appear. *See* American's Second Motion to Compel at 17-19 (citing relevant document requests). To the contrary, Google says that it has *not* previously searched its electronic files for these words, although such words have been at the core of the dispute since the litigations was filed. Google's failure to make that basic search could be nothing other than deliberate. *See* Mot. to Compel App. Ex. R, pp. 158-176 (Google's Declaration Submitted Pursuant to the Court's June 16 Order) (search terms used by Google to identify relevant documents do not include these terms).

7.  **Other Documents Identified by Google Employees.** Google has represented that it will produce documents identified at pages 20 to 21 of American's Second Motion to Compel for the 55 advertisers selected by American from information previously provided by Google, as well as Objectives and Key Results ("OKR's") for the individuals listed in Appendix Ex. SS of American's Second Motion to Compel. American has agreed that Google may redact from the OKR's limited highly confidential non-relevant information, if necessary, to protect highly sensitive non-relevant data, subject to Google's agreement to allow American's counsel to inspect unredacted copies within 48 hours of a good-faith request and American's ability to challenge these redactions after inspection.

8.  **Timing of Production.** Google has promised to produce the above noted information as early as next Tuesday, July 15, and as late as the end of July. Google's timetable makes no sense in view of the Court's Order dated June 16, the July 23 deadline for American's response to Google's summary judgment motion, the discovery cutoff of August 11, the trial date of October 14, and the fact that American's discovery requests that have been pending since late 2007. Google's latest excuse is that it has just begun to look for much of the above information. Google's own delay and obfuscation are not legitimate excuses. At this stage of the case, time is of the essence, and all requested information should be produced to American with 72 hours of the Court's Order.

D.  **The Only Fair Remedy for Google's Discovery Violations is an Order Striking Google's Answer.**

This Court may award appropriate sanctions up to and including an order determining issues of liability or eliminating Google's defenses. *See* American's Second Motion to Compel at 7 n.4 (citing cases). Google itself argued in a related lawsuit that discovery violations much less severe than those committed by Google here merited a range of remedies including entry of

"default judgment." Mot. to Compel App. Ex. B, pp. 004-012 (Google's December 26, 2006 brief in *Google v. American Blind & Wallpaper Factory, Inc.*, at 18-20).

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes this Court to strike pleadings where, as here, the failure to comply with the Court's order results from "willfulness or bad faith" and "where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998). In making this determination, the Court may consider whether the discovery violation prejudiced the opposing party's preparation for trial. *United States v. 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). In particular, when a party is on notice that a violation of a discovery order will result in severe sanctions, orders striking answers are routinely affirmed. *See, e.g., Plasticsource Workers Comm. v. Coburn*, No. 07-50399, 2008 U.S. App. LEXIS 2440, at *8-12 (5th Cir. Feb. 1, 2008) (affirming order striking an answer where Court had previously warned party that sanctions would be imposed if he failed to comply with the Court's discovery order).

Here, given the many violations of the Court's June 16 Order by Google, a sophisticated and experienced litigant, there can be no question that Google's conduct was both willful and in bad faith. Even if Google were to produce all responsive information immediately, American would remain irreparably prejudiced in its efforts to prove its case against Google. Despite American's efforts, Google would then stand to benefit from its own misconduct. By its disregard of both this Court's June 16 Order and its obligations under the Federal Rules of Civil Procedure, Google has demonstrated "flagrant bad faith and callous disregard of its responsibilities." *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976) (affirming order to strike pleading even though Court could have ordered production of withheld material in light of "flagrant disregard" for previous discovery order).

American has been severely prejudiced by Google's concealment of the existence of the Ads Query Log, the withholding of information that it now agrees needs to be produced, and the violation of the Court's June 16 Order. At this point, with the deadline for summary judgment passed, the discovery period nearly over, and trial just three months away, Google's strategy has worked as planned to inflict irreparable damage to American's prosecution of its case against Google. Google's withholding of information has resulted in American's not being able to use relevant, discoverable, and properly-requested information in the depositions taken to date, or in the written discovery propounded to Google. These opportunities are forever lost to American. American also has not been able to incorporate the withheld discovery in its expert analyses on confusion or damages, and has been denied the opportunity to learn whether additional experts are needed. American also has been denied the right to use Google's withheld information in a summary judgment motion of its own or to oppose Google's currently filed motion for summary judgment. American has had to make irreversible strategy calls on the limited information that Google chose to parcel out. The time for Google to cure its misdeeds has passed. Also, the amount of information withheld by Google dwarfs the information that Google has produced to date. Even if Google were to produce all the previously hidden information immediately, this avalanche of information may well overwhelm American's ability to use it effectively in the short time left in discovery and for trial. Only a severe sanction can put American back in the place it should be at this time. American respectfully requests Google's answer be struck.

## II.
## PRAYER

For the foregoing reasons, and for the reasons set forth in American's contemporaneous Second Motion to Compel, American respectfully requests that the Court deny Google's Clarification Motion in its entirety and award American:

(a) all relief requested in the Prayer to American's Second Motion to Compel;

(b) an Order striking Google's answer; and

(c) such further relief as the Court deems to be just and proper.

DATED: July 10, 2008

        Respectfully submitted,

        */s/ Dee J. Kelly*

Dee J. Kelly (State Bar No. 11217000)
Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
George A. Nicoud III (State Bar No. 15017875)
Jason B. Stavers (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Terence P. Ross (admitted *pro hac vice*)
Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on July 10, 2008 to Defendant's counsel, as follows:

>Joseph F. Cleveland, Jr.
>BRACKETT & ELLIS, P.C.
>100 Main Street
>Fort Worth, TX 76102-3090
>
>Michael H. Page
>Klaus H. Hamm
>KEKER & VAN NEST LLP
>710 Sansome Street
>San Francisco, CA 94111-1704

*[signature]*
Lars L. Berg